CHAD A. READLER
Acting Assistant Attorney General
BRIAN STRETCH
United States Attorney
JOHN R. TYLER
Assistant Director
W. SCOTT SIMPSON (Va. Bar #27487)
Senior Trial Counsel
Department of Justice, Room 7210
Civil Division, Federal Programs Branch
Post Office Box 883
Washington, D.C.  20044
Telephone:     (202) 514-3495
Facsimile:      (202) 616-8470
E-mail:          scott.simpson@usdoj.gov
COUNSEL FOR DEFENDANTS
*(See signature page for parties represented.)*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| CITY AND COUNTY OF SAN FRANCISCO, <br><br> Plaintiff, <br><br> v. <br><br> JEFFERSON B. SESSIONS, Attorney General of the United States, *et al*., <br><br> Defendants. | No. 3:17-cv-04642-WHO <br><br> **DEFENDANTS' OPPOSITION TO MOTION TO INTERVENE BY CITY OF LOS ANGELES** |

## INTRODUCTION

The City of Los Angeles, a non-party herein ("Los Angeles" or "the City"), has filed a motion for permissive intervention in this action (Doc. 20).  Even though Los Angeles seemingly could not have filed its own complaint in this judicial district, the City argues that intervention should be granted because it seeks to challenge the same federal grant conditions challenged by the existing plaintiff herein, the City and County of San Francisco.  In light of Los Angeles's

1    inability to file its own complaint in this district (and, conversely, its ability to file in its home

2    district) as well as the potential prejudice to defendants from the City's intervention, especially in

3    view of the unique circumstances of each locality, defendants believe the Court should exercise

4    its discretion to deny the City's motion.[1]

5                                              **ARGUMENT**

6            As the proposed intervenor acknowledges, a request for permissive intervention is

7    governed by Rule 24(b) of the Federal Rules of Civil Procedure (Doc. 20 at 2).  Under that rule, a

8    court "may" permit intervention, "[o]n timely motion," where the proposed intervenor "has a

9    claim or defense that shares with the main action a common question of law or fact."  *See* Fed. R.

10   Civ. P. 24(b)(1).  Additionally, pursuant to Article III of the Constitution, the proposed intervenor

11   must have "an independent ground for jurisdiction."  *See Blum v. Merrill Lynch Pierce Fenner &*

12   *Smith Inc.*, 712 F.3d 1349, 1353 (9th Cir. 2013).  Whether to grant or deny permissive interven-

13   tion is within the discretion of the trial court.  *See Kamakahi v. Am. Soc'y for Reprod. Med.*, No.

14   11-CV-01781-JCS, 2015 WL 1926312, at *3 (N.D. Cal. Apr. 27, 2015) ("If the party seeking to

15   intervene meets those elements, the district court has broad discretion to grant or deny the

16   motion . . . ."); *see also Donnelly v. Glickman*, 159 F.3d 405, 412 (9th Cir. 1998) ("Even if an

17   applicant satisfies those threshold requirements, the district court has discretion to deny

18   permissive intervention.").

19           "In exercising its discretion [under Rule 24], the court *must* consider whether the inter-

20   vention will unduly delay or prejudice the adjudication of the original parties' rights."  Fed. R.

21   Civ. P. 24(b)(3) (emphasis added).  Indeed, "the possibility of prejudice to the original parties

22   should be the 'principal consideration' in determining whether intervention is appropriate."  *In re*

23   *Napster, Inc. Copyright Litig.*, No. C 04-3004 MHP, 2005 WL 289977, at *5 n.3 (N.D. Cal. Feb.

24   3, 2005) (quoting *UMG Recordings, Inc. v. Bertelsmann AG*, 222 F.R.D. 408, 415 (N.D. Cal.

25   2004)); *see Oregon Envtl. Council v. Oregon Dep't of Envtl. Quality*, 775 F. Supp. 353, 359 (D.

26

27   _____

          [1] Defendants do not oppose Los Angeles's concurrent administrative motion to expedite
28   the briefing schedule on its motion to intervene, to shorten the time for a hearing, and to decide
     the motion to intervene without oral argument (Doc. 21).

     Opposition Intervention Los Angeles
     No. 3:17-cv-04642-WHO
                                                    2

1 Or. 1991) (noting that undue delay or prejudice is "[t]he question essential to determining

2 whether intervention should be permitted").

3     Los Angeles's motion to intervene briefly mentions prejudice to the existing parties, but

4 only in connection with the timeliness of its motion (Doc. 20 at 8).  Viewed more broadly,

5 granting the present motion would likely cause significant prejudice to the traditional venue and

6 forum rules as well as to the Federal Government.

7     The proposed intervenor and the existing plaintiff – along with the State of California in

8 *State of California ex rel. Becerra v. Sessions, et al.*, Case No. 3:17-cv-04701-MEJ (N.D. Cal.),

9 also before this Court – challenge or seek to challenge grant conditions articulated in the Edward

10 Byrne Memorial Justice Assistance Grant Program, 42 U.S.C. §§ 3750-3758 ("Byrne JAG

11 Program").  Those conditions apply to grants nationwide, meaning that other jurisdictions,

12 besides these three, may also seek to challenge the conditions.[2]

13     Traditional venue and forum rules often result in multiple lower courts considering similar

14 legal questions, a process of value to the appellate courts and the development of the law more

15 generally.  In the words of Justice Stevens, the federal court system, including the Supreme Court,

16 benefits from the broad treatment of key legal questions:

17
18 > *Disagreement in the lower courts facilitates percolation* – the independent evaluation of a legal issue by different courts.  The process of percolation allows a period of exploratory consideration and experimentation by lower courts before
19 > the Supreme Court ends the process with a nationally binding rule.  The Supreme Court, when it decides a fully percolated issue, had the benefit of the experience of
20 > those lower courts.

21 *California v. Carney*, 471 U.S. 386, 400 n.11 (1985) (Stevens, J., dissenting) (quoting Samuel

22 Estreicher & John E. Sexton, *A Managerial Theory of the Supreme Court's Responsibilities*, 59

23 N.Y.U. L. Rev. 677, 716 (1984)) (emphasis added); *accord, e.g.*, *Arizona v. Evans*, 514 U.S. 1, 23

24 n.1 (1995) (Ginsburg, J., dissenting) ("We have in many instances recognized that when frontier

25 legal problems are presented, periods of 'percolation' in, and diverse opinions from, state and

26 federal appellate courts may yield a better informed and more enduring final pronouncement by

27 

28 [2] The City of Chicago is currently challenging the conditions in *City of Chicago v. Sessions*, Case No. 1:17-cv-05720 (N.D. Ill.).

Opposition Intervention Los Angeles
No. 3:17-cv-04642-WHO

3

1   this Court."); *Cascade Health Sols. v. PeaceHealth*, 515 F.3d 883, 908 (9th Cir. 2008) (justifying

2   its holding by observing that it would "allow these difficult issues to further percolate in the lower

3   courts"); *al-Marri v. Rumsfeld*, 360 F.3d 707, 710 (7th Cir. 2004) (noting value of "distribut[ing]

4   business among the district courts and circuits [and] allow[ing] important issues to percolate

5   through multiple circuits before the Supreme Court must review a disputed question").  Allowing

6   several district courts to address an issue allows the parties to present their arguments to different

7   judges, and increases the likelihood of diverse thought in resolving those claims.  These consider-

8   ations are especially significant where the defendant is the Federal Government and the issues

9   involved affect multiple parties.

10          Applying these principles here, permitting disparate jurisdictions to aggregate their

11   challenges in this action would disserve the parties and the courts.  Every other jurisdiction in the

12   United States affected by the challenged Byrne JAG grant conditions could assert, like Los

13   Angeles, that its claims "overlap substantially with the claims San Francisco advances" and

14   "involve common issues of law concerning [the Department of Justice's] constitutional authority"

15   (Doc. 20 at 8).  Every other jurisdiction could also assert that intervention is thus necessary to

16   "permit the Court to consider [the challenged grant] conditions in light of differing local policies"

17   (*id*. at 9).  Permitting such intervention, however, would leave traditional venue and forum rules

18   largely meaningless.  It would also hinder the "exploratory consideration and experimentation" of

19   the attendant issues by multiple lower courts and deprive the upper courts of the "benefit of the

20   experience of those lower courts."  *See California v. Carney*, 471 U.S. at 400 n.11.  This concern,

21   defendants believe, is heightened when a request to intervene is presented, as here, by a

22   community located entirely in a different judicial district.

23          Furthermore, the unique aspects of each jurisdiction's public safety practices likewise

24   make intervention here (and thus the consolidation of multiple parties in one court) inappropriate.

25   Each jurisdiction has its own rules and practices regarding cooperation with federal immigration

26   authorities, practices that could impact a court's analysis of the respective challenges to the

27   federal grant conditions.  Additionally, each jurisdiction may seek Byrne JAG funds for different

28   purposes, which may affect a court's analysis of the various jurisdictions' challenges, such as

Opposition Intervention Los Angeles
No. 3:17-cv-04642-WHO
                                                4

1  challenges regarding the relatedness of grant conditions to the purposes of the grant program.  *See*

2  *S. Dakota v. Dole*, 483 U.S. 203, 207-08, 211 (1987).  And each jurisdiction theoretically could

3  be denied a federal grant on grounds unrelated to the provisions at issue in this case.  Here, for

4  example, each plaintiff has articulated the nature of its local programs and practices, its method

5  for addressing immigration matters, its various financial obligations, and its utilization of grant

6  awards.  To the extent this case involves more than a mere question of law, the factual circum-

7  stances would quickly become unwieldy as more jurisdictions are added to the case, particularly

8  jurisdictions located in other federal judicial districts.

9                                    **CONCLUSION**

10        Accordingly, defendants believe the Court should exercise its discretion to deny Los

11  Angeles's motion for permissive intervention.

12  Dated:  August 28, 2017

13                                             Respectfully submitted,

14                                             CHAD A. READLER
                                             Acting Assistant Attorney General

15
16                                             BRIAN STRETCH
                                             United States Attorney

17                                             JOHN R. TYLER
18                                             Assistant Director

19                                             /s/ W. Scott Simpson

20                                             _____
                                             W. SCOTT SIMPSON (Va. Bar #27487)
21                                             Senior Trial Counsel

22                                             Attorneys, Department of Justice
                                             Civil Division, Room 7210
23                                             Federal Programs Branch
                                             Post Office Box 883
24                                             Washington, D.C. 20044
                                             Telephone:  (202) 514-3495
25                                             Facsimile:  (202) 616-8470
                                             E-mail:      scott.simpson@usdoj.gov
26
27                                             COUNSEL FOR DEFENDANTS

28

Opposition Intervention Los Angeles
No. 3:17-cv-04642-WHO

1

2

3

4

JEFFERSON B. SESSIONS, Attorney
General of the United States, and ALAN R.
HANSON, Acting Assistant Attorney General,
Office of Justice Programs

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Opposition Intervention Los Angeles
No. 3:17-cv-04642-WHO