CHAD A. READLER
Acting Assistant Attorney General
JOHN R. TYLER
Assistant Director
W. SCOTT SIMPSON (Va. Bar #27487)
Senior Trial Counsel
Department of Justice, Room 7210
Civil Division, Federal Programs Branch
Post Office Box 883
Washington, D.C.  20044
Telephone:      (202) 514-3495
Facsimile:      (202) 616-8470
E-mail:         scott.simpson@usdoj.gov

COUNSEL FOR DEFENDANTS
JEFFERSON B. SESSIONS III, Attorney
General of the United States; ALAN R.
HANSON, Acting Assistant Attorney General;
and U.S. DEPARTMENT OF JUSTICE

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| CITY AND COUNTY OF SAN FRANCISCO, | No. 3:17-cv-04642-WHO |
| Plaintiff, | **DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES** |
| v. | |
| JEFFERSON B. SESSIONS III, Attorney General of the United States, *et al.*, | Date:        December 6, 2017 |
| Defendants. | Time:        2:00 p.m. |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT ................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................ 1

INTRODUCTION .......................................................................................................... 1

ISSUES PRESENTED .................................................................................................... 3

STATUTORY AND ADMINISTRATIVE BACKGROUND ...................................................... 3

    I.       The Immigration and Nationality Act ................................................... 3

    II.     The Office of Justice Programs and the Byrne JAG Program ................. 5

    III.    The Byrne JAG Grant-Making Process ................................................ 6

    IV.    Conditions on Byrne JAG Awards ...................................................... 7

    V.     Additional Conditions for FY 2017 Byrne JAG Awards .......................... 8

    VI.    Recent Developments ....................................................................... 9

ARGUMENT ............................................................................................................... 10

    I.       Judgment Should Be Entered for the Defendants on
           Plaintiff's Separation of Powers Claim .............................................. 10

    II.     Judgment Should Be Entered for the Defendants on
           Plaintiff's Spending Clause Claim ..................................................... 13

CONCLUSION ............................................................................................................ 18

# TABLE OF AUTHORITIES

CONSTITUTION

U.S. Const. art. I, § 8, cl. 1 ........................................................................................... 10, 14

CASES

*Arizona Dream Act Coal. v. Brewer*, 855 F.3d 957 (9th Cir. Feb. 2, 2017) .................................... 4

*Arizona v. United States*, 567 U.S. 387 (2012) ................................................................... 3

*Barbour v. Washington Metro. Area Transit Auth.*, 374 F.3d 1161 (D.C. Cir. 2004) ................... 16

*Boise Cascade Corp. v. EPA*, 942 F.2d 1427 (9th Cir. 1991) ......................................................... 12

*City of Chicago v. Sessions*, ___ F. Supp. 3d ___, 2017 WL 4081821
  (N.D. Ill. Sept. 15, 2017) ........................................................................................... 9, 10

*Cty. of Santa Clara v. Trump*, 250 F. Supp. 3d 497 (N.D. Cal. 2017) ............................... 10, 11, 13

*Disabled in Action of Pa. v. Se. Pa. Transp. Auth.*, 539 F.3d 199 (3d Cir. 2008) ........................ 12

*DKT Mem'l Fund Ltd. v. AID*, 887 F.2d 275 (D.C. Cir. 1989) ................................................... 2, 11

*Mann v. Lee*, No. C 07-00781 MMC (PR), 2009 WL 5178095 (N.D. Cal. Dec. 22, 2009) .......... 10

*Mayweathers v. Newland*, 314 F.3d 1062 (9th Cir. 2002) ................................................... 3, 15, 17

*New York v. United States*, 505 U.S. 144 (1992) ....................................................................... 16

*Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1 (1981) ............................................... 14

*S. Dakota v. Dole*, 483 U.S. 203 (1987) ................................................................................ passim

*Stone v. INS*, 514 U.S. 386 (1995) ............................................................................................. 12

*United States v. Wenner*, 351 F.3d 969 (9th Cir. 2003) ............................................................. 12

STATUTES

8 U.S.C. §§ 1101 *et seq.* ............................................................................................................... 3

8 U.S.C. § 1226(c) ....................................................................................................................... 16

8 U.S.C. § 1227(a) ......................................................................................................................... 4

8 U.S.C. § 1227(a)(2) ............................................................................................................ 16

8 U.S.C. § 1228 ...................................................................................................................... 4

8 U.S.C. § 1231(i) ................................................................................................................. 5

8 U.S.C. § 1252c ............................................................................................................ 5, 16

8 U.S.C. § 1324(c) ......................................................................................................... 4, 16

8 U.S.C. § 1357(a)(1) ........................................................................................................... 4

8 U.S.C. § 1357(g) ......................................................................................................... 4, 16

8 U.S.C. § 1373(a) ................................................................................................................. 4

8 U.S.C. § 1373(b) ................................................................................................................ 4

34 U.S.C. §§ 10101 *et seq.* ................................................................................................. 5

34 U.S.C. § 10102(a)(1) .................................................................................................. 5, 16

34 U.S.C. § 10102(a)(2) ............................................................................................... 3, 5, 16

34 U.S.C. § 10102(a)(6) ............................................................................................... passim

34 U.S.C. § 10108 ................................................................................................................. 5

34 U.S.C. §§ 10151-10158 .................................................................................................. 5

34 U.S.C. § 10152(a)(1) .............................................................................................. 5, 6, 16

34 U.S.C. § 10153(a) ............................................................................................................. 6

34 U.S.C. § 10153(a)(4) ....................................................................................................... 6

34 U.S.C. § 10153(a)(5)(C) .................................................................................................. 6

34 U.S.C. § 10153(a)(5)(D) .............................................................................................. 6, 7

34 U.S.C. § 10154 ................................................................................................................. 6

34 U.S.C. § 10156 ................................................................................................................. 6

34 U.S.C. §§ 10221-10238 .................................................................................................. 5

34 U.S.C. § 10251(a)(1) ....................................................................................................... 5

34 U.S.C. § 10263 ................................................................................................................. 5

34 U.S.C. § 10444(7) .......................................................................................... 11

42 U.S.C. § 3753 .................................................................................................. 17

Pub. L. No. 90-351, 82 Stat. 197 (1968) ............................................................. 5

Joint Resolution Making Continuing Appropriations for FY 1985,
    Pub. L. No. 98-473, 98 Stat. 1837 (1984) ...................................................... 11

Violence Against Women and Department of Justice Reauthorization Act of 2005,
    Pub. L. No. 109-162 (2006) ...................................................................... 11, 17

Consolidated Appropriations Act, 2017, Pub. L. No. 115-31,
    Div. B, Title II, 131 Stat. 135 (2017) ............................................................. 6

## REGULATIONS

2 C.F.R. § 200.203 .............................................................................................. 8

2 C.F.R. § 200.203(c)(2) ...................................................................................... 6

2 C.F.R. § 2800.101 ............................................................................................. 6

## RULES

Fed. R. Civ. P. 56(a) ........................................................................................... 10

Fed. R. Civ. P. 56(b) ........................................................................................... 10

## OTHER AUTHORITY

H.R. Rep. No. 109-233 (2005) ............................................................................ 11

1          **NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT**

2          PLEASE TAKE NOTICE that on Wednesday, December 6, 2017, at 2:00 p.m., or as soon

3  thereafter as counsel may be heard, before The Honorable William H. Orrick, in Courtroom 2,

4  17th Floor, of the United States Courthouse, 450 Golden Gate Avenue, San Francisco, California,

5  the defendants will move, and hereby do move, for summary judgment in this action under Rule

6  56 of the Federal Rules of Civil Procedure.  This motion is based on the following Memorandum

7  of Points and Authorities, the evidence and records on file in this action, and any other written or

8  oral evidence or argument that may be presented at or before the time this motion is heard by the

9  Court.[1]

10         **MEMORANDUM OF POINTS AND AUTHORITIES**

11                         **INTRODUCTION**

12         The Department of Justice ("DOJ" or "Department") distributes federal grant funds to aid

13  law enforcement in jurisdictions throughout the country.  These funds serve to advance both local

14  and cooperative law enforcement priorities.  Consistent with federal prerogatives, the Department

15  has long imposed conditions on these grants, including in the Edward Byrne Memorial Justice

16  Assistance Grant Program ("Byrne JAG Program") involved here.  If plaintiff's theories in this

17  action were correct, however, long-standing and never-before-challenged conditions would be in

18  jeopardy.

19         One cooperative priority for DOJ is the enforcement of a lawful system of immigration,

20  especially the removal of non-citizens who have committed crimes in the United States.

21  Accordingly, the Department notified applicants that Fiscal Year ("FY") 2017 Byrne JAG grants

22  would include conditions that require modest cooperation with federal law enforcement

23  prerogatives in the immigration setting.  Those conditions will require grant recipients, among

24  other things, (1) to ensure that certain federal officials are permitted access to the grantee's

25

26         [1] Plaintiff names "DOES 1-100" as defendants in this matter but does not identify those
individuals or specify the capacity in which they are being sued (Dkt. No. 1 ¶ 18).  Undersigned
27  counsel does not purport to represent those individuals, and claims against them are not at issue in
this motion for summary judgment.  Moreover, because those individuals have not been named or
28  served, granting this motion would resolve this litigation in its entirety.

Motion for Summ. Judgment; Memo.
No. 3:17-cv-04642-WHO

correctional facilities for certain immigration enforcement purposes ("access condition"), and (2) to ensure that certain federal officials are provided advance notice of the scheduled release of certain individuals held in state or local correctional facilities ("notice condition").  *See* Declaration of Alan R. Hanson ("Hanson Decl.") ¶ 5 & Ex. B at 18-19 (Attachment 1 hereto).

Plaintiff, the City and County of San Francisco, has adopted policies that frustrate the federal government's ability to locate criminal aliens and remove them from the country.  In addition to avoiding cooperative efforts through its own, local policies, San Francisco now seeks to do the same with respect to federal prerogatives, asking the Court to enjoin the Department of Justice from imposing immigration-related law enforcement conditions on the receipt of *federal funds*.  Plaintiff's position would, in essence, allow San Francisco, rather than the Department, to determine the conditions associated with federal grants that Congress has authorized DOJ to award.  The City's position contravenes clear statutory language authorizing DOJ to condition Byrne JAG funding, and ignores the close relationship among the federally-imposed conditions, federal law enforcement prerogatives, and the purposes of the Byrne JAG Program.  For these reasons and others, the Court should enter summary judgment in defendants' favor and dismiss plaintiff's claims.

San Francisco challenges the access and notice conditions under the constitutional Separation of Powers and the Spending Clause.  Both claims are without merit.  Congress has expressly authorized the Assistant Attorney General ("AAG") for DOJ's Office of Justice Programs ("OJP") to impose the challenged conditions.  In the very same enactment that created the Byrne JAG Program in 2006, Congress delegated to the AAG the authority to "plac[e] special conditions on all grants," and to "determin[e] priority purposes for formula grants."  34 U.S.C. § 10102(a)(6).  The Department thus has ample authority to impose the challenged conditions, and their imposition does not violate the constitutional separation of powers.  *See DKT Mem'l Fund Ltd. v. AID*, 887 F.2d 275, 280-81 (D.C. Cir. 1989) (upholding statutory delegation to the Executive to impose terms and conditions on federal spending programs).

In relation to plaintiff's Spending Clause challenge, the challenged conditions bear much more than "some relationship" to the purposes of the Byrne JAG Program, and thus meet the

1  relatedness element of the Spending Clause.  *See Mayweathers v. Newland*, 314 F.3d 1062, 1067

2  (9th Cir. 2002).  OJP and the grant programs it administers are designed to strengthen law

3  enforcement and to "maintain liaison" among the various branches of government "in matters

4  relating to criminal justice."  34 U.S.C. § 10102(a)(2).  The challenged conditions emanate from

5  "the Department of Justice's top priority of reducing violent crime" and the "long-established

6  cooperative principles among law enforcement agencies." *See, e.g.*, DOJ Press Release No. 17-

7  826, *Attorney General Sessions Announces Immigration Compliance Requirements for Edward*

8  *Byrne Memorial Justice Assistance Grant Programs* (July 25, 2017).[2]  The conditions are also

9  very clear and unambiguous, and they raise no issue under the Fourth Amendment or any other

10  "independent constitutional bar."  *See S. Dakota v. Dole*, 483 U.S. 203, 210 (1987).

11       Accordingly, the Court should enter summary judgment for the defendants and dismiss

12  plaintiff's Complaint with prejudice.

### ISSUES PRESENTED

14       1.  Whether the constitutional Separation of Powers is violated by the access condition

15  described below.

16       2. Whether the constitutional Separation of Powers is violated by the notice condition

17  described below.

18       3.  Whether the Spending Clause is violated by the access condition described below.

19       4.  Whether the Spending Clause is violated by the notice condition described below

### STATUTORY AND ADMINISTRATIVE BACKGROUND

21  **I.     The Immigration and Nationality Act**

22       "The Government of the United States has broad, undoubted power over the subject of

23  immigration and the status of aliens."  *Arizona v. United States*, 567 U.S. 387, 394 (2012).

24  Through the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 *et seq.*, Congress granted

25  the Executive Branch significant authority to control the entry, movement, and other conduct of

26  foreign nationals in the United States.  The INA authorizes the Department of Homeland Security

27  _____

28       [2] The cited press release is available at https://www.justice.gov/ opa/ pr/ attorney-general-
sessions-announces-immigration-compliance-requirements-edward-byrne-memorial.

("DHS"), the Department of Justice, and other Executive Branch agencies to administer and

enforce the immigration laws.  Likewise, the INA accords the Executive Branch considerable

discretion to direct enforcement pursuant to federal policy objectives.  *See Arizona Dream Act*

*Coal. v. Brewer*, 855 F.3d 957, 967 (9th Cir. Feb. 2, 2017) ("By necessity, the federal statutory

and regulatory scheme, as well as federal case law, vest the Executive with very broad discretion

to determine enforcement priorities.").

      The INA includes several provisions that protect the ability of federal officials to

investigate the status of non-citizens in the United States and otherwise enforce the immigration

laws.  For example, the statute provides that a federal immigration officer "shall have power

without warrant . . . to interrogate any alien or person believed to be an alien as to his right to be

or to remain in the United States."  8 U.S.C. § 1357(a)(1).  Separately, pursuant to 8 U.S.C.

§ 1373, "a Federal, State, or local government entity or official may not prohibit, or in any way

restrict, any government entity or official from sending to, or receiving from, [federal immigra-

tion authorities] information regarding the citizenship or immigration status, lawful or unlawful,

of any individual."  *Id*. § 1373(a).[3]  The INA provides that certain classes of non-citizens,

including certain criminal aliens, shall be removed from the United States upon the order of the

Attorney General or the Secretary of Homeland Security.  *See*, *e.g*., *id*. §§ 1227(a), 1228.

The INA also establishes immigration enforcement as a cooperative endeavor among federal,

state, and local law enforcement agencies.  *See, e.g*., *id*. § 1357(g) (providing that DHS may enter

into formal cooperative agreements with States and localities under which appropriately trained

and qualified state and local officers may perform specified functions of a federal immigration

officer in relation to the investigation, apprehension, or detention of aliens); *id*. § 1324(c)

(authorizing state and local law enforcement officers to make arrests for violations of the INA's

---

[3]  Additionally, 8 U.S.C. § 1373(b) provides that "[n]otwithstanding any other provision of Federal, State, or local law, no person or agency may prohibit, or in any way restrict, a Federal, State, or local government entity from doing any of the following with respect to information regarding the immigration status, lawful or unlawful, of any individual: (1) Sending such information to, or requesting or receiving such information from, [federal immigration authorites]. (2) Maintaining such information. (3) Exchanging such information with any other Federal, State, or local government entity."

1  prohibition against smuggling, transporting, or harboring aliens); *id*. § 1252c (authorizing state

2  and local officers to arrest certain felons who have unlawfully returned to the United States); *id*.

3  § 1231(i) (establishing State Criminal Alien Assistance Program, under which federal govern-

4  ment compensates States and localities for their incarceration of certain criminal aliens).

5  **II.      The Office of Justice Programs and the Byrne JAG Program**

6          Title I of the Omnibus Crime Control and Safe Streets Act of 1968, as amended,

7  established the Office of Justice Programs within the Department of Justice, and provides for OJP

8  to be headed by an Assistant Attorney General.  *See* Pub. L. No. 90-351, 82 Stat. 197 (1968),

9  *codified as amended at* 34 U.S.C. § 10101 *et seq.*  Congress gave the AAG certain "[s]pecific,

10  general and delegated powers," including the power to "publish and disseminate information on

11  the conditions and progress of the criminal justice systems" and to "maintain liaison with the

12  executive and judicial branches of the Federal and State governments in matters relating to

13  criminal justice."  34 U.S.C. § 10102(a)(1), (2).  Most notably for this case, the statute also

14  authorizes the AAG to "exercise such other powers and functions as may be vested in [him]

15  pursuant to this chapter or by delegation of the Attorney General, *including placing special*

16  *conditions on all grants, and determining priority purposes for formula grants.*"  *Id.*

17  § 10102(a)(6) (emphasis added).

18          The same title of the Omnibus Crime Control and Safe Streets Act also established the

19  Byrne JAG Program.  *See generally* 34 U.S.C. §§ 10151-58.  Under this program, OJP is

20  authorized to "make grants to States and units of local government . . . to provide additional

21  personnel, equipment, supplies, contractual support, training, technical assistance, and informa-

22  tion systems for criminal justice, including for any one or more of [certain enumerated] programs.

23  *Id.* § 10152(a)(1).  In the same chapter, "criminal justice" is defined broadly to include various

24  activities of the police, the courts, and "related agencies."  *Id.* § 10251(a)(1).  Various other

25  provisions of the Omnibus Crime Control Act also apply to OJP and the Byrne JAG Program.

26  *See*, *e.g.*, *id*. § 10108 (period of availability of grant funds); §§ 10221-10238 (administrative

27  provisions); § 10263 (audit requirements and other provisions).

28

1   To request funds under the Byrne JAG Program, applicants must "submit an application to

2   the Attorney General . . . in such form as the Attorney General may require." *Id.* § 10153(a).

3   Congress provided that these applications must include, among other things, an "assurance that,

4   for each fiscal year covered by an application, the applicant shall maintain and report such data,

5   records, and information (programmatic and financial) as the Attorney General may reasonably

6   require"; "[a] certification, made in a form acceptable to the Attorney General . . . that . . . there

7   has been appropriate coordination with affected agencies;" and "[a] certification, made in a form

8   acceptable to the Attorney General . . . that . . . the applicant will comply with all provisions of

9   this part and all other applicable Federal laws."  *Id.* § 10153(a)(4), (a)(5)(C), (a)(5)(D).  Before

10   issuing a final disapproval of any application under the Byrne JAG Program, the Attorney

11   General must "afford[] the applicant reasonable notice of any deficiencies in the application and

12   opportunity for correction and reconsideration."  *Id.* § 10154.

13   The Byrne JAG Program provides "formula grants" – that is, grants that, when awarded,

14   must follow a statutory formula based on population, the rate of violent crime, and other factors.

15   *Id*. §§ 10152(a)(1), 10156.  Funding under the Program is subject to annual appropriations.  For

16   FY 2017, Congress appropriated $396,000,000 for the Byrne JAG Program, with certain carve-

17   outs from that amount obligated to specific initiatives.  *See* Consolidated Appropriations Act,

18   2017, Pub. L. No. 115-31, Div. B, Title II, 131 Stat. 135, 203 (2017).

19   **III.    The Byrne JAG Grant-Making Process**

20   The federal grant-making process, including the issuance of Byrne JAG grants, contains

21   several steps.  The awarding agency typically issues a solicitation that contains "sufficient infor-

22   mation to help an applicant make an informed decision about whether to submit an application."

23   *See generally* Office of Management and Budget, Uniform Administrative Requirements, Cost

24   Principles, and Audit Requirements for Federal Awards ("OMB Uniform Guidance"), 2 C.F.R.

25   § 200.203(c)(2);[4] *see also* OJP Grant Process Overview, *available at* https://ojp.gov/ funding/

26   Apply/ GrantProcess.htm.  Applicants respond to the solicitation by submitting an application in

27   _____

28   [4]  The Department of Justice has adopted the OMB Uniform Guidance by regulation, with
limited exceptions.  *See* 2 C.F.R. § 2800.101.

the form specified and with the relevant information requested.  *See generally* OJP Grant Process Overview.  The deadline for local units of government to submit Byrne JAG applications for Fiscal Year 2017 was September 5, 2017.[5]  *See* Hanson Decl. ¶ 4.

For grants administered by OJP and its subcomponents, the Office engages in a multi-factored review of each application and, for those applications that are approved, OJP generates an award package that is transmitted to the applicant.  *See generally* OJP Grant Process Overview.  Applicants typically have forty-five calendar days to accept the award documents, during which time the applicant has an opportunity to "[r]eview the special conditions on the award document."  *Id.*  Throughout the course of the grant period, OJP monitors compliance with the terms and conditions of the award and, ultimately, the grantee and OJP engage in certain activities to complete relevant closeout requirements for each award, such as preparation of final reports.  *Id.*

**IV.   Conditions on Byrne JAG Awards**

OJP has historically included a variety of conditions in Byrne JAG award documents, including, for example, conditions requiring the grantee to comply with regulations pertaining to civil rights and nondiscrimination, conditions requiring that body armor purchased with grant funding meet certain minimum quality standards, and conditions designed to encourage grantees to adopt policies banning employees from text messaging while driving on duty.  These conditions have varied over time, depending on national law enforcement necessities and Department priorities.  For FY 2016, San Francisco's Byrne JAG award included fifty-one conditions, all of which the plaintiff accepted without objection or legal challenge.  *See* Hanson Decl. ¶ 3 & Ex. A.

Additionally, the FY 2016 solicitation for the Byrne JAG Program included an explicit recognition that 8 U.S.C. § 1373 was one of the "applicable Federal laws" with which grantees are expected to comply.  *See* Edward Byrne Memorial Justice Assistance Grant (JAG) Program, Fiscal Year (FY) 2016 Local Solicitation at 12, *available at* https://www.bja.gov/ funding/ JAGLocal16.pdf; *see also* 34 U.S.C. § 10153(a)(5)(D).  That recognition was prompted by a

---

[5]  Some exceptions to that deadline were made relating to jurisdictions affected by Hurricane Harvey.

1    memorandum issued by the Department of Justice's Inspector General on May 31, 2016,

2    expressing concern that several state and local governments receiving federal grants may not be

3    complying with Section 1373.  *See* Mem. from Michael E. Horowitz, Inspector Gen., to Karol V.

4    Mason, Assistant Att'y Gen., Office of Justice Programs, *Department of Justice Referral of*

5    *Allegations of Potential Violations of 8 U.S.C. § 1373 by Grant Recipients* (May 31, 2016)

6    (Attachment 2 hereto).  Although the Inspector General observed that applications of certain local

7    ordinances might be inconsistent with Section 1373, *id.* at 4-8, the report made clear that "no one

8    at DHS . . . has made a formal legal determination whether certain state and local laws or policies

9    violate Section 1373, and we are unaware of any Department of Justice decision in that regard."

10   *Id.* at 8 n.12.

11   **V.    Additional Conditions for FY 2017 Byrne JAG Awards**

12   In August 2017, OJP published a solicitation seeking applications from local governments

13   for participation in the FY 2017 Byrne JAG Program.  *See* Hanson Decl. ¶ 4.  Among other

14   things, that solicitation notified potential applicants that the grant award documents for FY 2017

15   would contain two new special conditions, in addition to the requirement to certify compliance

16   with 8 U.S.C. § 1373 (Dkt. No. 1, Ex. B at 30).  Specifically, one condition would be designed to

17   ensure that Byrne JAG grantees would "permit personnel of [DHS] to access any correctional or

18   detention facility in order to meet with an alien . . . and inquire as to his or her right to be or

19   remain in the United States," and another condition would be designed to ensure that grantees

20   would "provide at least 48 hours' advance notice to DHS regarding the scheduled release date and

21   time of an alien in the jurisdiction's custody when DHS requests such notice in order to take

22   custody of the alien pursuant to the [INA]" (*id.*).  The notification contained in the FY 2017

23   solicitation was not itself a grant condition, akin to those contained in the grant award documents;

24   rather, it was merely a notification designed to "help an applicant make an informed decision

25   about whether to submit an application."  2 C.F.R. § 200.203.

26   The actual new conditions that OJP intends to attach to FY 2017 Byrne JAG awards

27   appear in the FY 2017 award documents that OJP has already issued to two jurisdictions – the

28

County of Greenville, South Carolina, and the City of Binghamton, New York.  *See* Hanson Decl.

¶ 5 & Ex. B.  Specifically, Conditions 55 and 56 provide:

> With respect to the "program or activity" that is funded (in whole or in part) by this award, as of the date the recipient accepts this award, and throughout the remainder of the period of performance for the award--
>
> A. A local ordinance, -rule, -regulation, -policy, or -practice (or an applicable State statute, -rule, -regulation, -policy, or -practice) must be in place that is designed to ensure that agents of the United States acting under color of federal law in fact are given access a local-government (or local-government-contracted) correctional facility for the purpose of permitting such agents to meet with individuals who are (or are believed by such agents to be) aliens and to inquire as to such individuals' right to be or remain in the United States.
>
> B. A local ordinance, -rule, -regulation, -policy, or -practice (or an applicable State statute, -rule, -regulation, -policy, or -practice) must be in place that is designed to ensure that, when a local-government (or local-government-contracted) correctional facility receives from DHS a formal written request authorized by the Immigration and Nationality Act that seeks advance notice of the scheduled release date and time for a particular alien in such facility, then such facility will honor such request and -- as early as practicable . . . provide the requested notice to DHS.

*Id.*, Ex. B at 19.  Under "Rules of Construction" within those grant conditions, the award documents make clear that nothing in these conditions requires a grantee to detain "any individual in custody beyond the date and time the individual would have been released in the absence of this condition."  *Id.* at 18, 19.  The documents also make clear that these conditions impose no requirements in relation to any requests by federal immigration authorities to detain non-citizens, and that the notice condition requires "only as much advance notice as practicable" before the release of a non-citizen.  *Id.*  Finally, the conditions apply only to the "program or activity" to be funded under the award (as stated above), and they allow awarded funds to be used for costs incurred in implementing the conditions.  *See id.*

**VI.    Recent Developments**

In a challenge brought by the City of Chicago, a federal district court issued a nationwide preliminary injunction on September 15, 2017, against imposition of the access and notice conditions.  *See City of Chicago v. Sessions*, ___ F. Supp. 3d ___, 2017 WL 4081821, at *14

1  (N.D. Ill. Sept. 15, 2017).[6]  Defendants have appealed that decision, but the appeal has been

2  stayed pending other proceedings in district court.

3       San Francisco submitted its application for a Fiscal Year 2017 Byrne JAG award on

4  September 5, 2017.  *See* Hanson Decl. ¶ 4.  OJP has not made a decision on that application, and

5  at this time is not issuing FY 2017 Byrne JAG award documents to any applicants while awaiting

6  developments in the *Chicago* litigation.  *Id.* ¶¶ 7-8.

7  **ARGUMENT**

8       A party may file a motion for summary judgment "at any time" until after the close of

9  discovery.  *See* Fed. R. Civ. P. 56(b).  "The court shall grant summary judgment if the movant

10  shows that there is no genuine dispute as to any material fact and the movant is entitled to

11  judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A party may file a motion for summary

12  judgment without having filed an answer, and the filing of such a motion tolls the time to answer.

13  *See Mann v. Lee*, No. C 07-00781 MMC (PR), 2009 WL 5178095, at *2 (N.D. Cal. Dec. 22,

14  2009).

15       In light of the governing statutes and the language of the challenged grant conditions,

16  "there is no genuine dispute as to any material fact and the [defendants in this action are] entitled

17  to judgment as a matter of law."

18  **I.  Judgment Should Be Entered for the Defendants on Plaintiff's**

19        **Separation of Powers Claim**

20       Plaintiff alleges that the access and notice conditions violate the constitutional Separation

21  of Powers by "unilaterally imposing [those] Requirements, without authorization from Congress"

22  (Dkt. No. 1 ¶ 96).  Article I of the Constitution confers on Congress the authority to "lay and

23  collect Taxes, Duties, Imposts and Excises, to pay the Debts and provide for the common

24  Defence and general Welfare of the United States."  U.S. Const. art. I, § 8, cl. 1.  As this Court

25  has said in another case, Congress may, "[i]ncident to" its spending power, "attach conditions on

26  the receipt of federal funds," *Cty. of Santa Clara v. Trump*, 250 F. Supp. 3d 497, 530 (N.D. Cal.

---

27        [6] Although Chicago had also challenged the Section 1373 compliance condition, the

28  *Chicago* court granted no relief on that claim "because the City has failed to establish a likelihood of success on the merits" as to that condition.  2017 WL 4081821, at *14.

2017) (quoting *Dole*, 483 U.S. at 206), and "Congress can delegate some discretion to the President to decide how to spend appropriated funds" so long as "any delegation and discretion is cabined by [relevant] constitutional boundaries." 250 F. Supp. 3d at 531; *see DKT Mem'l Fund Ltd. v. AID*, 887 F.2d 275, 280-81 (D.C. Cir. 1989) (upholding conditions on spending imposed by President where statute authorized President to set certain "terms and conditions as he may determine"). As discussed below, both the access condition and the notice condition in the Byrne JAG Program are consistent with these principles.

As noted earlier, the AAG for the Office of Justice Programs, who administers the Byrne JAG Program, is empowered to "plac[e] special conditions on all grants, and [to] determin[e] priority purposes for formula grants." 34 U.S.C. § 10102(a)(6). Congress added this language to the AAG's statutory responsibilities in 2006, as part of the same legislation that created the Byrne JAG Program. *See* Violence Against Women and Department of Justice Reauthorization Act of 2005, Pub. L. No. 109-162, 119 Stat. 2960 (2006), § 1152(b) (adding language to subsection (a)(6)); *id*. § 1111 (creating Byrne JAG Program). Before that 2006 amendment, Section 10102 stated only that the AAG "exercise[s] such other powers and functions as may be vested in the Assistant Attorney General pursuant to this title or by delegation of the Attorney General." *See* Joint Resolution Making Continuing Appropriations for FY 1985, Pub. L. No. 98-473, § 603, 98 Stat. 1837 (1984). Further, by contrast, the organic statute for the head of a different grant-making component of the Department of Justice, which statute was enacted in 2002, continues to use the more limited language that Section 10102 formerly contained, without the additional authority to place "special conditions" and to determine "priority purposes" that Congress chose to bestow on OJP. *See* 34 U.S.C. § 10444(7) (providing that Director of Violence Against Women Office "[e]xercis[es] such other powers and functions as may be vested in the Director pursuant to this subchapter or by delegation of the Attorney General"). Thus, as stated in the House committee report on the bill that became the 2006 amendment, 34 U.S.C. § 10102(a)(6) "allows the Assistant Attorney General to place special conditions on all grants and to determine priority purposes for formula grants." H.R. Rep. No. 109-233, at 101 (2005).

1    Section 10102(a)(6) necessarily confers authority not conferred elsewhere.  As the

2   Supreme Court has said, "[w]hen Congress acts to amend a statute, [courts] presume it intends its

3   amendment to have real and substantial effect." *Stone v. INS*, 514 U.S. 386, 397 (1995).  Any

4   contrary interpretation would violate the "fundamental canon of statutory construction that a

5   statute should not be construed so as to render any of its provisions mere surplusage." *United*

6   *States v. Wenner*, 351 F.3d 969, 975 (9th Cir. 2003).  The AAG's statutory authorities must be

7   interpreted "as a whole" and not in a manner that renders certain provisions "inconsistent,

8   meaningless or superfluous." *Boise Cascade Corp. v. EPA*, 942 F.2d 1427, 1432 (9th Cir. 1991).

9   Faced with a choice between plaintiff's interpretation, which would render Section 10102(a)(6)

10   superfluous, and defendants' interpretation, which gives it effect, the Court should choose the

11   latter.  *See Disabled in Action of Pa. v. Se. Pa. Transp. Auth.*, 539 F.3d 199, 211 (3d Cir. 2008).

12    Consistent with the AAG's statutory authority, Byrne JAG awards have historically

13   contained various discretionary conditions that are not compelled by any federal statute, but

14   promote the Department of Justice's law enforcement and public safety goals.  These conditions

15   were contained in San Francisco's FY 2016 Byrne JAG award documents.  For example, the

16   Department has imposed a condition that requires complying with certain guidelines and recom-

17   mendations enumerated by DOJ to "promote information sharing and enable interoperability

18   among disparate systems across the justice and public safety community." *See* Hanson Decl., Ex.

19   A at 9 (Condition 26).  Another condition has prohibited the use of award funds to purchase

20   various types of equipment and weapons on a "Prohibited Expenditure List,"[7] which list in turn

21   traces back in significant part not to any statute or regulation but to an Executive Order.  *Id.* at 12

22   (Condition 49).  Multiple conditions have also imposed training mandates:  certain training must

23   be completed for law enforcement task forces, *id.* at 9 (Condition 32); a grantee must agree to

24   participate, upon request, in various training events, technical assistance events, or

25   conferences, *id.* (Condition 33); and quarterly data must be submitted regarding certain kinds of

26   training that law enforcement officers have received, *id.* at 11 (Condition 43).  Grantees have also

27

28    [7]  The Prohibited Expenditure List is available at https://www.bja.gov/ funding/
JAGControlledPurchaselist.pdf.

been encouraged to adopt policies banning employees from text messaging while driving on duty, *id*. at 8 (Condition 22), and to submit "JAG success stories," *id*. at 11 (Condition 44). Also, for FY 2017, the Department is requiring that when award funds are used for DNA testing, any resulting eligible DNA profiles must be uploaded to the Combined DNA Index System ("CODIS") maintained by the Federal Bureau of Investigation. *See* Hanson Decl., Ex. B at 20 (Condition 57). The particular conditions that the plaintiff challenges here are not different in kind from these many other Byrne JAG grant conditions.

This authority is not unlimited, however. An obvious limitation on the Department's discretion is the Constitution. Under the Supreme Court's jurisprudence regarding requirements for use of the spending power to condition federal grants, a grant condition must, for example, be germane and non-coercive. *See Dole*, 483 U.S. at 207. A grant condition must also comport with all "other constitutional provisions" apart from the Spending Clause. *Id*. at 208. Moreover, the Department's conditioning power is self-limiting in practice, because extremism in imposing conditions will cause prospective recipients to reject the grant rather than accept the condition.

In light of the foregoing, the conditions challenged here fit comfortably within the Assistant Attorney General's delegated authority. *See Cty. of Santa Clara*, 250 F. Supp. 3d at 531 (noting that "Congress can delegate some discretion to the President to decide how to spend appropriated funds" so long as "any delegation and discretion is cabined by [relevant] constitutional boundaries"). Pursuant to this authority, the AAG may prioritize formula grants, like the Byrne JAG Program, for jurisdictions that assist federal authorities in achieving federal law enforcement priorities, including removal of criminal aliens under immigration law. Further, the access and notice conditions challenged here are "special conditions" under 34 U.S.C. § 10102(a)(6).

## II. Judgment Should Be Entered for the Defendants on Plaintiff's Spending Clause Claim

Plaintiff alleges that the access and notice conditions violate the Spending Clause by imposing grant conditions that are purportedly ambiguous and "not germane" to the purposes of the Byrne JAG Program, and would require grantees to "engage in unconstitutional activity"

(Dkt. No. 1 ¶ 100).  The Spending Clause provides that Congress may "lay and collect Taxes, Duties, Imposts and Excises, to pay the Debts and provide for the common Defence and general Welfare of the United States."  U.S. Const. art. I, § 8, cl. 1.  As the Supreme Court has held, "Congress may attach conditions on the receipt of federal funds, and has repeatedly employed the power to further broad policy objectives by conditioning receipt of federal moneys upon compliance by the recipient with federal statutory and administrative directives."  *Dole*, 483 U.S. at 206 (internal quotation marks omitted).

The Supreme Court in *South Dakota v. Dole* described certain limitations or potential limitations on the spending power.  Most basically, conditions on the receipt of federal funds must be stated "unambiguously" so that recipients can "exercise their choice knowingly, cognizant of the consequences of their participation."  *Id.* (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 17 (1981) ("The legitimacy of Congress' power to legislate under the spending power thus rests on whether the State voluntarily and knowingly accepts the terms of the 'contract.'  There can, of course, be no knowing acceptance if a State is unaware of the conditions or is unable to ascertain what is expected of it.") (citations omitted) (hereinafter *Pennhurst*).  Additionally, the Court observed in *Dole*, "our cases have suggested (without significant elaboration) that conditions on federal grants might be illegitimate if they are unrelated to the federal interest in particular national projects or programs."  483 U.S. at 207-08 (internal quotation marks omitted).  And finally, the Court said that "other constitutional provisions may provide an independent bar to the conditional grant of federal funds."  *Id.* at 207-08.

The access and notice conditions are consistent with all of these principles.[8]  First, these conditions clearly state what conduct is required, so that Byrne JAG grantees can "exercise their choice knowingly, cognizant of the consequences of their participation."  *Dole*, 483 U.S. at 206.  They require grantees (1) to give "agents of the United States acting under color of federal law" access to correctional facilities "to meet with individuals who are (or are believed by such agents

---

[8] The Court in *Dole* described limitations on congressional power, whereas the plaintiff here alleges that certain Executive actions exceed the spending power.  Obviously, these principles – including the relatedness concept discussed below – apply equally to Executive actions as to congressional actions.

1    to be) aliens and to inquire as to such individuals' right to be or remain in the United States," and

2    (2) to notify DHS, upon "formal written request" and "as early as practicable," before "the

3    scheduled release date and time for a particular alien in such facility." *See* Hanson Decl., Ex. B at

4    19. The award documents specify that nothing in these conditions requires a grantee to detain

5    "any individual in custody beyond the date and time the individual would have been released in

6    the absence of this condition"; that the conditions impose no requirements regarding any requests

7    by federal immigration authorities to detain non-citizens; and that the notice condition requires

8    "only as much advance notice as practicable." *Id*. at 18, 19. Moreover, to the extent any uncer-

9    tainty may remain, the FY 2017 Byrne JAG solicitation invited any prospective grantee with a

10   question about "any . . . requirement of this solicitation" to contact OJP's Response Center

11   (customer service center) by telephone, email, or Internet chat (Dkt. No. 1, Ex. B at 2). A

12   prospective grantee could also contact the appropriate "State Policy Advisor" – that is, a specific,

13   named OJP employee assigned to work with jurisdictions within a specified geographical area.

14   *Id*.; BJA Programs Office Contact Information, *available at* https://www.bja.gov/ About/

15   Contacts/ ProgramsOffice.html.[9]

16        Second, plaintiff alleges that the access and notice conditions are "not germane to the

17   stated purposes of the Byrne JAG funds" (Dkt. No. 1 ¶ 100). As the Court of Appeals has

18   observed, however, this aspect of *Dole* suggests only a "possible ground" for invalidating an

19   enactment, and does not impose an "exacting standard":

20        The Supreme Court has suggested that federal grants conditioned on compliance
             with federal directives *might* be illegitimate if the conditions share no relationship
21           to the federal interest in particular national projects or programs. This possible
             ground for invalidating a Spending Clause statute, which only suggests that the
22           legislation *might* be illegitimate without demonstrating a nexus between the
             conditions and a specified national interest, is a far cry from imposing an exacting
23           standard for relatedness.

24   *Mayweathers v. Newland*, 314 F.3d 1062, 1067 (9th Cir. 2002) (citing *Dole*, 483 U.S. at 207).

25

26

27   _____

28        [9] "BJA" refers to the Bureau of Justice Assistance, the OJP component that administers
     the Byrne JAG Program.

     Motion for Summ. Judgment; Memo.          15
     No. 3:17-cv-04642-WHO

Thus, conditions on federal funding must only "bear some relationship to the purpose of the federal spending."  314 F.3d at 1067 (quoting *New York v. United States*, 505 U.S. 144, 167 (1992)); *see Barbour v. Washington Metro. Area Transit Auth.*, 374 F.3d 1161, 1168 (D.C. Cir. 2004) (noting that Supreme Court has never "overturned Spending Clause legislation on relatedness grounds").

The access and notice conditions easily meet this standard.  The Byrne JAG Program's organic statute specifies that grant funds are designed to provide resources "for criminal justice," to support programs including law enforcement, prosecution, crime prevention, and corrections. 34 U.S.C. § 10152(a)(1).  These goals are also reflected in the responsibilities of the AAG, which include disseminating information on "criminal justice systems" and "maintain[ing] liaison with the executive and judicial branches of the Federal and State governments in matters relating to criminal justice."  *Id.* § 10102(a)(1), (2).  Thus, the overall goal of the Program is to support and strengthen law enforcement and criminal justice and to encourage intergovernmental "liaison."

Similarly, the access and notice conditions are meant to strengthen law enforcement and public safety and to promote cooperation between federal and local authorities.  Numerous federal statutes expressly link immigration enforcement with public safety, criminal justice, and intergovernmental cooperation.  For example, as discussed above, a conviction for any of a wide variety of criminal offenses renders an alien removable from this country.  *See* 8 U.S.C. § 1227(a)(2).  The INA also repeatedly contemplates cooperation among state and local officers and federal officials on immigration enforcement.  *See, e.g.*, *id.* § 1357(g) (providing that DHS may enter into formal cooperative agreements with states and localities under which appropriately trained and qualified state and local officers may perform specified functions of a federal immi-gration officer in relation to the investigation, apprehension, or detention of aliens); *id.* § 1324(c) (authorizing state and local law-enforcement officers to make arrests for violations of the INA's prohibition against smuggling, transporting, or harboring aliens); *id.* § 1252c (authorizing state and local officers to arrest certain felons who have unlawfully returned to the United States).  Congress also contemplates the federal detention of certain aliens upon their release from state or local custody, *see id.* § 1226(c), further illustrating the sort of cooperation among federal, state,

and local law enforcement that the Byrne JAG conditions are designed to foster.  Thus, the access

and notice conditions bear much more than "some relationship" to the purposes of the Byrne JAG

Program.  *See Mayweathers*, 314 F.3d at 1067.[10]

Third, plaintiff alleges that these conditions exceed the spending power by requiring the

City "to engage in unconstitutional activity such as detaining individuals without probable cause

in violation of the Fourth Amendment" (Dkt. No. 1 ¶ 100).  The Court in *Dole* emphasized the

narrowness on this limitation on the federal spending power, noting that "the 'independent

constitutional bar' limitation . . . is not . . . a prohibition on the indirect achievement of objectives

which Congress is not empowered to achieve directly."  483 U.S. at 210.  Rather, the Court said,

this limitation "stands for the unexceptionable proposition that the power may not be used to

induce the States to engage in activities that would themselves be unconstitutional.  Thus, for

example, a grant of federal funds conditioned on invidiously discriminatory state action or the

infliction of cruel and unusual punishment would be an illegitimate exercise of the Congress'

broad spending power."  *Id.* at 210-11.

The access and notice conditions do not "induce" San Francisco to violate any such

constitutional prohibition.  As explained already, the conditions have no effect on the detention of

non-citizens.  The FY 2017 award documents state categorically that nothing in the conditions

"shall be understood to authorize or require any recipient, any subrecipient at any tier, any State

or local government, or any other entity or individual to maintain (or detain) any individual in

custody beyond the date and time the individual would have been released in the absence of this

condition."  *See* Hanson Decl., Ex. B at 18, 19.  The conditions only require, where a jurisdiction

---

[10] Plaintiff argues that Congress's elimination, during a reorganization of the Byrne JAG statute, of a requirement to send information on the criminal conviction of non-citizens to federal immigration authorities suggests an intent to divorce the Program from immigration enforcement (Dkt. No. 1 ¶ 39).  Absent any indication of such intent in the legislative history, however, the more reasonable assumption is that Congress simply found the provision to be unnecessary. Indeed, at the same time Congress eliminated that language, it added the AAG's discretionary authority to "plac[e] special conditions on all grants, and [to] determin[e] priority purposes for formula grants."  34 U.S.C. § 10102(a)(6); *see* Violence Against Women and Department of Justice Reauthorization Act of 2005, Pub. L. No. 109-162, 119 Stat. 2960 (2006), § 1152(b) (adding language to subsection (a)(6)); *id.* § 1111(a)(2)(C) (amending 42 U.S.C. § 3753).

chooses to accept Byrne JAG funds, that the grantee give federal authorities (1) access to correctional facilities to question non-citizens who are in the jurisdiction's custody and (2) "as much advance notice as practicable" before ending such custody.  Thus, the challenged conditions raise no issue under the Fourth Amendment or any other "independent constitutional bar."  *See Dole*, 483 U.S. at 210.

In short, the access and notice conditions in the Byrne JAG Program constitute only a "relatively mild encouragement" to assist in the enforcement of immigration law.  *Dole*, 483 U.S. at 211.

CONCLUSION

For the reasons discussed above, summary judgment should be entered for the defendants on all of plaintiff's claims, which should be dismissed with prejudice.

Dated:  October 31, 2017

Respectfully submitted,

CHAD A. READLER
Acting Assistant Attorney General

JOHN R. TYLER
Assistant Director

/s/ W. Scott Simpson

W. SCOTT SIMPSON (Va. Bar #27487)
Senior Trial Counsel

Attorneys, Department of Justice
Civil Division, Room 7210
Federal Programs Branch
Post Office Box 883
Washington, D.C. 20044
Telephone:   (202) 514-3495
Facsimile:   (202) 616-8470
E-mail:       scott.simpson@usdoj.gov

COUNSEL FOR DEFENDANTS

1

2

3

JEFFERSON B. SESSIONS III, Attorney
General of the United States; ALAN R.
HANSON, Acting Assistant Attorney General;
and U.S. DEPARTMENT OF JUSTICE

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28