1  CHAD A. READLER
   Acting Assistant Attorney General
2  JOHN R. TYLER
   Assistant Director
3  W. SCOTT SIMPSON (Va. Bar #27487)
   Senior Trial Counsel
4  Department of Justice, Room 7210
   Civil Division, Federal Programs Branch
5  20 Massachusetts Avenue, NW
   Washington, D.C. 20530
6  Telephone:     (202) 514-3495
7  Facsimile:     (202) 616-8470
   E-mail:        scott.simpson@usdoj.gov
8
9  COUNSEL FOR DEFENDANTS
   JEFFERSON B. SESSIONS III, Attorney
10 General of the United States; ALAN R.
   HANSON, Principal Deputy Assistant Attorney
11 General; and U.S. DEPARTMENT OF JUSTICE
12
13                     IN THE UNITED STATES DISTRICT COURT
14                    FOR THE NORTHERN DISTRICT OF CALIFORNIA
15                           SAN FRANCISCO DIVISION
16
17 CITY AND COUNTY OF SAN
   FRANCISCO,                              No. 3:17-cv-04642-WHO
18
                    Plaintiff,             **DEFENDANTS' NOTICE OF MOTION
19          v.                             AND MOTION TO DISMISS;
                                           MEMORANDUM OF POINTS AND
20 JEFFERSON B. SESSIONS III, Attorney     AUTHORITIES**
   General of the United States, *et al.*,
21                                         Date:       February 28, 2018
                    Defendants.            Time:       2:00 p.m.
22
23
24
25
26
27
28

   Defs' Motion to Dismiss; Memo.
   No. 3:17-cv-04642-WHO

1

## TABLE OF CONTENTS

2

3   TABLE OF AUTHORITIES.................................................................................................iii

4   NOTICE OF MOTION AND MOTION TO DISMISS .................................................... 1

5   MEMORANDUM OF POINTS AND AUTHORITIES .................................................... 1

6   INTRODUCTION ........................................................................................................... 1

7   STATUTORY AND ADMINISTRATIVE BACKGROUND........................................... 4

8          I.      The Immigration and Nationality Act ................................................... 4

9          II.      USDOJ Office of Justice Programs and the Byrne JAG Program ........................... 5

10         III.     San Francisco's Ordinances ................................................................. 7

11         IV.      Recent Developments ......................................................................... 8

12   ARGUMENT .................................................................................................................. 9

13         I.      San Francisco Is Not Entitled to a Declaratory Judgment
                    Regarding Compliance with Section 1373 ............................................ 11

14                 A.      Plaintiff's Request for a Ruling Regarding Compliance
15                         with Section 1373 Is Non-Justiciable.......................................... 11

16                         1.      Plaintiff's Request for a Ruling Regarding Chapters
                                   12H and 12I Is Constitutionally Unripe ........................... 12

17
                           2.      Plaintiff Lacks Standing to Seek a Ruling Regarding
18                                 Its Actual Conduct.......................................................... 13

19                 B.      Alternatively, the Court Should Deny Plaintiff's Request for a
                           Ruling that Its Ordinances Comply with Section 1373............................ 15

20                         1.      Chapter 12I.................................................................... 15

21                         2.      Chapter 12H ................................................................. 17

22         II.     The Challenged Immigration-Related Byrne JAG Conditions Are Lawful ........... 20

23                 A.      The Conditions Are Authorized by Statute and Do Not
24                         Violate the Separation of Powers.................................................. 20

25                 B.      The Conditions Are Consistent with the Spending Clause ......................... 22

26                         1.      The Challenged Conditions are Unambiguous ............................ 23

27                         2.      The Challenged Conditions Are Related to the Purposes
                                   of the Byrne JAG Program .................................................. 25

28

3.  The Challenged Conditions Do Not Violate any
    "Independent Constitutional Bar" ................................................... 27

CONCLUSION ................................................................................................................. 28

# TABLE OF AUTHORITIES

**CONSTITUTION**

U.S. Const. art. I, § 8, cl. 1 ................................................................................................ 21, 23

U.S. Const. art. III, § 2, cl. 1 ...................................................................................................... 11

**CASES**

*Abbott Labs. v. Gardner*, 387 U.S. 136 (1967) ........................................................................ 12

*Ardalan v. McHugh*, 2014 WL 3846062 n.10 (N.D. Cal. Aug. 4, 2014) ..................................... 13

*Arizona v. United States*, 567 U.S. 387 (2012) ..................................................................... 4, 26

*Barbour v. Wash. Metro. Area Transit Auth.*, 374 F.3d 1161 (D.C. Cir. 2004) ........................... 25

*Benning v. Georgia*, 391 F.3d 1299 (11th Cir. 2004) .................................................................. 24

*Bigelow v. Virginia*, 421 U.S. 809 (1975) ................................................................................. 12

*Bologna v. San Francisco*, 121 Cal. Rptr. 3d 406 (Cal. App. 2011) ......................................... 17

*Charles v. Verhagen*, 348 F.3d 601 (7th Cir. 2003) .................................................................. 24

*City of Chicago v. Sessions*, 264 F. Supp. 3d 933 (N.D. Ill. 2017) ....................................... 9, 17

*City of Chicago v. Sessions*, 2017 WL 5499167 (N.D. Ill. Nov. 16, 2017) ................................ 13

*Conservation Force v. Salazar*, 646 F.3d 1240 (9th Cir. 2011) ................................................... 9

*Coons v. Lew*, 762 F.3d 891 (9th Cir. 2014) ............................................................................. 12

*Copeland v. Ryan*, 852 F.3d 900 (9th Cir. 2017) ..................................................................... 20

*Courthouse News Serv. v. Planet*, 750 F.3d 776 (9th Cir. 2014) ................................................ 9

*Cty. of Santa Clara v. Trump*, 250 F. Supp. 3d 497 (N.D. Cal. 2017) ....................................... 21

*Davis v. Fenton*, 26 F. Supp. 3d 727 (N.D. Ill. 2014) ............................................................... 16

*Dean v. United States*, 556 U.S. 568 (2009) ............................................................................ 16

*DKT Mem'l Fund Ltd. v. AID*, 887 F.2d 275 (D.C. Cir. 1989) ................................................ 3, 21

*Duvall v. Att'y Gen. of U.S.*, 436 F.3d 382 (3d Cir. 2006)..........................................26

*Fonseca v. Fong*, 167 Cal. App. 4th 922 (2008)......................................................18

*Haw. Cty. Green Party v. Clinton*, 14 F. Supp. 2d 1198 (D. Haw. 1998) ...................11

*Lee v. City of Los Angeles*, 250 F.3d 668 (9th Cir. 2001)..........................................9

*Louisiana Mun. Police Emps.' Ret. Sys. v. Wynn*, 829 F.3d 1048 (9th Cir. 2016) .........9

*Mayweathers v. Newland*, 314 F.3d 1062 (9th Cir. 2002) ....................................3, 25

*Morales v. Trans World Airlines, Inc.*, 504 U.S. 374 (1992).....................................16

*Navarro v. Block,* 250 F.3d 729 (9th Cir. 2001) .....................................................9

*New York v. United States*, 505 U.S. 144 (1992) ...................................................25

*Or. Bureau of Labor & Indus. ex rel. Richardson v. U.S. W. Commc'ns, Inc.*,
    288 F.3d 414 (9th Cir. 2002) ........................................................................11

*Padilla v. Kentucky*, 559 U.S. 356 (2010) ...........................................................26

*Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1 (1981) ..............................23

*Pollara v. Radiant Logistics Inc.*, 2012 WL 12887095 (C.D. Cal. Sept. 13, 2012) .........11

*Pollution Denim & Co. v. Pollution Clothing Co.*, 2009 WL 10672270
    (C.D. Cal. Feb. 9, 2009)..........................................................................12, 14

*Preap v. Johnson*, 831 F.3d 1193 (9th Cir. 2016) .................................................19

*Price v. City of Stockton*, 390 F.3d 1105 (9th Cir. 2004)........................................10

*S. Dakota v. Dole*, 483 U.S. 203 (1987)........................................................passim

*Skydive Arizona, Inc. v. Quattrocchi*, 673 F.3d 1105 (9th Cir. 2012)..........................10

*Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83 (1998)................................11, 14

*Steinle v. San Francisco*, 230 F. Supp. 3d 994 (N.D. Cal. 2017) ..............................17

*Stone v. INS*, 514 U.S. 386 (1995) ....................................................................22

*Texas v. United States*, 523 U.S. 296 (1998) ...................................................12, 13

*Wash. Legal Found. v. Legal Found. of Wash.*, 271 F.3d 835 (9th Cir. 2001),
    *aff'd sub nom. Brown v. Legal Found. of Wash.*, 538 U.S. 216 (2003).....................12

*Whitmore v. Arkansas*, 495 U.S. 149 (1990) ........................................................ 12, 14

**STATUTES**

8 U.S.C. § 1101 ................................................................................................................ 4

8 U.S.C. § 1101(a)(15) ................................................................................................... 16

8 U.S.C. § 1226 ........................................................................................................ 16, 19

8 U.S.C. § 1227(a)(1)(C) ............................................................................................... 16

8 U.S.C. § 1227(a)(2) .................................................................................................... 25

8 U.S.C. § 1231(a)(4) .................................................................................................... 18

8 U.S.C. § 1252c ............................................................................................................ 26

8 U.S.C. § 1324(c) ........................................................................................................ 26

8 U.S.C. § 1357(a)(1) ...................................................................................................... 4

8 U.S.C. § 1357(g) ........................................................................................................ 26

8 U.S.C. § 1357(g)(10)(A) ....................................................................................... 16, 19

8 U.S.C. § 1373(a) .................................................................................................... 15, 18

8 U.S.C. § 1373(b) ........................................................................................................... 5

8 U.S.C. § 1373(c) ......................................................................................................... 16

28 U.S.C. § 530C(a)(4) ................................................................................................. 21

34 U.S.C. § 10101 ..................................................................................................... 5, 21

34 U.S.C. § 10102(a)(1) ................................................................................................ 25

34 U.S.C. § 10102(a)(2) ............................................................................................... 3, 5

34 U.S.C. § 10102(a)(6) ...................................................................................... 3, 5, 21, 26

34 U.S.C. § 10110 ......................................................................................................... 21

34 U.S.C. §§ 10151-58 .................................................................................................... 5

34 U.S.C. § 10152(a)(1) .......................................................................................... 25

34 U.S.C. § 10153(a) ................................................................................................ 6

34 U.S.C. § 10154 ............................................................................................ 13, 27

34 U.S.C. § 10156 .................................................................................................... 5

34 U.S.C. § 10202(c)(1) ........................................................................................... 6

34 U.S.C. § 10251(a)(1) ..................................................................................... 5, 25

34 U.S.C. § 10444(7) .............................................................................................. 22

41 U.S.C. § 4712 .................................................................................................... 24

Omnibus Crime Control and Safe Streets Act, Pub. L. No. 90-351,
        82 Stat. 197 (1968) ........................................................................................ 5

Joint Resolution Making Continuing Appropriations for FY 1985,
        Pub. L. No. 98-473, Pub. L. No. 98-473 (1984) ....................................... 22

Violence Against Women and Department of Justice Reauthorization Act of 2005,
        Pub. L. No. 109-162, 119 Stat. 2960 (2006) ............................................ 26

Dep't of Justice Reauthorization Act of 2005, Pub. L. No. 109-162,
        119 Stat. 2960 (2006) ........................................................................... 22, 27

Consolidated Appropriations Act, Pub. L. No. 115-31, 131 Stat. 135 (2017) ................................ 6

CAL. HEALTH & SAFETY § 11369 ............................................................................. 18

S.F., CAL., ADMIN. CODE ch. 12H, § 12H.1 ...................................................... 2, 7, 20

S.F., CAL., ADMIN. CODE ch. 12H, § 12H.2 ........................................................ passim

S.F., CAL., ADMIN. CODE ch. 12H, § 12H.3 ................................................................. 20

S.F., CAL., ADMIN. CODE ch. 12H, § 12H.4 ................................................................... 8

S.F., CAL., ADMIN. CODE ch. 12I, § 12I.2 .................................................................. 15

S.F., CAL., ADMIN. CODE ch. 12I, § 12I.3(e) .................................................. 2, 8, 10, 15

S.F., CAL., ADMIN. CODE ch. 12I, § 12I.5(b) ............................................................... 17

**LEGISLATIVE MATERIALS**

H.R. Rep. No. 109-233 (2005) ................................................................. 21

H.R. Rep. No. 104-469 (1996) ................................................................. 17

**ADMINISTRATIVE AND EXECUTIVE MATERIALS**

28 C.F.R. Part 18 ............................................................................. 13, 23

Exec. Order No. 13,688, 80 Fed. Reg. 3451 (Jan. 16, 2015) .......................... 6

**OTHER AUTHORITIES**

Black's Law Dictionary (5th ed. 1979) ................................................ 25, 26

1   **NOTICE OF MOTION AND MOTION TO DISMISS**

2   PLEASE TAKE NOTICE that on Wednesday, February 28, 2018, at 2:00 p.m., or as soon

3   thereafter as counsel may be heard, before The Honorable William H. Orrick, in Courtroom 2,

4   17th Floor, of the United States Courthouse, 450 Golden Gate Avenue, San Francisco, California,

5   the defendants will move, and hereby do move, to dismiss this action under Rule 12(b)(1) and

6   12(b)(6) of the Federal Rules of Civil Procedure.  This motion is based on the following Memo-

7   randum of Points and Authorities, Defendants' Request for Judicial Notice, the other evidence

8   and records on file in this action, and any other written or oral evidence or argument that may be

9   presented at or before the time this motion is heard by the Court.[1]

10   **MEMORANDUM OF POINTS AND AUTHORITIES**

11   **INTRODUCTION**

12   This case asks the Court to determine whether the U.S. Department of Justice ("USDOJ" or

13   "Department") can require, as a condition of certain federal law enforcement grants, that state and

14   local government grant recipients comply with federal law and cooperate in providing certain

15   information needed for federal law enforcement.   Section 1373 of Title 8, U.S. Code, part of the

16   Immigration of Nationality Act ("INA"), bars state and local governments from prohibiting or

17   restricting the exchange of "information regarding the . . . citizenship or immigration status" of any

18   individual with federal immigration authorities.  Other provisions of the INA contemplate that

19   federal, state, and local authorities will cooperate on immigration enforcement and that federal

20   authorities will take custody of certain aliens upon their release from state or local custody.

21   The Edward Byrne Memorial Justice Assistance Grant Program ("Byrne JAG Program")

22   provides federal funds for state and local law enforcement.  These funds serve to aid both local and

23   cooperative law enforcement priorities.  In furtherance of the INA and the statutes governing the

24   Byrne JAG Program, USDOJ requires Byrne JAG grantees to comply with Section 1373 as a

25

26   ───────────────

[1] Plaintiff names "DOES 1-100" as defendants in this matter but does not identify those

27   individuals or specify the capacity in which they are being sued (Dkt. No. 61 ¶ 28).  Undersigned
counsel does not purport to represent those individuals, and claims against them are not at issue in

28   this motion to dismiss.  Moreover, because those individuals have not been named or served,
granting this motion would resolve this litigation in its entirety.

Defs' Motion to Dismiss; Memo.
No. 3:17-cv-04642-WHO

1  condition of receiving federal funds.  Also, Byrne JAG grants are conditioned on giving federal

2  immigration authorities access to correctional facilities to meet with aliens and on notifying federal

3  authorities "as early as practicable" before the scheduled release of an alien from custody.

4        Plaintiff, the City and County of San Francisco, has adopted laws that frustrate the federal

5  government's ability to locate aliens who have committed crimes and remove them from the

6  country.  Specifically, plaintiff has enacted an ordinance declaring that it is "a City and County of

7  Refuge."  S.F., CAL., ADMIN. CODE ch. 12H, § 12H.1.  The ordinance provides, among other

8  things, that "[n]o department, agency, commission, officer, or employee of the City and County

9  of San Francisco shall use any City funds or resources to assist in the enforcement of Federal

10  immigration law . . . or to gather or disseminate information regarding release status of individ-

11  uals or any other such personal information . . . ."  *Id.* § 12H.2.  A second ordinance specifies that

12  San Francisco "[l]aw enforcement officials shall not . . . provide any individual's personal infor-

13  mation to a federal immigration officer, on the basis of an administrative warrant, prior deporta-

14  tion order, or other civil immigration document based solely on alleged violations of the civil

15  provisions of immigration laws."  S.F., CAL., ADMIN. CODE ch. 12I, § 12I.3(e).[2]  The second

16  ordinance includes no saving clause for compliance with federal law.

17        Alleging that it has applied for a Byrne JAG grant in Fiscal Year 2017, plaintiff seeks a

18  declaratory judgment that Chapters 12H and 12I satisfy the Section 1373 compliance condition.

19  Administratively, however, USDOJ has not denied the plaintiff any grant funds based on its

20  ordinances, such that the request for such a declaration regarding the City's ordinances is unripe.

21  Further, to the extent the plaintiff seeks a declaration that its actual *conduct* (as opposed to its laws)

22  complies with Section 1373, the City lacks standing to assert such a claim.

23        Moreover, if this Court were to evaluate whether the San Francisco ordinances are

24  consistent, on their face, with Section 1373, it would have to conclude that there is a conflict and

25  deny plaintiff's request for a contrary declaration on its merits.  At least one of the San Francisco

26

27        [2] These ordinances, Chapters 12H and 12I of plaintiff's Administrative Code, are Exhibits

28  A and B, respectively, to the Request for Judicial Notice in Support of Defendants' Motion to
Dismiss, submitted herewith.

Defs' Motion to Dismiss; Memo.          2
No. 3:17-cv-04642-WHO

information-sharing bans flatly contravenes Section 1373.  And while the other expansive restrictions include a saving clause, the reach of and adherence to that clause are not plain.

In addition to seeking declaratory relief regarding its laws, San Francisco challenges the Section 1373, access, and notice conditions in the Byrne JAG Program under the constitutional Separation of Powers and the Spending Clause.  Both claims are without merit.  Congress has expressly authorized the Assistant Attorney General ("AAG") for USDOJ's Office of Justice Programs ("OJP") to impose the challenged conditions.  In the very same enactment that created the Byrne JAG Program in 2006, Congress delegated to the AAG the authority to "plac[e] special conditions on all grants," and to "determin[e] priority purposes for formula grants."  34 U.S.C. § 10102(a)(6).  The Department thus has ample authority to impose the challenged conditions, and their imposition does not violate the constitutional separation of powers.  *See DKT Mem'l Fund Ltd. v. AID*, 887 F.2d 275, 280-81 (D.C. Cir. 1989) (upholding statutory delegation to the Executive to impose terms and conditions on federal spending programs).

In relation to plaintiff's Spending Clause challenge, the challenged conditions bear much more than "some relationship" to the purposes of the Byrne JAG Program, and thus meet the relatedness element of the Spending Clause.  *See Mayweathers v. Newland*, 314 F.3d 1062, 1067 (9th Cir. 2002).  OJP and the grant programs it administers are designed to strengthen law enforcement and to "maintain liaison" among the various branches of government "in matters relating to criminal justice."  34 U.S.C. § 10102(a)(2).  The challenged conditions emanate from "the Department of Justice's top priority of reducing violent crime" and the "long-established cooperative principles among law enforcement agencies."  *See* Request for Judicial Notice ("RJN"), Ex. C (USDOJ Press Release No. 17-826, *Attorney General Sessions Announces Immigration Compliance Requirements for Edward Byrne Memorial Justice Assistance Grant Programs* (July 25, 2017)).  The conditions are also very clear and unambiguous, and they raise no issue under the Fourth Amendment or any other "independent constitutional bar."  *See S. Dakota v. Dole*, 483 U.S. 203, 210 (1987).

In addition to avoiding cooperative federal enforcement efforts through its own, local laws and policies, San Francisco now seeks to do the same with respect to federal prerogatives, asking

the Court to enjoin the Department of Justice from imposing immigration-related law enforce-

ment conditions on the receipt of *federal funds*.  Plaintiff's position would, in essence, allow San

Francisco, rather than the Department, to determine the conditions associated with federal grants

that Congress has authorized USDOJ to award.  The City's position contravenes clear statutory

language authorizing conditions on Byrne JAG funding, and ignores the close relationship among

the federally-imposed conditions, federal law enforcement prerogatives, and the purposes of the

Byrne JAG Program.

     For these reasons, plaintiff's First Amended Complaint and all of its claims should be

dismissed.

## STATUTORY AND ADMINISTRATIVE BACKGROUND

## I.    The Immigration and Nationality Act

     Enforcement of the immigration laws, including and especially the investigation and appre-

hension of criminal aliens, is quintessentially a law enforcement function.  Through the INA, 8

U.S.C. §§ 1101 *et seq*., Congress granted the Executive Branch significant authority to control the

entry, movement, and other conduct of foreign nationals in the United States.  These responsibilities

are assigned to law enforcement agencies, as the INA authorizes the Department of Homeland

Security ("DHS"), USDOJ, and other Executive agencies to administer and enforce the immigration

laws.  The INA permits the Executive Branch to exercise considerable discretion to direct enforce-

ment pursuant to federal policy objectives.  *See Arizona v. United States*, 567 U.S. 387, 396 (2012).

     The INA includes several provisions that protect the ability of federal officials to investigate

the status of aliens in the United States and otherwise enforce the immigration laws.  For example,

the statute provides that a federal immigration officer "shall have power without warrant . . .  to

interrogate any alien or person believed to be an alien as to his right to be or to remain in the United

States." 8 U.S.C. § 1357(a)(1).  Separately, pursuant to Section 1373, "a Federal, State, or local

government entity or official may not prohibit, or in any way restrict, any government entity or

official from sending to, or receiving from, [federal immigration authorities] information regarding

1   the citizenship or immigration status, lawful or unlawful, of any individual." *Id.* § 1373(a).[3]  The

2   INA provides that certain classes of aliens shall be removed from the United States upon order of

3   the Attorney General or Secretary of Homeland Security.  *See*, *e.g.*, *id.* §§ 1227(a), 1228.

4   **II.      USDOJ Office of Justice Programs and the Byrne JAG Program**

5           Title I of the Omnibus Crime Control and Safe Streets Act established the Office of Justice

6   Programs, and provides for OJP to be headed by an Assistant Attorney General.  *See* Pub. L. No.

7   90-351, 82 Stat. 197 (1968), *codified as amended at* 34 U.S.C. §§ 10101 *et seq*.  Congress gave the

8   AAG certain "[s]pecific, general and delegated powers," including the power to "*maintain liaison*

9   *with* . . . State governments in matters relating to criminal justice."  34 U.S.C. § 10102(a)(2)

10  (emphasis added).  Notably, the statute also authorizes the AAG to "exercise such other powers and

11  functions as may be vested in [him] pursuant to this chapter or by delegation of the Attorney

12  General, *including placing special conditions on all grants, and determining priority purposes for*

13  *formula grants*."  *Id.* § 10102(a)(6) (emphasis added).

14          The same title of the Omnibus Crime Control and Safe Streets Act also established the

15  Byrne JAG Program.  *See generally* 34 U.S.C. §§ 10151-58.  Under this program, OJP is authorized

16  to "make grants to States and units of local government . . . to provide additional personnel,

17  equipment . . . and information systems for criminal justice, including for any one or more of

18  [certain enumerated] programs."  *Id.* § 10152(a)(1).  In the same title, "criminal justice" is defined

19  broadly to include various activities of the police, the courts, and "related agencies."  *Id.*

20  § 10251(a)(1).

21          The Byrne JAG Program provides "formula grants" – that is, grants that, when awarded,

22  must follow a statutory formula based on population, the rate of violent crime, and other factors.  *Id.*

23  §§ 10152(a)(1), 10156.  Funding under the Program is subject to annual appropriations.  For FY

24

25          [3]  Additionally, 8 U.S.C. § 1373(b) provides that "[n]otwithstanding any other provision
    of Federal, State, or local law, no person or agency may prohibit, or in any way restrict, a Federal,

26  State, or local government entity from doing any of the following with respect to information
    regarding the immigration status, lawful or unlawful, of any individual: (1) Sending such infor-

27  mation to, or requesting or receiving such information from, [federal immigration authorities].
    (2) Maintaining such information. (3) Exchanging such information with any other Federal, State,

28  or local government entity."

1    2017, Congress appropriated $396,000,000 for the Byrne JAG Program, with certain carve-outs

2    from that amount obligated to specific initiatives. *See* Consolidated Appropriations Act, Pub. L.

3    No. 115-31, Div. B, Title II, 131 Stat. 135, 203 (2017). By statute, in order to request a Byrne JAG

4    grant, the chief executive officer of a State or unit of local government must submit an application

5    "in such form as the Attorney General may require," 34 U.S.C. § 10153(a); and the application

6    must include, among other things, "[a] certification, made in a form acceptable to the Attorney

7    General . . . that . . . the applicant will comply with . . . all . . . applicable Federal laws," *id.*

8    § 10153(a)(5)(D). The application must also contain several assurances, including "[a]n assurance

9    that, for each fiscal year covered by an application, the applicant shall maintain and report such

10   data, records, and information (programmatic and financial) as the Attorney General may

11   reasonably require." *Id.* § 10153(a)(4).

12           OJP has historically included a variety of conditions in Byrne JAG award documents. For

13   example, OJP has imposed, without objection, conditions related to information sharing and

14   privacy protection, RJN, Ex. D (San Francisco Byrne JAG 2016) ¶ 26, research using human

15   subjects, *see id.* ¶ 29, and training, *see id.* ¶¶ 32-33. Other special conditions historically imposed

16   by the Assistant Attorney General have been inspired by Executive Branch prerogatives, and in

17   some instances resulted in *subsequent* congressional codification. One such condition, which

18   prohibits use of Byrne JAG funds to purchase military style equipment, relates in part to an

19   Executive Order issued by President Obama in 2015. *See id.* ¶ 49; Exec. Order No. 13,688, 80

20   Fed. Reg. 3451 (Jan. 16, 2015). Since 2012, other conditions have required that recipients

21   (a) comply with specific national standards when purchasing body armor and (b) institute a

22   "mandatory wear" policy for any purchased armor. RJN, Ex. D ¶¶ 38-39. While those conditions

23   have now been codified by Congress, *see* 34 U.S.C. §§ 10202(c)(1)(B), (C), they originated as

24   exercises of USDOJ's authority to impose special conditions. And the Assistant Attorney

25   General has imposed an "American-made" requirement for body armor purchases, something

26   Congress did not choose to codify last year. RJN, Ex. D ¶ 38. The conditions attached to Byrne

27   JAG grants have varied over time, depending on national law enforcement necessities and USDOJ

28   priorities.

1   For the current Byrne JAG grant cycle, Fiscal Year ("FY") 2017, OJP notified applicants

2   that awards under the Program will include three conditions requiring modest cooperation with

3   federal law enforcement prerogatives in the immigration setting.  Those conditions will require

4   grantees to (1) have a policy of providing DHS with advance notice of the scheduled release date of

5   certain individuals held in state or local correctional facilities (the "notice condition"); (2) have a

6   policy permitting federal agents to access state or local correctional facilities for certain immigra-

7   tion enforcement purposes (the "access condition"); and (3) comply with 8 U.S.C. § 1373, which, as

8   noted above, prohibits state and local government and law enforcement entities or officials from

9   restricting certain communications with DHS (the "Section 1373 condition").  RJN, Ex. E

10  (Greenville SC Award 2017) ¶¶ 53, 55, 56; RJN, Ex. F (Binghamton NY Award 2017) ¶¶ 53, 55,

11  56; First Am. Compl. ¶¶ 103-105 (Dkt. No. 61).

12  Under the "Rules of Construction" within those grant conditions, the award documents

13  make clear that nothing in the notice or access conditions requires a grantee to detain "any

14  individual in custody beyond the date and time the individual would have been released in the

15  absence of this condition."  RJN, Ex. E ¶¶ 55, 56; RJN, Ex. F ¶¶ 55, 56.  The documents also

16  make clear that these conditions impose no requirements in relation to any requests by federal

17  immigration authorities to detain aliens, and that the notice condition requires "only as much

18  advance notice as practicable" before the release of an alien. *Id*.  Finally, the conditions apply

19  only to the "program or activity" to be funded under the award (as stated above), and they allow

20  awarded funds to be used for costs incurred in implementing the conditions. *Id*.

21  **III.    San Francisco's Ordinances**

22  Chapter 12H of the San Francisco Administrative Code "affirm[s] that the City and

23  County of San Francisco is a City and County of Refuge."  S.F., CAL., ADMIN. CODE ch. 12H,

24  § 12H.1 (RJN, Ex. A).  To that end, the Code provides, among other things, that "[n]o

25  department, agency, commission, officer, or employee of the City . . . shall use any City funds or

26  resources to assist in the enforcement of Federal immigration law or to gather or disseminate

27  information regarding release status of individuals or any other such personal information . . .

28  unless such assistance is required by Federal or State statute, regulation, or court decision." *Id*.

§ 12H.2.  The Code then specifies that this "prohibition . . . shall include, but shall not be limited to" four different categories of  conduct, among which are "[a]ssisting or cooperating, in one's official capacity, with any investigation . . . public or clandestine, conducted by the Federal agency charged with enforcement of the Federal immigration law and relating to alleged viola-tions of the civil provisions of the Federal immigration law, except as permitted under Adminis-trative Code Section 12I.3."  *Id*. § 12H.2(a).

To ensure compliance with these prohibitions, the Code requires giving a copy of Chapter 12H "to every department, agency and commission of the City" and "inform[ing] all employees . . . of the prohibitions in [the] ordinance, the duty of all . . . employees to comply with the prohibitions . . . and [the fact] that employees who fail to comply with the prohibitions . . . shall be subject to appropriate disciplinary action."  *Id*. § 12H.3.  Chapter 12H also requires giving each employee "a written directive with instructions for implementing the provisions of this Chapter."  *Id*.  Finally, Chapter 12H includes a section on "Enforcement" that requires the City's Human Rights Commission to review compliance with the "mandates" of the Chapter by "departments, agencies, commissions and employees . . . in particular instances in which there is question of noncompliance or when a complaint alleging noncompliance has been lodged."  *Id*. § 12H.4.

The next chapter of the Administrative Code, Chapter 12I, primarily addresses the detention of individuals by San Francisco law enforcement officials and the City's handling of federal immigration detainer requests.  Chapter 12I provides that San Francisco "[l]aw enforcement officials shall not . . . provide any individual's personal information to a federal immigration officer, on the basis of an administrative warrant, prior deportation order, or other civil immigration document based solely on alleged violations of the civil provisions of immigration laws."  S.F., CAL., ADMIN. CODE ch. 12I, § 12I.3(e) (RJN, Ex. B).

**IV.     Recent Developments**

Plaintiff alleges that it submitted an application for an FY 2017 Byrne JAG grant on September 5, 2017 (Dkt. No. 61 ¶ 127).  On November 15, 2017, OJP sent a letter to San Francisco stating that USDOJ was "concerned" that Chapter 12H or 12I of the Administrative Code "may"

1    violate Section 1373 (*id.*, Ex. A).  The letter asked the City to submit a response explaining its

2    compliance with Section 1373, and stated that USDOJ "ha[d] not made a final determination

3    regarding San Francisco's compliance" (*id.*).  San Francisco responded in a letter dated December

4    7, 2017, asserting that Chapters 12H and 12I complied with Section 1373 as "properly construed"

5    (*id.*, Ex. C).

6         On September 15, 2017, a federal district court entered a partial preliminary injunction in

7    similar litigation brought by the City of Chicago.  *City of Chicago v. Sessions*, 264 F. Supp. 3d 933,

8    945 (N.D. Ill. 2017) ("*Chicago I*").  The Chicago court enjoined the notice and access conditions in

9    the Byrne JAG Program, but declined plaintiff's request to enjoin the Section 1373 condition.  *See*

10   *id.* (noting that "Congress could [rationally] expect an entity receiving federal funds to certify its

11   compliance with [Section 1373], as the entity is – independent of receiving federal funds –

12   obligated to comply").  Defendants appealed the preliminary injunction order; that appeal is now

13   fully briefed and scheduled to be argued before the U.S. Court of Appeals for the Seventh Circuit

14   on January 19, 2018, *Chicago v. Sessions*, 17-2991 (7th Cir.).

15                                              **ARGUMENT**

16        Defendants move for dismissal of this action under Rule 12(b)(1) and 12(b)(6) of the

17   Federal Rules of Civil Procedure.  A motion under Rule 12(b)(1) challenges the subject matter

18   jurisdiction of the court to reach a claim.  "A 'facial' attack [on jurisdiction] asserts that a

19   complaint's allegations are themselves insufficient to invoke jurisdiction," *Courthouse News*

20   *Serv. v. Planet*, 750 F.3d 776, 780 n.3 (9th Cir. 2014), while a factual challenge to jurisdiction

21   "relies on affidavits or any other evidence properly before the court to contest the truth of the

22   complaint's allegations," *id.* at 780 (citation omitted).  A motion under Rule 12(b)(6) "tests the

23   legal sufficiency of a claim."  *Navarro v. Block,* 250 F.3d 729, 732 (9th Cir. 2001).  Dismissal

24   under this rule is proper if there is a "lack of a cognizable legal theory or the absence of sufficient

25   facts alleged under a cognizable legal theory."  *Conservation Force v. Salazar*, 646 F.3d 1240,

26   1241-42 (9th Cir. 2011) (internal citation omitted).  Under both 12(b)(1) and 12(b)(6), the court

27   "may take judicial notice of matters of public record."  *Lee v. City of Los Angeles*, 250 F.3d 668,

28   689 (9th Cir. 2001) (citation omitted); *see Louisiana Mun. Police Emps.' Ret. Sys. v. Wynn*, 829

1   F.3d 1048, 1063 (9th Cir. 2016).

2        Plaintiff's request for a ruling that it complies with Section 1373 should be dismissed

3   under both Rule 12(b)(1) and 12(b)(6).  The request for a ruling regarding Chapters 12H and 12I

4   of the San Francisco Administrative Code is constitutionally unripe – thus depriving the Court of

5   jurisdiction – because USDOJ has not yet determined administratively whether those ordinances

6   violate Section 1373.  Moreover, to the extent plaintiff seeks a ruling that its actual conduct – as

7   opposed to its ordinances on their face – is consistent with Section 1373, plaintiff would lack

8   standing on such a claim because there is no live controversy regarding whether the City's actual

9   conduct violates Section 1373.  Further, assuming the Court were to address the merits of

10  plaintiff's request for a ruling that its ordinances comply with Section 1373, the Court should

11  deny that request on its merits.  Chapter 12I flatly bars San Francisco law enforcement officials

12  from "provid[ing] any individual's personal information to a federal immigration officer," S.F.,

13  CAL., ADMIN. CODE ch. 12I, § 12I.3(e), and Chapter 12H prohibits employees from using City

14  "resources," such as telephones, to communicate with federal authorities and from providing

15  "information regarding release status" to such authorities.  *Id.*, ch. 12H, § 12H.2.

16        Finally, plaintiff's allegations that the access, notice, and Section 1373 conditions in the

17  Byrne JAG Program violate the constitutional Separation of Powers and the Spending Clause

18  should be dismissed on their merits under Rule 12(b)(6).  Imposition of these conditions is fully

19  consistent with the Attorney General's authority under the governing statutes.  Also, the language

20  of the conditions allows San Francisco to "knowingly" exercise its choice to accept federal funds;

21  enforcing federal immigration law is closely related to promoting law enforcement in general; and

22  the challenged conditions do not violate any other constitutional prohibition.  *See S. Dakota v.*

23  *Dole*, 483 U.S. 203, 207 (1987).[4]

24

25

26        [4] Even if this Court were to conclude that plaintiff had established a right to judgment, any
    injunction should be limited to San Francisco rather than applying to all Byrne JAG Program
27  grantees.  *See Price v. City of Stockton*, 390 F.3d 1105, 1117 (9th Cir. 2004) (internal quotation
    marks omitted); *see also Skydive Arizona, Inc. v. Quattrocchi*, 673 F.3d 1105, 1116 (9th Cir.
28  2012).

    Defs' Motion to Dismiss; Memo.              10
    No. 3:17-cv-04642-WHO

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.      San Francisco Is Not Entitled to a Declaratory Judgment
##         Regarding Compliance with Section 1373

Count One of plaintiff's First Amended Complaint alleges that the City's "laws,"
particularly Chapters 12H and 12I of the Administrative Code, comply with 8 U.S.C. § 1373
(Dkt. No. 61 ¶¶ 166-176).  The Complaint also alleges, more broadly, that "San Francisco
complies with Section 1373" (id. ¶ 167).  Under this claim, plaintiff seeks declarations that
"Chapters 12H and 12I of the San Francisco Administrative Code comply with Section 1373,"
and that the City "does not have in place a prohibition or restriction" that "deals with sending to,
receiving from, or requesting immigration status information with the federal government, or
maintaining such information" (id. at 41).  This claim should be dismissed for lack of jurisdiction
or, alternatively, for failure on the merits.

### A.      Plaintiff's Request for a Ruling Regarding Compliance
###          with Section 1373 Is Non-Justiciable

Under Article III of the Constitution, the jurisdiction of the federal courts extends only to
"Cases" and "Controversies."  U.S. Const. art. III, § 2, cl. 1.  Matters outside this rubric are "non-
justiciable."  *Or. Bureau of Labor & Indus. ex rel. Richardson v. U.S. W. Commc'ns, Inc.*, 288 F.3d
414, 416 (9th Cir. 2002).  Two principles of justiciability are involved here:  standing and ripeness.
"While standing is concerned with *who* is a proper party to litigate a particular matter, the doctrines
of mootness and ripeness determine *when* that litigation may occur."  *Haw. Cty. Green Party v.
Clinton*, 14 F. Supp. 2d 1198, 1201 (D. Haw. 1998).  Where a plaintiff lacks standing or its claims
are unripe, the court lacks jurisdiction, and where jurisdiction is lacking, the plaintiff necessarily
cannot show a likelihood of success for purposes of a preliminary injunction.  *See Pollara v.
Radiant Logistics Inc.*, 2012 WL 12887095, at *5 (C.D. Cal. Sept. 13, 2012) (noting that "standing
to bring a claim . . . is a necessary predicate to demonstrate a likelihood of success on the merits").

To satisfy the "irreducible constitutional minimum" of standing, a plaintiff must demon-
strate an "injury in fact," a "fairly traceable" causal connection between the injury and defendant's
conduct, and redressability.  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102-03 (1998).
The injury needed for constitutional standing must be "concrete," "objective," and "palpable," not

1   merely "abstract" or "subjective." *See Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990); *Bigelow v.*

2   *Virginia*, 421 U.S. 809, 816-17 (1975).  Additionally, the injury must be "certainly impending"

3   rather than "speculative." *Whitmore*, 495 U.S. at 157, 158.  In short, for the plaintiff to have stand-

4   ing, "an actual, live controversy must exist between parties with adverse legal interests." *Pollution*

5   *Denim & Co. v. Pollution Clothing Co.*, 2009 WL 10672270, at *8 (C.D. Cal. Feb. 9, 2009).

6       Constitutional justiciability also requires that a dispute be ripe for judicial consideration.  In

7   a challenge to governmental action, that means the challenged action must have been "formalized

8   and its effects felt in a concrete way by the challenging parties." *Abbott Labs. v. Gardner*, 387 U.S.

9   136, 148-49 (1967).  In other words, "[a] claim is not ripe for adjudication if it rests upon contin-

10  gent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v.*

11  *United States*, 523 U.S. 296, 300 (1998) (internal quotation marks omitted).  Like the rules of

12  standing described above, these considerations are part of whether the case presents a concrete

13  controversy under Article III.  *See Wash. Legal Found. v. Legal Found. of Wash.*, 271 F.3d 835,

14  850 (9th Cir. 2001) ("The ripeness doctrine is derived from Article III's case or controversy

15  requirement.  It prevents the courts from entangling themselves in abstract disagreements over

16  administrative policies, and also protects the agencies from judicial interference until an

17  administrative decision has been formalized and its effects felt in a concrete way by challenging

18  parties.") (internal quotation marks omitted), *aff'd sub nom. Brown v. Legal Found. of Wash.*, 538

19  U.S. 216 (2003).[5]

20          **1.      Plaintiff's Request for a Ruling Regarding Chapters**
21                  **12H and 12I Is Constitutionally Unripe**

22      Plaintiff's request for a ruling on whether defendants can withhold grant funds based on

23  Chapter 12H or Chapter 12I is non-justiciable for lack of ripeness.  As noted already, OJP has

24  written to San Francisco stating that these ordinances "may" violate Section 1373 and asking the

25  City to explain its compliance with federal law (Dkt. No. 61, Ex A).  OJP's letter stated explicitly

26  that USDOJ had "not made a final determination regarding San Francisco's compliance with section

27          [5] These considerations do not involve merely "prudential ripeness," which asks, in contrast,
28  about the "fitness" of the issues presented for judicial review and whether withholding review
    would subject the parties to "hardship."  *See Coons v. Lew*, 762 F.3d 891, 900 (9th Cir. 2014).

1   1373" (*id*.).  San Francisco responded to that letter on December 7, 2017 (*id*., Ex. C), but OJP has

2   not issued a final decision.

3        Thus, it would be premature to address plaintiff's request for a ruling that these ordinances

4   comply with Section 1373.  *See City of Chicago v. Sessions*, 2017 WL 5499167, at *4 (N.D. Ill.

5   Nov. 16, 2017) (holding that it would be premature to address "an as-applied challenge to Section

6   1373" based on similar OJP letter to Chicago).  Even after OJP determines whether Chapter 12H

7   or 12I violates Section 1373, San Francisco will have an opportunity to appeal that initial deter-

8   mination administratively.  *See* 34 U.S.C. § 10154; *see generally* 28 C.F.R. Part 18.  OJP could

9   decide, either upon consideration of the City's letter of December 7, 2017, or upon consideration of

10  any administrative appeal, that the ordinances do not violate Section 1373 and thus that USDOJ will

11  not withhold grant funds on that basis.  Under these circumstances, plaintiff's request for an order

12  regarding whether Chapters 12H and 12I would violate the Section 1373 compliance condition is

13  unripe, in that it "rests upon contingent future events that may not occur as anticipated, or indeed

14  may not occur at all."  *Texas*, 523 U.S. at 300 (citation omitted).[6]

15              **2.      Plaintiff Lacks Standing to Seek a Ruling Regarding**
16                        **Its Actual Conduct**

17       Moreover, to the extent plaintiff seeks a declaratory ruling on whether its actual conduct

18  violates Section 1373, the claim should be dismissed for lack of standing.  Plaintiff's Count One is

19  focused on San Francisco's laws, referring several times to Chapters 12H and 12I of the Adminis-

20  trative Code and alleging that "[t]he [City] departments administering Byrne JAG-funded programs

21  are subject to and bound by these laws" (Dkt. No. 61 ¶¶ 169-171).  But aside from the effect of

22  those ordinances, plaintiff also alleges that it "complies with Section 1373" in practice, and it seeks

23  a declaration to that effect (*id*. at 37, 41).  Thus, plaintiff appears to seek a ruling that its actual

24

25       [6] Defendants' alternative argument below that the Court should dismiss plaintiff's request
26  for a declaratory judgment regarding Chapters 12H and 12I on its merits does not make this claim
    ripe, given that OJP must still be permitted to consider the City's arguments in the administrative
27  process.  *Cf. Ardalan v. McHugh*, 2014 WL 3846062, at *12 n.10 (N.D. Cal. Aug. 4, 2014) (noting
    that "the futility exception [to administrative exhaustion] requires a plaintiff [to] show it is *certain*
28  that the claim will be denied on appeal, or that resort to administrative remedies is clearly useless")
    (citations omitted).

1    conduct complies with Section 1373.

2          Plaintiff fails to allege "an actual, live controversy" on that subject, however.  *See Pollution*

3    *Denim & Co*, 2009 WL 10672270, at *8.  Although plaintiff alleges that the President and the

4    Attorney General have referred to San Francisco as a "sanctuary city" generally – a designation that

5    the City itself embraces – plaintiff can point to no specific assertion that the City's conduct violates

6    Section 1373 (Dkt. No. 61 ¶¶ 42-50).  In support of its allegation of "an actual controversy between

7    San Francisco and DOJ regarding San Francisco's compliance with Section 1373" (*id.* ¶ 157),

8    plaintiff cites OJP's letter of November 15, 2017 (*id.* ¶ 84), but that letter stated that Chapters 12H

9    and 12I may violate Section 1373, not that the City's actual practices violated the statute.  Plaintiff

10   also cites remarks by the Attorney General in which he criticized San Francisco's sanctuary policies

11   and "urg[ed] all states and local jurisdictions to comply with all federal laws, including 8 U.S.C.

12   Section 1373," but those remarks also did not say that the City was violating Section 1373 (*id.* ¶ 4

13   & n.1).[7]

14         Under these circumstances, plaintiff lacks standing to seek a court ruling on whether its

15   conduct violates Section 1373.  Given that USDOJ has not addressed, at this point, whether San

16   Francisco's actual conduct violates Section 1373 and thus renders the City ineligible for grant

17   funds, there is no "live controversy" on that subject and no foreseeable "injury in fact" arising out

18   of any finding by the defendants on that subject.  *See Pollution Denim & Co*., 2009 WL 10672270,

19   at *8; *Steel Co.*, 523 U.S. at 102-03.  Any assumption that defendants might one day withhold

20   federal grant funds based on San Francisco's actual conduct (as opposed to its ordinances) would be

21   "speculative," and thus cannot be the basis for standing.  *See Whitmore*, 495 U.S. at 157.

22         To be sure, this is not to say the defendants concede that San Francisco's actual policies do

23   *not* violate Section 1373, but only that the City is not entitled to a declaratory ruling on that subject

24   under the present circumstances.  Moreover, assuming plaintiff had standing to seek a ruling

25   regarding its actual conduct and that the claim were not otherwise subject to dismissal on its face,

26

27         [7] *See Attorney General Jeff Sessions Delivers Remarks on Sanctuary Jurisdictions* (Mar.

28   27, 2017), *available at* https://www.justice.gov/ opa/ speech/ attorney-general-jeff-sessions-
     delivers-remarks-sanctuary-jurisdictions (last visited Jan. 19, 2018).

1  factual development would be needed to resolve such a claim.  Several issues would be presented,

2  including plaintiff's internal policies in implementing its ordinances and what the City tells its

3  employees regarding federal law.

> **B.    Alternatively, the Court Should Deny Plaintiff's Request for
> a Ruling that Its Ordinances Comply with Section 1373**

6      If this Court were to find that plaintiff's request for a ruling regarding its ordinances is

7  ripe, the Court would have to conclude that San Francisco's ordinances are in conflict with

8  Section 1373.[8]  As described earlier, Section 1373 provides, in part, that a "local government

9  entity or official may not prohibit, or in any way restrict, any government entity or official from

10  sending to, or receiving from, [federal immigration officials] information regarding the

11  citizenship or immigration status, lawful or unlawful, of any individual."  8 U.S.C. § 1373(a).

12  Chapters 12I and 12H of San Francisco's Administrative Code violate this prohibition.

> **1.   Chapter 12I**

14      Chapter 12I of the Administrative Code provides that San Francisco "[l]aw enforcement

15  officials shall not . . . provide any individual's personal information to a federal immigration

16  officer, on the basis of an administrative warrant, prior deportation order, or other civil immi-

17  gration document based solely on alleged violations of the civil provisions of immigration laws."

18  S.F., CAL., ADMIN. CODE ch. 12I, § 12I.3(e).  Personal information, in turn, is defined broadly to

19  include "any confidential, identifying information . . . including, but not limited to . . . contact

20  information . . . ."  *Id.* § 12I.2.

21      This specific, express prohibition against sharing aliens' "contact information" and other

22  "identifying information" with federal immigration authorities is clearly inconsistent with Section

23  1373.  Under this prohibition, local officers would be unable to confirm or reveal the identity of

24  individuals in custody.  But a person's identity and name are highly relevant to determining

25  immigration status and removability under immigration law:  No such evaluation can be made if

26  the person's identity is not disclosed.  And the person's address – one component of "contact

---

27  [8] The United States is not seeking to invalidate San Francisco's ordinances in this action,
28  nor is it seeking a declaration that the ordinances are invalid.  Instead, the United States contends
that the plaintiff is not entitled to a ruling that its ordinances comply with Section 1373.

information" – directly relates to whether the person is "lawfully *present* in the United States,"

which Congress described as a component of "immigration status."  8 U.S.C. § 1357(g)(10)(A)

(emphasis added); *see* Black's Law Dictionary 1065 (5th ed. 1979) (defining "presence" as

"being in a certain place and not elsewhere").  Identity and other personal information are also

relevant to many immigration status issues, such as whether the person was born outside the

United States, whether the person derived citizenship from a relative, whether the person qualifies

for immigrant status under 8 U.S.C. § 1101(a)(15), and whether the alien's place of residence

qualifies them as a non-resident visitor, 8 U.S.C. § 1227(a)(1)(C); such information also facili-

tates taking an alien into custody for lawful removal proceedings, *id.* § 1226(a).  Further, this

information is needed for federal authorities to comply with the statutory mandates to "take into

custody any alien who" has committed certain criminal offenses "*when the alien is released*"

from criminal custody, *id.* § 1226(c)(1) (emphasis added), and to "maintain a current record of

aliens who have been convicted of an aggravated felony," *id.* § 1226(d)(1)(C).

Consistent with these requirements, Section 1373 forbids a state or local government from

prohibiting the exchange of "information *regarding*" an individual's immigration status, not

merely the individual's immigration status.  Congress's use of "information regarding" broadens

the scope of the information covered, as demonstrated by comparing Section 1373(a) to Section

1373(c), which uses the different phrase "[immigration] status information."  8 U.S.C. § 1373(c);

*see Dean v. United States*, 556 U.S. 568, 573 (2009) ("Where Congress includes particular

language in one section of a statute but omits it in another section of the same Act, it is generally

presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.")

(citations omitted).  And the meaning of the word "regarding" is quite broad.  *See Morales v.*

*Trans World Airlines, Inc.*, 504 U.S. 374, 383 (1992) (concluding that "ordinary meaning" of the

closely analogous "relating to" is "a broad one – 'to stand in some relation; to have bearing or

concern; to pertain; refer; to bring into association with or connection with'") (citing Black's Law

Dictionary 1158 (5th ed. 1979)); *Davis v. Fenton*, 26 F. Supp. 3d 727, 740 (N.D. Ill. 2014)

(concluding that "regarding" is "just as broad . . . as 'arising out of' and 'relating to'").

The breadth of Section 1373 is also reinforced by other language that Congress used, such

as making clear that no local policy could "in any way restrict" the sharing of such information, reinforcing Congress's overarching interest in halting policies that might stymie the sharing of information between local law enforcement and immigration authorities. *See Bologna v. San Francisco*, 121 Cal. Rptr. 3d 406, 414 (Cal. App. 2011) (noting that Section 1373 "is designed to prevent any State or local law . . . that prohibits or *in any way restricts* any communication between State and local officials and the INS") (quoting H.R. Rep. No. 104-469 at 1 (1996)) (emphasis added).  Thus, Section 1373 necessarily encompasses "identifying information," including "contact information."  A contrary reading would render the statute largely meaningless, as DHS is already aware of an individual's legal right to be present in the United States. *See Steinle v. San Francisco*, 230 F. Supp. 3d 994, 1016 (N.D. Cal. 2017) (explaining that "ICE was already aware of Lopez-Sanchez's immigration status").

Finally, the impact of Chapter 12I on the enforcement of federal immigration law is even greater in light of the ordinance's requirement to report any sharing of information twice a year, including "a description of any communications" made to federal immigration authorities. *Id.* § 12I.5(b).  That requirement compounds the impact of the restriction on communication by further discouraging local officers from sharing immigration-status information with federal authorities.  Because "personal information'" is defined so broadly, a San Francisco officer would risk disciplinary action any time he or she shared information regarding immigration status, rendering the ordinance in square violation of Section 1373. *See Chicago I*, 264 F.Supp.3d at 948 ("[T]he Court finds that Congress acts constitutionally when it determines that localities may not prevent local officers from *voluntarily* cooperating with a federal program or discipline them for doing so.").

### 2.  Chapter 12H

Chapter 12H of the Administrative Code prohibits San Francisco employees from using "any City . . . resources to assist in the enforcement of Federal immigration law" and from "gather[ing] or disseminat[ing] information regarding release status of individuals or any other such personal information." *See* S.F., Cal., Admin. Code ch. 12H, § 12H.2.  "[S]ending . . . information regarding . . . citizenship or immigration status" to federal immigration authorities

under Section 1373 necessarily constitutes "assist[ing] in the enforcement of Federal immigration law," which is prohibited by Chapter 12H.  Indeed, the California Court of Appeal has observed that a state statute that requires arresting officers to inform federal immigration officials when a person arrested for certain criminal violations "may not be" a citizen "was specifically designed *to provide state assistance in the enforcement of federal immigration laws.*"  *Fonseca v. Fong*, 167 Cal. App. 4th 922, 932 (2008) (emphasis added); *see* CAL. HEALTH & SAFETY § 11369.

Additionally, forbidding the use of City "resources" – such as telephones and Internet access – to communicate with federal immigration authorities violates Section 1373's proscription against "restrict[ing]" the transmission of immigration-status information "in any way."  8 U.S.C. § 1373(a).  One definition of the verb "restrict" is "to place under restrictions as to use or distribution," and "restriction" is defined as "a limitation on the use or enjoyment of property or a facility."  *See* Restrict Definition, Merriam-Webster.com, https://www.merriam-webster.com/ dictionary/ restrict (last visited Jan. 19, 2018); Restriction Definition, https://www.merriam-webster.com/ dictionary/ restriction (last visited Jan. 19, 2018).  Thus, limiting the means by which an employee can transmit information to federal immigration authorities "restrict[s]" such transmission.  Moreover, prohibiting the use of telephones would not only prevent an employee from using her office telephone to call federal authorities to report on an individual's immigration status, but would, presumably, also require the employee to hang up if a federal official called to ask about an individual's status.  That is obviously a restriction on the transmission of information.

Furthermore, Chapter 12H's prohibition against sharing "information regarding release status of individuals" with federal authorities violates Section 1373 because an alien's release date is information regarding the person's immigration status.  Under the process enacted in the INA, an alien's release date is directly relevant to when the alien can ultimately be removed from the country.  Federal law recognizes the importance of allowing States and localities to impose criminal punishment on individuals who are in this country illegally and commit crimes.  Thus, the INA specifies that, except in limited circumstances, DHS "may not remove an alien who is sentenced to imprisonment until the alien is released from imprisonment."  8 U.S.C. § 1231(a)(4).  But that law –

1    and the comity interests that underlie it – render the time of an alien's release from local custody

2    critical information regarding the alien's immigration status, as the alien is subject to removal only

3    at the end of that custody period.  *See id.* § 1231(a)(1)(B)(iii) (removal period "begins on . . . the

4    date the alien is released from [state or local criminal] detention").  Similarly, as noted above, the

5    statute requiring the detention of criminal aliens specifies that immigration detention for removal

6    proceedings must begin "*when the alien is released*" from criminal custody.  *Id.* § 1226(c)(1)

7    (emphasis added).  The Ninth Circuit has held that this statute requires immigration custody to

8    begin immediately upon release from criminal custody, underscoring the importance of the release

9    date to the person's status under the immigration laws.  *See Preap v. Johnson*, 831 F.3d 1193, 1202

10   (9th Cir. 2016) (stating that Section 1226(c) "governs the full life cycle of the criminal aliens'

11   detention," including "the requirements for taking them into custody"), *petition. for cert. filed*, No.

12   16-1363 (May 11, 2017).  Other INA provisions also confirm that an alien's release date is highly

13   relevant to the person's status under the immigration laws given the relevance of that persons'

14   location within the United States.  *See* 8 U.S.C. § 1357(g)(10)(A) ("immigration status" includes

15   whether individual is "lawfully *present* in the United States"); *id.* § 1357(a)(1) (immigration

16   officers "shall have power without warrant . . . to interrogate any alien or person believed to be an

17   alien as to his right to be or to remain in the United States"); *id.* § 1226(a) ("alien may be arrested

18   and detained" on a warrant).  Thus, release date information relates to an individual's status under

19   the immigration laws because it is a core aspect of the enforcement process Congress designed.

20          Although Chapter 12H includes a saving clause providing that the prohibition does not

21   apply where "such assistance is required by Federal or State statute, regulation, or court

22   decision," that clause does not permit the Court to determine at the dismissal stage that the

23   ordinance is consistent with Section 1373.  First, the clause is ambiguous.  The categories listed in

24   Chapter 12H include their own exceptions, but do not reiterate the saving clause, thus making it

25   unclear whether those subparts are subject to the saving clause.[9]  Making matters even more

26

27          [9] *See* S.F., CAL., ADMIN. CODE ch. 12H, § 12H.2 ("the prohibition . . . shall include, but shall
     not be limited to" the listed subparts); *id*. § 12.H.2(a) (prohibition includes "[a]ssisting or
28   cooperating . . . with any investigation . . . except as permitted under [another code section]"); *id.*

     Defs' Motion to Dismiss; Memo.                    19
     No. 3:17-cv-04642-WHO

1    confusing, one listed category *does* reiterate the saving clause, suggesting that the other subparts

2    intentionally do not include it.  *See id.* § 2.H.2(d) (prohibiting the collection of information except

3    as "required by Federal . . . statute, regulation, or court decision").  *See Copeland v. Ryan*, 852

4    F.3d 900, 907 (9th Cir. 2017) ("Under the maxim of *expressio unius est exclusio alterius*, there is

5    a presumption that when a statute designates certain persons, things, or manners of operation, all

6    omissions should be understood as exclusions.") (internal quotation marks omitted).

7          Second, the saving clause is entirely overshadowed by the rest of Chapter 12H.  The first

8    section of the Chapter categorically "affirm[s] that the City and County of San Francisco is a City

9    and County of Refuge."  S.F., CAL., ADMIN. CODE ch. 12H, § 12H.1.  The ordinance prohibits

10   using City funds or resources to "assist in the enforcement of Federal immigration law," and

11   provides that the prohibition "shall include, but shall not be limited to" four expressly described

12   categories of conduct, including "[a]ssisting or cooperating, in one's official capacity, with any

13   investigation" conducted by federal immigration authorities.  *Id.* § 12H.2.  The ordinance also

14   expressly requires "inform[ing] all employees . . . of the prohibitions in [the] ordinance, the duty

15   of all . . . employees to comply with the prohibitions . . . and [the fact] that employees who fail to

16   comply with the prohibitions . . . shall be subject to appropriate disciplinary action."  *Id.* § 12H.3.

17   Chapter 12H does not, however, require informing employees that they may violate these

18   stringent "prohibitions" if "required" by federal law.  Thus, if the City's intent were to comply

19   with Section 1373, it would be odd for it to have enacted these many provisions that violate it.[10]

20   **II.    The Challenged Immigration-Related Byrne JAG Conditions Are Lawful**

21        **A.    The Conditions Are Authorized by the Statute and Do Not
                  Violate the Separation of Powers**

22

23        In Count Two of its Amended Complaint, plaintiff alleges that the Section 1373, access,

24

---

25   § 12.H.2(c) (prohibition includes "disseminating information . . . regarding . . . any other such
     personal information . . . except as permitted under [another code section]").

26        [10] Nor does the January 19, 2017, memorandum from the City's Human Resources
     Director to City employees keep Chapter 12H from violating Section 1373 (Dkt. No. 61, Ex. C).

27   The memorandum was a "Reminder about [Employees'] Sanctuary City Obligations," and only
     quoted Section 1373 without comment rather than actually advising employees that they are

28   permitted to share information with federal officials.

1   and notice conditions in the Byrne JAG Program violate the constitutional Separation of Powers

2   by "unilaterally imposing [those] Requirements without authorization from Congress" (Dkt. No.

3   61 ¶ 187).  Article I of the Constitution confers on Congress the authority to "lay and collect

4   Taxes, Duties, Imposts and Excises, to pay the Debts and provide for the common Defence and

5   general Welfare of the United States."  U.S. Const. art. I, § 8, cl. 1.  As this Court has said in

6   another case, Congress may, "[i]ncident to" its spending power, "attach conditions on the receipt

7   of federal funds," *Cty. of Santa Clara v. Trump*, 250 F. Supp. 3d 497, 530 (N.D. Cal. 2017)

8   (quoting *Dole*, 483 U.S. at 206), and "Congress can delegate some discretion to the President to

9   decide how to spend appropriated funds" so long as "any delegation and discretion is cabined by

10   [relevant] constitutional boundaries."  250 F. Supp. 3d at 531; *see DKT Mem'l Fund Ltd. v. AID*,

11   887 F.2d 275, 280-81 (D.C. Cir. 1989) (upholding conditions on spending imposed by President

12   where statute authorized President to set certain "terms and conditions as he may determine").

13       The Attorney General has "final authority over all functions, including any grants" made

14   by OJP, which administers the Byrne JAG Program.  34 U.S.C. § 10110.  Under the Attorney

15   General's authority, an Assistant Attorney General heads OJP.  *See id.* § 10101; 28 U.S.C.

16   § 530C(a)(4).  In setting forth the duties and functions of the AAG, Congress stated that the AAG

17   is to "exercise such other powers and functions as may be vested in the Assistant Attorney

18   General pursuant to this chapter or by delegation of the Attorney General, including placing

19   special conditions on all grants, and determining priority purposes for formula grants."  34 U.S.C.

20   § 10102(a)(6).

21       Thus, a plain reading of the statutory text indicates that the AAG's power includes, *at a*

22   *minimum*, the power to "plac[e] special conditions on all grants" administered by OJP.  *Id.*  The

23   breadth of the AAG's statutory power is reinforced by the authority to "determin[e] priority

24   purposes for formula grants."  *Id.*  Confirming the statute's plain text, a congressional committee

25   report accompanying the enactment of this language stated that the provision "allows the

26   Assistant Attorney General to place special conditions on all grants and to determine priority

27   purposes for formula grants."  H.R. Rep. No. 109-233, at 101 (2005).

28       Indeed, the particular statutory language at issue here – the authority for "placing special

conditions on all grants, and determining priority purposes for formula grants" – was added *as part of the very same legislation that created the Byrne JAG Program.  See* DOJ Reauthorization Act of 2005, Pub. L. No. 109-162, § 1152(b), 119 Stat. 2960 (2006) (adding language to subsection (a)(6)); *id*. § 1111 (creating Byrne JAG Program).  Prior to that 2006 enactment, the provision stated only that the AAG for OJP "exercise[s] such other powers and functions as may be vested in the Assistant Attorney General pursuant to this title or by delegation of the Attorney General."  Joint Resolution Making Continuing Appropriations for FY 1985, Pub. L. No. 98-473, § 603, 98 Stat. 1837 (1984).  Also, by contrast, the organic statute for the head of a separate USDOJ grant-making component, enacted in 2002, continues to contain substantially the same, more limited language as Section 10102 earlier contained, without the additional "special conditions" and "priority purposes" powers that Congress elected to bestow with respect to OJP. *See* 34 U.S.C. § 10444(7) (providing only that Director of Violence Against Women Office "[e]xercis[es] such other powers and functions as may be vested in the Director pursuant to this subchapter or by delegation of the Attorney General").  This context confirms that Congress intended the "special conditions" and "priority purposes" language to confer distinctive and meaningful power.  "When Congress acts to amend a statute, [courts] presume it intends its amendment to have real and substantial effect."  *Stone v. INS*, 514 U.S. 386, 397 (1995).

Thus, the challenged grant conditions – which merely promote intergovernmental law enforcement cooperation, so that grantee policies do not impair federal policies – fit comfortably within the delegated power of Section 10102(a)(6).  Pursuant to this authority, the AAG may prioritize formula grants, like the Byrne JAG Program, for jurisdictions that cooperate with federal authorities in achieving federal law enforcement priorities, including removal of criminal aliens under immigration law.

### B.    The Conditions Are Consistent with the Spending Clause

Finally, in Count Three of its First Amended Complaint, plaintiff alleges that the Section 1373, access, and notice conditions violate the Spending Clause by imposing grant conditions that are purportedly ambiguous and "not germane" to the purposes of the Byrne JAG Program, and would require grantees to "engage in unconstitutional activity" (Dkt. No. 61 ¶¶ 191-192).  The

1    Spending Clause provides that Congress may "lay and collect Taxes, Duties, Imposts and

2    Excises, to pay the Debts and provide for the common Defence and general Welfare of the United

3    States." U.S. Const. art. I, § 8, cl. 1. As the Supreme Court has held, "Congress may attach

4    conditions on the receipt of federal funds, and has repeatedly employed the power to further

5    broad policy objectives by conditioning receipt of federal moneys upon compliance by the

6    recipient with federal statutory and administrative directives." *Dole*, 483 U.S. at 206 (internal

7    quotation marks omitted).

8         The Supreme Court in *South Dakota v. Dole* described certain limitations or potential

9    limitations on the spending power. Most basically, conditions on the receipt of federal funds

10   must be stated "unambiguously" so that recipients can "exercise their choice knowingly,

11   cognizant of the consequences of their participation." *Id.* (citing *Pennhurst State Sch. & Hosp. v.*

12   *Halderman*, 451 U.S. 1, 17 (1981) ("The legitimacy of Congress' power to legislate under the

13   spending power thus rests on whether the State voluntarily and knowingly accepts the terms of

14   the 'contract.' There can, of course, be no knowing acceptance if a State is unaware of the

15   conditions or is unable to ascertain what is expected of it.") (citations omitted)). Additionally, the

16   Court observed in *Dole*, "our cases have suggested (without significant elaboration) that condi-

17   tions on federal grants might be illegitimate if they are unrelated to the federal interest in parti-

18   cular national projects or programs." 483 U.S. at 207-08 (internal quotation marks omitted). And

19   finally, the Court said that "other constitutional provisions may provide an independent bar to the

20   conditional grant of federal funds." *Id.* at 207-08. The challenged grant conditions are consistent

21   with all of these principles.

22              **1.    The Challenged Conditions are Unambiguous**

23        First, these conditions clearly state what conduct is required, so that grantees can "exercise

24   their choice knowingly, cognizant of the consequences of their participation." *Id.* at 207 (citation

25   omitted). The access and notice conditions require grantees (1) to give "agents of the United

26   States acting under color of federal law" access to correctional facilities "to meet with individuals

27   who are (or are believed by such agents to be) aliens and to inquire as to such individuals' right to

28   be or remain in the United States," and (2) to notify DHS, upon "formal written request" and "as

1    early as practicable," before "the scheduled release date and time for a particular alien in such

2    facility."  RJN, Ex. E (Greenville SC Award 2017) ¶¶ 53, 55, 56; RJN, Ex. F (Binghamton NY

3    Award 2017) ¶¶ 53, 55, 56.  The award documents also specify that nothing in these conditions

4    requires a grantee to detain "any individual in custody beyond the date and time the individual

5    would have been released in the absence of this condition"; that the conditions impose no require-

6    ments regarding any requests by federal immigration authorities to detain aliens; and that the

7    notice condition requires "only as much advance notice as practicable."  *Id.*  Moreover, to the

8    extent any uncertainty might remain, the FY 2017 Byrne JAG solicitation invited any prospective

9    grantee with a question about "any . . . requirement of this solicitation" to contact OJP's Response

10   Center (customer service center) by telephone, email, or Internet chat (Dkt. No. 61, Ex. B at 2).

11   A prospective grantee could also contact the appropriate "State Policy Advisor" – that is, a

12   specific, named OJP employee assigned to work with jurisdictions within a specified geo-

13   graphical area.  *Id.*; BJA Programs Office Contact Information, *available at* https://www.bja.gov/

14   About/ Contacts/ ProgramsOffice.html (last visited Jan. 19, 2018).[11]

15          Further, to the extent there is any uncertainty at the margins of the challenged conditions,

16   such a penumbra would not render them unconstitutionally ambiguous.  Indeed, "the exact nature

17   of [grant] conditions may be largely indeterminate, provided that the existence of the conditions is

18   clear, such that States have notice that compliance with the conditions is required."  *Charles v.*

19   *Verhagen*, 348 F.3d 601, 607 (7th Cir. 2003) (citation omitted); *see, e.g., Benning v. Georgia*, 391

20   F.3d 1299, 1306 (11th Cir. 2004) ("Once Congress clearly signals its intent to attach federal

21   conditions to Spending Clause legislation, it need not specifically identify and proscribe in

22   advance every conceivable state action that would be improper.") (citation omitted).  Moreover,

23   plaintiff does not complain about the clarity of any *other* Byrne JAG conditions, such as those

24   requiring compliance with restrictions on lobbying, RJN, Ex. D ¶ 17; compliance with "federal

25   appropriations statutes" generally, *id.* ¶ 18; reporting of evidence of violations of the False Claims

26   Act, *id.* ¶ 19; and compliance with prohibitions on reprisal under 41 U.S.C. § 4712, *id.* ¶ 21.

27   _____

28          [11] "BJA" refers to the Bureau of Justice Assistance, the OJP component that administers
     the Byrne JAG Program.

1

2

### 2.   The Challenged Conditions Are Related to the Purposes of the Byrne JAG Program

3

Second, plaintiff alleges that the Byrne JAG conditions are "not germane to the stated

4

purposes of the Byrne JAG funds" (Dkt. No. 61 ¶ 191(b)).  As the Court of Appeals has observed,

5

however, this aspect of *Dole* suggests only a "possible ground" for invalidating an enactment, and

6

does not impose an "exacting standard":

7

8

9

10

11

> The Supreme Court has suggested that federal grants conditioned on compliance
> with federal directives *might* be illegitimate if conditions share no relationship
> to the federal interest in particular national projects or programs.  This possible
> ground for invalidating a Spending Clause statute, which only suggests that the
> legislation *might* be illegitimate without demonstrating a nexus between the
> conditions and a specified national interest, is a far cry from imposing an exacting
> standard for relatedness.

12

*Mayweathers v. Newland*, 314 F.3d 1062, 1067 (9th Cir. 2002) (citing *Dole*, 483 U.S. at 207).

13

Thus, conditions on federal funding must only "bear some relationship to the purpose of the

14

federal spending."  314 F.3d at 1067 (quoting *New York v. United States*, 505 U.S. 144, 167

15

(1992)); *see Barbour v. Wash. Metro. Area Transit Auth.*, 374 F.3d 1161, 1168 (D.C. Cir. 2004)

16

(noting that Supreme Court has never "overturned Spending Clause legislation on relatedness

17

grounds").

18

The challenged conditions easily meet this standard.  The Byrne JAG Program's organic

19

statute specifies that grant funds are designed to provide resources "for criminal justice," to

20

support programs including law enforcement, prosecution, crime prevention, and corrections.  34

21

U.S.C. § 10152(a)(1).  These goals are also reflected in the responsibilities of the AAG, which

22

involve "disseminat[ing] information" and "*maintain[ing] liaison with* . . . State governments" in

23

matters relating to "criminal justice."  34 U.S.C. § 10102(a)(1), (2) (emphasis added).  As relates

24

to these statutes, the term "criminal justice" is defined broadly to include various activities of the

25

police, the courts, and "related agencies."  *Id.* § 10251(a)(1).  Further, immigration enforcement,

26

which the conditions promote, undoubtedly intersects with the Byrne JAG Program's criminal

27

justice purposes, at a minimum for the simple reason that a conviction for any of a wide array of

28

criminal offenses renders an alien removable from this country.  *See* 8 U.S.C. § 1227(a)(2).

1   Indeed, "[a] primary goal of several recent overhauls of the INA has been to ensure and expedite

2   the removal of aliens convicted of serious crimes."  *Duvall v. Att'y Gen. of U.S.*, 436 F.3d 382,

3   391 (3d Cir. 2006); *see Padilla v. Kentucky*, 559 U.S. 356, 360 (2010) (observing that "deporta-

4   tion or removal is now virtually inevitable for a vast number of noncitizens convicted of crimes")

5   (citation omitted).  Once removed, a criminal alien who has committed a removable offense – for

6   example, an aggravated felony, domestic violence, child abuse, or certain firearm offenses – is no

7   longer present in this country with the potential to re-offend.

8         The INA also repeatedly contemplates cooperation among state and local officers and

9   federal officials on immigration enforcement.  *See, e.g.*, 8 U.S.C. § 1357(g) (authorizing formal

10  cooperative agreements under which trained and qualified state and local officers may perform

11  specified functions of a federal immigration officer in relation to the investigation, apprehension,

12  or detention of aliens); *id.* § 1324(c) (authorizing state and local officers to make arrests for

13  violations of the INA's prohibition against smuggling, transporting, or harboring aliens); *id.*

14  § 1252c (authorizing state and local officers to arrest certain felons who have unlawfully returned

15  to the United States).  Under authorities such as these, "state officers may perform the functions

16  of an immigration officer."  *Arizona*, 567 U.S. at 408.  Furthermore, given that the INA contem-

17  plates the federal detention of certain aliens upon their release from state or local custody, as

18  discussed above, the conditions can be understood as seeking to ensure that a state or local

19  grantee's law enforcement activities not impair the law enforcement activities of the federal

20  government.  It is crucial to this cooperative law enforcement framework that states and localities

21  give federal agents access to detainees in their custody and avoid restricting the communication

22  of information regarding immigration status to DHS.[12]

23

24         [12] Plaintiff argues that Congress's elimination, during a reorganization of the Byrne JAG
    statute, of a requirement to send information on the criminal conviction of aliens to federal
25  immigration authorities suggests an intent to divorce the Program from immigration enforcement
    (Dkt. No. 61 ¶ 65).  Absent any indication of such intent in the legislative history, however, the
26  more reasonable assumption is that Congress simply found the provision to be unnecessary.
    Indeed, at the same time Congress eliminated that language, it added the AAG's discretionary
27  authority to "plac[e] special conditions on all grants, and [to] determin[e] priority purposes for
    formula grants."  34 U.S.C. § 10102(a)(6); *see* Violence Against Women and Department of
28  Defs' Motion to Dismiss; Memo.                          26
    No. 3:17-cv-04642-WHO

1

2

### 3.    The Challenged Conditions Do Not Violate any "Independent Constitutional Bar"

3      Third, plaintiff alleges that these conditions exceed the spending power by requiring the

4   City "to engage in unconstitutional activity such as detaining individuals without probable cause

5   in violation of the Fourth Amendment" (Dkt. No. 61 ¶ 192).  The Supreme Court in *Dole*

6   emphasized the narrowness on this limitation on the federal spending power, noting that "the

7   'independent constitutional bar' limitation . . . is not . . . a prohibition on the indirect achievement

8   of objectives which Congress is not empowered to achieve directly."  483 U.S. at 210.  Rather,

9   the Court said, this limitation "stands for the unexceptionable proposition that the power may not

10  be used to induce the States to engage in activities that would themselves be unconstitutional.

11  Thus, for example, a grant of federal funds conditioned on invidiously discriminatory state action

12  or the infliction of cruel and unusual punishment would be an illegitimate exercise of the

13  Congress' broad spending power."  *Id.* at 210-11.

14      The challenged conditions do not "induce" San Francisco to violate any such

15  constitutional prohibition.  As explained already, the access and notice conditions have no effect

16  on the detention of aliens.  The FY 2017 award documents state categorically that nothing in the

17  conditions "shall be understood to authorize or require any recipient, any subrecipient at any tier,

18  any State or local government, or any other entity or individual to maintain (or detain) any

19  individual in custody beyond the date and time the individual would have been released in the

20  absence of this condition."  RJN, Ex. E ¶¶ 55, 56; Ex. F ¶¶ 55, 56.  The conditions only require,

21  where a jurisdiction chooses to accept Byrne JAG funds, that the grantee give federal authorities

22  (1) access to correctional facilities to question aliens who are in the jurisdiction's custody and

23  (2) "as much advance notice as practicable" before ending such custody.  Thus, the challenged

24  conditions raise no issue under the Fourth Amendment or any other "independent constitutional

25  bar."  *See Dole*, 483 U.S. at 210.

26      In short, the challenged conditions in the Byrne JAG Program constitute only a "relatively

27

28  Justice Reauthorization Act of 2005, Pub. L. No. 109-162, 119 Stat. 2960 (2006), § 1152(b) (adding language to subsection (a)(6)); *id.* § 1111(a)(2)(C) (amending 42 U.S.C. § 3753).

mild encouragement" to assist in the enforcement of immigration law. *Dole*, 483 U.S. at 211.

## CONCLUSION

Accordingly, the Court should dismiss plaintiff's First Amended Complaint and all of its claims.

Dated: January 19, 2018

Respectfully submitted,

CHAD A. READLER
Acting Assistant Attorney General

JOHN R. TYLER
Assistant Director

/s/ W. Scott Simpson

_____
W. SCOTT SIMPSON (Va. Bar #27487)
Senior Trial Counsel

Attorneys, Department of Justice
Civil Division, Room 7210
Federal Programs Branch
20 Massachusetts Avenue, NW
Washington, D.C. 20530
Telephone:   (202) 514-3495
Facsimile:    (202) 616-8470
E-mail:        scott.simpson@usdoj.gov

COUNSEL FOR DEFENDANTS

JEFFERSON B. SESSIONS III, Attorney
General of the United States; ALAN R.
HANSON, Principal Deputy Assistant Attorney
General; and U.S. DEPARTMENT OF
JUSTICE

1   CHAD A. READLER
    Acting Assistant Attorney General
2   BRIAN STRETCH
    United States Attorney
3   JOHN R. TYLER
    Assistant Director
4   W. SCOTT SIMPSON (Va. Bar #27487)
    Senior Trial Counsel
5   Department of Justice, Room 7210
    Civil Division, Federal Programs Branch
6   20 Massachusetts Avenue, NW
7   Washington, D.C. 20530
    Telephone:      (202) 514-3495
8   Facsimile:      (202) 616-8470
    E-mail:         scott.simpson@usdoj.gov
9   COUNSEL FOR DEFENDANTS
10    (See signature page for parties represented.)

11                  IN THE UNITED STATES DISTRICT COURT

12              FOR THE NORTHERN DISTRICT OF CALIFORNIA

13                       SAN FRANCISCO DIVISION

14

15  CITY AND COUNTY OF SAN
    FRANCISCO,                          No. 3:17-cv-04642-WHO
16
                        Plaintiff,      **REQUEST FOR JUDICIAL NOTICE**
17          v.                          **IN SUPPORT OF DEFENDANTS'**
                                        **MOTION TO DISMISS**
18  JEFFERSON B. SESSIONS III, Attorney
19  General of the United States, *et al.*,
                                        Date:      February 28, 2018
20                      Defendants.     Time:      2:00 p.m.

21

22

23          Defendants respectfully request, pursuant to Federal Rule of Evidence 201, that the Court

24  take judicial notice of the following documents:

25          1.  Attached hereto as **Exhibit A** is a true and correct copy of Chapter 12H of the San

26  Francisco Administrative Code, as posted at http://www.amlegal.com/library/ca/sfrancisco.shtml.

27  A page of the official San Francisco web site, http://sfgov.org/services/sf-municipal-codes, links

28  to http://www.amlegal.com/library/ca/sfrancisco.shtml.

2. Attached hereto as **Exhibit B** is a true and correct copy of Chapter 12I of the San Francisco Administrative Code, as posted at http://www.amlegal.com/library/ca/sfrancisco.shtml. A page of the official San Francisco web site, http://sfgov.org/services/sf-municipal-codes, links to http://www.amlegal.com/library/ca/sfrancisco.shtml.

3. Attached hereto as **Exhibit C** is a true and correct copy of a U.S. Department of Justice press release issued July 25, 2017, entitled *Attorney General Sessions Announces Immigration Compliance Requirements for Edward Byrne Memorial Justice Assistance Grant Programs*.  As of January 19, 2018, this document is posted on the U.S. Department of Justice's web site, at https://www.justice.gov/opa/pr/attorney-general-sessions-announces-immigration-compliance-requirements-edward-byrne-memorial.

4. Attached hereto as **Exhibit D** is a true and correct copy of the Byrne JAG award package issued by the Office of the Justice Programs of the U.S. Department of Justice to the City and County of San Francisco for Fiscal Year 2016.

5. Attached hereto as **Exhibit E** is a true and correct copy of the Byrne JAG award package issued by the Office of the Justice Programs of the U.S. Department of Justice to the County of Greenville, South Carolina, for FY 2017.

6. Attached hereto as **Exhibit F** is a true and correct copy of the Byrne JAG award package issued by the Office of the Justice Programs of the U.S. Department of Justice to the City of Binghamton, New York, for FY 2017.

Each of these exhibits is a matter of public record and is therefore subject to judicial notice.  *See* Fed. R. Evid. 201(b); *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (court may take judicial notice of matters of public record unless the matter is a fact subject to reasonable dispute).

**Exhibits A through F** are judicially noticeable because official government records are matters of public record appropriate for judicial notice.  *See Brown v. Valoff*, 422 F.3d 926, 933 n.9 (9th Cir. 2005) (taking judicial notice of government administrative bulletin); *Mack v. S. Bay Beer Distribs., Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986) (court may take judicial notice of state

Defs' Request for Judicial Notice
No. 3:17-cv-4642-WHO

administrative records), *overruled on other grounds*, *Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104 (1991); *Interstate Nat. Gas. Co. v. S. Cal. Gas. Co.*, 209 F.2d 380, 385 (9th Cir. 1953) (court "may take judicial notice of records and reports of administrative bodies"); *California Sportfishing Prot. All. v. Chico Scrap Metal, Inc*., 124 F. Supp. 3d 1007, 1016 (E.D. Cal. 2015) ("Government records are susceptible to judicial notice when 'relevant to an[] issue' before the court.") (quoting *Flick v. Liberty Mut. Fire Ins. Co*., 205 F.3d 386, 392 n. 7 (9th Cir. 2000)).

**Exhibits A through F** are also judicially noticeable because the statements of government officials that they contain are not subject to reasonable dispute, as the statements "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2).

**Exhibits A and B** are also judicially noticeable because "[m]unicipal ordinances are proper subjects for judicial notice." *Tollis, Inc. v. Cty. of San Diego*, 505 F.3d 935, 938 n.1 (9th Cir. 2007).

**Exhibit C** is also judicially noticeable because it is posted on an official government web site. *See Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998-99 (9th Cir. 2010) (taking judicial notice of information contained on a government web sites); *Paralyzed Veterans of America v. McPherson*, No. C 06-4670 SBA, 2008 WL 4183981, at *5 (N.D. Cal. Sept. 9, 2008) (noting that "information on government agency websites [has] often been treated as proper subjects for judicial notice"). Thus, the statements of government agencies contained within this exhibit are not subject to reasonable dispute, as the statements "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2).

Dated:  January 19, 2018

Respectfully submitted,

CHAD A. READLER
Acting Assistant Attorney General

Defs' Request for Judicial Notice
No. 3:17-cv-4642-WHO

1

2
BRIAN STRETCH
United States Attorney

3

4
JOHN R. TYLER
Assistant Director

5
/s/ W. Scott Simpson

6
_____
W. SCOTT SIMPSON (Va. Bar #27487)

7

8
Attorneys, Department of Justice
Civil Division, Room 7210
Federal Programs Branch

9
20 Massachusetts Avenue, NW
Washington, D.C. 20530

10
Telephone:   (202) 514-3495

11
Facsimile:    (202) 616-8470
E-mail:        scott.simpson@usdoj.gov

12

13
COUNSEL FOR DEFENDANTS

14
JEFFERSON B. SESSIONS III, Attorney
General of the United States; ALAN R.

15
HANSON, Principal Deputy Assistant Attorney
General; and U.S. DEPARTMENT OF

16
JUSTICE

17

18

19

20

21

22

23

24

25

26

27

28

4

Exhibit A

Print

San Francisco Administrative Code

# CHAPTER 12H:
# IMMIGRATION STATUS

Sec. 12H.1.      City and County of Refuge.
Sec. 12H.2.      Use of City Funds Prohibited.
Sec. 12H.3.      Clerk of Board to Transmit Copies of this Chapter; Informing City
                 Employees.
Sec. 12H.4.      Enforcement.
Sec. 12H.5.      City Undertaking Limited to Promotion of General Welfare.
Sec. 12H.6.      Severability.

## SEC. 12H.1.  CITY AND COUNTY OF REFUGE.

It is hereby affirmed that the City and County of San Francisco is a City and County of Refuge.

(Added by Ord. 375-89, App. 10/24/89)

## SEC. 12H.2.  USE OF CITY FUNDS PROHIBITED.

No department, agency, commission, officer, or employee of the City and County of San Francisco shall use any City funds or resources to assist in the enforcement of Federal immigration law or to gather or disseminate information regarding release status of individuals or any other such personal information as defined in Chapter 12I in the City and County of San Francisco unless such assistance is required by Federal or State statute, regulation, or court decision. The prohibition set forth in this Chapter 12H shall include, but shall not be limited to:

(a)   Assisting or cooperating, in one's official capacity, with any investigation, detention, or arrest procedures, public or clandestine, conducted by the Federal agency charged with enforcement of the Federal immigration law and relating to alleged violations of the civil provisions of the Federal immigration law, except as permitted under Administrative Code Section 12I.3.

(b)   Assisting or cooperating, in one's official capacity, with any investigation, surveillance, or gathering of information conducted by foreign governments, except for cooperation related to an alleged violation of City and County, State, or Federal criminal laws.

(c)   Requesting information about, or disseminating information, in one's official capacity, regarding the release status of any individual or any other such personal information as defined in Chapter 12I, except as permitted under Administrative Code Section 12I.3, or conditioning the provision of services or benefits by the City and County of San Francisco upon immigration

status, except as required by Federal or State statute or regulation, City and County public assistance criteria, or court decision.

(d)   Including on any application, questionnaire, or interview form used in relation to benefits, services, or opportunities provided by the City and County of San Francisco any question regarding immigration status other than those required by Federal or State statute, regulation, or court decision. Any such questions existing or being used by the City and County at the time this Chapter is adopted shall be deleted within sixty days of the adoption of this Chapter.

(Added by Ord. 375-89, App. 10/24/89; amended by Ord. 228-09, File No. 091032, App. 10-28-2009; Ord. 96-16 , File No. 160022, App. 6/17/2016, Eff. 7/17/2016)

## SEC. 12H.2-1.  [REPEALED.]

(Added by Ord. 282-92, App. 9/4/92; amended by Ord. 238-93, App. 8/4/93; Ord. 228-09, File No. 091032, App. 10-28-2009; repealed by Ord. 96-16 , File No. 160022, App. 6/17/2016, Eff. 7/17/2016)

## SEC. 12H.3.  CLERK OF BOARD TO TRANSMIT COPIES OF THIS CHAPTER; INFORMING CITY EMPLOYEES.

The Clerk of the Board of Supervisors shall send copies of this Chapter, including any future amendments thereto that may be made, to every department, agency and commission of the City and County of San Francisco, to California's United States Senators, and to the California Congressional delegation, the Commissioner of the Federal agency charged with enforcement of the Federal immigration law, the United States Attorney General, and the Secretary of State and the President of the United States. Each appointing officer of the City and County of San Francisco shall inform all employees under her or his jurisdiction of the prohibitions in this ordinance, the duty of all of her or his employees to comply with the prohibitions in this ordinance, and that employees who fail to comply with the prohibitions of the ordinance shall be subject to appropriate disciplinary action. Each City and County employee shall be given a written directive with instructions for implementing the provisions of this Chapter.

(Added by Ord. 375-89, App. 10/24/89; Ord. 228-09, File No. 091032, App. 10-28-2009)

## SEC. 12H.4.  ENFORCEMENT.

The Human Rights Commission shall review the compliance of the City and County departments, agencies, commissions and employees with the mandates of this ordinance in particular instances in which there is question of noncompliance or when a complaint alleging noncompliance has been lodged.

(Added by Ord. 375-89, App. 10/24/89)

## SEC. 12H.5.  CITY UNDERTAKING LIMITED TO PROMOTION OF GENERAL WELFARE.

In undertaking the adoption and enforcement of this Chapter, the City is assuming an undertaking only to promote the general welfare. This Chapter is not intended to create any new rights for breach of which the City is liable in money damages to any person who claims that

Case 3:17-cv-04642-WHO   Document 66-1   Filed 01/19/18   Page 8 of 82

such breach proximately caused injury. This section shall not be construed to limit or proscribe any other existing rights or remedies possessed by such person.

(Added by Ord. 375-89, App. 10/24/89)

## SEC. 12H.6.  SEVERABILITY.

If any part of this ordinance, or the application thereof, is held to be invalid, the remainder of this ordinance shall not be affected thereby, and this ordinance shall otherwise continue in full force and effect. To this end, the provisions of this ordinance, and each of them, are severable.

(Added by Ord. 375-89, App. 10/24/89)

Exhibit B

Print

San Francisco Administrative Code

# CHAPTER 12I:
# CIVIL IMMIGRATION DETAINERS

Sec. 12I.1.        Findings.
Sec. 12I.2.        Definitions.
Sec. 12I.3.        Restrictions on Law Enforcement Officials.
Sec. 12I.4.        Purpose of this Chapter.
Sec. 12I.5.        Semiannual Report.
Sec. 12I.6.        Severability.
Sec. 12I.7.        Undertaking for the General Welfare.

## SEC. 12I.1.  FINDINGS.

The City and County of San Francisco (the "City") is home to persons of diverse racial, ethnic, and national backgrounds, including a large immigrant population. The City respects, upholds, and values equal protection and equal treatment for all of our residents, regardless of immigration status. Fostering a relationship of trust, respect, and open communication between City employees and City residents is essential to the City's core mission of ensuring public health, safety, and welfare, and serving the needs of everyone in the community, including immigrants. The purpose of this Chapter 12I, as well as of Administrative Code Chapter 12H, is to foster respect and trust between law enforcement and residents, to protect limited local resources, to encourage cooperation between residents and City officials, including especially law enforcement and public health officers and employees, and to ensure community security, and due process for all.

The United States Immigration and Customs Enforcement ("ICE") is responsible for enforcing the civil immigration laws. ICE's programs, including Secure Communities and its replacement, the Priority Enforcement Program ("PEP"), seek to enlist local law enforcement's voluntary cooperation and assistance in its enforcement efforts. In its description of PEP, ICE explains that all requests under PEP are for voluntary action and that any request is not an authorization to detain persons at the expense of the federal government. The federal government should not shift the financial burden of federal civil immigration enforcement, including personnel time and costs relating to notification and detention, onto local law enforcement by requesting that local law enforcement agencies continue detaining persons based on non-mandatory civil immigration detainers or cooperating and assisting with requests to notify ICE that a person will be released from local custody. It is not a wise and effective use of valuable City resources at a time when vital services are being cut.

ICE's Secure Communities program (also known as "S-Comm") shifted the burden of federal civil immigration enforcement onto local law enforcement. S-Comm came into operation after

the state sent fingerprints that state and local law enforcement agencies had transmitted to the California Department of Justice ("Cal DOJ") to positively identify the arrestees and to check their criminal history. The FBI would forward the fingerprints to the Department of Homeland Security ("DHS") to be checked against immigration and other databases. To give itself time to take a detainee into immigration custody, ICE would send an Immigration Detainer – Notice of Action (DHS Form I-247) to the local law enforcement official requesting that the local law enforcement official hold the individual for up to 48 hours after that individual would otherwise be released ("civil immigration detainers"). Civil Immigration detainers may be issued without evidentiary support or probable cause by border patrol agents, aircraft pilots, special agents, deportation officers, immigration inspectors, and immigration adjudication officers.

Given that civil immigration detainers are issued by immigration officers without judicial oversight, and the regulation authorizing civil immigration detainers provides no minimum standard of proof for their issuance, there are serious questions as to their constitutionality. Unlike criminal warrants, which must be supported by probable cause and issued by a neutral magistrate, there are no such requirements for the issuance of a civil immigration detainer. Several federal courts have ruled that because civil immigration detainers and other ICE "Notice of Action" documents are issued without probable cause of criminal conduct, they do not meet the Fourth Amendment requirements for state or local law enforcement officials to arrest and hold an individual in custody. (*Miranda-Olivares v. Clackamas Co.*, No. 3:12-cv-02317-ST *17 (D.Or. April 11, 2014) (finding that detention pursuant to an immigration detainer is a seizure that must comport with the Fourth Amendment). *See also Morales v. Chadbourne*, 996 F. Supp. 2d 19, 29 (D.R.I 2014); *Villars v. Kubiatowski*, No. 12-cv-4586 *10-12 (N.D. Ill. filed May 5, 2014).)

On December 4, 2012, the Attorney General of California, Kamala Harris, clarified the responsibilities of local law enforcement agencies under S-Comm. The Attorney General clarified that S-Comm did not require state or local law enforcement officials to determine an individual's immigration status or to enforce federal immigration laws. The Attorney General also clarified that civil immigration detainers are voluntary requests to local law enforcement agencies that do not mandate compliance. California local law enforcement agencies may determine on their own whether to comply with non-mandatory civil immigration detainers. In a June 25, 2014, bulletin, the Attorney General warned that a federal court outside of California had held a county liable for damages where it voluntarily complied with an ICE request to detain an individual, and the individual was otherwise eligible for release and that local law enforcement agencies may also be held liable for such conduct. Over 350 jurisdictions, including Washington, D.C., Cook County, Illinois, and many of California's 58 counties, have already acknowledged the discretionary nature of civil immigration detainers and are declining to hold people in their jails for the additional 48 hours as requested by ICE. Local law enforcement agencies' responsibilities, duties, and powers are regulated by state law. However, complying with non-mandatory civil immigration detainers frequently raises due process concerns.

According to Section 287.7 of Title 8 of the Code of Federal Regulations, the City is not reimbursed by the federal government for the costs associated with civil immigration detainers alone. The full cost of responding to a civil immigration detainer can include, but is not limited to, extended detention time, the administrative costs of tracking and responding to detainers, and the legal liability for erroneously holding an individual who is not subject to a civil immigration detainer. Compliance with civil immigration detainers and involvement in civil immigration enforcement diverts limited local resources from programs that are beneficial to the City.

The City seeks to protect public safety, which is founded on trust and cooperation of community residents and local law enforcement. However, civil immigration detainers and notifications regarding release undermine community trust of law enforcement by instilling fear in immigrant communities of coming forward to report crimes and cooperate with local law enforcement agencies. A 2013 study by the University of Illinois, entitled "Insecure Communities: Latino Perceptions of Police Involvement in Immigration Enforcement," found that at least 40% of Latinos surveyed are less likely to provide information to police because they fear exposing themselves, family, or friends to a risk of deportation. Indeed, civil immigration detainers have resulted in the transfer of victims of crime, including domestic violence victims, to ICE.

The City has enacted numerous laws and policies to strengthen communities and to build trust between communities and local law enforcement. Local cooperation and assistance with civil immigration enforcement undermines community policing strategies.

In 2014, DHS ended the Secure Communities program and replaced it with PEP. PEP and S-Comm share many similarities. Just as with S-Comm, PEP uses state and federal databases to check an individual's fingerprints against immigration and other databases. PEP employs a number of tactics to facilitate transfers of individuals from local jails to immigration custody.

First, PEP uses a new form (known as DHS Form I-247N), which requests notification from local jails about an individual's release date prior to his or her release from local custody. As with civil immigration detainers, these notification requests are issued by immigration officers without judicial oversight, thus raising questions about local law enforcement's liability for constitutional violations if any person is overdetained when immigration agents are unable to be present at the time of the person's release from local custody.

Second, under PEP, ICE will continue to issue civil immigration detainer requests where local law enforcement officials are willing to respond to the requests, and in instances of "special circumstances," a term that has yet to be defined by DHS. Despite federal courts finding civil immigration detainers do not meet Fourth Amendment requirements, local jurisdictions are often unable to confirm whether or not a detention request is supported by probable cause or has been reviewed by a neutral magistrate.

The increase in information-sharing between local law enforcement and immigration officials raises serious concerns about privacy rights. Across the country, including in the California Central Valley, there has been an increase of ICE agents stationed in jails, who often have unrestricted access to jail databases, booking logs, and other documents that contain personal information of all jail inmates.

The City has an interest in ensuring that confidential information collected in the course of carrying out its municipal functions, including but not limited to public health programs and criminal investigations, is not used for unintended purposes that could hamper collection of information vital to those functions. To carry out public health programs, the City must be able to reliably collect confidential information from all residents. To solve crimes and protect the public, local law enforcement depends on the cooperation of all City residents. Information gathering and cooperation may be jeopardized if release of personal information results in a person being taken into immigration custody.

In late 2015, Pedro Figueroa, an immigrant father of an 8-year-old U.S. citizen, sought the San Francisco Police Department's help in locating his stolen vehicle. When Mr. Figueroa went to the police station to retrieve his car, which police had located, he was detained for some time by

police officers before being released, and an ICE agent was waiting to take him into immigration custody immediately as he left the police station. It was later reported that both the Police Department and the San Francisco Sheriff's Department had contact with ICE officials while Mr. Figueroa was at the police station. He spent over two months in an immigration detention facility and remains in deportation proceedings. Mr. Figueroa's case has raised major concerns about local law enforcement's relationship with immigration authorities, and has weakened the immigrant community's confidence in policing practices. Community cooperation with local law enforcement is critical to investigating and prosecuting crimes. Without the cooperation of crime victims – like Mr. Figueroa – and witnesses, local law enforcement's ability to investigate and prosecute crime, particularly in communities with large immigrant populations, will be seriously compromised.

(Added by Ord. 204-13, File No. 130764, App. 10/8/2013, Eff. 11/7/2013; amended by Ord. 96-16 , File No. 160022, App. 6/17/2016, Eff. 7/17/2016)

(Former Sec. 12I.1 added by Ord. 391-90, App. 12/6/90; amended by Ord. 409-97, App. 10/31/97; Ord. 38-01, File No. 010010, App. 3/16/2001; repealed by Ord. 171-03, File No. 030422, App. 7/3/2003)

## SEC. 12I.2.  DEFINITIONS.

"Administrative warrant" means a document issued by the federal agency charged with the enforcement of the Federal immigration law that is used as a non-criminal, civil warrant for immigration purposes.

"Eligible for release from custody" means that the individual may be released from custody because one of the following conditions has occurred:

(a)  All criminal charges against the individual have been dropped or dismissed.

(b)  The individual has been acquitted of all criminal charges filed against him or her.

(c)  The individual has served all the time required for his or her sentence.

(d)  The individual has posted a bond, or has been released on his or her own recognizance.

(e)  The individual has been referred to pre-trial diversion services.

(f)  The individual is otherwise eligible for release under state or local law.

"Civil immigration detainer" means a non-mandatory request issued by an authorized federal immigration officer under Section 287.7 of Title 8 of the Code of Federal Regulations, to a local law enforcement official to maintain custody of an individual for a period not to exceed 48 hours and advise the authorized federal immigration officer prior to the release of that individual.

"Convicted" means the state of having been proved guilty in a judicial proceeding, unless the convictions have been expunged or vacated pursuant to applicable law. The date that an individual is Convicted starts from the date of release.

"Firearm" means a device, designed to be used as a weapon, from which is expelled through a barrel, a projectile by the force of an explosion or other form of combustion as defined in Penal Code Section 16520.

"Law enforcement official" means any City Department or officer or employee of a City Department, authorized to enforce criminal statutes, regulations, or local ordinances; operate jails

or maintain custody of individuals in jails; and operate juvenile detention facilities or maintain custody of individuals in juvenile detention facilities.

"Notification request" means a non-mandatory request issued by an authorized federal immigration officer to a local law enforcement official asking for notification to the authorized immigration officer of an individual's release from local custody prior to the release of an individual from local custody. Notification requests may also include informal requests for release information by the Federal agency charged with enforcement of the Federal immigration law.

"Personal information" means any confidential, identifying information about an individual, including, but not limited to, home or work contact information, and family or emergency contact information.

"Serious Felony" means all serious felonies listed under Penal Code Section 1192.7(c) that also are defined as violent felonies under Penal Code Section 667.5(c); rape as defined in Penal Code Sections 261, and 262; exploding a destructive device with intent to injure as defined in Penal Code Section 18740; assault on a person with caustic chemicals or flammable substances as defined in Penal Code Section 244; shooting from a vehicle at a person outside the vehicle or with great bodily injury as defined in Penal Code Sections 26100(c) and (d).

"Violent Felony" means any crime listed in Penal Code Section 667.5(c); human trafficking as defined in Penal Code Section 236.1; felony assault with a deadly weapon as defined in Penal Code Section 245; any crime involving use of a firearm, assault weapon, machine gun, or .50 BMG rifle, while committing or attempting to commit a felony that is charged as a sentencing enhancement as listed in Penal Code Sections 12022.4 and 12022.5.

(Added by Ord. 204-13, File No. 130764, App. 10/8/2013, Eff. 11/7/2013; amended by Ord. 96-16 , File No. 160022, App. 6/17/2016, Eff. 7/17/2016)

(Former Sec. 12I.2 added by Ord. 391-90, App. 12/6/90; amended by Ord. 278-96, App. 7/3/96; Ord. 409-97, App. 10/31/97; Ord. 38-01, File No. 010010, App. 3/16/2001; repealed by Ord. 171-03, File No. 030422, App. 7/3/2003)

## SEC. 12I.3.  RESTRICTIONS ON LAW ENFORCEMENT OFFICIALS.

(a)   Except as provided in subsection (b), a law enforcement official shall not detain an individual on the basis of a civil immigration detainer after that individual becomes eligible for release from custody.

(b)   Law enforcement officials may continue to detain an individual in response to a civil immigration detainer for up to 48 hours after that individual becomes eligible for release if the continued detention is consistent with state and federal law, and the individual meets both of the following criteria:

(1)   The individual has been Convicted of a Violent Felony in the seven years immediately prior to the date of the civil immigration detainer; and

(2)   A magistrate has determined that there is probable cause to believe the individual is guilty of a Violent Felony and has ordered the individual to answer to the same pursuant to Penal Code Section 872.

In determining whether to continue to detain an individual based solely on a civil immigration detainer as permitted in this subsection (b), law enforcement officials shall consider evidence of the individual's rehabilitation and evaluate whether the individual poses a public safety risk. Evidence of rehabilitation or other mitigating factors to consider includes, but is not limited to: the individual's ties to the community, whether the individual has been a victim of any crime, the individual's contribution to the community, and the individual's participation in social service or rehabilitation programs.

This subsection (b) shall expire by operation of law on October 1, 2016, or upon a resolution passed by the Board of Supervisors that finds for purposes of this Chapter, the federal government has enacted comprehensive immigration reform that diminishes the need for this subsection (b), whichever comes first.

(c)   Except as provided in subsection (d), a law enforcement official shall not respond to a federal immigration officer's notification request.

(d)   Law Enforcement officials may respond to a federal immigration officer's notification request if the individual meets both of the following criteria:

(1)   The individual either:

(A)   has been Convicted of a Violent Felony in the seven years immediately prior to the date of the notification request; or

(B)   has been Convicted of a Serious Felony in the five years immediately prior to the date of the notification request; or

(C)   has been Convicted of three felonies identified in Penal Code sections 1192.7(c) or 667.5(c), or Government Code sections 7282.5(a)(2) or 7282.5(a)(3), other than domestic violence, arising out of three separate incidents in the five years immediately prior to the date of the notification request; and

(2)   A magistrate has determined that there is probable cause to believe the individual is guilty of a felony identified in Penal Code sections 1192.7(c) or 667.5(c), or Government Code sections 7282.5(a)(2) or 7282.5(a)(3), other than domestic violence, and has ordered the individual to answer to the same pursuant to Penal Code Section 872.

In determining whether to respond to a notification request as permitted by this subsection (d), law enforcement officials shall consider evidence of the individual's rehabilitation and evaluate whether the individual poses a public safety risk. Evidence of rehabilitation or other mitigating factors to consider includes, but is not limited to, the  individual's ties to the community, whether the individual has been a victim of any crime, the individual's contribution to the community, and the individual's participation in social service or rehabilitation programs.

(e)   Law enforcement officials shall not arrest or detain an individual, or provide any individual's personal information to a federal immigration officer, on the basis of an administrative warrant, prior deportation order, or other civil immigration document based solely on alleged violations of the civil provisions of immigration laws.

(f)   Law enforcement officials shall make good faith efforts to seek federal reimbursement for all costs incurred in continuing to detain an individual, after that individual becomes eligible for release, in response each civil immigration detainer.

(Added by Ord. 204-13, File No. 130764, App. 10/8/2013, Eff. 11/7/2013; amended by Ord. 96-16 , File No. 160022, App. 6/17/2016, Eff. 7/17/2016)

(Former Sec. 12I.3 added by Ord. 391-90, App. 12/6/90; amended by Ord. 409-97, App. 10/31/97; Ord. 38-01, File No. 010010, App. 3/16/2001; repealed by Ord. 171-03, File No. 030422, App. 7/3/2003)

## SEC. 12I.4.  PURPOSE OF THIS CHAPTER.

The intent of this Chapter 12I is to address requests for non-mandatory civil immigration detainers, voluntary notification of release of individuals, transmission of personal information, and civil immigration documents based solely on alleged violations of the civil provisions of immigration laws. Nothing in this Chapter shall be construed to apply to matters other than those relating to federal civil immigration detainers, notification of release of individuals, transmission of personal information, or civil immigration documents, based solely on alleged violations of the civil provisions of immigration laws. In all other respects, local law enforcement agencies may continue to collaborate with federal authorities to protect public safety. This collaboration includes, but is not limited to, participation in joint criminal investigations that are permitted under local policy or applicable city or state law.

(Added by Ord. 204-13, File No. 130764, App. 10/8/2013, Eff. 11/7/2013; amended by Ord. 96-16 , File No. 160022, App. 6/17/2016, Eff. 7/17/2016)

(Former Sec. 12I.4 added by Ord. 391-90, App. 12/6/90; amended by Ord. 409-97, App. 10/31/97; Ord. 38-01, File No. 010010, App. 3/16/2001; repealed by Ord. 171-03, File No. 030422, App. 7/3/2003)

## SEC. 12I.5.  SEMIANNUAL REPORT.

By no later than July 1, 2014, the Sheriff and Juvenile Probation Officer shall each provide to the Board of Supervisors and the Mayor a written report stating the number of detentions that were solely based on civil immigration detainers during the first six months following the effective date of this Chapter, and detailing the rationale behind each of those civil immigration detainers. Thereafter, the Sheriff and Juvenile Probation Officer shall each submit a written report to the Board of Supervisors and the Mayor, by January 1st and July 1st of each year, addressing the following issues for the time period covered by the report:

(a)   a description of all communications received from the Federal agency charged with enforcement of the Federal immigration law, including but not limited to the number of civil immigration detainers, notification requests, or other types of communications.

(b)   a description of any communications the Department made to the Federal agency charged with enforcement of the Federal immigration law, including but not limited to any Department's responses to inquires as described in subsection 12I.5 and the Department's determination of the applicability of subsections 12I.3(b), 12I.3(d) and 12I.3(e).

(Added by Ord. 204-13, File No. 130764, App. 10/8/2013, Eff. 11/7/2013; amended by Ord. 96-16 , File No. 160022, App. 6/17/2016, Eff. 7/17/2016)

(Former Sec. 12I.5 added by Ord. 391-90, App. 12/6/90; amended by Ord. 304-92, App. 9/29/92; Ord. 409-97, App. 10/31/97; Ord. 38-01, File No. 010010, App. 3/16/2001; repealed by Ord. 171-03, File No. 030422, App. 7/3/2003)

## SEC. 12I.6.  SEVERABILITY.

If any section, subsection, sentence, clause, phrase, or word of this Chapter 12I or it[1] application, is for any reason held to be invalid or unconstitutional by a decision of any court of

competent jurisdiction, such decision shall not affect the validity of the remaining portions of this Chapter 12I. The Board of Supervisors hereby declares that it would have passed this Chapter 12I and each and every section, subsection, sentence, clause, phrase, and word not declared invalid or unconstitutional without regard to whether any other portion of this Chapter 12I would be subsequently declared invalid or unconstitutional.

(Added by Ord. 204-13, File No. 130764, App. 10/8/2013, Eff. 11/7/2013)

(Former Sec. 12I.6 added by Ord. 391-90, App. 12/6/90; amended by Ord. 409-97, App. 10/31/97; Ord. 38-01, File No. 010010, App. 3/16/2001; repealed by Ord. 171-03, File No. 030422, App. 7/3/2003)

**CODIFICATION NOTE**

1. So in Ord. 204-13.

## SEC. 12I.7.  UNDERTAKING FOR THE GENERAL WELFARE.

In enacting and implementing this Chapter 12I the City is assuming an undertaking only to promote the general welfare. It is not assuming, nor is it imposing on its officers and employees, an obligation for breach of which it is liable in money damages to any person who claims that such breach proximately caused injury.

(Added by Ord. 204-13, File No. 130764, App. 10/8/2013, Eff. 11/7/2013)

(Former Sec. 12I.7 added by Ord. 391-90, App. 12/6/90; amended by Ord. 38-01, File No. 010010, App. 3/16/2001; repealed by Ord. 171-03, File No. 030422, App. 7/3/2003)

## SEC. 12I.8.

(Added by Ord. 391-90, App. 12/6/90; amended by Ord. 409-97, App. 10/31/97; Ord. 38-01, File No. 010010, App. 3/16/2001; repealed by Ord. 171-03, File No. 030422, App. 7/3/2003)

## SEC. 12I.10.

(Added by Ord. 391-90, App. 12/6/90; amended by Ord. 38-01, File No. 010010, App. 3/16/2001; repealed by Ord. 171-03, File No. 030422, App. 7/3/2003)

## SEC. 12I.11.

(Added by Ord. 391-90, App. 12/6/90; amended by Ord. 38-01, File No. 010010, App. 3/16/2001; repealed by Ord. 171-03, File No. 030422, App. 7/3/2003)

Exhibit C

JUSTICE NEWS

**Department of Justice**

Office of Public Affairs

FOR IMMEDIATE RELEASE                                                    Tuesday, July 25, 2017

## Attorney General Sessions Announces Immigration Compliance Requirements for Edward Byrne Memorial Justice Assistance Grant Programs

The Department of Justice today posted a solicitation for the Edward Byrne Memorial Justice Assistance Grant Programs ("Byrne JAG"). Recipients for FY 2017 will be notified of new conditions of their grants that will increase information sharing between federal, state, and local law enforcement, ensuring that federal immigration authorities have the information they need to enforce immigration laws and keep our communities safe.

"So-called 'sanctuary' policies make all of us less safe because they intentionally undermine our laws and protect illegal aliens who have committed crimes," Attorney General Jeff Sessions said. "These policies also encourage illegal immigration and even human trafficking by perpetuating the lie that in certain cities, illegal aliens can live outside the law. This can have tragic consequences, like the 10 deaths we saw in San Antonio this weekend. As part of accomplishing the Department of Justice's top priority of reducing violent crime, we must encourage these 'sanctuary' jurisdictions to change their policies and partner with federal law enforcement to remove criminals. From now on, the Department will only provide Byrne JAG grants to cities and states that comply with federal law, allow federal immigration access to detention facilities, and provide 48 hours notice before they release an illegal alien wanted by federal authorities. This is consistent with long-established cooperative principles among law enforcement agencies. This is what the American people should be able to expect from their cities and states, and these long overdue requirements will help us take down MS-13 and other violent transnational gangs, and make our country safer."

**Attachment(s):**
Download Byrne JAG Grant Policy Backgrounder

**Topic(s):**
Grants
Immigration

**Component(s):**
Office of the Attorney General

**Press Release Number:**
17-826

*Updated November 8, 2017*

Exhibit D



**U.S. Department of Justice**

Office of Justice Programs

Bureau of Justice Assistance

Office of Justice Programs                                    *Washington, D.C.  20531*

August 26, 2016

The Honorable Edwin Lee
City and County of San Francisco
1 Dr. Carlton Goodlett Place
Suite 496– City Hall
San Francisco, CA 94102–4676

Dear Mayor Lee:

On behalf of Attorney General Loretta Lynch, it is my pleasure to inform you that the Office of Justice Programs has approved your application for funding under the FY 16 Edward Byrne Memorial Justice Assistance Grant (JAG) Program - Local Solicitation in the amount of $522,943 for City and County of San Francisco.

Enclosed you will find the Grant Award and Special Conditions documents.  This award is subject to all administrative and financial requirements, including the timely submission of all financial and programmatic reports, resolution of all interim audit findings, and the maintenance of a minimum level of cash-on-hand.  Should you not adhere to these requirements, you will be in violation of the terms of this agreement and the award will be subject to termination for cause or other administrative action as appropriate.

If you have questions regarding this award, please contact:

- Program Questions, Gale Farquhar, Program Manager at (202) 598-9522; and

- Financial Questions, the Office of the Chief Financial Officer, Customer Service Center (CSC) at
  (800) 458-0786, or you may contact the CSC at ask.ocfo@usdoj.gov.

Congratulations, and we look forward to working with you.

Sincerely,

Denise O'Donnell
Director

Enclosures



# OFFICE FOR CIVIL RIGHTS

Office of Justice Programs

U.S. Department of Justice

810 7th Street, NW
Washington, DC 20531

Tel: (202) 307-0690
TTY: (202) 307-2027
E-mail: askOCR@usdoj.gov
Website: www.ojp.usdoj.gov/ocr

---

August 26, 2016

The Honorable Edwin Lee
City and County of San Francisco
1 Dr. Carlton Goodlett Place
Suite 496– City Hall
San Francisco, CA 94102-4676

Dear Mayor Lee:

Congratulations on your recent award. In establishing financial assistance programs, Congress linked the receipt of federal funding to compliance with federal civil rights laws. The Office for Civil Rights (OCR), Office of Justice Programs (OJP), U.S. Department of Justice (DOJ) is responsible for ensuring that recipients of financial assistance from the OJP, the Office of Community Oriented Policing Services (COPS), and the Office on Violence Against Women (OVW) comply with the applicable federal civil rights laws. We at the OCR are available to help you and your organization meet the civil rights requirements that come with DOJ funding.

**Ensuring Access to Federally Assisted Programs**

Federal laws that apply to recipients of financial assistance from the DOJ prohibit discrimination on the basis of race, color, national origin, religion, sex, or disability in funded programs or activities, not only in employment but also in the delivery of services or benefits. A federal law also prohibits recipients from discriminating on the basis of age in the delivery of services or benefits.

In March of 2013, President Obama signed the Violence Against Women Reauthorization Act of 2013. The statute amends the Violence Against Women Act of 1994 (VAWA) by including a nondiscrimination grant condition that prohibits discrimination based on actual or perceived race, color, national origin, religion, sex, disability, sexual orientation, or gender identity. The new nondiscrimination grant condition applies to certain programs funded after October 1, 2013. The OCR and the OVW have developed answers to some frequently asked questions about this provision to assist recipients of VAWA funds to understand their obligations. The Frequently Asked Questions are available at http://ojp.gov/about/ocr/vawafaqs.htm.

**Enforcing Civil Rights Laws**

All recipients of federal financial assistance, regardless of the particular funding source, the amount of the grant award, or the number of employees in the workforce, are subject to prohibitions against unlawful discrimination. Accordingly, the OCR investigates recipients that are the subject of discrimination complaints from both individuals and groups. In addition, based on regulatory criteria, the OCR selects a number of recipients each year for compliance reviews, audits that require recipients to submit data showing that they are providing services equitably to all segments of their service population and that their employment practices meet equal opportunity standards.

**Providing Services to Limited English Proficiency (LEP) Individuals**

In accordance with DOJ guidance pertaining to Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, recipients of federal financial assistance must take reasonable steps to provide meaningful access to their programs and activities for persons with limited English proficiency (LEP). See U.S. Department of Justice, Guidance to Federal Financial Assistance Recipients Regarding Title VI Prohibition Against National Origin Discrimination Affecting Limited English Proficient Persons, 67 Fed. Reg. 41,455 (2002). For more information on the civil rights responsibilities that recipients have in providing language services to LEP individuals, please see the website http://www.lep.gov.

**Ensuring Equal Treatment for Faith-Based Organizations**

The DOJ regulation, Equal Treatment for Faith-Based Organizations, 28 C.F.R. pt. 38, requires State Administering Agencies (SAAs) to treat faith-based organizations the same as any other applicant or recipient. The regulation prohibits SAAs from making awards or grant administration decisions on the basis of an organization's religious character or affiliation, religious name, or the religious composition of its board of directors.

The regulation also prohibits faith-based organizations from using financial assistance from the DOJ to fund inherently (or explicitly) religious activities. While faith-based organizations can engage in non-funded inherently religious activities, they must hold them separately from the program funded by the DOJ, and recipients cannot compel beneficiaries to participate in them. The Equal Treatment Regulation also makes clear that organizations participating in programs funded by the DOJ are not permitted to discriminate in the provision of services on the basis of a beneficiary's religion. For more information on the regulation, please see the OCR's website at http://www.ojp.usdoj.gov/about/ocr/equal_fbo.htm.

SAAs and faith-based organizations should also note that the Omnibus Crime Control and Safe Streets Act (Safe Streets Act) of 1968, as amended, 42 U.S.C. § 3789d(c); the Victims of Crime Act of 1984, as amended, 42 U.S.C. § 10604(e); the Juvenile Justice and Delinquency Prevention Act of 1974, as amended, 42 U.S.C. § 5672(b); and VAWA, Pub. L. No. 113-4, sec. 3(b)(4), 127 Stat. 54, 61-62 (to be codified at 42 U.S.C. § 13925(b)(13)) contain prohibitions against discrimination on the basis of religion in employment. Despite these nondiscrimination provisions, the DOJ has concluded that it may construe the Religious Freedom Restoration Act (RFRA) on a case-by-case basis to permit some faith-based organizations to receive DOJ funds while taking into account religion when hiring staff, even if the statute that authorizes the funding program generally forbids recipients from considering religion in employment decisions. Please consult with the OCR if you have any questions about the regulation or the application of RFRA to the statutes that prohibit discrimination in employment.

**Using Arrest and Conviction Records in Making Employment Decisions**

The OCR issued an advisory document for recipients on the proper use of arrest and conviction records in making hiring decisions. See Advisory for Recipients of Financial Assistance from the U.S. Department of Justice on the U.S. Equal Employment Opportunity Commission's Enforcement Guidance: Consideration of Arrest and Conviction Records in Employment Decisions Under Title VII of the Civil Rights Act of 1964 (June 2013), available at http://www.ojp.usdoj.gov//about/ocr/pdfs/UseofConviction_Advisory.pdf. Recipients should be mindful that the misuse of arrest or conviction records to screen either applicants for employment or employees for retention or promotion may have a disparate impact based on race or national origin, resulting in unlawful employment discrimination. In light of the Advisory, recipients should consult local counsel in reviewing their employment practices. If warranted, recipients should also incorporate an analysis of the use of arrest and conviction records in their Equal Employment Opportunity Plans (EEOPs) (see below).

**Complying with the Safe Streets Act**

An organization that is a recipient of financial assistance subject to the nondiscrimination provisions of the Safe Streets Act, must meet two obligations: (1) complying with the federal regulation pertaining to the development of an EEOP (see 28 C.F.R. pt. 42, subpt. E) and (2) submitting to the OCR findings of discrimination (see 28 C.F.R. §§ 42.204(c), .205(c)(5)).

**Meeting the EEOP Requirement**

If your organization has less than fifty employees or receives an award of less than $25,000 or is a nonprofit organization, a medical institution, an educational institution, or an Indian tribe, then it is exempt from the EEOP requirement.  To claim the exemption, your organization must complete and submit Section A of the Certification Form, which is available online at http://www.ojp.usdoj.gov/about/ocr/pdfs/cert.pdf.

If your organization is a government agency or private business and receives an award of $25,000 or more, but less than $500,000, and has fifty or more employees (counting both full- and part-time employees but excluding political appointees), then it has to prepare a Utilization Report (formerly called an EEOP Short Form), but it does not have to submit the report to the OCR for review.  Instead, your organization has to maintain the Utilization Report on file and make it available for review on request.  In addition, your organization has to complete Section B of the Certification Form and return it to the OCR.  The Certification Form is available at http://www.ojp.usdoj.gov/about/ocr/pdfs/cert.pdf.

If your organization is a government agency or private business and has received an award for $500,000 or more and has fifty or more employees (counting both full- and part-time employees but excluding political appointees), then it has to prepare a Utilization Report (formerly called an EEOP Short Form) and submit it to the OCR for review within sixty days from the date of this letter.  For assistance in developing a Utilization Report, please consult the OCR's website at http://www.ojp.usdoj.gov/about/ocr/eeop.htm.  In addition, your organization has to complete Section C of the Certification Form and return it to the OCR.  The Certification Form is available at http://www.ojp.usdoj.gov/about/ocr/pdfs/cert.pdf.

To comply with the EEOP requirements, you may request technical assistance from an EEOP specialist at the OCR by telephone at (202) 307-0690, by TTY at (202) 307-2027, or by e-mail at EEOsubmisson@usdoj.gov.

**Meeting the Requirement to Submit Findings of Discrimination**

If in the three years prior to the date of the grant award, your organization has received an adverse finding of discrimination based on race, color, national origin, religion, or sex, after a due-process hearing, from a state or federal court or from a state or federal administrative agency, your organization must send a copy of the finding to the OCR.

**Ensuring the Compliance of Subrecipients**

SAAs must have standard assurances to notify subrecipients of their civil rights obligations, written procedures to address discrimination complaints filed against subrecipients, methods to monitor subrecipients' compliance with civil rights requirements, and a program to train subrecipients on applicable civil rights laws.  In addition, SAAs must submit to the OCR every three years written Methods of Administration (MOA) that summarize the policies and procedures that they have implemented to ensure the civil rights compliance of subrecipients.  For more information on the MOA requirement, see http://www.ojp.usdoj.gov/funding/other_requirements.htm.

If the OCR can assist you in any way in fulfilling your organization's civil rights responsibilities as a recipient of federal financial assistance, please contact us.

Sincerely,

Michael L. Alston
Director

   cc:   Grant Manager
           Financial Analyst

| U.S. Department of Justice<br>Office of Justice Programs<br>**Bureau of Justice Assistance** | **Grant** | PAGE 1 OF 13 |
|---|---|---|

| 1. RECIPIENT NAME AND ADDRESS (Including Zip Code) | 4. AWARD NUMBER: 2016-DJ-BX-0898 | | |
|---|---|---|---|
| City and County of San Francisco<br>1 Dr. Carlton Goodlett Place Suite 496– City Hall<br>San Francisco, CA 94102-4676 | 5. PROJECT PERIOD: FROM 10/01/2015 TO 09/30/2019<br>BUDGET PERIOD: FROM 10/01/2015 TO 09/30/2019 | | |
| | 6. AWARD DATE 08/26/2016 | 7. ACTION | |
| 2a. GRANTEE IRS/VENDOR NO.<br>946000484 | 8. SUPPLEMENT NUMBER<br>00 | | Initial |
| 2b. GRANTEE DUNS NO.<br>070384255 | 9. PREVIOUS AWARD AMOUNT | | $ 0 |
| 3. PROJECT TITLE<br>FY 16 JAG Program | 10. AMOUNT OF THIS AWARD | | $ 522,943 |
| | 11. TOTAL AWARD | | $ 522,943 |

| 12. SPECIAL CONDITIONS |
|---|
| THE ABOVE GRANT PROJECT IS APPROVED SUBJECT TO SUCH CONDITIONS OR LIMITATIONS AS ARE SET FORTH<br>ON THE ATTACHED PAGE(S). |

| 13. STATUTORY AUTHORITY FOR GRANT |
|---|
| This project is supported under FY16(BJA - JAG) 42 USC 3750, et seq. |

| 14 . CATALOG OF DOMESTIC FEDERAL ASSISTANCE (CFDA Number) |
|---|
| 16.738 - Edward Byrne Memorial Justice Assistance Grant Program |

| 15. METHOD OF PAYMENT |
|---|
| GPRS |

| AGENCY APPROVAL | GRANTEE ACCEPTANCE |
|---|---|
| 16. TYPED NAME AND TITLE OF APPROVING OFFICIAL | 18. TYPED NAME AND TITLE OF AUTHORIZED GRANTEE OFFICIAL |
| Denise O'Donnell<br><br>Director | Edwin Lee<br>Mayor |

| 17. SIGNATURE OF APPROVING OFFICIAL | 19. SIGNATURE OF AUTHORIZED RECIPIENT OFFICIAL | 19A. DATE |
|---|---|---|
| *Denise E O'Donnell* | | |

| AGENCY USE ONLY |
|---|

| 20. ACCOUNTING CLASSIFICATION CODES | 21. RDJUGT0505 |
|---|---|

| FISCAL<br>YEAR | FUND<br>CODE | BUD.<br>ACT. | OFC. | DIV.<br>REG. | SUB. | POMS | AMOUNT |
|---|---|---|---|---|---|---|---|
| X | B | DJ | 80 | 00 | 00 | | 522943 |

OJP FORM 4000/2 (REV. 5-87) PREVIOUS EDITIONS ARE OBSOLETE.

OJP FORM 4000/2 (REV. 4-88)



U.S. Department of Justice
Office of Justice Programs
**Bureau of Justice Assistance**

**AWARD CONTINUATION
SHEET
Grant**

PAGE  2  OF  13

| PROJECT NUMBER | 2016-DJ-BX-0898 | AWARD DATE | 08/26/2016 |
|---|---|---|---|

*SPECIAL CONDITIONS*

1.  Applicability of Part 200 Uniform Requirements

    The Uniform Administrative Requirements, Cost Principles, and Audit Requirements in 2 C.F.R. Part 200, as adopted and supplemented by the Department of Justice (DOJ) in 2 C.F.R. Part 2800 (together, the "Part 200 Uniform Requirements") apply to this 2016 award from the Office of Justice Programs (OJP).

    The Part 200 Uniform Requirements were first adopted by DOJ on December 26, 2014. If this 2016 award supplements funds previously awarded by OJP under the same award number (e.g., funds awarded in 2014 or earlier years), the Part 200 Uniform Requirements apply with respect to all funds under that award number (regardless of the award date, and regardless of whether derived from the initial award or a supplemental award) that are obligated on or after the acceptance date of this 2016 award.

    For more information and resources on the Part 200 Uniform Requirements as they relate to OJP awards and subawards ("subgrants"), see the Office of Justice Programs (OJP) website at http://ojp.gov/funding/Part200UniformRequirements.htm.

    In the event that an award-related question arises from documents or other materials prepared or distributed by OJP that may appear to conflict with, or differ in some way from, the provisions of the Part 200 Uniform Requirements, the recipient is to contact OJP promptly for clarification.

2.  Compliance with DOJ Grants Financial Guide

    The recipient agrees to comply with the Department of Justice Grants Financial Guide as posted on the OJP website (currently, the "2015 DOJ Grants Financial Guide"), including any updated version that may be posted during the period of performance.

3.  Required training for Point of Contact and all Financial Points of Contact

    Both the Point of Contact (POC) and all Financial Points of Contact (FPOCs) for this award must have successfully completed an "OJP financial management and grant administration training" by 120 days after the date of the recipient's acceptance of the award. Successful completion of such a training on or after January 1, 2015, will satisfy this condition.

    In the event that either the POC or an FPOC for this award changes during the period of performance, the new POC or FPOC must have successfully completed an "OJP financial management and grant administration training" by 120 calendar days after -- (1) the date of OJP's approval of the "Change Grantee Contact" GAN (in the case of a new POC), or (2) the date the POC enters information on the new FPOC in GMS (in the case of a new FPOC). Successful completion of such a training on or after January 1, 2015, will satisfy this condition.

    A list of OJP trainings that OJP will consider "OJP financial management and grant administration training" for purposes of this condition is available at http://www.ojp.gov/training/fmts.htm. All trainings that satisfy this condition include a session on grant fraud prevention and detection

    The recipient should anticipate that OJP will immediately withhold ("freeze") award funds if the recipient fails to comply with this condition. The recipient's failure to comply also may lead OJP to impose additional appropriate conditions on this award.

OJP FORM 4000/2 (REV. 4-88)



U.S. Department of Justice
Office of Justice Programs
**Bureau of Justice Assistance**

**AWARD CONTINUATION
SHEET
Grant**

PAGE 3 OF 13

| PROJECT NUMBER | 2016-DJ-BX-0898 | AWARD DATE | 08/26/2016 |
|---|---|---|---|

*SPECIAL CONDITIONS*

4. Requirements related to "de minimis" indirect cost rate

A recipient that is eligible under the Part 200 Uniform Requirements and other applicable law to use the "de minimis" indirect cost rate described in 2 C.F.R. 200.414(f), and that elects to use the "de minimis" indirect cost rate, must advise OJP in writing of both its eligibility and its election, and must comply with all associated requirements in the Part 200 Uniform Requirements. The "de minimis" rate may be applied only to modified total direct costs (MTDC) as defined by the Part 200 Uniform Requirements.

5. Requirement to report potentially duplicative funding

If the recipient currently has other active awards of federal funds, or if the recipient receives any other award of federal funds during the period of performance for this award, the recipient promptly must determine whether funds from any of those other federal awards have been, are being, or are to be used (in whole or in part) for one or more of the identical cost items for which funds are provided under this award. If so, the recipient must promptly notify the DOJ awarding agency (OJP or OVW, as appropriate) in writing of the potential duplication, and, if so requested by DOJ awarding agency, must seek a budget-modification or change-of-project-scope grant adjustment notice (GAN) to eliminate any inappropriate duplication of funding.

6. Requirements related to System for Award Management and Unique Entity Identifiers

The recipient must comply with applicable requirements regarding the System for Award Management (SAM), currently accessible at http://www.sam.gov. This includes applicable requirements regarding registration with SAM, as well as maintaining the currency of information in SAM.

The recipient also must comply with applicable restrictions on subawards ("subgrants") to first-tier subrecipients (first-tier "subgrantees"), including restrictions on subawards to entities that do not acquire and provide (to the recipient) the unique entity identifier required for SAM registration.

The details of the recipient's obligations related to SAM and to unique entity identifiers are posted on the OJP web site at http://ojp.gov/funding/Explore/SAM.htm (Award condition: System for Award Management (SAM) and Universal Identifier Requirements), and are incorporated by reference here.

This special condition does not apply to an award to an individual who received the award as a natural person (i.e., unrelated to any business or non-profit organization that he or she may own or operate in his or her name).

7. All subawards ("subgrants") must have specific federal authorization

The recipient, and any subrecipient ("subgrantee") at any tier, must comply with all applicable requirements for authorization of any subaward. This condition applies to agreements that -- for purposes of federal grants administrative requirements -- OJP considers a "subaward" (and therefore does not consider a procurement "contract").

The details of the requirement for authorization of any subaward are posted on the OJP web site at http://ojp.gov/funding/Explore/SubawardAuthorization.htm (Award condition: Award Condition: All subawards ("subgrants") must have specific federal authorization), and are incorporated by reference here.



U.S. Department of Justice
Office of Justice Programs
**Bureau of Justice Assistance**

**AWARD CONTINUATION
SHEET
Grant**

PAGE  4  OF  13

| PROJECT NUMBER | 2016-DJ-BX-0898 | AWARD DATE | 08/26/2016 |
|---|---|---|---|

*SPECIAL CONDITIONS*

8.  Specific post-award approval required to use a noncompetitive approach in any procurement contract that would exceed $150,000

    The recipient, and any subrecipient ("subgrantee") at any tier, must comply with all applicable requirements to obtain specific advance approval to use a noncompetitive approach in any procurement contract that would exceed the Simplified Acquisition Threshold (currently, $150,000).  This condition applies to agreements that -- for purposes of federal grants administrative requirements -- OJP considers a procurement "contract" (and therefore does not consider a subaward).

    The details of the requirement for advance approval to use a noncompetitive approach in a procurement contract under an OJP award are posted on the OJP web site at http://ojp.gov/funding/Explore/NoncompetitiveProcurement.htm (Award condition:  Specific post-award approval required to use a noncompetitive approach in a procurement contract (if contract would exceed $150,000)), and are incorporated by reference here.

9.  Requirements pertaining to prohibited conduct related to trafficking in persons (including reporting requirements and OJP authority to terminate award)

    The recipient, and any subrecipient ("subgrantee") at any tier, must comply with all applicable requirements (including requirements to report allegations) pertaining to prohibited conduct related to the trafficking of persons, whether on the part of recipients, subrecipients ("subgrantees"), or individuals defined (for purposes of this condition) as "employees" of the recipient or of any subrecipient.
    The details of the recipient's obligations related to prohibited conduct related to trafficking in persons are posted on the OJP web site at http://ojp.gov/funding/Explore/ProhibitedConduct-Trafficking.htm (Award condition:  Prohibited conduct by recipients and subrecipients related to trafficking in persons (including reporting requirements and OJP authority to terminate award)), and are incorporated by reference here.

10.  Compliance with applicable rules regarding approval, planning, and reporting of conferences, meetings, trainings, and other events

    The recipient, and any subrecipient ("subgrantee") at any tier, must comply with all applicable laws, regulations, policies, and official DOJ guidance (including specific cost limits, prior approval and reporting requirements, where applicable) governing the use of federal funds for expenses related to conferences (as that term is defined by DOJ), including the provision of food and/or beverages at such conferences, and costs of attendance at such conferences.

    Information on the pertinent DOJ definition of conferences and the rules applicable to this award appears in the DOJ Grants Financial Guide (currently, as section 3.10 of "Postaward Requirements" in the "2015 DOJ Grants Financial Guide").

11.  Requirement for data on performance and effectiveness under the award

    The recipient must collect and maintain data that measure the performance and effectiveness of activities under this award.  The data must be provided to OJP in the manner (including within the timeframes) specified by OJP in the program solicitation or other applicable written guidance.  Data collection supports compliance with the Government Performance and Results Act (GPRA) and the GPRA Modernization Act, and other applicable laws.

12.  OJP Training Guiding Principles

    Any training or training materials that the recipient -- or any subrecipient ("subgrantee") at any tier -- develops or delivers with OJP award funds must adhere to the OJP Training Guiding Principles for Grantees and Subgrantees, available at http://ojp.gov/funding/ojptrainingguidingprinciples.htm.



U.S. Department of Justice
Office of Justice Programs
**Bureau of Justice Assistance**

**AWARD CONTINUATION
SHEET
Grant**

PAGE  5  OF 13

| | | |
|---|---|---|
| PROJECT NUMBER | 2016-DJ-BX-0898 | AWARD DATE    08/26/2016 |

*SPECIAL CONDITIONS*

13.   Effect of failure to address audit issues

The recipient understands and agrees that the DOJ awarding agency (OJP or OVW, as appropriate) may withhold award funds, or may impose other related requirements, if (as determined by the DOJ awarding agency) the recipient does not satisfactorily and promptly address outstanding issues from audits required by the Part 200 Uniform Requirements (or by the terms of this award), or other outstanding issues that arise in connection with audits, investigations, or reviews of DOJ awards.

14.   The recipient agrees to comply with any additional requirements that may be imposed by the DOJ awarding agency (OJP or OVW, as appropriate) during the period of performance for this award, if the recipient is designated as "high-risk" for purposes of the DOJ high-risk grantee list.

15.   Compliance with DOJ regulations pertaining to civil rights and nondiscrimination - 28 C.F.R. Part 42

The recipient, and any subrecipient ("subgrantee") at any tier, must comply with all applicable requirements of 28 C.F.R. Part 42, specifically including any applicable requirements in Subpart E of 28 C.F.R. Part 42 that relate to an equal employment opportunity program.

16.   Compliance with DOJ regulations pertaining to civil rights and nondiscrimination - 28 C.F.R. Part 38

The recipient, and any subrecipient ("subgrantee") at any tier, must comply with all applicable requirements of 28 C.F.R. Part 38, specifically including any applicable requirements regarding written notice to program beneficiaries and prospective program beneficiaries.  Part 38 of 28 C.F.R., a DOJ regulation, was amended effective May 4, 2016.

Among other things, 28 C.F.R. Part 38 includes rules that prohibit specific forms of discrimination on the basis of religion, a religious belief, a refusal to hold a religious belief, or refusal to attend or participate in a religious practice. Part 38 also sets out rules and requirements that pertain to recipient and subrecipient ("subgrantee") organizations that engage in or conduct explicitly religious activities, as well as rules and requirements that pertain to recipients and subrecipients that are faith-based or religious organizations.

The text of the regulation, now entitled "Partnerships with Faith-Based and Other Neighborhood Organizations," is available via the Electronic Code of Federal Regulations (currently accessible at http://www.ecfr.gov/cgi-bin/ECFR?page=browse), by browsing to Title 28-Judicial Administration, Chapter 1, Part 38, under e-CFR "current" data.

17.   Restrictions on "lobbying"

Federal funds may not be used by the recipient, or any subrecipient ("subgrantee") at any tier, either directly or indirectly, to support or oppose the enactment, repeal, modification or adoption of any law, regulation, or policy, at any level of government.

Should any question arise as to whether a particular use of Federal funds by a recipient (or subrecipient) would or might fall within the scope of this prohibition, the recipient is to contact OJP for guidance, and may not proceed without the express prior written approval of OJP.



U.S. Department of Justice
Office of Justice Programs
**Bureau of Justice Assistance**

**AWARD CONTINUATION
SHEET**
**Grant**

PAGE  6  OF  13

| PROJECT NUMBER | 2016-DJ-BX-0898 | AWARD DATE | 08/26/2016 |
|---|---|---|---|

*SPECIAL CONDITIONS*

18. Compliance with general appropriations-law restrictions on the use of federal funds (FY 2016)

    The recipient, and any subrecipient ("subgrantee") at any tier, must comply with all applicable restrictions on the use of federal funds set out in federal appropriations statutes. Pertinent restrictions, including from various "general provisions" in the Consolidated Appropriations Act, 2016, are set out at http://ojp.gov/funding/Explore/FY2016-AppropriationsLawRestrictions.htm, and are incorporated by reference here.

    Should a question arise as to whether a particular use of federal funds by a recipient (or a subrecipient) would or might fall within the scope of an appropriations-law restriction, the recipient is to contact OJP for guidance, and may not proceed without the express prior written approval of OJP.

19. Reporting Potential Fraud, Waste, and Abuse, and Similar Misconduct

    The recipient and any subrecipients ("subgrantees") must promptly refer to the DOJ Office of the Inspector General (OIG) any credible evidence that a principal, employee, agent, subrecipient, contractor, subcontractor, or other person has, in connection with funds under this award -- (1) submitted a claim that violates the False Claims Act; or (2) committed a criminal or civil violation of laws pertaining to fraud, conflict of interest, bribery, gratuity, or similar misconduct.

    Potential fraud, waste, abuse, or misconduct involving or relating to funds under this award should be reported to the OIG by-- (1) mail directed to: Office of the Inspector General, U.S. Department of Justice, Investigations Division, 950 Pennsylvania Avenue, N.W. Room 4706, Washington, DC 20530; (2) e-mail to: oig.hotline@usdoj.gov; and/or (3) the DOJ OIG hotline: (contact information in English and Spanish) at (800) 869-4499 (phone) or (202) 616-9881 (fax).

    Additional information is available from the DOJ OIG website at http://www.usdoj.gov/oig.

OJP FORM 4000/2 (REV. 4-88)



U.S. Department of Justice
Office of Justice Programs
**Bureau of Justice Assistance**

**AWARD CONTINUATION SHEET**
**Grant**

PAGE 7 OF 13

| PROJECT NUMBER | 2016-DJ-BX-0898 | AWARD DATE | 08/26/2016 |

*SPECIAL CONDITIONS*

20. Restrictions and certifications regarding non-disclosure agreements and related matters

No recipient or subrecipient ("subgrantee") under this award, or entity that receives a procurement contract or subcontract with any funds under this award, may require any employee or contractor to sign an internal confidentiality agreement or statement that prohibits or otherwise restricts, or purports to prohibit or restrict, the reporting (in accordance with law) of waste, fraud, or abuse to an investigative or law enforcement representative of a federal department or agency authorized to receive such information.

The foregoing is not intended, and shall not be understood by the agency making this award, to contravene requirements applicable to Standard Form 312 (which relates to classified information), Form 4414 (which relates to sensitive compartmented information), or any other form issued by a federal department or agency governing the nondisclosure of classified information.

1. In accepting this award, the recipient--

a. represents that it neither requires nor has required internal confidentiality agreements or statements from employees or contractors that currently prohibit or otherwise currently restrict (or purport to prohibit or restrict) employees or contractors from reporting waste, fraud, or abuse as described above; and

b. certifies that, if it learns or is notified that it is or has been requiring its employees or contractors to execute agreements or statements that prohibit or otherwise restrict (or purport to prohibit or restrict), reporting of waste, fraud, or abuse as described above, it will immediately stop any further obligations of award funds, will provide prompt written notification to the federal agency making this award, and will resume (or permit resumption of) such obligations only if expressly authorized to do so by that agency.

2. If the recipient does or is authorized under this award to make subawards ("subgrants"), procurement contracts, or both--

a. it represents that--

(1) it has determined that no other entity that the recipient's application proposes may or will receive award funds (whether through a subaward ("subgrant"), procurement contract, or subcontract under a procurement contract) either requires or has required internal confidentiality agreements or statements from employees or contractors that currently prohibit or otherwise currently restrict (or purport to prohibit or restrict) employees or contractors from reporting waste, fraud, or abuse as described above; and

(2) it has made appropriate inquiry, or otherwise has an adequate factual basis, to support this representation; and

b. it certifies that, if it learns or is notified that any subrecipient, contractor, or subcontractor entity that receives funds under this award is or has been requiring its employees or contractors to execute agreements or statements that prohibit or otherwise restrict (or purport to prohibit or restrict), reporting of waste, fraud, or abuse as described above, it will immediately stop any further obligations of award funds to or by that entity, will provide prompt written notification to the federal agency making this award, and will resume (or permit resumption of) such obligations only if expressly authorized to do so by that agency.



U.S. Department of Justice
Office of Justice Programs
**Bureau of Justice Assistance**

**AWARD CONTINUATION
SHEET
Grant**

PAGE  8  OF  13

PROJECT NUMBER    2016-DJ-BX-0898          AWARD DATE     08/26/2016

*SPECIAL CONDITIONS*

21.    Compliance with 41 U.S.C. 4712 (including prohibitions on reprisal; notice to employees)

       The recipient must comply with, and is subject to, all applicable provisions of 41 U.S.C. 4712, including all applicable
       provisions that prohibit, under specified circumstances, discrimination against an employee as reprisal for the
       employee's disclosure of information related to gross mismanagement of a federal grant, a gross waste of federal funds,
       an abuse of authority relating to a federal grant, a substantial and specific danger to public health or safety, or a
       violation of law, rule, or regulation related to a federal grant.

       The recipient also must inform its employees, in writing (and in the predominant native language of the workforce), of
       employee rights and remedies under 41 U.S.C. 4712.

       Should a question arise as to the applicability of the provisions of 41 U.S.C. 4712 to this award, the recipient is to
       contact the DOJ awarding agency (OJP or OVW, as appropriate) for guidance.

22.    Encouragement of policies to ban text messaging while driving

       Pursuant to Executive Order 13513, "Federal Leadership on Reducing Text Messaging While Driving," 74 Fed. Reg.
       51225 (October 1, 2009), DOJ encourages recipients and subrecipients ("subgrantees") to adopt and enforce policies
       banning employees from text messaging while driving any vehicle during the course of performing work funded by this
       award, and to establish workplace safety policies and conduct education, awareness, and other outreach to decrease
       crashes caused by distracted drivers.

23.    The recipient agrees to comply with OJP grant monitoring guidelines, protocols, and procedures, and to cooperate with
       BJA and OCFO on all grant monitoring requests, including requests related to desk reviews, enhanced programmatic
       desk reviews, and/or site visits.  The recipient agrees to provide to BJA and OCFO all documentation necessary to
       complete monitoring tasks, including documentation related to any subawards made under this award.  Further, the
       recipient agrees to abide by reasonable deadlines set by BJA and OCFO for providing the requested documents.
       Failure to cooperate with BJA's/OCFO's grant monitoring activities may result in sanctions affecting the recipient's
       DOJ awards, including, but not limited to: withholdings and/or other restrictions on the recipient's access to grant
       funds; referral to the Office of the Inspector General for audit review; designation of the recipient as a DOJ High Risk
       grantee; or termination of an award(s).

24.    The recipient agrees to comply with applicable requirements to report first-tier subawards of $25,000 or more and, in
       certain circumstances, to report the names and total compensation of the five most highly compensated executives of
       the recipient and first-tier subrecipients of award funds.  Such data will be submitted to the FFATA Subaward
       Reporting System (FSRS).  The details of recipient obligations, which derive from the Federal Funding Accountability
       and Transparency Act of 2006 (FFATA), are posted on the Office of Justice Programs web site at
       http://ojp.gov/funding/Explore/FFATA.htm (Award condition: Reporting Subawards and Executive Compensation), and
       are incorporated by reference here.  This condition, and its reporting requirement, does not apply to grant awards made
       to an individual who received the award as a natural person (i.e., unrelated to any business or non-profit organization
       that he or she may own or operate in his or her name).

25.    Program income (as defined in the Part 200 Uniform Requirements) must be used in accordance with the provisions of
       the Part 200 Uniform Requirements.  Program income earnings and expenditures both must be reported on the quarterly
       Federal Financial Report, SF 425.



U.S. Department of Justice
Office of Justice Programs
**Bureau of Justice Assistance**

**AWARD CONTINUATION
SHEET
Grant**

PAGE  9  OF  13

| PROJECT NUMBER | 2016-DJ-BX-0898 | AWARD DATE | 08/26/2016 |

*SPECIAL CONDITIONS*

26. In order to promote information sharing and enable interoperability among disparate systems across the justice and public safety community, OJP requires the grantee to comply with DOJ's Global Justice Information Sharing Initiative (DOJ's Global) guidelines and recommendations for this particular grant. Grantee shall conform to the Global Standards Package (GSP) and all constituent elements, where applicable, as described at: http://www.it.ojp.gov/gsp_grantcondition. Grantee shall document planned approaches to information sharing and describe compliance to the GSP and appropriate privacy policy that protects shared information, or provide detailed justification for why an alternative approach is recommended.

27. To avoid duplicating existing networks or IT systems in any initiatives funded by BJA for law enforcement information sharing systems which involve interstate connectivity between jurisdictions, such systems shall employ, to the extent possible, existing networks as the communication backbone to achieve interstate connectivity, unless the grantee can demonstrate to the satisfaction of BJA that this requirement would not be cost effective or would impair the functionality of an existing or proposed IT system.

28. The recipient agrees that any information technology system funded or supported by OJP funds will comply with 28 C.F.R. Part 23, Criminal Intelligence Systems Operating Policies, if OJP determines this regulation to be applicable. Should OJP determine 28 C.F.R. Part 23 to be applicable, OJP may, at its discretion, perform audits of the system, as per the regulation.  Should any violation of 28 C.F.R. Part 23 occur, the recipient may be fined as per 42 U.S.C. 3789g(c)-(d).  Recipient may not satisfy such a fine with federal funds.

29. Grantee agrees to comply with the requirements of 28 C.F.R. Part 46 and all Office of Justice Programs policies and procedures regarding the protection of human research subjects, including obtainment of Institutional Review Board approval, if appropriate, and subject informed consent.

30. Grantee agrees to comply with all confidentiality requirements of 42 U.S.C. section 3789g and 28 C.F.R. Part 22 that are applicable to collection, use, and revelation of data or information. Grantee further agrees, as a condition of grant approval, to submit a Privacy Certificate that is in accord with requirements of 28 C.F.R. Part 22 and, in particular, section 22.23.

31. Award recipients must verify Point of Contact(POC), Financial Point of Contact (FPOC), and Authorized Representative contact information in GMS, including telephone number and e-mail address.  If any information is incorrect or has changed, a Grant Adjustment Notice (GAN) must be submitted via the Grants Management System (GMS) to document changes.

32. The grantee agrees that within 120 days of award acceptance, each current member of a law enforcement task force funded with these funds who is a task force commander, agency executive, task force officer, or other task force member of equivalent rank, will complete required online (internet-based) task force training. Additionally, all future task force members are required to complete this training once during the life of this award, or once every four years if multiple awards include this requirement. The training is provided free of charge online through BJA's Center for Task Force Integrity and Leadership (www.ctfli.org). This training addresses task force effectiveness as well as other key issues including privacy and civil liberties/rights, task force performance measurement, personnel selection, and task force oversight and accountability. When BJA funding supports a task force, a task force personnel roster should be compiled and maintained, along with course completion certificates, by the grant recipient. Additional information is available regarding this required training and access methods via BJA's web site and the Center for Task Force Integrity and Leadership (www.ctfli.org).

33. The recipient agrees to participate in BJA-sponsored training events, technical assistance events, or conferences held by BJA or its designees, upon BJA's request.

OJP FORM 4000/2 (REV. 4-88)



U.S. Department of Justice
Office of Justice Programs
**Bureau of Justice Assistance**

**AWARD CONTINUATION
SHEET
Grant**

PAGE  10  OF  13

| PROJECT NUMBER | 2016-DJ-BX-0898 | AWARD DATE | 08/26/2016 |
|---|---|---|---|

*SPECIAL CONDITIONS*

34. Approval of this award does not indicate approval of any consultant rate in excess of $650 per day. A detailed justification must be submitted to and approved by the Office of Justice Programs (OJP) program office prior to obligation or expenditure of such funds.

35. The grantee agrees to assist BJA in complying with the National Environmental Policy Act (NEPA), the National Historic Preservation Act, and other related federal environmental impact analyses requirements in the use of these grant funds, either directly by the grantee or by a subgrantee. Accordingly, the grantee agrees to first determine if any of the following activities will be funded by the grant, prior to obligating funds for any of these purposes. If it is determined that any of the following activities will be funded by the grant, the grantee agrees to contact BJA.

    The grantee understands that this special condition applies to its following new activities whether or not they are being specifically funded with these grant funds. That is, as long as the activity is being conducted by the grantee, a subgrantee, or any third party and the activity needs to be undertaken in order to use these grant funds, this special condition must first be met. The activities covered by this special condition are:
    a. New construction;
    b. Minor renovation or remodeling of a property located in an environmentally or historically sensitive area, including properties located within a 100-year flood plain, a wetland, or habitat for endangered species, or a property listed on or eligible for listing on the National Register of Historic Places;
    c. A renovation, lease, or any proposed use of a building or facility that will either (a) result in a change in its basic prior use or (b) significantly change its size;
    d. Implementation of a new program involving the use of chemicals other than chemicals that are (a) purchased as an incidental component of a funded activity and (b) traditionally used, for example, in office, household, recreational, or education environments; and
    e. Implementation of a program relating to clandestine methamphetamine laboratory operations, including the identification, seizure, or closure of clandestine methamphetamine laboratories.

    The grantee understands and agrees that complying with NEPA may require the preparation of an Environmental Assessment and/or an Environmental Impact Statement, as directed by BJA. The grantee further understands and agrees to the requirements for implementation of a Mitigation Plan, as detailed at http://www.ojp.usdoj.gov/BJA/resource/nepa.html, for programs relating to methamphetamine laboratory operations.

    Application of This Special Condition to Grantee's Existing Programs or Activities: For any of the grantee's or its subgrantees' existing programs or activities that will be funded by these grant funds, the grantee, upon specific request from BJA, agrees to cooperate with BJA in any preparation by BJA of a national or program environmental assessment of that funded program or activity.

36. The recipient is required to establish a trust fund account. (The trust fund may or may not be an interest-bearing account.) The fund, including any interest, may not be used to pay debts or expenses incurred by other activities beyond the scope of the Edward Byrne Memorial Justice Assistance Grant Program (JAG). The recipient also agrees to obligate the grant funds in the trust fund (including any interest earned) during the period of the grant and expend within 90 days thereafter. Any unobligated or unexpended funds, including interest earned, must be returned to the Office of Justice Programs at the time of closeout.

37. JAG funds may be used to purchase vests for an agency, but they may not be used as the 50% match for purposes of the Bulletproof Vest Partnership (BVP) program.



U.S. Department of Justice
Office of Justice Programs
**Bureau of Justice Assistance**

**AWARD CONTINUATION
SHEET
Grant**

PAGE 11 OF 13

| PROJECT NUMBER | 2016-DJ-BX-0898 | AWARD DATE | 08/26/2016 |

*SPECIAL CONDITIONS*

38. Ballistic-resistant and stab-resistant body armor purchased with JAG funds may be purchased at any threat level, make or model, from any distributor or manufacturer, as long as the vests have been tested and found to comply with applicable National Institute of Justice ballistic or stab standards and are listed on the NIJ Compliant Body Armor Model List (http://nij.gov). In addition, ballistic-resistant and stab-resistant body armor purchased must be American-made. The latest NIJ standard information can be found here: http://www.nij.gov/topics/technology/body-armor/safety-initiative.htm.

39. The recipient agrees to submit a signed certification that all law enforcement agencies receiving vests purchased with JAG funds have a written "mandatory wear" policy in effect. Fiscal agents and state agencies must keep signed certifications on file for any subrecipients planning to utilize JAG funds for ballistic-resistant and stab-resistant body armor purchases. This policy must be in place for at least all uniformed officers before any JAG funding can be used by the agency for body armor. There are no requirements regarding the nature of the policy other than it be a mandatory wear policy for all uniformed officers while on duty.

40. The recipient agrees to monitor subawards under this JAG award in accordance with all applicable statutes, regulations, OMB circulars, and guidelines, including the DOJ Financial Guide, and to include the applicable conditions of this award in any subaward. The recipient is responsible for oversight of subrecipient spending and monitoring of specific outcomes and benefits attributable to use of JAG funds by subrecipients. The recipient agrees to submit, upon request, documentation of its policies and procedures for monitoring of subawards under this award.

41. The recipient agrees that funds received under this award will not be used to supplant State or local funds, but will be used to increase the amounts of such funds that would, in the absence of Federal funds, be made available for law enforcement activities.

42. Award recipients must submit quarterly Federal Financial Reports (SF-425) and semi-annual performance reports through GMS (https://grants.ojp.usdoj.gov). Consistent with the Department's responsibilities under the Government Performance and Results Act (GPRA), P.L. 103-62, applicants who receive funding under this solicitation must provide data that measure the results of their work. Therefore, quarterly performance metrics reports must be submitted through BJA's Performance Measurement Tool (PMT) website (www.bjaperformancetools.org). For more detailed information on reporting and other JAG requirements, refer to the JAG reporting requirements webpage. Failure to submit required JAG reports by established deadlines may result in the freezing of grant funds and future High Risk designation.

43. Any law enforcement agency receiving direct or sub-awarded JAG funding must submit quarterly accountability metrics data related to training that officers have received on the use of force, racial and ethnic bias, de-escalation of conflict, and constructive engagement with the public.

44. BJA strongly encourages the recipient to submit annual (or more frequent) JAG success stories. To submit a success story, sign in to your My BJA account at https://www.bja.gov/Login.aspx to access the Success Story Submission form. If you do not yet have a My BJA account, please register at https://www.bja.gov/profile.aspx. Once you register, one of the available areas on your My BJA page will be "My Success Stories". Within this box, you will see an option to add a Success Story. Once reviewed and approved by BJA, all success stories will appear on the new BJA Success Story web page at https://www.bja.gov/SuccessStoryList.aspx.

45. Recipient understands and agrees that award funds may not be used for items that are listed on the Controlled Expenditure List at the time of purchase or acquisition, including as the list may be amended from time to time, without explicit written prior approval from BJA. The Controlled Expenditure List, and instructions on how to request approval for purchase or acquisitions may be accessed here: https://www.bja.gov/funding/JAGControlledPurchaseList.pdf



U.S. Department of Justice
Office of Justice Programs
**Bureau of Justice Assistance**

**AWARD CONTINUATION SHEET**

**Grant**

PAGE 12 OF 13

| PROJECT NUMBER | 2016-DJ-BX-0898 | AWARD DATE | 08/26/2016 |
|---|---|---|---|

*SPECIAL CONDITIONS*

46. The recipient understands that, pursuant to recommendation 2.1 of Executive Order 13688, law enforcement agencies that acquire controlled equipment through Federal programs must adopt robust and specific written policies and protocols governing General Policing Standards and Specific Controlled Equipment Standards. General Policing Standards includes policies on (a) Community Policing; (b) Constitutional Policing; and (c) Community Input and Impact Considerations. Specific Controlled Equipment Standards includes policies specifically related to (a) Appropriate Use of Controlled Equipment; (b) Supervision of Use; (c) Effectiveness Evaluation; (d) Auditing and Accountability; and (e) Transparency and Notice Considerations. Upon OJP's request, the recipient agrees to provide a copy of the General Policing Standards and Specific Controlled Equipment Standards, and any related policies and protocols.

47. Recipient understands and agrees that the purchase or acquisition of any item on the Controlled Expenditure List at the time of purchase or acquisition, including as the list may be amended from time to time, with award funds by an agency will trigger a requirement that the agency collect and retain (for at least 3 years) certain information about the use of 1) any federally-acquired Controlled Equipment in the agency's inventory, and 2) any other controlled equipment in the same category as the federally-acquired controlled equipment in the agency's inventory, regardless of source; and make that information available to BJA upon request. Details about what information must be collected and retained may be accessed here: https://www.whitehouse.gov/sites/default/files/docs/le_equipment_wg_final_report_final.pdf

48. Recipient understands and agrees that failure to comply with conditions related to Prohibited or Controlled Expenditures may result in a prohibition from further Controlled Expenditure approval under this or other federal awards.

49. Recipient understands and agrees that award funds may not be used for items that are listed on the Prohibited Expenditure List at the time of purchase or acquisition, including as the list may be amended from time to time. The Prohibited Expenditure list may be accessed here: https://www.bja.gov/funding/JAGControlledPurchaseList.pdf.

50. Recipient understands and agrees that, notwithstanding 2 CFR § 200.313, no equipment listed on the Controlled Expenditure List that is purchased under this award may be transferred or sold to a third party, except as described below:

    a. Agencies may transfer or sell any controlled equipment, except riot helmets and riot shields, to a Law Enforcement Agency (LEA) after obtaining prior written approval from BJA. As a condition of that approval, the acquiring LEA will be required to submit information and certifications to BJA as if it was requesting approval to use award fund for the initial purchase of items on the Controlled Expenditure List.
    b. Agencies may not transfer or sell any riot helmets or riot shields purchased under this award.
    c. Agencies may not transfer or sell any Controlled Equipment purchased under this award to non-LEAs, with the exception of fixed wing aircraft, rotary wing aircraft, and command and control vehicles. Before any such transfer or sale is finalized, the agency must obtain prior written approval from BJA. All law enforcement-related and other sensitive or potentially dangerous components, and all law enforcement insignias and identifying markings must be removed prior to transfer or sale.

    Recipient further understands and agrees to notify BJA prior to the disposal of any items on the Controlled Expenditure List purchased under this award, and to abide by any applicable laws and regulations in such disposal.

OJP FORM 4000/2 (REV. 4-88)



U.S. Department of Justice
Office of Justice Programs
**Bureau of Justice Assistance**

**AWARD CONTINUATION
SHEET
Grant**

PAGE 13 OF 13

| PROJECT NUMBER | 2016-DJ-BX-0898 | AWARD DATE | 08/26/2016 |
|---|---|---|---|

*SPECIAL CONDITIONS*

51.   Recipient integrity and performance matters:  Requirement to report information on certain civil, criminal, and administrative proceedings to SAM and FAPIIS

The recipient must comply with any and all applicable requirements regarding reporting of information on civil, criminal, and administrative proceedings connected with (or connected to the performance of) either this OJP award or any other grant, cooperative agreement, or procurement contract from the federal government.  Under certain circumstances, recipients of OJP awards are required to report information about such proceedings, through the federal System for Award Management (known as "SAM"), to the designated federal integrity and performance system (currently, "FAPIIS").

The details of recipient obligations regarding the required reporting (and updating) of information on certain civil, criminal, and administrative proceedings to the federal designated integrity and performance system (currently, "FAPIIS") within SAM are posted on the OJP web site at http://ojp.gov/funding/FAPIIS.htm (Award condition: Recipient Integrity and Performance Matters, including Recipient Reporting to FAPIIS), and are incorporated by reference here.



**U.S. Department of Justice**

Office of Justice Programs

*Bureau of Justice Assistance*

_____

*Washington, D.C.  20531*

**Memorandum To:**  Official Grant File

**From:**          Orbin Terry, NEPA Coordinator

**Subject:**       Incorporates NEPA Compliance in Further Developmental Stages for City and
                County of San Francisco

The Edward Byrne Memorial Justice Assistance Grant Program (JAG) allows states and local governments to
support a broad range of activities to prevent and control crime and to improve the criminal justice system, some of
which could have environmental impacts.  All recipients of JAG funding must assist BJA in complying with NEPA
and other related federal environmental impact analyses requirements in the use of grant funds, whether the funds
are used directly by the grantee or by a subgrantee or third party.  Accordingly, prior to obligating funds for any of
the specified activities, the grantee must first determine if any of the specified activities will be funded by the
grant.

The specified activities requiring environmental analysis are:
a. New construction;
b. Any renovation or remodeling of a property located in an environmentally or historically sensitive area,
including properties located within a 100-year flood plain, a wetland, or habitat for endangered species, or a
property listed on or eligible for listing on the National Register of Historic Places;
c.  A renovation, lease, or any proposed use of a building or facility that will either (a) result in a change in its basic
prior use or (b) significantly change its size;
d.  Implementation of a new program involving the use of chemicals other than chemicals that are (a) purchased as
an incidental component of a funded activity and (b) traditionally used, for example, in office, household,
recreational, or education environments; and
e. Implementation of a program relating to clandestine methamphetamine laboratory operations, including the
identification, seizure, or closure of clandestine methamphetamine laboratories.

Complying with NEPA may require the preparation of an Environmental Assessment and/or an Environmental
Impact Statement, as directed by BJA.  Further, for programs relating to methamphetamine laboratory operations,
the preparation of a detailed Mitigation Plan will be required.  For more information about Mitigation Plan
requirements, please see https://www.bja.gov/Funding/nepa.html.


Please be sure to carefully review the grant conditions on your award document, as it may contain more specific
information about environmental compliance.



**U.S. Department of Justice**

Office of Justice Programs

**Bureau of Justice Assistance**

**GRANT MANAGER'S MEMORANDUM, PT. I: PROJECT SUMMARY**

**Grant**

| PROJECT NUMBER<br><br>2016-DJ-BX-0898 | PAGE  1  OF  1 |
| --- | --- |

This project is supported under FY16(BJA - JAG) 42 USC 3750, et seq.

| 1. STAFF CONTACT (Name & telephone number)<br><br>Gale Farquhar<br>(202) 598-9522 | 2. PROJECT DIRECTOR (Name, address & telephone number)<br><br>Maria Su<br>Director<br>1390 Market Street<br>Suite 900<br>San Francisco, CA 94102-5341<br>(415) 554-3547 |
| --- | --- |

| 3a. TITLE OF THE PROGRAM<br><br>2016 Edward Byrne Memorial Justice Assistance Grant Program | 3b. POMS CODE (SEE INSTRUCTIONS ON REVERSE) |
| --- | --- |

4. TITLE OF PROJECT

    FY 16 JAG Program

| 5. NAME & ADDRESS OF GRANTEE<br><br>City and County of San Francisco<br>1 Dr. Carlton Goodlett Place Suite 496– City Hall<br>San Francisco, CA 94102-4676 | 6. NAME & ADRESS OF SUBGRANTEE |
| --- | --- |

| 7. PROGRAM PERIOD<br><br>  FROM:      10/01/2015    TO:  09/30/2019 | 8. BUDGET PERIOD<br><br>  FROM:      10/01/2015    TO:  09/30/2019 |
| --- | --- |

| 9. AMOUNT OF AWARD<br><br>  $ 522,943 | 10. DATE OF AWARD<br><br>    08/26/2016 |
| --- | --- |

| 11. SECOND YEAR'S BUDGET | 12. SECOND YEAR'S BUDGET AMOUNT |
| --- | --- |

| 13. THIRD YEAR'S BUDGET PERIOD | 14. THIRD YEAR'S BUDGET AMOUNT |
| --- | --- |

15. SUMMARY DESCRIPTION OF PROJECT (See instruction on reverse)

The Edward Byrne Memorial Justice Assistance Grant Program (JAG) allows states and units of local government, including tribes, to support a broad range of activities to prevent and control crime based on their own state and local needs and conditions. Grant funds can be used for state and local initiatives, technical assistance, training, personnel, equipment, supplies, contractual support, and information systems for criminal justice, including for any one or more of the following program areas: 1) law enforcement programs; 2) prosecution and court programs; 3) prevention and education programs; 4) corrections and community corrections programs; 5) drug treatment and enforcement programs; 6) planning, evaluation, and technology improvement programs; and 7) crime victim and witness programs (other than compensation).  The City and County of San Francisco will use the FY 16 JAG funds to hire personnel to fill critical positions in the criminal justice system and to provide training for executive leadership.  NCA/NCF

OJP FORM 4000/2 (REV. 4-88)

Exhibit E

| U.S. Department of Justice<br>Office of Justice Programs<br>**Bureau of Justice Assistance** | **Grant** | PAGE 1 OF 20 |
|---|---|---|

| 1 RECIPIENT NAME AND ADDRESS (Including Zip Code)<br><br>County of Greenville<br>301 University Ridge, Suite 600<br>Greeville, SC 29601 | 4 AWARD NUMBER:    2017-DJ-BX-0002 | |
|---|---|---|

| 5 PROJECT PERIOD: FROM        10/01/2016   TO   09/30/2020 |
|---|
|    BUDGET PERIOD: FROM        10/01/2016   TO   09/30/2020 |

| 2a GRANTEE IRS/VENDOR NO<br>[REDACTED] | 6 AWARD DATE     08/23/2017 | 7 ACTION |
|---|---|---|
| | 8 SUPPLEMENT NUMBER<br>00 | Initial |
| 2b GRANTEE DUNS NO<br>[REDACTED] | 9 PREVIOUS AWARD AMOUNT | $ 0 |
| 3 PROJECT TITLE<br>Judicial Support and Law Enforcement Enhancements 2017 | 10 AMOUNT OF THIS AWARD | $ 163,164 |
| | 11 TOTAL AWARD | $ 163,164 |

**12 SPECIAL CONDITIONS**

THE ABOVE GRANT PROJECT IS APPROVED SUBJECT TO SUCH CONDITIONS OR LIMITATIONS AS ARE SET FORTH
ON THE ATTACHED PAGE(S)

**13 STATUTORY AUTHORITY FOR GRANT**

This project is supported under FY17(BJA - JAG State and JAG Local) Title I of Pub L No 90-351 (generally codified at 42 U S C 3711 - 3797ff-5),
including subpart 1 of part E (codified at 42 U S C 3750 - 3758); see also 28 U S C 530C(a)

**14 CATALOG OF DOMESTIC FEDERAL ASSISTANCE (CFDA Number)**

16 738 - Edward Byrne Memorial Justice Assistance Grant Program

**15 METHOD OF PAYMENT**

GPRS

| ████ AGENCY APPROVAL ████ | ████ GRANTEE ACCEPTANCE ████ |
|---|---|
| 16 TYPED NAME AND TITLE OF APPROVING OFFICIAL<br><br>Alan R Hanson<br><br>Acting Assistant Attorney General | 18 TYPED NAME AND TITLE OF AUTHORIZED GRANTEE OFFICIAL<br><br>Joseph M Kernell<br>County Administrator |
| 17 SIGNATURE OF APPROVING OFFICIAL<br><br>*Alan R. Hanson* | 19 SIGNATURE OF AUTHORIZED RECIPIENT OFFICIAL | 19A DATE |

| ████ AGENCY USE ONLY ████ |
|---|

| 20 ACCOUNTING CLASSIFICATION CODES | 21   SDJUGT0339 |
|---|---|

| FISCAL<br>YEAR | FUND<br>CODE | BUD<br>ACT | OFC | DIV<br>REG | SUB | POMS | AMOUNT |
|---|---|---|---|---|---|---|---|
| X | B | DJ | 80 | 00 | 00 | | 163164 |

OJP FORM 4000/2 (REV 5-87) PREVIOUS EDITIONS ARE OBSOLETE

OJP FORM 4000/2 (REV 4-88)



U.S. Department of Justice
Office of Justice Programs
**Bureau of Justice Assistance**

**AWARD CONTINUATION
SHEET
Grant**

PAGE   2   OF   20

| PROJECT NUMBER | 2017-DJ-BX-0002 | AWARD DATE | 08/23/2017 |
|---|---|---|---|

*SPECIAL CONDITIONS*

1.  Requirements of the award; remedies for non-compliance or for materially false statements

    The conditions of this award are material requirements of the award.  Compliance with any certifications or assurances submitted by or on behalf of the recipient that relate to conduct during the period of performance also is a material requirement of this award.

    Failure to comply with any one or more of these award requirements -- whether a condition set out in full below, a condition incorporated by reference below, or a certification or assurance related to conduct during the award period -- may result in the Office of Justice Programs ("OJP") taking appropriate action with respect to the recipient and the award.  Among other things, the OJP may withhold award funds, disallow costs, or suspend or terminate the award. The Department of Justice ("DOJ"), including OJP, also may take other legal action as appropriate.

    Any materially false, fictitious, or fraudulent statement to the federal government related to this award (or concealment or omission of a material fact) may be the subject of criminal prosecution (including under 18 U.S.C. 1001 and/or 1621, and/or 42 U.S.C. 3795a), and also may lead to imposition of civil penalties and administrative remedies for false claims or otherwise (including under 31 U.S.C. 3729-3730 and 3801-3812).

    Should any provision of a requirement of this award be held to be invalid or unenforceable by its terms, that provision shall first be applied with a limited construction so as to give it the maximum effect permitted by law.  Should it be held, instead, that the provision is utterly invalid or -unenforceable, such provision shall be deemed severable from this award.

2.  Applicability of Part 200 Uniform Requirements

    The Uniform Administrative Requirements, Cost Principles, and Audit Requirements in 2 C.F.R. Part 200, as adopted and supplemented by DOJ in 2 C.F.R. Part 2800 (together, the "Part 200 Uniform Requirements") apply to this FY 2017 award from OJP.

    The Part 200 Uniform Requirements were first adopted by DOJ on December 26, 2014.  If this FY 2017 award supplements funds previously awarded by OJP under the same award number (e.g., funds awarded during or before December 2014), the Part 200 Uniform Requirements apply with respect to all funds under that award number (regardless of the award date, and regardless of whether derived from the initial award or a supplemental award) that are obligated on or after the acceptance date of this FY 2017 award.

    For more information and resources on the Part 200 Uniform Requirements as they relate to OJP awards and subawards ("subgrants"), see the OJP website at https://ojp.gov/funding/Part200UniformRequirements htm.

    In the event that an award-related question arises from documents or other materials prepared or distributed by OJP that may appear to conflict with, or differ in some way from, the provisions of the Part 200 Uniform Requirements, the recipient is to contact OJP promptly for clarification.

3.  Compliance with DOJ Grants Financial Guide

    The recipient agrees to comply with the DOJ Grants Financial Guide as posted on the OJP website (currently, the "2015 DOJ Grants Financial Guide" available at https://ojp.gov/financialguide/DOJ/index htm), including any updated version that may be posted during the period of performance.

OJP FORM 4000/2 (REV  4-88)



| | | |
|---|---|---|
| U.S. Department of Justice<br>Office of Justice Programs<br>**Bureau of Justice Assistance** | **AWARD CONTINUATION**<br>**SHEET**<br>**Grant** | PAGE   3   OF  20 |

| PROJECT NUMBER | 2017-DJ-BX-0002 | AWARD DATE | 08/23/2017 |
|---|---|---|---|

*SPECIAL CONDITIONS*

4.  Required training for Point of Contact and all Financial Points of Contact

Both the Point of Contact (POC) and all Financial Points of Contact (FPOCs) for this award must have successfully completed an "OJP financial management and grant administration training" by 120 days after the date of the recipient's acceptance of the award.  Successful completion of such a training on or after January 1, 2015, will satisfy this condition.

In the event that either the POC or an FPOC for this award changes during the period of performance, the new POC or FPOC must have successfully completed an "OJP financial management and grant administration training" by 120 calendar days after-- (1) the date of OJP's approval of the "Change Grantee Contact" GAN (in the case of a new POC), or (2) the date the POC enters information on the new FPOC in GMS (in the case of a new FPOC).  Successful completion of such a training on or after January 1, 2015, will satisfy this condition.

A list of OJP trainings that OJP will consider "OJP financial management and grant administration training" for purposes of this condition is available at https://www.ojp.gov/training/fmts htm.  All trainings that satisfy this condition include a session on grant fraud prevention and detection.

The recipient should anticipate that OJP will immediately withhold ("freeze") award funds if the recipient fails to comply with this condition.  The recipient's failure to comply also may lead OJP to impose additional appropriate conditions on this award.

5.  Requirements related to "de minimis" indirect cost rate

A recipient that is eligible under the Part 200 Uniform Requirements and other applicable law to use the "de minimis" indirect cost rate described in 2 C.F.R. 200.414(f), and that elects to use the "de minimis" indirect cost rate, must advise OJP in writing of both its eligibility and its election, and must comply with all associated requirements in the Part 200 Uniform Requirements.  The "de minimis" rate may be applied only to modified total direct costs (MTDC) as defined by the Part 200 Uniform Requirements.

6.  Requirement to report potentially duplicative funding

If the recipient currently has other active awards of federal funds, or if the recipient receives any other award of federal funds during the period of performance for this award, the recipient promptly must determine whether funds from any of those other federal awards have been, are being, or are to be used (in whole or in part) for one or more of the identical cost items for which funds are provided under this award.  If so, the recipient must promptly notify the DOJ awarding agency (OJP or OVW, as appropriate) in writing of the potential duplication, and, if so requested by the DOJ awarding agency, must seek a budget-modification or change-of-project-scope grant adjustment notice (GAN) to eliminate any inappropriate duplication of funding.



| U.S. Department of Justice<br>Office of Justice Programs<br>**Bureau of Justice Assistance** | **AWARD CONTINUATION<br>SHEET**<br>**Grant** | PAGE  4  OF  20 |
|---|---|---|

| PROJECT NUMBER | 2017-DJ-BX-0002 | AWARD DATE | 08/23/2017 |
|---|---|---|---|

*SPECIAL CONDITIONS*

7.  Requirements related to System for Award Management and Universal Identifier Requirements

The recipient must comply with applicable requirements regarding the System for Award Management (SAM), currently accessible at https://www.sam.gov/.  This includes applicable requirements regarding registration with SAM, as well as maintaining the currency of information in SAM.

The recipient also must comply with applicable restrictions on subawards ("subgrants") to first-tier subrecipients (first-tier "subgrantees"), including restrictions on subawards to entities that do not acquire and provide (to the recipient) the unique entity identifier required for SAM registration.

The details of the recipient's obligations related to SAM and to unique entity identifiers are posted on the OJP web site at https://ojp.gov/funding/Explore/SAM htm (Award condition:  System for Award Management (SAM) and Universal Identifier Requirements), and are incorporated by reference here.

This condition does not apply to an award to an individual who received the award as a natural person (i.e., unrelated to any business or non-profit organization that he or she may own or operate in his or her name).

8.  All subawards ("subgrants") must have specific federal authorization

The recipient, and any subrecipient ("subgrantee") at any tier, must comply with all applicable requirements for authorization of any subaward.  This condition applies to agreements that -- for purposes of federal grants administrative requirements -- OJP considers a "subaward" (and therefore does not consider a procurement "contract").

The details of the requirement for authorization of any subaward are posted on the OJP web site at https://ojp.gov/funding/Explore/SubawardAuthorization htm (Award condition:  All subawards ("subgrants") must have specific federal authorization), and are incorporated by reference here.

9.  Specific post-award approval required to use a noncompetitive approach in any procurement contract that would exceed $150,000

The recipient, and any subrecipient ("subgrantee") at any tier, must comply with all applicable requirements to obtain specific advance approval to use a noncompetitive approach in any procurement contract that would exceed the Simplified Acquisition Threshold (currently, $150,000).  This condition applies to agreements that -- for purposes of federal grants administrative requirements -- OJP considers a procurement "contract" (and therefore does not consider a subaward).

The details of the requirement for advance approval to use a noncompetitive approach in a procurement contract under an OJP award are posted on the OJP web site at https://ojp.gov/funding/Explore/NoncompetitiveProcurement htm (Award condition:  Specific post-award approval required to use a noncompetitive approach in a procurement contract (if contract would exceed $150,000)), and are incorporated by reference here.



| U.S. Department of Justice<br>Office of Justice Programs<br>**Bureau of Justice Assistance** | **AWARD CONTINUATION<br>SHEET**<br>**Grant** | PAGE  5  OF  20 |
|---|---|---|

| PROJECT NUMBER | 2017-DJ-BX-0002 | AWARD DATE | 08/23/2017 |
|---|---|---|---|

*SPECIAL CONDITIONS*

10. Requirements pertaining to prohibited conduct related to trafficking in persons (including reporting requirements and OJP authority to terminate award)

   The recipient, and any subrecipient ("subgrantee") at any tier, must comply with all applicable requirements (including requirements to report allegations) pertaining to prohibited conduct related to the trafficking of persons, whether on the part of recipients, subrecipients ("subgrantees"), or individuals defined (for purposes of this condition) as "employees" of the recipient or of any subrecipient.

   The details of the recipient's obligations related to prohibited conduct related to trafficking in persons are posted on the OJP web site at https://ojp.gov/funding/Explore/ProhibitedConduct-Trafficking htm (Award condition:  Prohibited conduct by recipients and subrecipients related to trafficking in persons (including reporting requirements and OJP authority to terminate award)), and are incorporated by reference here.

11. Compliance with applicable rules regarding approval, planning, and reporting of conferences, meetings, trainings, and other events

   The recipient, and any subrecipient ("subgrantee") at any tier, must comply with all applicable laws, regulations, policies, and official DOJ guidance (including specific cost limits, prior approval and reporting requirements, where applicable) governing the use of federal funds for expenses related to conferences (as that term is defined by DOJ), including the provision of food and/or beverages at such conferences, and costs of attendance at such conferences.

   Information on the pertinent DOJ definition of conferences and the rules applicable to this award appears in the DOJ Grants Financial Guide (currently, as section 3.10 of "Postaward Requirements" in the "2015 DOJ Grants Financial Guide").

12. Requirement for data on performance and effectiveness under the award

   The recipient must collect and maintain data that measure the performance and effectiveness of work under this award. The data must be provided to OJP in the manner (including within the timeframes) specified by OJP in the program solicitation or other applicable written guidance.  Data collection supports compliance with the Government Performance and Results Act (GPRA) and the GPRA Modernization Act of 2010, and other applicable laws.

13. OJP Training Guiding Principles

   Any training or training materials that the recipient -- or any subrecipient ("subgrantee") at any tier -- develops or delivers with OJP award funds must adhere to the OJP Training Guiding Principles for Grantees and Subgrantees, available at https://ojp.gov/funding/ojptrainingguidingprinciples htm.

14. Effect of failure to address audit issues

   The recipient understands and agrees that the DOJ awarding agency (OJP or OVW, as appropriate) may withhold award funds, or may impose other related requirements, if (as determined by the DOJ awarding agency) the recipient does not satisfactorily and promptly address outstanding issues from audits required by the Part 200 Uniform Requirements (or by the terms of this award), or other outstanding issues that arise in connection with audits, investigations, or reviews of DOJ awards.

15. Potential imposition of additional requirements

   The recipient agrees to comply with any additional requirements that may be imposed by the DOJ awarding agency (OJP or OVW, as appropriate) during the period of performance for this award, if the recipient is designated as "high-risk" for purposes of the DOJ high-risk grantee list.

OJP FORM 4000/2 (REV  4-88)



| | | | |
|---|---|---|---|
| U.S. Department of Justice<br>Office of Justice Programs<br>**Bureau of Justice Assistance** | **AWARD CONTINUATION SHEET**<br>**Grant** | PAGE 6 OF 20 |

| PROJECT NUMBER | 2017-DJ-BX-0002 | AWARD DATE | 08/23/2017 |
|---|---|---|---|

*SPECIAL CONDITIONS*

16.   Compliance with DOJ regulations pertaining to civil rights and nondiscrimination - 28 C.F.R. Part 42

The recipient, and any subrecipient ("subgrantee") at any tier, must comply with all applicable requirements of 28 C.F.R. Part 42, specifically including any applicable requirements in Subpart E of 28 C.F.R. Part 42 that relate to an equal employment opportunity program.

17.   Compliance with DOJ regulations pertaining to civil rights and nondiscrimination - 28 C.F.R. Part 54

The recipient, and any subrecipient ("subgrantee") at any tier, must comply with all applicable requirements of 28 C.F.R. Part 54, which relates to nondiscrimination on the basis of sex in certain "education programs."

18.   Compliance with DOJ regulations pertaining to civil rights and nondiscrimination - 28 C.F.R. Part 38

The recipient, and any subrecipient ("subgrantee") at any tier, must comply with all applicable requirements of 28 C.F.R. Part 38, specifically including any applicable requirements regarding written notice to program beneficiaries and prospective program beneficiaries.  Part 38 of 28 C.F.R., a DOJ regulation, was amended effective May 4, 2016.

Among other things, 28 C.F.R. Part 38 includes rules that prohibit specific forms of discrimination on the basis of religion, a religious belief, a refusal to hold a religious belief, or refusal to attend or participate in a religious practice. Part 38 also sets out rules and requirements that pertain to recipient and subrecipient ("subgrantee") organizations that engage in or conduct explicitly religious activities, as well as rules and requirements that pertain to recipients and subrecipients that are faith-based or religious organizations.

The text of the regulation, now entitled "Partnerships with Faith-Based and Other Neighborhood Organizations," is available via the Electronic Code of Federal Regulations (currently accessible at https://www.ecfr.gov/cgi-bin/ECFR?page=browse), by browsing to Title 28-Judicial Administration, Chapter 1, Part 38, under e-CFR "current" data.

19.   Restrictions on "lobbying"

In general, as a matter of federal law, federal funds awarded by OJP may not be used by the recipient, or any subrecipient ("subgrantee") at any tier, either directly or indirectly, to support or oppose the enactment, repeal, modification, or adoption of any law, regulation, or policy, at any level of government.  See 18 U.S.C. 1913.  (There may be exceptions if an applicable federal statute specifically authorizes certain activities that otherwise would be barred by law.)

Another federal law generally prohibits federal funds awarded by OJP from being used by the recipient, or any subrecipient at any tier, to pay any person to influence (or attempt to influence) a federal agency, a Member of Congress, or Congress (or an official or employee of any of them) with respect to the awarding of a federal grant or cooperative agreement, subgrant, contract, subcontract, or loan, or with respect to actions such as renewing, extending, or modifying any such award.  See 31 U.S.C. 1352.  Certain exceptions to this law apply, including an exception that applies to Indian tribes and tribal organizations.

Should any question arise as to whether a particular use of federal funds by a recipient (or subrecipient) would or might fall within the scope of these prohibitions, the recipient is to contact OJP for guidance, and may not proceed without the express prior written approval of OJP.



U.S. Department of Justice
Office of Justice Programs
**Bureau of Justice Assistance**

**AWARD CONTINUATION
SHEET**
**Grant**

PAGE  7  OF  20

| PROJECT NUMBER | 2017-DJ-BX-0002 | AWARD DATE | 08/23/2017 |

*SPECIAL CONDITIONS*

20.   Compliance with general appropriations-law restrictions on the use of federal funds (FY 2017)

The recipient, and any subrecipient ("subgrantee") at any tier, must comply with all applicable restrictions on the use of federal funds set out in federal appropriations statutes.  Pertinent restrictions, including from various "general provisions" in the Consolidated Appropriations Act, 2017, are set out at https://ojp.gov/funding/Explore/FY17AppropriationsRestrictions htm, and are incorporated by reference here.

Should a question arise as to whether a particular use of federal funds by a recipient (or a subrecipient) would or might fall within the scope of an appropriations-law restriction, the recipient is to contact OJP for guidance, and may not proceed without the express prior written approval of OJP.

21.   Reporting potential fraud, waste, and abuse, and similar misconduct

The recipient, and any subrecipients ("subgrantees") at any tier, must promptly refer to the DOJ Office of the Inspector General (OIG) any credible evidence that a principal, employee, agent, subrecipient, contractor, subcontractor, or other person has, in connection with funds under this award-- (1) submitted a claim that violates the False Claims Act; or (2) committed a criminal or civil violation of laws pertaining to fraud, conflict of interest, bribery, gratuity, or similar misconduct.

Potential fraud, waste, abuse, or misconduct involving or relating to funds under this award should be reported to the OIG by-- (1) mail directed to: Office of the Inspector General, U.S. Department of Justice, Investigations Division, 950 Pennsylvania Avenue, N.W. Room 4706, Washington, DC 20530; (2) e-mail to: oig hotline@usdoj.gov; and/or (3) the DOJ OIG hotline: (contact information in English and Spanish) at (800) 869-4499 (phone) or (202) 616-9881 (fax).

Additional information is available from the DOJ OIG website at https://www.usdoj.gov/oig.

OJP FORM 4000/2 (REV  4-88)



| U.S. Department of Justice Office of Justice Programs **Bureau of Justice Assistance** | **AWARD CONTINUATION SHEET** **Grant** | PAGE   8   OF   20 |
|---|---|---|

| PROJECT NUMBER | 2017-DJ-BX-0002 | AWARD DATE | 08/23/2017 |
|---|---|---|---|

*SPECIAL CONDITIONS*

22.   Restrictions and certifications regarding non-disclosure agreements and related matters

No recipient or subrecipient ("subgrantee") under this award, or entity that receives a procurement contract or subcontract with any funds under this award, may require any employee or contractor to sign an internal confidentiality agreement or statement that prohibits or otherwise restricts, or purports to prohibit or restrict, the reporting (in accordance with law) of waste, fraud, or abuse to an investigative or law enforcement representative of a federal department or agency authorized to receive such information.

The foregoing is not intended, and shall not be understood by the agency making this award, to contravene requirements applicable to Standard Form 312 (which relates to classified information), Form 4414 (which relates to sensitive compartmented information), or any other form issued by a federal department or agency governing the nondisclosure of classified information.

1.   In accepting this award, the recipient--

a.   represents that it neither requires nor has required internal confidentiality agreements or statements from employees or contractors that currently prohibit or otherwise currently restrict (or purport to prohibit or restrict) employees or contractors from reporting waste, fraud, or abuse as described above; and

b.   certifies that, if it learns or is notified that it is or has been requiring its employees or contractors to execute agreements or statements that prohibit or otherwise restrict (or purport to prohibit or restrict), reporting of waste, fraud, or abuse as described above, it will immediately stop any further obligations of award funds, will provide prompt written notification to the federal agency making this award, and will resume (or permit resumption of) such obligations only if expressly authorized to do so by that agency.

2.   If the recipient does or is authorized under this award to make subawards ("subgrants"), procurement contracts, or both--

a.   it represents that--

(1)   it has determined that no other entity that the recipient's application proposes may or will receive award funds (whether through a subaward ("subgrant"), procurement contract, or subcontract under a procurement contract) either requires or has required internal confidentiality agreements or statements from employees or contractors that currently prohibit or otherwise currently restrict (or purport to prohibit or restrict) employees or contractors from reporting waste, fraud, or abuse as described above; and

(2)   it has made appropriate inquiry, or otherwise has an adequate factual basis, to support this representation; and

b.   it certifies that, if it learns or is notified that any subrecipient, contractor, or subcontractor entity that receives funds under this award is or has been requiring its employees or contractors to execute agreements or statements that prohibit or otherwise restrict (or purport to prohibit or restrict), reporting of waste, fraud, or abuse as described above, it will immediately stop any further obligations of award funds to or by that entity, will provide prompt written notification to the federal agency making this award, and will resume (or permit resumption of) such obligations only if expressly authorized to do so by that agency.



U.S. Department of Justice
Office of Justice Programs
**Bureau of Justice Assistance**

**AWARD CONTINUATION
SHEET**

**Grant**

PAGE   9   OF   20

| PROJECT NUMBER | 2017-DJ-BX-0002 | AWARD DATE | 08/23/2017 |
|---|---|---|---|

*SPECIAL CONDITIONS*

23. Compliance with 41 U.S.C. 4712 (including prohibitions on reprisal; notice to employees)

The recipient (and any subrecipient at any tier) must comply with, and is subject to, all applicable provisions of 41 U.S.C. 4712, including all applicable provisions that prohibit, under specified circumstances, discrimination against an employee as reprisal for the employee's disclosure of information related to gross mismanagement of a federal grant, a gross waste of federal funds, an abuse of authority relating to a federal grant, a substantial and specific danger to public health or safety, or a violation of law, rule, or regulation related to a federal grant.

The recipient also must inform its employees, in writing (and in the predominant native language of the workforce), of employee rights and remedies under 41 U.S.C. 4712.

Should a question arise as to the applicability of the provisions of 41 U.S.C. 4712 to this award, the recipient is to contact the DOJ awarding agency (OJP or OVW, as appropriate) for guidance.

24. Encouragement of policies to ban text messaging while driving

Pursuant to Executive Order 13513, "Federal Leadership on Reducing Text Messaging While Driving," 74 Fed. Reg. 51225 (October 1, 2009), DOJ encourages recipients and subrecipients ("subgrantees") to adopt and enforce policies banning employees from text messaging while driving any vehicle during the course of performing work funded by this award, and to establish workplace safety policies and conduct education, awareness, and other outreach to decrease crashes caused by distracted drivers.

25. Cooperating with OJP Monitoring

The recipient agrees to cooperate with OJP monitoring of this award pursuant to OJP's guidelines, protocols, and procedures, and to cooperate with OJP (including the grant manager for this award and the Office of Chief Financial Officer (OCFO)) requests related to such monitoring, including requests related to desk reviews and/or site visits. The recipient agrees to provide to OJP all documentation necessary for OJP to complete its monitoring tasks, including documentation related to any subawards made under this award. Further, the recipient agrees to abide by reasonable deadlines set by OJP for providing the requested documents. Failure to cooperate with OJP's monitoring activities may result in actions that affect the recipient's DOJ awards, including, but not limited to: withholdings and/or other restrictions on the recipient's access to award funds; referral to the DOJ OIG for audit review; designation of the recipient as a DOJ High Risk grantee; or termination of an award(s).

26. FFATA reporting:  Subawards and executive compensation

The recipient must comply with applicable requirements to report first-tier subawards ("subgrants") of $25,000 or more and, in certain circumstances, to report the names and total compensation of the five most highly compensated executives of the recipient and first-tier subrecipients (first-tier "subgrantees") of award funds. The details of recipient obligations, which derive from the Federal Funding Accountability and Transparency Act of 2006 (FFATA), are posted on the OJP web site at https://ojp.gov/funding/Explore/FFATA htm (Award condition: Reporting Subawards and Executive Compensation), and are incorporated by reference here.

This condition, including its reporting requirement, does not apply to-- (1) an award of less than $25,000, or (2) an award made to an individual who received the award as a natural person (i.e., unrelated to any business or non-profit organization that he or she may own or operate in his or her name).

OJP FORM 4000/2 (REV  4-88)



U.S. Department of Justice
Office of Justice Programs
**Bureau of Justice Assistance**

**AWARD CONTINUATION
SHEET**

**Grant**

PAGE  10  OF  20

| PROJECT NUMBER | 2017-DJ-BX-0002 | | AWARD DATE | 08/23/2017 |
|---|---|---|---|---|

*SPECIAL CONDITIONS*

27.   Use of program income

Program income (as defined in the Part 200 Uniform Requirements) must be used in accordance with the provisions of the Part 200 Uniform Requirements.  Program income earnings and expenditures both must be reported on the quarterly Federal Financial Report, SF 425.

28.   Justice Information Sharing

In order to promote information sharing and enable interoperability among disparate systems across the justice and public safety community, the recipient (and any subrecipient at any tier)  must comply with DOJ's Global Justice Information Sharing Initiative (DOJ's Global) guidelines and recommendations for this particular award. The recipient shall conform to the Global Standards Package (GSP) and all constituent elements, where applicable, as described at: https://it.ojp.gov/gsp_grantcondition. The recipient shall document planned approaches to information sharing and describe compliance to the GSP and appropriate privacy policy that protects shared information, or provide detailed justification for why an alternative approach is recommended.

29.   Avoidance of duplication of networks

To avoid duplicating existing networks or IT systems in any initiatives funded by BJA for law enforcement information sharing systems which involve interstate connectivity between jurisdictions, such systems shall employ, to the extent possible, existing networks as the communication backbone to achieve interstate connectivity, unless the recipient can demonstrate to the satisfaction of BJA that this requirement would not be cost effective or would impair the functionality of an existing or proposed IT system.

30.   Compliance with 28 C.F.R. Part 23

With respect to any information technology system funded or supported by funds under this award, the recipient (and any subrecipient at any tier) must comply with 28 C.F.R. Part 23, Criminal Intelligence Systems Operating Policies, if OJP determines this regulation to be applicable. Should OJP determine 28 C.F.R. Part 23 to be applicable, OJP may, at its discretion, perform audits of the system, as per the regulation. Should any violation of 28 C.F.R. Part 23 occur, the recipient may be fined as per 42 U.S.C. 3789g(c)-(d).  The recipient may not satisfy such a fine with federal funds.

31.   Protection of human research subjects

The recipient (and any subrecipient at any tier) must comply with the requirements of 28 C.F.R. Part 46 and all OJP policies and procedures regarding the protection of human research subjects, including obtainment of Institutional Review Board approval, if appropriate, and subject informed consent.

32.   Confidentiality of data

The recipient (and any subrecipient at any tier) must comply with all confidentiality requirements of 42 U.S.C. 3789g and 28 C.F.R. Part 22 that are applicable to collection, use, and revelation of data or information. The recipient further agrees, as a condition of award approval, to submit a Privacy Certificate that is in accord with requirements of 28 C.F.R. Part 22 and, in particular, 28 C.F.R. 22.23.



U.S. Department of Justice
Office of Justice Programs
**Bureau of Justice Assistance**

**AWARD CONTINUATION
SHEET
Grant**

PAGE  11  OF  20

| PROJECT NUMBER | 2017-DJ-BX-0002 | AWARD DATE | 08/23/2017 |
|---|---|---|---|

*SPECIAL CONDITIONS*

33.   Verification and updating of recipient contact information

The recipient must verify its Point of Contact(POC), Financial Point of Contact (FPOC), and Authorized
Representative contact information in GMS, including telephone number and e-mail address.  If any information is
incorrect or has changed, a Grant Adjustment Notice (GAN) must be submitted via the Grants Management System
(GMS) to document changes.

34.   Law enforcement task forces - required training

Within 120 days of award acceptance, each current member of a law enforcement task force funded with award funds
who is a task force commander, agency executive, task force officer, or other task force member of equivalent rank,
must complete required online (internet-based) task force training. Additionally, all future task force members must
complete this training once during the period of performance for this award, or once every four years if multiple OJP
awards include this requirement.

The required training is available free of charge online through the BJA-funded Center for Task Force Integrity and
Leadership (www.ctfli.org). The training addresses task force effectiveness, as well as other key issues including
privacy and civil liberties/rights, task force performance measurement, personnel selection, and task force oversight and
accountability. If award funds are used to support a task force, the recipient must compile and maintain a task force
personnel roster, along with course completion certificates.

Additional information regarding the training is available through BJA's web site and the Center for Task Force
Integrity and Leadership (www.ctfli.org).

35.   Required attendance at BJA-sponsored events

The recipient (and its subrecipients at any tier) must participate in BJA-sponsored training events, technical assistance
events, or conferences held by BJA or its designees, upon BJA's request.

36.   Justification of consultant rate

Approval of this award does not indicate approval of any consultant rate in excess of $650 per day. A detailed
justification must be submitted to and approved by the OJP program office prior to obligation or expenditure of such
funds.



| U.S. Department of Justice<br>Office of Justice Programs<br>**Bureau of Justice Assistance** | **AWARD CONTINUATION<br>SHEET**<br>**Grant** | PAGE 12 OF 20 |
|---|---|---|

| PROJECT NUMBER | 2017-DJ-BX-0002 | AWARD DATE | 08/23/2017 |
|---|---|---|---|

*SPECIAL CONDITIONS*

37.   Compliance with National Environmental Policy Act and related statutes

Upon request, the recipient (and any subrecipient at any tier) must assist BJA in complying with the National Environmental Policy Act (NEPA), the National Historic Preservation Act, and other related federal environmental impact analyses requirements in the use of these award funds, either directly by the recipient or by a subrecipient. Accordingly, the recipient agrees to first determine if any of the following activities will be funded by the grant, prior to obligating funds for any of these purposes. If it is determined that any of the following activities will be funded by the award, the recipient agrees to contact BJA.

The recipient understands that this condition applies to new activities as set out below, whether or not they are being specifically funded with these award funds. That is, as long as the activity is being conducted by the recipient, a subrecipient, or any third party, and the activity needs to be undertaken in order to use these award funds, this condition must first be met. The activities covered by this condition are:

a. New construction;

b. Minor renovation or remodeling of a property located in an environmentally or historically sensitive area, including properties located within a 100-year flood plain, a wetland, or habitat for endangered species, or a property listed on or eligible for listing on the National Register of Historic Places;

c. A renovation, lease, or any proposed use of a building or facility that will either (a) result in a change in its basic prior use or (b) significantly change its size;

d. Implementation of a new program involving the use of chemicals other than chemicals that are (a) purchased as an incidental component of a funded activity and (b) traditionally used, for example, in office, household, recreational, or education environments; and

e. Implementation of a program relating to clandestine methamphetamine laboratory operations, including the identification, seizure, or closure of clandestine methamphetamine laboratories.

The recipient understands and agrees that complying with NEPA may require the preparation of an Environmental Assessment and/or an Environmental Impact Statement, as directed by BJA. The recipient further understands and agrees to the requirements for implementation of a Mitigation Plan, as detailed at https://bja.gov/Funding/nepa html, for programs relating to methamphetamine laboratory operations.

Application of This Condition to Recipient's Existing Programs or Activities:  For any of the recipient's or its subrecipients' existing programs or activities that will be funded by these award funds, the recipient, upon specific request from BJA, agrees to cooperate with BJA in any preparation by BJA of a national or program environmental assessment of that funded program or activity.

38.   Establishment of trust fund

If award funds are being drawn down in advance, the recipient (or a subrecipient, with respect to a subaward) is required to establish a trust fund account. (The trust fund may or may not be an interest-bearing account.) The fund, including any interest, may not be used to pay debts or expenses incurred by other activities beyond the scope of the Edward Byrne Memorial Justice Assistance Grant Program (JAG). The recipient also agrees to obligate the award funds in the trust fund (including any interest earned) during the period of performance for the award and expend within 90 days thereafter. Any unobligated or unexpended funds, including interest earned, must be returned to OJP at the time of closeout.



| U.S. Department of Justice | AWARD CONTINUATION | |
|---|---|---|
| Office of Justice Programs | **SHEET** | PAGE  13  OF  20 |
| **Bureau of Justice Assistance** | **Grant** | |

| PROJECT NUMBER | 2017-DJ-BX-0002 | AWARD DATE | 08/23/2017 |
|---|---|---|---|

*SPECIAL CONDITIONS*

39.  Prohibition on use of award funds for match under BVP program

JAG funds may be used to purchase vests for an agency, but they may not be used as the 50% match for purposes of the DOJ Bulletproof Vest Partnership (BVP) program.

40.  Certification of body armor "mandatory wear" policies

The recipient agrees to submit a signed certification that all law enforcement agencies receiving body armor purchased with funds from this award have a written "mandatory wear" policy in effect. The recipient must keep signed certifications on file for any subrecipients planning to utilize funds from this award for ballistic-resistant and stab-resistant body armor purchases. This policy must be in place for at least all uniformed officers before any funds from this award may be used by an agency for body armor. There are no requirements regarding the nature of the policy other than it be a mandatory wear policy for all uniformed officers while on duty.

41.  Body armor - compliance with NIJ standards

Ballistic-resistant and stab-resistant body armor purchased with JAG award funds may be purchased at any threat level, make or model, from any distributor or manufacturer, as long as the body armor has been tested and found to comply with applicable National Institute of Justice ballistic or stab standards and is listed on the NIJ Compliant Body Armor Model List (https://nij.gov/). In addition, ballistic-resistant and stab-resistant body armor purchased must be American-made. The latest NIJ standard information can be found here: https://nij.gov/topics/technology/body-armor/pages/safety-initiative.aspx.

42.  Required monitoring of subawards

The recipient must monitor subawards under this JAG award in accordance with all applicable statutes, regulations, award conditions, and the DOJ Grants Financial Guide, and must include the applicable conditions of this award in any subaward. Among other things, the recipient is responsible for oversight of subrecipient spending and monitoring of specific outcomes and benefits attributable to use of award funds by subrecipients. The recipient agrees to submit, upon request, documentation of its policies and procedures for monitoring of subawards under this award.

43.  Reporting requirements

The recipient must submit quarterly Federal Financial Reports (SF-425) and semi-annual performance reports through OJP's GMS (https://grants.ojp.usdoj.gov). Consistent with the Department's responsibilities under the Government Performance and Results Act (GPRA) and the GPRA Modernization Act of 2010, the recipient must provide data that measure the results of its work.  The recipient must submit quarterly performance metrics reports through BJA's Performance Measurement Tool (PMT) website (www.bjaperformancetools.org). For more detailed information on reporting and other JAG requirements, refer to the JAG reporting requirements webpage. Failure to submit required JAG reports by established deadlines may result in the freezing of grant funds and future High Risk designation.

44.  Required data on law enforcement agency training

Any law enforcement agency receiving direct or sub-awarded funding from this JAG award must submit quarterly accountability metrics data related to training that officers have received on the use of force, racial and ethnic bias, de-escalation of conflict, and constructive engagement with the public.



| U.S. Department of Justice<br>Office of Justice Programs<br>**Bureau of Justice Assistance** | **AWARD CONTINUATION SHEET**<br>**Grant** | PAGE  14  OF  20 |
| --- | --- | --- |

| PROJECT NUMBER | 2017-DJ-BX-0002 | AWARD DATE | 08/23/2017 |
| --- | --- | --- | --- |

*SPECIAL CONDITIONS*

45.   Prohibited Expenditures List

Award funds may not be used for items that are listed on the Prohibited Expenditure List at the time of purchase or acquisition, including as the list may be amended from time to time. The Prohibited Expenditure List may be accessed here: https://www.bja.gov/funding/JAGControlledPurchaseList.pdf

46.   Controlled expenditures - prior written approval required

Award funds may not be used for items that are listed on the Controlled Expenditure List at the time of purchase or acquisition, including as the list may be amended from time to time, without explicit written prior approval from BJA. The Controlled Expenditure List, and instructions on how to request approval for purchase or acquisitions are set out at https://www.bja.gov/funding/JAGControlledPurchaseList.pdf

47.   Controlled expenditures - incident reporting

If an agency uses award funds to purchase or acquire any item on the Controlled Expenditure List at the time of purchase or acquisition, including as the list may be amended from time to time, the agency must collect and retain (for at least 3 years) certain information about the use of-- (1) any federally-acquired Controlled Equipment in the agency's inventory, and (2) any other controlled equipment in the same category as the federally-acquired controlled equipment in the agency's inventory, regardless of source; and the agency must make that information available to BJA upon request. Details about what information must be collected and retained are set out at https://ojp.gov/docs/LE-Equipment-WG-Final-Report.pdf.

48.   Sale of items on Controlled Expenditure List

Notwithstanding the provision of the Part 200 Uniform Requirements set out at 2 C.F.R. 200.313, no equipment listed on the Controlled Expenditure List that is purchased with award funds may be transferred or sold to a third party, except as described below:

a.  Agencies may transfer or sell any controlled equipment, except riot helmets and riot shields, to a Law Enforcement Agency (LEA) after obtaining prior written approval from BJA. As a condition of that approval, the acquiring LEA will be required to submit information and certifications to BJA as if it were requesting approval to use award funds for the initial purchase of items on the Controlled Expenditure List.

b.  Agencies may not transfer or sell any riot helmets or riot shields purchased under this award.

c.  Agencies may not transfer or sell any Controlled Equipment purchased under this award to non-LEAs, with the exception of fixed wing aircraft, rotary wing aircraft, and command and control vehicles. Before any such transfer or sale is finalized, the agency must obtain prior written approval from BJA. All law enforcement-related and other sensitive or potentially dangerous components, and all law enforcement insignias and identifying markings must be removed prior to transfer or sale.

The recipient must notify BJA prior to the disposal of any items on the Controlled Expenditure List purchased with award funds, and must abide by any applicable laws (including regulations) in such disposal.

49.   Prohibited or controlled expenditures - Effect of failure to comply

Failure to comply with an award condition related to prohibited or controlled expenditures may result in denial of any further approvals of controlled expenditures under this or other federal awards.



| U.S. Department of Justice<br>Office of Justice Programs<br>**Bureau of Justice Assistance** | **AWARD CONTINUATION<br>SHEET**<br>**Grant** | PAGE  15  OF  20 |
|---|---|---|

| PROJECT NUMBER | 2017-DJ-BX-0002 | AWARD DATE | 08/23/2017 |
|---|---|---|---|

*SPECIAL CONDITIONS*

50.   Controlled expenditures - Standards

Consistent with recommendation 2.1 of Executive Order 13688, a law enforcement agency that acquires controlled equipment with award funds must adopt robust and specific written policies and protocols governing General Policing Standards and Specific Controlled Equipment Standards. General Policing Standards includes policies on (a) Community Policing; (b) Constitutional Policing; and (c) Community Input and Impact Considerations. Specific Controlled Equipment Standards includes policies specifically related to (a) Appropriate Use of Controlled Equipment; (b) Supervision of Use; (c) Effectiveness Evaluation; (d) Auditing and Accountability; and (e) Transparency and Notice Considerations. Upon OJP's request, the recipient must provide a copy of the General Policing Standards and Specific Controlled Equipment Standards, and any related policies and protocols.

51.   Authorization to obligate (federal) award funds to reimburse certain project costs incurred on or after October 1, 2016

The recipient may obligate (federal) award funds only after the recipient makes a valid acceptance of the award.  As of the first day of the period of performance for the award (October 1, 2016), however, the recipient may choose to incur project costs using non-federal funds, but any such project costs are incurred at the recipient's risk until, at a minimum-- (1) the recipient makes a valid acceptance of the award, and (2) all applicable withholding conditions are removed by OJP (via a Grant Adjustment Notice).  (A withholding condition is a condition in the award document that precludes the recipient from obligating, expending, or drawing down all or a portion of the award funds until the condition is removed.)

Except to the extent (if any) that an award condition expressly precludes reimbursement of project costs incurred "at-risk," if and when the recipient makes a valid acceptance of this award and OJP removes each applicable withholding condition through a Grant Adjustment Notice, the recipient is authorized to obligate (federal) award funds to reimburse itself for project costs incurred "at-risk" earlier during the period of performance (such as project costs incurred prior to award acceptance or prior to removal of an applicable withholding condition), provided that those project costs otherwise are allowable costs under the award.

Nothing in this condition shall be understood to authorize the recipient (or any subrecipient at any tier) to use award funds to "supplant" State or local funds in violation of the recipient's certification (executed by the chief executive of the State or local government) that federal funds will be used to increase the amounts of such funds that would, in the absence of federal funds, be made available for law enforcement activities.

52.   "Certification of Compliance with 8 U.S.C. 1373" required for valid award acceptance by a unit of local government

In order validly to accept this award, the applicant local government must submit the required "Certification of Compliance with 8 U.S.C. 1373" (executed by the chief legal officer of the local government).  Unless that executed certification either-- (1) is submitted to OJP together with the fully-executed award document, or (2) is uploaded in OJP's GMS no later than the day the signed award document is submitted to OJP, any submission by a unit of local government that purports to accept the award is invalid.

If an initial award-acceptance submission by the recipient is invalid, once the unit of local government does submit the necessary certification regarding 8 U.S.C. 1373, it may submit a fully-executed award document executed by the unit of local government on or after the date of that certification.

For purposes of this condition, "local government" does not include any Indian tribes.

OJP FORM 4000/2 (REV  4-88)



U.S. Department of Justice
Office of Justice Programs
**Bureau of Justice Assistance**

**AWARD CONTINUATION SHEET**

**Grant**

PAGE  16  OF  20

| PROJECT NUMBER | 2017-DJ-BX-0002 | AWARD DATE | 08/23/2017 |
| --- | --- | --- | --- |

*SPECIAL CONDITIONS*

53.  Ongoing compliance with 8 U.S.C. 1373 is required

1. With respect to the "program or activity" funded in whole or part under this award (including any such "program or activity" of any subrecipient at any tier), throughout the period of performance for the award, no State or local government entity, -agency, or -official may prohibit or in any way restrict-- (1) any government entity or -official from sending or receiving information regarding citizenship or immigration status as described in 8 U.S.C. 1373(a); or (2) a government entity or -agency from sending, requesting or receiving, maintaining, or exchanging information regarding immigration status as described in 8 U.S.C. 1373(b).  For purposes of this award, any prohibition (or restriction) that violates this condition is an "information-communication restriction."

2. Certifications from subrecipients.  The recipient may not make a subaward to a State or local government or a "public" institution of higher education, unless it first obtains a certification of compliance with 8 U.S.C. 1373, properly executed by the chief legal officer of the jurisdiction or institution that would receive the subaward, using the appropriate form available at https://ojp.gov/funding/Explore/SampleCertifications-8USC1373 htm.  Similarly, the recipient must require that no subrecipient (at any tier) may make a further subaward to a State or local government or a "public" institution of higher education, unless it first obtains a certification of compliance with 8 U.S.C. 1373, properly executed by the chief legal officer of the jurisdiction or institution that would receive the further subaward, using the appropriate OJP form.

3. The recipient's monitoring responsibilities include monitoring of subrecipient compliance with the requirements of this condition.

4. Allowable costs.  Compliance with these requirements is an authorized and priority purpose of this award.  To the extent that such costs are not reimbursed under any other federal program, award funds may be obligated (including for authorized reimbursements) for the reasonable, necessary, and allocable costs (if any) that the recipient, or any subrecipient at any tier that is a State or local government or a "public" institution of higher education, incurs to implement this condition.

5. Rules of Construction

A. For purposes of this condition:

(1) "State" and "local government" include any agency or other entity thereof, but not any institution of higher education or any Indian tribe.

(2) A "public" institution of higher education is one that is owned, controlled, or directly funded by a State or local government.

(3) "Program or activity" means what it means under title VI of the Civil Rights Act of 1964 (see 42 U.S.C. 2000d-4a).

(4) "Immigration status" means what it means for purposes of 8 U.S.C. 1373 (Illegal Immigration Reform and Immigrant Responsibility Act of 1996); and terms that are defined in 8 U.S.C. 1101 (Immigration and Nationality Act) mean what they mean under that section 1101, except that the term "State" also shall include American Samoa (cf. 42 U.S.C. 901(a)(2)).

(5) Pursuant to the provisions set out at (or referenced in) 8 U.S.C. 1551 note ("Abolition … and Transfer of Functions"), references to the "Immigration and Naturalization Service" in 8 U.S.C. 1373 are to be read as references to particular components of the Department of Homeland Security (DHS).

B. Nothing in this condition shall be understood to authorize or require any recipient, any subrecipient at any tier, any State or local government, any "public" institution of higher education, or any other entity (or individual) to violate any federal law, including any applicable civil rights or nondiscrimination law.

OJP FORM 4000/2 (REV  4-88)



U.S. Department of Justice
Office of Justice Programs
**Bureau of Justice Assistance**

**AWARD CONTINUATION
SHEET**

**Grant**

PAGE 17 OF 20

| PROJECT NUMBER | 2017-DJ-BX-0002 | AWARD DATE | 08/23/2017 |
|---|---|---|---|

*SPECIAL CONDITIONS*

IMPORTANT NOTE:  Any questions about the meaning or scope of this condition should be directed to OJP, before award acceptance.

54.   Authority to obligate award funds contingent on compliance with 8 U.S.C. 1373; unallowable costs; obligation to notify

1.  If the recipient is a State or local government--

A.  The recipient may not obligate award funds if, at the time of the obligation, the "program or activity" of the recipient (or of any subrecipient at any tier that is a either a State or unit of local government or a "public" institution of higher education) that is funded in whole or in part with award funds is subject to any "information-communication restriction."

B.  In addition, with respect to any project costs it incurs "at risk," the recipient may not obligate award funds to reimburse itself if -- at the time it incurs such costs -- the "program or activity" of the recipient (or of any subrecipient at any tier that is a either a State or unit of local government or a "public" institution of higher education) that would be reimbursed in whole or in part with award funds was subject to any "information-communication restriction."

C.  Any drawdown of award funds by the recipient shall be considered, for all purposes, to be a material representation by the recipient to OJP that, as of the date the recipient requests the drawdown, the recipient and all subrecipients (regardless of tier) are in compliance with 8 U.S.C. 1373.

D.  The recipient must promptly notify OJP (in writing) if the recipient, from its requisite monitoring of compliance with award conditions or otherwise, has credible evidence that indicates that the funded "program or activity" of the recipient, or of any subrecipient at any tier that is either a State or a local government or a "public" institution of higher education, may be subject to any "information-communication restriction." In addition, any subaward (at any tier) to a subrecipient that is either a State or a local government or a "public" institution of higher education must require prompt notification to the entity that made the subaward, should the subrecipient such credible evidence regarding an "information-communication restriction."

2.  Any subaward (at any tier) to a subrecipient that is either a State or a local government or a "public" institution of higher education must provide that the subrecipient may not obligate award funds if, at the time of the obligation, the "program or activity" of the subrecipient (or of any further such subrecipient at any tier) that is funded in whole or in part with award funds is subject to any "information-communication restriction."

3.  Absent an express written determination by DOJ to the contrary, based upon a finding by DOJ of compelling circumstances (e.g., a small amount of award funds obligated by the recipient at the time of a subrecipient's minor and transitory non-compliance, which was unknown to the recipient despite diligent monitoring), any obligations of award funds that, under this condition, may not be made shall be unallowable costs for purposes of this award.  In making any such determination, DOJ will give great weight to evidence submitted by the recipient that demonstrates diligent monitoring of subrecipient compliance with the requirements set out in the award condition entitled "Ongoing compliance with 8 U.S.C. 1373 is required."

4.  Rules of Construction

A.  For purposes of this condition "information-communication restriction" has the meaning set out in the award condition entitled "Ongoing compliance with 8 U.S.C. 1373 is required."

B.  Both the "Rules of Construction" and the "Important Note" set out in the award condition entitled "Ongoing compliance with 8 U.S.C. 1373 is required" are incorporated by reference as though set forth here in full.



U.S. Department of Justice
Office of Justice Programs
**Bureau of Justice Assistance**

**AWARD CONTINUATION
SHEET**

**Grant**

PAGE  18  OF  20

| PROJECT NUMBER | 2017-DJ-BX-0002 | AWARD DATE | 08/23/2017 |
|---|---|---|---|

*SPECIAL CONDITIONS*

55. Required State-level rules or practices related to aliens; allowable costs

The following provisions apply to the recipient of this award, if the recipient is a State government, and also apply to any State-government subrecipient at any tier (whether or not the recipient is a State government).

1. Requirements

With respect to the "program or activity" that is funded (in whole or in part) by this award, as of the date the recipient accepts this award, and throughout the remainder of the period of performance for the award--

A. A State statute, or a State rule, -regulation, -policy, or -practice, must be in place that is designed to ensure that agents of the United States acting under color of federal law in fact are given to access any State (or State-contracted) correctional facility for the purpose of permitting such agents to meet with individuals who are (or are believed by such agents to be) aliens and to inquire as to such individuals' right to be or remain in the United States.

B. A State statute, or a State rule, -regulation, -policy, or -practice, must be in place that is designed to ensure that, when a State (or State-contracted) correctional facility receives from DHS a formal written request authorized by the Immigration and Nationality Act that seeks advance notice of the scheduled release date and time for a particular alien in such facility, then such facility will honor such request and -- as early as practicable (see para. 4.B. of this condition) -- provide the requested notice to DHS.

2. Monitoring

The recipient's monitoring responsibilities include monitoring of subrecipient compliance with the requirements of this condition.

3. Allowable costs

Compliance with these requirements is an authorized and priority purpose of this award. To the extent that such costs are not reimbursed under any other federal program, award funds may be obligated (including for authorized reimbursements) for the reasonable, necessary, and allocable costs (if any) of-- (1) developing and putting into place statutes, rules, regulations, policies, and practices to satisfy this condition, and (2) permitting access as described in para. 1.A. above, and (3) honoring any request from DHS that is encompassed by para. 1.B. above.

4. Rules of construction

A. For purposes of this condition--

(1) the term "alien" means what it means under section 101 of the Immigration and Nationality Act (see 8 U.S.C. 1101(a)(3)).

(2) the term "correctional facility" means what it means under the Title I of the Omnibus Crime Control and Safe Streets Act of 1968 (see 42 U.S.C. 3791(a)(7)).

B. Nothing in this condition shall be understood to authorize or require any recipient, any subrecipient at any tier, any State or local government, or any other entity or individual to maintain (or detain) any individual in custody beyond the date and time the individual would have been released in the absence of this condition.

Current DHS practice is ordinarily to request advance notice of scheduled release "as early as practicable (at least 48 hours, if possible)." (See DHS Form I-247A (3/17)). In the event that (e.g., in light of the date DHS made such request) the scheduled release date and time for an alien are such as not to permit the advance notice that DHS has requested, it shall not be a violation of this condition to provide only as much advance notice as practicable.



| | | | |
|---|---|---|---|
| | U.S. Department of Justice<br>Office of Justice Programs<br>**Bureau of Justice Assistance** | **AWARD CONTINUATION<br>SHEET**<br>**Grant** | PAGE  19  OF  20 |

| PROJECT NUMBER | 2017-DJ-BX-0002 | AWARD DATE | 08/23/2017 |
|---|---|---|---|

*SPECIAL CONDITIONS*

NOTE: Current DHS practice is to use one form (DHS Form I-247A (3/17)) for two distinct purposes -- to request advance notice of scheduled release, and to request that an individual be detained for up to 48 hours AFTER the scheduled release. This condition imposes NO requirements as to such DHS requests for detention.

C. Both the "Rules of Construction" and the "Important Note" set out in the award condition entitled "Ongoing compliance with 8 U.S.C. 1373 is required" are incorporated by reference as though set forth here in full.

56.     Required local-government-level rules or practices related to aliens; allowable costs

The following provisions apply to the recipient of this award, if the recipient is a unit of local government, and also apply to any local-government subrecipient of this award at any tier (whether or not the recipient itself is a unit of local government).

1.  Requirements

With respect to the "program or activity" that is funded (in whole or in part) by this award, as of the date the recipient accepts this award, and throughout the remainder of the period of performance for the award--

A.  A local ordinance, -rule, -regulation, -policy, or -practice (or an applicable State statute, -rule, -regulation, -policy, or -practice) must be in place that is designed to ensure that agents of the United States acting under color of federal law in fact are given access a local-government (or local-government-contracted) correctional facility for the purpose of permitting such agents to meet with individuals who are (or are believed by such agents to be) aliens and to inquire as to such individuals' right to be or remain in the United States.

B.  A local ordinance, -rule, -regulation, -policy, or -practice (or an applicable State statute, -rule, -regulation, -policy, or -practice) must be in place that is designed to ensure that, when a local-government (or local-government-contracted) correctional facility receives from DHS a formal written request authorized by the Immigration and Nationality Act that seeks advance notice of the scheduled release date and time for a particular alien in such facility, then such facility will honor such request and -- as early as practicable (see "Rules of Construction" incorporated by para. 4.B. of this condition) -- provide the requested notice to DHS.

2.  Monitoring

The recipient's monitoring responsibilities include monitoring of subrecipient compliance with the requirements of this condition.

3.  Allowable costs

Compliance with these requirements is an authorized and priority purpose of this award.  To the extent that such costs are not reimbursed under any other federal program, award funds may be obligated (including for authorized reimbursements) for the reasonable, necessary, and allocable costs (if any) of-- (1) developing and putting into place statutes, ordinances, rules, regulations, policies, and practices to satisfy this condition, (2) permitting access as described in para. 1.A. above, and (3) honoring any request from DHS that is encompassed by para. 1.B. above.

4.  Rules of construction

A.  The "Rules of Construction" and the "Important Note" set out in the award condition entitled "Ongoing compliance with 8 U.S.C. 1373 is required" are incorporated by reference as though set forth here in full.

B.  The "Rules of Construction" set out in the award condition entitled "Required State-level rules or practices related to aliens; allowable costs" are incorporated by reference as though set forth here in full.



U.S. Department of Justice
Office of Justice Programs
**Bureau of Justice Assistance**

**AWARD CONTINUATION
SHEET**

**Grant**

PAGE  20  OF  20

| PROJECT NUMBER | 2017-DJ-BX-0002 | AWARD DATE | 08/23/2017 |
|---|---|---|---|

*SPECIAL CONDITIONS*

57.   Use of funds for DNA testing; upload of DNA profiles

If award funds are used for DNA testing of evidentiary materials, any resulting eligible DNA profiles must be uploaded to the Combined DNA Index System ("CODIS," the DNA database operated by the FBI) by a government DNA laboratory with access to CODIS.

No profiles generated under this award may be entered or uploaded into any non-governmental DNA database without prior express written approval from BJA.

Award funds may not be used for the purchase of DNA equipment and supplies unless the resulting DNA profiles may be accepted for entry into CODIS.

58.   Encouragement of submission of "success stories"

BJA strongly encourages the recipient to submit annual (or more frequent) JAG success stories. To submit a success story, sign in to a My BJA account at https://www.bja.gov/Login.aspx to access the Success Story Submission form. If the recipient does not yet have a My BJA account, please register at https://www.bja.gov/profile.aspx. Once registered, one of the available areas on the My BJA page will be "My Success Stories." Within this box, there is an option to add a Success Story. Once reviewed and approved by BJA, all success stories will appear on the BJA Success Story web page at https://www.bja.gov/SuccessStoryList.aspx.

OJP FORM 4000/2 (REV  4-88)

Exhibit F

U.S. Department of Justice
Office of Justice Programs
**Bureau of Justice Assistance**

**Grant**

PAGE  1   OF 20

| | |
|---|---|
| 1 RECIPIENT NAME AND ADDRESS (Including Zip Code) | 4 AWARD NUMBER:   2017-DJ-BX-0001 |

City of Binghamton
38 Hawley Street
Binghamton, NY 13901-3777

5 PROJECT PERIOD: FROM      10/01/2016   TO   09/30/2018

   BUDGET PERIOD: FROM      10/01/2016   TO   09/30/2018

6 AWARD DATE      08/23/2017

7 ACTION

2a GRANTEE IRS/VENDOR NO
[REDACTED]

8 SUPPLEMENT NUMBER
   00

Initial

2b GRANTEE DUNS NO
[REDACTED]

9 PREVIOUS AWARD AMOUNT                          $ 0

3 PROJECT TITLE
   BJA FY 2017 Edward Byrne Memorial Assistance Grant JAG (Parks)

10 AMOUNT OF THIS AWARD                          $ 24,259

11 TOTAL AWARD                                        $ 24,259

12 SPECIAL CONDITIONS

THE ABOVE GRANT PROJECT IS APPROVED SUBJECT TO SUCH CONDITIONS OR LIMITATIONS AS ARE SET FORTH
ON THE ATTACHED PAGE(S)

13 STATUTORY AUTHORITY FOR GRANT

This project is supported under FY17(BJA - JAG State and JAG Local) Title I of Pub  L  No  90-351 (generally codified at 42 U S C  3711 - 3797ff-5),
including subpart 1 of part E (codified at 42 U S C  3750 - 3758); see also 28 U S C  530C(a)

14 CATALOG OF DOMESTIC FEDERAL ASSISTANCE (CFDA Number)

16 738 - Edward Byrne Memorial Justice Assistance Grant Program

15 METHOD OF PAYMENT

GPRS

**AGENCY APPROVAL**

**GRANTEE ACCEPTANCE**

16 TYPED NAME AND TITLE OF APPROVING OFFICIAL

Alan R  Hanson

Acting Assistant Attorney General

18 TYPED NAME AND TITLE OF AUTHORIZED GRANTEE OFFICIAL

Richard C  David
Mayor

17 SIGNATURE OF APPROVING OFFICIAL

*Alan R. Hanson*

19 SIGNATURE OF AUTHORIZED RECIPIENT OFFICIAL

19A  DATE

**AGENCY USE ONLY**

20 ACCOUNTING CLASSIFICATION CODES

21   SDJUGT0338

| FISCAL YEAR | FUND CODE | BUD ACT | OFC | DIV REG | SUB | POMS | AMOUNT |
|---|---|---|---|---|---|---|---|
| X | B | DJ | 80 | 00 | 00 | | 24259 |

OJP FORM 4000/2 (REV  5-87) PREVIOUS EDITIONS ARE OBSOLETE

OJP FORM 4000/2 (REV  4-88)



U.S. Department of Justice
Office of Justice Programs
**Bureau of Justice Assistance**

**AWARD CONTINUATION
SHEET
Grant**

PAGE   2   OF  20

| PROJECT NUMBER | 2017-DJ-BX-0001 | AWARD DATE | 08/23/2017 |
|---|---|---|---|

*SPECIAL CONDITIONS*

1.  Requirements of the award; remedies for non-compliance or for materially false statements

    The conditions of this award are material requirements of the award.  Compliance with any certifications or assurances submitted by or on behalf of the recipient that relate to conduct during the period of performance also is a material requirement of this award.

    Failure to comply with any one or more of these award requirements -- whether a condition set out in full below, a condition incorporated by reference below, or a certification or assurance related to conduct during the award period -- may result in the Office of Justice Programs ("OJP") taking appropriate action with respect to the recipient and the award.  Among other things, the OJP may withhold award funds, disallow costs, or suspend or terminate the award.  The Department of Justice ("DOJ"), including OJP, also may take other legal action as appropriate.

    Any materially false, fictitious, or fraudulent statement to the federal government related to this award (or concealment or omission of a material fact) may be the subject of criminal prosecution (including under 18 U.S.C. 1001 and/or 1621, and/or 42 U.S.C. 3795a), and also may lead to imposition of civil penalties and administrative remedies for false claims or otherwise (including under 31 U.S.C. 3729-3730 and 3801-3812).

    Should any provision of a requirement of this award be held to be invalid or unenforceable by its terms, that provision shall first be applied with a limited construction so as to give it the maximum effect permitted by law.  Should it be held, instead, that the provision is utterly invalid or -unenforceable, such provision shall be deemed severable from this award.

2.  Applicability of Part 200 Uniform Requirements

    The Uniform Administrative Requirements, Cost Principles, and Audit Requirements in 2 C.F.R. Part 200, as adopted and supplemented by DOJ in 2 C.F.R. Part 2800 (together, the "Part 200 Uniform Requirements") apply to this FY 2017 award from OJP.

    The Part 200 Uniform Requirements were first adopted by DOJ on December 26, 2014.  If this FY 2017 award supplements funds previously awarded by OJP under the same award number (e.g., funds awarded during or before December 2014), the Part 200 Uniform Requirements apply with respect to all funds under that award number (regardless of the award date, and regardless of whether derived from the initial award or a supplemental award) that are obligated on or after the acceptance date of this FY 2017 award.

    For more information and resources on the Part 200 Uniform Requirements as they relate to OJP awards and subawards ("subgrants"), see the OJP website at https://ojp.gov/funding/Part200UniformRequirements htm.

    In the event that an award-related question arises from documents or other materials prepared or distributed by OJP that may appear to conflict with, or differ in some way from, the provisions of the Part 200 Uniform Requirements, the recipient is to contact OJP promptly for clarification.

3.  Compliance with DOJ Grants Financial Guide

    The recipient agrees to comply with the DOJ Grants Financial Guide as posted on the OJP website (currently, the "2015 DOJ Grants Financial Guide" available at https://ojp.gov/financialguide/DOJ/index htm), including any updated version that may be posted during the period of performance.



U.S. Department of Justice
Office of Justice Programs
**Bureau of Justice Assistance**

**AWARD CONTINUATION SHEET**

**Grant**

PAGE   3   OF   20

| PROJECT NUMBER | 2017-DJ-BX-0001 | AWARD DATE | 08/23/2017 |
|---|---|---|---|

*SPECIAL CONDITIONS*

4.   Required training for Point of Contact and all Financial Points of Contact

Both the Point of Contact (POC) and all Financial Points of Contact (FPOCs) for this award must have successfully completed an "OJP financial management and grant administration training" by 120 days after the date of the recipient's acceptance of the award.  Successful completion of such a training on or after January 1, 2015, will satisfy this condition.

In the event that either the POC or an FPOC for this award changes during the period of performance, the new POC or FPOC must have successfully completed an "OJP financial management and grant administration training" by 120 calendar days after-- (1) the date of OJP's approval of the "Change Grantee Contact" GAN (in the case of a new POC), or (2) the date the POC enters information on the new FPOC in GMS (in the case of a new FPOC).  Successful completion of such a training on or after January 1, 2015, will satisfy this condition.

A list of OJP trainings that OJP will consider "OJP financial management and grant administration training" for purposes of this condition is available at https://www.ojp.gov/training/fmts htm.  All trainings that satisfy this condition include a session on grant fraud prevention and detection.

The recipient should anticipate that OJP will immediately withhold ("freeze") award funds if the recipient fails to comply with this condition.  The recipient's failure to comply also may lead OJP to impose additional appropriate conditions on this award.

5.   Requirements related to "de minimis" indirect cost rate

A recipient that is eligible under the Part 200 Uniform Requirements and other applicable law to use the "de minimis" indirect cost rate described in 2 C.F.R. 200.414(f), and that elects to use the "de minimis" indirect cost rate, must advise OJP in writing of both its eligibility and its election, and must comply with all associated requirements in the Part 200 Uniform Requirements.  The "de minimis" rate may be applied only to modified total direct costs (MTDC) as defined by the Part 200 Uniform Requirements.

6.   Requirement to report potentially duplicative funding

If the recipient currently has other active awards of federal funds, or if the recipient receives any other award of federal funds during the period of performance for this award, the recipient promptly must determine whether funds from any of those other federal awards have been, are being, or are to be used (in whole or in part) for one or more of the identical cost items for which funds are provided under this award.  If so, the recipient must promptly notify the DOJ awarding agency (OJP or OVW, as appropriate) in writing of the potential duplication, and, if so requested by the DOJ awarding agency, must seek a budget-modification or change-of-project-scope grant adjustment notice (GAN) to eliminate any inappropriate duplication of funding.



| U.S. Department of Justice<br>Office of Justice Programs<br>**Bureau of Justice Assistance** | **AWARD CONTINUATION<br>SHEET**<br>**Grant** | PAGE   4   OF   20 |

| PROJECT NUMBER | 2017-DJ-BX-0001 | AWARD DATE | 08/23/2017 |

*SPECIAL CONDITIONS*

7.   Requirements related to System for Award Management and Universal Identifier Requirements

The recipient must comply with applicable requirements regarding the System for Award Management (SAM), currently accessible at https://www.sam.gov/.  This includes applicable requirements regarding registration with SAM, as well as maintaining the currency of information in SAM.

The recipient also must comply with applicable restrictions on subawards ("subgrants") to first-tier subrecipients (first-tier "subgrantees"), including restrictions on subawards to entities that do not acquire and provide (to the recipient) the unique entity identifier required for SAM registration.

The details of the recipient's obligations related to SAM and to unique entity identifiers are posted on the OJP web site at https://ojp.gov/funding/Explore/SAM htm (Award condition:  System for Award Management (SAM) and Universal Identifier Requirements), and are incorporated by reference here.

This condition does not apply to an award to an individual who received the award as a natural person (i.e., unrelated to any business or non-profit organization that he or she may own or operate in his or her name).

8.   All subawards ("subgrants") must have specific federal authorization

The recipient, and any subrecipient ("subgrantee") at any tier, must comply with all applicable requirements for authorization of any subaward.  This condition applies to agreements that -- for purposes of federal grants administrative requirements -- OJP considers a "subaward" (and therefore does not consider a procurement "contract").

The details of the requirement for authorization of any subaward are posted on the OJP web site at https://ojp.gov/funding/Explore/SubawardAuthorization htm (Award condition:  All subawards ("subgrants") must have specific federal authorization), and are incorporated by reference here.

9.   Specific post-award approval required to use a noncompetitive approach in any procurement contract that would exceed $150,000

The recipient, and any subrecipient ("subgrantee") at any tier, must comply with all applicable requirements to obtain specific advance approval to use a noncompetitive approach in any procurement contract that would exceed the Simplified Acquisition Threshold (currently, $150,000).  This condition applies to agreements that -- for purposes of federal grants administrative requirements -- OJP considers a procurement "contract" (and therefore does not consider a subaward).

The details of the requirement for advance approval to use a noncompetitive approach in a procurement contract under an OJP award are posted on the OJP web site at https://ojp.gov/funding/Explore/NoncompetitiveProcurement htm (Award condition:  Specific post-award approval required to use a noncompetitive approach in a procurement contract (if contract would exceed $150,000)), and are incorporated by reference here.



| U.S. Department of Justice Office of Justice Programs **Bureau of Justice Assistance** | **AWARD CONTINUATION SHEET** **Grant** | PAGE 5 OF 20 |
|---|---|---|

| PROJECT NUMBER 2017-DJ-BX-0001 | AWARD DATE 08/23/2017 |
|---|---|

*SPECIAL CONDITIONS*

10. Requirements pertaining to prohibited conduct related to trafficking in persons (including reporting requirements and OJP authority to terminate award)

    The recipient, and any subrecipient ("subgrantee") at any tier, must comply with all applicable requirements (including requirements to report allegations) pertaining to prohibited conduct related to the trafficking of persons, whether on the part of recipients, subrecipients ("subgrantees"), or individuals defined (for purposes of this condition) as "employees" of the recipient or of any subrecipient.

    The details of the recipient's obligations related to prohibited conduct related to trafficking in persons are posted on the OJP web site at https://ojp.gov/funding/Explore/ProhibitedConduct-Trafficking htm (Award condition: Prohibited conduct by recipients and subrecipients related to trafficking in persons (including reporting requirements and OJP authority to terminate award)), and are incorporated by reference here.

11. Compliance with applicable rules regarding approval, planning, and reporting of conferences, meetings, trainings, and other events

    The recipient, and any subrecipient ("subgrantee") at any tier, must comply with all applicable laws, regulations, policies, and official DOJ guidance (including specific cost limits, prior approval and reporting requirements, where applicable) governing the use of federal funds for expenses related to conferences (as that term is defined by DOJ), including the provision of food and/or beverages at such conferences, and costs of attendance at such conferences.

    Information on the pertinent DOJ definition of conferences and the rules applicable to this award appears in the DOJ Grants Financial Guide (currently, as section 3.10 of "Postaward Requirements" in the "2015 DOJ Grants Financial Guide").

12. Requirement for data on performance and effectiveness under the award

    The recipient must collect and maintain data that measure the performance and effectiveness of work under this award. The data must be provided to OJP in the manner (including within the timeframes) specified by OJP in the program solicitation or other applicable written guidance. Data collection supports compliance with the Government Performance and Results Act (GPRA) and the GPRA Modernization Act of 2010, and other applicable laws.

13. OJP Training Guiding Principles

    Any training or training materials that the recipient -- or any subrecipient ("subgrantee") at any tier -- develops or delivers with OJP award funds must adhere to the OJP Training Guiding Principles for Grantees and Subgrantees, available at https://ojp.gov/funding/ojptrainingguidingprinciples htm.

14. Effect of failure to address audit issues

    The recipient understands and agrees that the DOJ awarding agency (OJP or OVW, as appropriate) may withhold award funds, or may impose other related requirements, if (as determined by the DOJ awarding agency) the recipient does not satisfactorily and promptly address outstanding issues from audits required by the Part 200 Uniform Requirements (or by the terms of this award), or other outstanding issues that arise in connection with audits, investigations, or reviews of DOJ awards.

15. Potential imposition of additional requirements

    The recipient agrees to comply with any additional requirements that may be imposed by the DOJ awarding agency (OJP or OVW, as appropriate) during the period of performance for this award, if the recipient is designated as "high-risk" for purposes of the DOJ high-risk grantee list.



U.S. Department of Justice
Office of Justice Programs
**Bureau of Justice Assistance**

**AWARD CONTINUATION
SHEET**

**Grant**

PAGE   6   OF   20

| PROJECT NUMBER | 2017-DJ-BX-0001 | AWARD DATE | 08/23/2017 |

*SPECIAL CONDITIONS*

16.   Compliance with DOJ regulations pertaining to civil rights and nondiscrimination - 28 C.F.R. Part 42

The recipient, and any subrecipient ("subgrantee") at any tier, must comply with all applicable requirements of 28 C.F.R. Part 42, specifically including any applicable requirements in Subpart E of 28 C.F.R. Part 42 that relate to an equal employment opportunity program.

17.   Compliance with DOJ regulations pertaining to civil rights and nondiscrimination - 28 C.F.R. Part 54

The recipient, and any subrecipient ("subgrantee") at any tier, must comply with all applicable requirements of 28 C.F.R. Part 54, which relates to nondiscrimination on the basis of sex in certain "education programs."

18.   Compliance with DOJ regulations pertaining to civil rights and nondiscrimination - 28 C.F.R. Part 38

The recipient, and any subrecipient ("subgrantee") at any tier, must comply with all applicable requirements of 28 C.F.R. Part 38, specifically including any applicable requirements regarding written notice to program beneficiaries and prospective program beneficiaries.  Part 38 of 28 C.F.R., a DOJ regulation, was amended effective May 4, 2016.

Among other things, 28 C.F.R. Part 38 includes rules that prohibit specific forms of discrimination on the basis of religion, a religious belief, a refusal to hold a religious belief, or refusal to attend or participate in a religious practice. Part 38 also sets out rules and requirements that pertain to recipient and subrecipient ("subgrantee") organizations that engage in or conduct explicitly religious activities, as well as rules and requirements that pertain to recipients and subrecipients that are faith-based or religious organizations.

The text of the regulation, now entitled "Partnerships with Faith-Based and Other Neighborhood Organizations," is available via the Electronic Code of Federal Regulations (currently accessible at https://www.ecfr.gov/cgi-bin/ECFR?page=browse), by browsing to Title 28-Judicial Administration, Chapter 1, Part 38, under e-CFR "current" data.

19.   Restrictions on "lobbying"

In general, as a matter of federal law, federal funds awarded by OJP may not be used by the recipient, or any subrecipient ("subgrantee") at any tier, either directly or indirectly, to support or oppose the enactment, repeal, modification, or adoption of any law, regulation, or policy, at any level of government.  See 18 U.S.C. 1913.  (There may be exceptions if an applicable federal statute specifically authorizes certain activities that otherwise would be barred by law.)

Another federal law generally prohibits federal funds awarded by OJP from being used by the recipient, or any subrecipient at any tier, to pay any person to influence (or attempt to influence) a federal agency, a Member of Congress, or Congress (or an official or employee of any of them) with respect to the awarding of a federal grant or cooperative agreement, subgrant, contract, subcontract, or loan, or with respect to actions such as renewing, extending, or modifying any such award.  See 31 U.S.C. 1352.  Certain exceptions to this law apply, including an exception that applies to Indian tribes and tribal organizations.

Should any question arise as to whether a particular use of federal funds by a recipient (or subrecipient) would or might fall within the scope of these prohibitions, the recipient is to contact OJP for guidance, and may not proceed without the express prior written approval of OJP.

OJP FORM 4000/2 (REV  4-88)



U.S. Department of Justice

Office of Justice Programs

**Bureau of Justice Assistance**

**AWARD CONTINUATION
SHEET**

**Grant**

PAGE  7  OF  20

| PROJECT NUMBER | 2017-DJ-BX-0001 | AWARD DATE | 08/23/2017 |
|---|---|---|---|

*SPECIAL CONDITIONS*

20.   Compliance with general appropriations-law restrictions on the use of federal funds (FY 2017)

The recipient, and any subrecipient ("subgrantee") at any tier, must comply with all applicable restrictions on the use of federal funds set out in federal appropriations statutes.  Pertinent restrictions, including from various "general provisions" in the Consolidated Appropriations Act, 2017, are set out at https://ojp.gov/funding/Explore/FY17AppropriationsRestrictions htm, and are incorporated by reference here.

Should a question arise as to whether a particular use of federal funds by a recipient (or a subrecipient) would or might fall within the scope of an appropriations-law restriction, the recipient is to contact OJP for guidance, and may not proceed without the express prior written approval of OJP.

21.   Reporting potential fraud, waste, and abuse, and similar misconduct

The recipient, and any subrecipients ("subgrantees") at any tier, must promptly refer to the DOJ Office of the Inspector General (OIG) any credible evidence that a principal, employee, agent, subrecipient, contractor, subcontractor, or other person has, in connection with funds under this award-- (1) submitted a claim that violates the False Claims Act; or (2) committed a criminal or civil violation of laws pertaining to fraud, conflict of interest, bribery, gratuity, or similar misconduct.

Potential fraud, waste, abuse, or misconduct involving or relating to funds under this award should be reported to the OIG by-- (1) mail directed to: Office of the Inspector General, U.S. Department of Justice, Investigations Division, 950 Pennsylvania Avenue, N.W. Room 4706, Washington, DC 20530; (2) e-mail to: oig hotline@usdoj.gov; and/or (3) the DOJ OIG hotline: (contact information in English and Spanish) at (800) 869-4499 (phone) or (202) 616-9881 (fax).

Additional information is available from the DOJ OIG website at https://www.usdoj.gov/oig.



| U.S. Department of Justice<br>Office of Justice Programs<br>**Bureau of Justice Assistance** | **AWARD CONTINUATION SHEET**<br>**Grant** | PAGE   8   OF   20 |

| PROJECT NUMBER | 2017-DJ-BX-0001 | AWARD DATE | 08/23/2017 |

*SPECIAL CONDITIONS*

22.   Restrictions and certifications regarding non-disclosure agreements and related matters

No recipient or subrecipient ("subgrantee") under this award, or entity that receives a procurement contract or subcontract with any funds under this award, may require any employee or contractor to sign an internal confidentiality agreement or statement that prohibits or otherwise restricts, or purports to prohibit or restrict, the reporting (in accordance with law) of waste, fraud, or abuse to an investigative or law enforcement representative of a federal department or agency authorized to receive such information.

The foregoing is not intended, and shall not be understood by the agency making this award, to contravene requirements applicable to Standard Form 312 (which relates to classified information), Form 4414 (which relates to sensitive compartmented information), or any other form issued by a federal department or agency governing the nondisclosure of classified information.

1.  In accepting this award, the recipient--

a.  represents that it neither requires nor has required internal confidentiality agreements or statements from employees or contractors that currently prohibit or otherwise currently restrict (or purport to prohibit or restrict) employees or contractors from reporting waste, fraud, or abuse as described above; and

b.  certifies that, if it learns or is notified that it is or has been requiring its employees or contractors to execute agreements or statements that prohibit or otherwise restrict (or purport to prohibit or restrict), reporting of waste, fraud, or abuse as described above, it will immediately stop any further obligations of award funds, will provide prompt written notification to the federal agency making this award, and will resume (or permit resumption of) such obligations only if expressly authorized to do so by that agency.

2.  If the recipient does or is authorized under this award to make subawards ("subgrants"), procurement contracts, or both--

a.  it represents that--

(1)  it has determined that no other entity that the recipient's application proposes may or will receive award funds (whether through a subaward ("subgrant"), procurement contract, or subcontract under a procurement contract) either requires or has required internal confidentiality agreements or statements from employees or contractors that currently prohibit or otherwise currently restrict (or purport to prohibit or restrict) employees or contractors from reporting waste, fraud, or abuse as described above; and

(2)  it has made appropriate inquiry, or otherwise has an adequate factual basis, to support this representation; and

b.  it certifies that, if it learns or is notified that any subrecipient, contractor, or subcontractor entity that receives funds under this award is or has been requiring its employees or contractors to execute agreements or statements that prohibit or otherwise restrict (or purport to prohibit or restrict), reporting of waste, fraud, or abuse as described above, it will immediately stop any further obligations of award funds to or by that entity, will provide prompt written notification to the federal agency making this award, and will resume (or permit resumption of) such obligations only if expressly authorized to do so by that agency.



U.S. Department of Justice

Office of Justice Programs

**Bureau of Justice Assistance**

**AWARD CONTINUATION SHEET**

**Grant**

PAGE  9  OF  20

| PROJECT NUMBER | 2017-DJ-BX-0001 | AWARD DATE | 08/23/2017 |
|---|---|---|---|

*SPECIAL CONDITIONS*

23. Compliance with 41 U.S.C. 4712 (including prohibitions on reprisal; notice to employees)

The recipient (and any subrecipient at any tier) must comply with, and is subject to, all applicable provisions of 41 U.S.C. 4712, including all applicable provisions that prohibit, under specified circumstances, discrimination against an employee as reprisal for the employee's disclosure of information related to gross mismanagement of a federal grant, a gross waste of federal funds, an abuse of authority relating to a federal grant, a substantial and specific danger to public health or safety, or a violation of law, rule, or regulation related to a federal grant.

The recipient also must inform its employees, in writing (and in the predominant native language of the workforce), of employee rights and remedies under 41 U.S.C. 4712.

Should a question arise as to the applicability of the provisions of 41 U.S.C. 4712 to this award, the recipient is to contact the DOJ awarding agency (OJP or OVW, as appropriate) for guidance.

24. Encouragement of policies to ban text messaging while driving

Pursuant to Executive Order 13513, "Federal Leadership on Reducing Text Messaging While Driving," 74 Fed. Reg. 51225 (October 1, 2009), DOJ encourages recipients and subrecipients ("subgrantees") to adopt and enforce policies banning employees from text messaging while driving any vehicle during the course of performing work funded by this award, and to establish workplace safety policies and conduct education, awareness, and other outreach to decrease crashes caused by distracted drivers.

25. Cooperating with OJP Monitoring

The recipient agrees to cooperate with OJP monitoring of this award pursuant to OJP's guidelines, protocols, and procedures, and to cooperate with OJP (including the grant manager for this award and the Office of Chief Financial Officer (OCFO)) requests related to such monitoring, including requests related to desk reviews and/or site visits. The recipient agrees to provide to OJP all documentation necessary for OJP to complete its monitoring tasks, including documentation related to any subawards made under this award. Further, the recipient agrees to abide by reasonable deadlines set by OJP for providing the requested documents. Failure to cooperate with OJP's monitoring activities may result in actions that affect the recipient's DOJ awards, including, but not limited to: withholdings and/or other restrictions on the recipient's access to award funds; referral to the DOJ OIG for audit review; designation of the recipient as a DOJ High Risk grantee; or termination of an award(s).

26. FFATA reporting:  Subawards and executive compensation

The recipient must comply with applicable requirements to report first-tier subawards ("subgrants") of $25,000 or more and, in certain circumstances, to report the names and total compensation of the five most highly compensated executives of the recipient and first-tier subrecipients (first-tier "subgrantees") of award funds. The details of recipient obligations, which derive from the Federal Funding Accountability and Transparency Act of 2006 (FFATA), are posted on the OJP web site at https://ojp.gov/funding/Explore/FFATA htm (Award condition: Reporting Subawards and Executive Compensation), and are incorporated by reference here.

This condition, including its reporting requirement, does not apply to-- (1) an award of less than $25,000, or (2) an award made to an individual who received the award as a natural person (i.e., unrelated to any business or non-profit organization that he or she may own or operate in his or her name).



| | U.S. Department of Justice<br>Office of Justice Programs<br>**Bureau of Justice Assistance** | **AWARD CONTINUATION<br>SHEET**<br>**Grant** | PAGE  10  OF  20 |
|---|---|---|---|

| PROJECT NUMBER | 2017-DJ-BX-0001 | AWARD DATE | 08/23/2017 |
|---|---|---|---|

*SPECIAL CONDITIONS*

27.  Use of program income

Program income (as defined in the Part 200 Uniform Requirements) must be used in accordance with the provisions of the Part 200 Uniform Requirements.  Program income earnings and expenditures both must be reported on the quarterly Federal Financial Report, SF 425.

28.  Justice Information Sharing

In order to promote information sharing and enable interoperability among disparate systems across the justice and public safety community, the recipient (and any subrecipient at any tier)  must comply with DOJ's Global Justice Information Sharing Initiative (DOJ's Global) guidelines and recommendations for this particular award. The recipient shall conform to the Global Standards Package (GSP) and all constituent elements, where applicable, as described at: https://it.ojp.gov/gsp_grantcondition. The recipient shall document planned approaches to information sharing and describe compliance to the GSP and appropriate privacy policy that protects shared information, or provide detailed justification for why an alternative approach is recommended.

29.  Avoidance of duplication of networks

To avoid duplicating existing networks or IT systems in any initiatives funded by BJA for law enforcement information sharing systems which involve interstate connectivity between jurisdictions, such systems shall employ, to the extent possible, existing networks as the communication backbone to achieve interstate connectivity, unless the recipient can demonstrate to the satisfaction of BJA that this requirement would not be cost effective or would impair the functionality of an existing or proposed IT system.

30.  Compliance with 28 C.F.R. Part 23

With respect to any information technology system funded or supported by funds under this award, the recipient (and any subrecipient at any tier) must comply with 28 C.F.R. Part 23, Criminal Intelligence Systems Operating Policies, if OJP determines this regulation to be applicable. Should OJP determine 28 C.F.R. Part 23 to be applicable, OJP may, at its discretion, perform audits of the system, as per the regulation. Should any violation of 28 C.F.R. Part 23 occur, the recipient may be fined as per 42 U.S.C. 3789g(c)-(d).  The recipient may not satisfy such a fine with federal funds.

31.  Protection of human research subjects

The recipient (and any subrecipient at any tier) must comply with the requirements of 28 C.F.R. Part 46 and all OJP policies and procedures regarding the protection of human research subjects, including obtainment of Institutional Review Board approval, if appropriate, and subject informed consent.

32.  Confidentiality of data

The recipient (and any subrecipient at any tier) must comply with all confidentiality requirements of 42 U.S.C. 3789g and 28 C.F.R. Part 22 that are applicable to collection, use, and revelation of data or information. The recipient further agrees, as a condition of award approval, to submit a Privacy Certificate that is in accord with requirements of 28 C.F.R. Part 22 and, in particular, 28 C.F.R. 22.23.



| U.S. Department of Justice<br>Office of Justice Programs<br>**Bureau of Justice Assistance** | **AWARD CONTINUATION<br>SHEET**<br>**Grant** | PAGE  11  OF  20 |
| --- | --- | --- |

| PROJECT NUMBER | 2017-DJ-BX-0001 | AWARD DATE | 08/23/2017 |
| --- | --- | --- | --- |

*SPECIAL CONDITIONS*

33.   Verification and updating of recipient contact information

The recipient must verify its Point of Contact(POC), Financial Point of Contact (FPOC), and Authorized
Representative contact information in GMS, including telephone number and e-mail address.  If any information is
incorrect or has changed, a Grant Adjustment Notice (GAN) must be submitted via the Grants Management System
(GMS) to document changes.

34.   Law enforcement task forces - required training

Within 120 days of award acceptance, each current member of a law enforcement task force funded with award funds
who is a task force commander, agency executive, task force officer, or other task force member of equivalent rank,
must complete required online (internet-based) task force training. Additionally, all future task force members must
complete this training once during the period of performance for this award, or once every four years if multiple OJP
awards include this requirement.

The required training is available free of charge online through the BJA-funded Center for Task Force Integrity and
Leadership (www.ctfli.org). The training addresses task force effectiveness, as well as other key issues including
privacy and civil liberties/rights, task force performance measurement, personnel selection, and task force oversight and
accountability. If award funds are used to support a task force, the recipient must compile and maintain a task force
personnel roster, along with course completion certificates.

Additional information regarding the training is available through BJA's web site and the Center for Task Force
Integrity and Leadership (www.ctfli.org).

35.   Required attendance at BJA-sponsored events

The recipient (and its subrecipients at any tier) must participate in BJA-sponsored training events, technical assistance
events, or conferences held by BJA or its designees, upon BJA's request.

36.   Justification of consultant rate

Approval of this award does not indicate approval of any consultant rate in excess of $650 per day. A detailed
justification must be submitted to and approved by the OJP program office prior to obligation or expenditure of such
funds.



| U.S. Department of Justice<br>Office of Justice Programs<br>**Bureau of Justice Assistance** | **AWARD CONTINUATION SHEET**<br>**Grant** | PAGE 12 OF 20 |
|---|---|---|

| PROJECT NUMBER | 2017-DJ-BX-0001 | AWARD DATE | 08/23/2017 |
|---|---|---|---|

*SPECIAL CONDITIONS*

37. Compliance with National Environmental Policy Act and related statutes

Upon request, the recipient (and any subrecipient at any tier) must assist BJA in complying with the National Environmental Policy Act (NEPA), the National Historic Preservation Act, and other related federal environmental impact analyses requirements in the use of these award funds, either directly by the recipient or by a subrecipient. Accordingly, the recipient agrees to first determine if any of the following activities will be funded by the grant, prior to obligating funds for any of these purposes. If it is determined that any of the following activities will be funded by the award, the recipient agrees to contact BJA.

The recipient understands that this condition applies to new activities as set out below, whether or not they are being specifically funded with these award funds. That is, as long as the activity is being conducted by the recipient, a subrecipient, or any third party, and the activity needs to be undertaken in order to use these award funds, this condition must first be met. The activities covered by this condition are:

a. New construction;

b. Minor renovation or remodeling of a property located in an environmentally or historically sensitive area, including properties located within a 100-year flood plain, a wetland, or habitat for endangered species, or a property listed on or eligible for listing on the National Register of Historic Places;

c. A renovation, lease, or any proposed use of a building or facility that will either (a) result in a change in its basic prior use or (b) significantly change its size;

d. Implementation of a new program involving the use of chemicals other than chemicals that are (a) purchased as an incidental component of a funded activity and (b) traditionally used, for example, in office, household, recreational, or education environments; and

e. Implementation of a program relating to clandestine methamphetamine laboratory operations, including the identification, seizure, or closure of clandestine methamphetamine laboratories.

The recipient understands and agrees that complying with NEPA may require the preparation of an Environmental Assessment and/or an Environmental Impact Statement, as directed by BJA. The recipient further understands and agrees to the requirements for implementation of a Mitigation Plan, as detailed at https://bja.gov/Funding/nepa html, for programs relating to methamphetamine laboratory operations.

Application of This Condition to Recipient's Existing Programs or Activities:  For any of the recipient's or its subrecipients' existing programs or activities that will be funded by these award funds, the recipient, upon specific request from BJA, agrees to cooperate with BJA in any preparation by BJA of a national or program environmental assessment of that funded program or activity.

38. Establishment of trust fund

If award funds are being drawn down in advance, the recipient (or a subrecipient, with respect to a subaward) is required to establish a trust fund account. (The trust fund may or may not be an interest-bearing account.) The fund, including any interest, may not be used to pay debts or expenses incurred by other activities beyond the scope of the Edward Byrne Memorial Justice Assistance Grant Program (JAG). The recipient also agrees to obligate the award funds in the trust fund (including any interest earned) during the period of performance for the award and expend within 90 days thereafter. Any unobligated or unexpended funds, including interest earned, must be returned to OJP at the time of closeout.



U.S. Department of Justice
Office of Justice Programs
**Bureau of Justice Assistance**

**AWARD CONTINUATION SHEET**

**Grant**

PAGE  13  OF  20

| PROJECT NUMBER | 2017-DJ-BX-0001 | AWARD DATE | 08/23/2017 |
|---|---|---|---|

*SPECIAL CONDITIONS*

39.  Prohibition on use of award funds for match under BVP program

JAG funds may be used to purchase vests for an agency, but they may not be used as the 50% match for purposes of the DOJ Bulletproof Vest Partnership (BVP) program.

40.  Certification of body armor "mandatory wear" policies

The recipient agrees to submit a signed certification that all law enforcement agencies receiving body armor purchased with funds from this award have a written "mandatory wear" policy in effect. The recipient must keep signed certifications on file for any subrecipients planning to utilize funds from this award for ballistic-resistant and stab-resistant body armor purchases. This policy must be in place for at least all uniformed officers before any funds from this award may be used by an agency for body armor. There are no requirements regarding the nature of the policy other than it be a mandatory wear policy for all uniformed officers while on duty.

41.  Body armor - compliance with NIJ standards

Ballistic-resistant and stab-resistant body armor purchased with JAG award funds may be purchased at any threat level, make or model, from any distributor or manufacturer, as long as the body armor has been tested and found to comply with applicable National Institute of Justice ballistic or stab standards and is listed on the NIJ Compliant Body Armor Model List (https://nij.gov/). In addition, ballistic-resistant and stab-resistant body armor purchased must be American-made. The latest NIJ standard information can be found here: https://nij.gov/topics/technology/body-armor/pages/safety-initiative.aspx.

42.  Required monitoring of subawards

The recipient must monitor subawards under this JAG award in accordance with all applicable statutes, regulations, award conditions, and the DOJ Grants Financial Guide, and must include the applicable conditions of this award in any subaward. Among other things, the recipient is responsible for oversight of subrecipient spending and monitoring of specific outcomes and benefits attributable to use of award funds by subrecipients. The recipient agrees to submit, upon request, documentation of its policies and procedures for monitoring of subawards under this award.

43.  Reporting requirements

The recipient must submit quarterly Federal Financial Reports (SF-425) and semi-annual performance reports through OJP's GMS (https://grants.ojp.usdoj.gov). Consistent with the Department's responsibilities under the Government Performance and Results Act (GPRA) and the GPRA Modernization Act of 2010, the recipient must provide data that measure the results of its work.  The recipient must submit quarterly performance metrics reports through BJA's Performance Measurement Tool (PMT) website (www.bjaperformancetools.org). For more detailed information on reporting and other JAG requirements, refer to the JAG reporting requirements webpage. Failure to submit required JAG reports by established deadlines may result in the freezing of grant funds and future High Risk designation.

44.  Required data on law enforcement agency training

Any law enforcement agency receiving direct or sub-awarded funding from this JAG award must submit quarterly accountability metrics data related to training that officers have received on the use of force, racial and ethnic bias, de-escalation of conflict, and constructive engagement with the public.



U.S. Department of Justice
Office of Justice Programs
**Bureau of Justice Assistance**

**AWARD CONTINUATION
SHEET**

**Grant**

PAGE  14  OF  20

| PROJECT NUMBER | 2017-DJ-BX-0001 | AWARD DATE | 08/23/2017 |
|---|---|---|---|

*SPECIAL CONDITIONS*

45.    Prohibited Expenditures List

Award funds may not be used for items that are listed on the Prohibited Expenditure List at the time of purchase or acquisition, including as the list may be amended from time to time. The Prohibited Expenditure List may be accessed here: https://www.bja.gov/funding/JAGControlledPurchaseList.pdf

46.    Controlled expenditures - prior written approval required

Award funds may not be used for items that are listed on the Controlled Expenditure List at the time of purchase or acquisition, including as the list may be amended from time to time, without explicit written prior approval from BJA. The Controlled Expenditure List, and instructions on how to request approval for purchase or acquisitions are set out at https://www.bja.gov/funding/JAGControlledPurchaseList.pdf

47.    Controlled expenditures - incident reporting

If an agency uses award funds to purchase or acquire any item on the Controlled Expenditure List at the time of purchase or acquisition, including as the list may be amended from time to time, the agency must collect and retain (for at least 3 years) certain information about the use of-- (1) any federally-acquired Controlled Equipment in the agency's inventory, and (2) any other controlled equipment in the same category as the federally-acquired controlled equipment in the agency's inventory, regardless of source; and the agency must make that information available to BJA upon request. Details about what information must be collected and retained are set out at https://ojp.gov/docs/LE-Equipment-WG-Final-Report.pdf.

48.    Sale of items on Controlled Expenditure List

Notwithstanding the provision of the Part 200 Uniform Requirements set out at 2 C.F.R. 200.313, no equipment listed on the Controlled Expenditure List that is purchased with award funds may be transferred or sold to a third party, except as described below:

a.  Agencies may transfer or sell any controlled equipment, except riot helmets and riot shields, to a Law Enforcement Agency (LEA) after obtaining prior written approval from BJA. As a condition of that approval, the acquiring LEA will be required to submit information and certifications to BJA as if it were requesting approval to use award funds for the initial purchase of items on the Controlled Expenditure List.

b.  Agencies may not transfer or sell any riot helmets or riot shields purchased under this award.

c.  Agencies may not transfer or sell any Controlled Equipment purchased under this award to non-LEAs, with the exception of fixed wing aircraft, rotary wing aircraft, and command and control vehicles. Before any such transfer or sale is finalized, the agency must obtain prior written approval from BJA. All law enforcement-related and other sensitive or potentially dangerous components, and all law enforcement insignias and identifying markings must be removed prior to transfer or sale.

The recipient must notify BJA prior to the disposal of any items on the Controlled Expenditure List purchased with award funds, and must abide by any applicable laws (including regulations) in such disposal.

49.    Prohibited or controlled expenditures - Effect of failure to comply

Failure to comply with an award condition related to prohibited or controlled expenditures may result in denial of any further approvals of controlled expenditures under this or other federal awards.

OJP FORM 4000/2 (REV  4-88)



U.S. Department of Justice
Office of Justice Programs
**Bureau of Justice Assistance**

**AWARD CONTINUATION
SHEET**

**Grant**

PAGE  15  OF  20

| PROJECT NUMBER | 2017-DJ-BX-0001 | AWARD DATE | 08/23/2017 |
|---|---|---|---|

*SPECIAL CONDITIONS*

50.   Controlled expenditures - Standards

Consistent with recommendation 2.1 of Executive Order 13688, a law enforcement agency that acquires controlled equipment with award funds must adopt robust and specific written policies and protocols governing General Policing Standards and Specific Controlled Equipment Standards. General Policing Standards includes policies on (a) Community Policing; (b) Constitutional Policing; and (c) Community Input and Impact Considerations. Specific Controlled Equipment Standards includes policies specifically related to (a) Appropriate Use of Controlled Equipment; (b) Supervision of Use; (c) Effectiveness Evaluation; (d) Auditing and Accountability; and (e) Transparency and Notice Considerations. Upon OJP's request, the recipient must provide a copy of the General Policing Standards and Specific Controlled Equipment Standards, and any related policies and protocols.

51.   Authorization to obligate (federal) award funds to reimburse certain project costs incurred on or after October 1, 2016

The recipient may obligate (federal) award funds only after the recipient makes a valid acceptance of the award.  As of the first day of the period of performance for the award (October 1, 2016), however, the recipient may choose to incur project costs using non-federal funds, but any such project costs are incurred at the recipient's risk until, at a minimum-- (1) the recipient makes a valid acceptance of the award, and (2) all applicable withholding conditions are removed by OJP (via a Grant Adjustment Notice).  (A withholding condition is a condition in the award document that precludes the recipient from obligating, expending, or drawing down all or a portion of the award funds until the condition is removed.)

Except to the extent (if any) that an award condition expressly precludes reimbursement of project costs incurred "at-risk," if and when the recipient makes a valid acceptance of this award and OJP removes each applicable withholding condition through a Grant Adjustment Notice, the recipient is authorized to obligate (federal) award funds to reimburse itself for project costs incurred "at-risk" earlier during the period of performance (such as project costs incurred prior to award acceptance or prior to removal of an applicable withholding condition), provided that those project costs otherwise are allowable costs under the award.

Nothing in this condition shall be understood to authorize the recipient (or any subrecipient at any tier) to use award funds to "supplant" State or local funds in violation of the recipient's certification (executed by the chief executive of the State or local government) that federal funds will be used to increase the amounts of such funds that would, in the absence of federal funds, be made available for law enforcement activities.

52.   "Certification of Compliance with 8 U.S.C. 1373" required for valid award acceptance by a unit of local government

In order validly to accept this award, the applicant local government must submit the required "Certification of Compliance with 8 U.S.C. 1373" (executed by the chief legal officer of the local government).  Unless that executed certification either-- (1) is submitted to OJP together with the fully-executed award document, or (2) is uploaded in OJP's GMS no later than the day the signed award document is submitted to OJP, any submission by a unit of local government that purports to accept the award is invalid.

If an initial award-acceptance submission by the recipient is invalid, once the unit of local government does submit the necessary certification regarding 8 U.S.C. 1373, it may submit a fully-executed award document executed by the unit of local government on or after the date of that certification.

For purposes of this condition, "local government" does not include any Indian tribes.

OJP FORM 4000/2 (REV  4-88)



| | U.S. Department of Justice<br>Office of Justice Programs<br>**Bureau of Justice Assistance** | **AWARD CONTINUATION SHEET**<br><br>**Grant** | PAGE 16 OF 20 |
|---|---|---|---|

| PROJECT NUMBER | 2017-DJ-BX-0001 | AWARD DATE | 08/23/2017 |
|---|---|---|---|

*SPECIAL CONDITIONS*

53.   Ongoing compliance with 8 U.S.C. 1373 is required

1. With respect to the "program or activity" funded in whole or part under this award (including any such "program or activity" of any subrecipient at any tier), throughout the period of performance for the award, no State or local government entity, -agency, or -official may prohibit or in any way restrict-- (1) any government entity or -official from sending or receiving information regarding citizenship or immigration status as described in 8 U.S.C. 1373(a); or (2) a government entity or -agency from sending, requesting or receiving, maintaining, or exchanging information regarding immigration status as described in 8 U.S.C. 1373(b).  For purposes of this award, any prohibition (or restriction) that violates this condition is an "information-communication restriction."

2. Certifications from subrecipients.  The recipient may not make a subaward to a State or local government or a "public" institution of higher education, unless it first obtains a certification of compliance with 8 U.S.C. 1373, properly executed by the chief legal officer of the jurisdiction or institution that would receive the subaward, using the appropriate form available at https://ojp.gov/funding/Explore/SampleCertifications-8USC1373.htm.  Similarly, the recipient must require that no subrecipient (at any tier) may make a further subaward to a State or local government or a "public" institution of higher education, unless it first obtains a certification of compliance with 8 U.S.C. 1373, properly executed by the chief legal officer of the jurisdiction or institution that would receive the further subaward, using the appropriate OJP form.

3. The recipient's monitoring responsibilities include monitoring of subrecipient compliance with the requirements of this condition.

4. Allowable costs.  Compliance with these requirements is an authorized and priority purpose of this award.  To the extent that such costs are not reimbursed under any other federal program, award funds may be obligated (including for authorized reimbursements) for the reasonable, necessary, and allocable costs (if any) that the recipient, or any subrecipient at any tier that is a State or local government or a "public" institution of higher education, incurs to implement this condition.

5. Rules of Construction

A. For purposes of this condition:

(1) "State" and "local government" include any agency or other entity thereof, but not any institution of higher education or any Indian tribe.

(2) A "public" institution of higher education is one that is owned, controlled, or directly funded by a State or local government.

(3) "Program or activity" means what it means under title VI of the Civil Rights Act of 1964 (see 42 U.S.C. 2000d-4a).

(4) "Immigration status" means what it means for purposes of 8 U.S.C. 1373 (Illegal Immigration Reform and Immigrant Responsibility Act of 1996); and terms that are defined in 8 U.S.C. 1101 (Immigration and Nationality Act) mean what they mean under that section 1101, except that the term "State" also shall include American Samoa (cf. 42 U.S.C. 901(a)(2)).

(5) Pursuant to the provisions set out at (or referenced in) 8 U.S.C. 1551 note ("Abolition … and Transfer of Functions"), references to the "Immigration and Naturalization Service" in 8 U.S.C. 1373 are to be read as references to particular components of the Department of Homeland Security (DHS).

B. Nothing in this condition shall be understood to authorize or require any recipient, any subrecipient at any tier, any State or local government, any "public" institution of higher education, or any other entity (or individual) to violate any federal law, including any applicable civil rights or nondiscrimination law.

OJP FORM 4000/2 (REV  4-88)



| U.S. Department of Justice | AWARD CONTINUATION | |
|---|---|---|
| Office of Justice Programs | SHEET | PAGE  17  OF  20 |
| **Bureau of Justice Assistance** | Grant | |

| PROJECT NUMBER | 2017-DJ-BX-0001 | AWARD DATE | 08/23/2017 |
|---|---|---|---|

*SPECIAL CONDITIONS*

IMPORTANT NOTE:  Any questions about the meaning or scope of this condition should be directed to OJP, before award acceptance.

54.    Authority to obligate award funds contingent on compliance with 8 U.S.C. 1373; unallowable costs; obligation to notify

1.  If the recipient is a State or local government--

A.  The recipient may not obligate award funds if, at the time of the obligation, the "program or activity" of the recipient (or of any subrecipient at any tier that is a either a State or unit of local government or a "public" institution of higher education) that is funded in whole or in part with award funds is subject to any "information-communication restriction."

B.  In addition, with respect to any project costs it incurs "at risk," the recipient may not obligate award funds to reimburse itself if -- at the time it incurs such costs -- the "program or activity" of the recipient (or of any subrecipient at any tier that is a either a State or unit of local government or a "public" institution of higher education) that would be reimbursed in whole or in part with award funds was subject to any "information-communication restriction."

C.  Any drawdown of award funds by the recipient shall be considered, for all purposes, to be a material representation by the recipient to OJP that, as of the date the recipient requests the drawdown, the recipient and all subrecipients (regardless of tier) are in compliance with 8 U.S.C. 1373.

D.  The recipient must promptly notify OJP (in writing) if the recipient, from its requisite monitoring of compliance with award conditions or otherwise, has credible evidence that indicates that the funded "program or activity" of the recipient, or of any subrecipient at any tier that is either a State or a local government or a "public" institution of higher education, may be subject to any "information-communication restriction." In addition, any subaward (at any tier) to a subrecipient that is either a State or a local government or a "public" institution of higher education must require prompt notification to the entity that made the subaward, should the subrecipient such credible evidence regarding an "information-communication restriction."

2.  Any subaward (at any tier) to a subrecipient that is either a State or a local government or a "public" institution of higher education must provide that the subrecipient may not obligate award funds if, at the time of the obligation, the "program or activity" of the subrecipient (or of any further such subrecipient at any tier) that is funded in whole or in part with award funds is subject to any "information-communication restriction."

3.  Absent an express written determination by DOJ to the contrary, based upon a finding by DOJ of compelling circumstances (e.g., a small amount of award funds obligated by the recipient at the time of a subrecipient's minor and transitory non-compliance, which was unknown to the recipient despite diligent monitoring), any obligations of award funds that, under this condition, may not be made shall be unallowable costs for purposes of this award.  In making any such determination, DOJ will give great weight to evidence submitted by the recipient that demonstrates diligent monitoring of subrecipient compliance with the requirements set out in the award condition entitled "Ongoing compliance with 8 U.S.C. 1373 is required."

4.  Rules of Construction

A.  For purposes of this condition "information-communication restriction" has the meaning set out in the award condition entitled "Ongoing compliance with 8 U.S.C. 1373 is required."

B.  Both the "Rules of Construction" and the "Important Note" set out in the award condition entitled "Ongoing compliance with 8 U.S.C. 1373 is required" are incorporated by reference as though set forth here in full.

OJP FORM 4000/2 (REV  4-88)



| | U.S. Department of Justice<br>Office of Justice Programs<br>**Bureau of Justice Assistance** | **AWARD CONTINUATION SHEET**<br>**Grant** | PAGE  18  OF  20 |
|---|---|---|---|

| PROJECT NUMBER | 2017-DJ-BX-0001 | AWARD DATE | 08/23/2017 |
|---|---|---|---|

*SPECIAL CONDITIONS*

55.  Required State-level rules or practices related to aliens; allowable costs

The following provisions apply to the recipient of this award, if the recipient is a State government, and also apply to any State-government subrecipient at any tier (whether or not the recipient is a State government).

1. Requirements

With respect to the "program or activity" that is funded (in whole or in part) by this award, as of the date the recipient accepts this award, and throughout the remainder of the period of performance for the award--

A. A State statute, or a State rule, -regulation, -policy, or -practice, must be in place that is designed to ensure that agents of the United States acting under color of federal law in fact are given to access any State (or State-contracted) correctional facility for the purpose of permitting such agents to meet with individuals who are (or are believed by such agents to be) aliens and to inquire as to such individuals' right to be or remain in the United States.

B. A State statute, or a State rule, -regulation, -policy, or -practice, must be in place that is designed to ensure that, when a State (or State-contracted) correctional facility receives from DHS a formal written request authorized by the Immigration and Nationality Act that seeks advance notice of the scheduled release date and time for a particular alien in such facility, then such facility will honor such request and -- as early as practicable (see para. 4.B. of this condition) -- provide the requested notice to DHS.

2. Monitoring

The recipient's monitoring responsibilities include monitoring of subrecipient compliance with the requirements of this condition.

3. Allowable costs

Compliance with these requirements is an authorized and priority purpose of this award. To the extent that such costs are not reimbursed under any other federal program, award funds may be obligated (including for authorized reimbursements) for the reasonable, necessary, and allocable costs (if any) of-- (1) developing and putting into place statutes, rules, regulations, policies, and practices to satisfy this condition, and (2) permitting access as described in para. 1.A. above, and (3) honoring any request from DHS that is encompassed by para. 1.B. above.

4. Rules of construction

A. For purposes of this condition--

(1) the term "alien" means what it means under section 101 of the Immigration and Nationality Act (see 8 U.S.C. 1101(a)(3)).

(2) the term "correctional facility" means what it means under the Title I of the Omnibus Crime Control and Safe Streets Act of 1968 (see 42 U.S.C. 3791(a)(7)).

B. Nothing in this condition shall be understood to authorize or require any recipient, any subrecipient at any tier, any State or local government, or any other entity or individual to maintain (or detain) any individual in custody beyond the date and time the individual would have been released in the absence of this condition.

Current DHS practice is ordinarily to request advance notice of scheduled release "as early as practicable (at least 48 hours, if possible)." (See DHS Form I-247A (3/17)). In the event that (e.g., in light of the date DHS made such request) the scheduled release date and time for an alien are such as not to permit the advance notice that DHS has requested, it shall not be a violation of this condition to provide only as much advance notice as practicable.

OJP FORM 4000/2 (REV  4-88)



| | U.S. Department of Justice<br>Office of Justice Programs<br>**Bureau of Justice Assistance** | **AWARD CONTINUATION<br>SHEET**<br>**Grant** | PAGE  19  OF  20 |
|---|---|---|---|

| PROJECT NUMBER | 2017-DJ-BX-0001 | AWARD DATE | 08/23/2017 |
|---|---|---|---|

*SPECIAL CONDITIONS*

NOTE: Current DHS practice is to use one form (DHS Form I-247A (3/17)) for two distinct purposes -- to request advance notice of scheduled release, and to request that an individual be detained for up to 48 hours AFTER the scheduled release. This condition imposes NO requirements as to such DHS requests for detention.

C. Both the "Rules of Construction" and the "Important Note" set out in the award condition entitled "Ongoing compliance with 8 U.S.C. 1373 is required" are incorporated by reference as though set forth here in full.

56.   Required local-government-level rules or practices related to aliens; allowable costs

The following provisions apply to the recipient of this award, if the recipient is a unit of local government, and also apply to any local-government subrecipient of this award at any tier (whether or not the recipient itself is a unit of local government).

1.   Requirements

With respect to the "program or activity" that is funded (in whole or in part) by this award, as of the date the recipient accepts this award, and throughout the remainder of the period of performance for the award--

A.   A local ordinance, -rule, -regulation, -policy, or -practice (or an applicable State statute, -rule, -regulation, -policy, or -practice) must be in place that is designed to ensure that agents of the United States acting under color of federal law in fact are given access a local-government (or local-government-contracted) correctional facility for the purpose of permitting such agents to meet with individuals who are (or are believed by such agents to be) aliens and to inquire as to such individuals' right to be or remain in the United States.

B.   A local ordinance, -rule, -regulation, -policy, or -practice (or an applicable State statute, -rule, -regulation, -policy, or -practice) must be in place that is designed to ensure that, when a local-government (or local-government-contracted) correctional facility receives from DHS a formal written request authorized by the Immigration and Nationality Act that seeks advance notice of the scheduled release date and time for a particular alien in such facility, then such facility will honor such request and -- as early as practicable (see "Rules of Construction" incorporated by para. 4.B. of this condition) -- provide the requested notice to DHS.

2.   Monitoring

The recipient's monitoring responsibilities include monitoring of subrecipient compliance with the requirements of this condition.

3.   Allowable costs

Compliance with these requirements is an authorized and priority purpose of this award.  To the extent that such costs are not reimbursed under any other federal program, award funds may be obligated (including for authorized reimbursements) for the reasonable, necessary, and allocable costs (if any) of-- (1) developing and putting into place statutes, ordinances, rules, regulations, policies, and practices to satisfy this condition, (2) permitting access as described in para. 1.A. above, and (3) honoring any request from DHS that is encompassed by para. 1.B. above.

4.   Rules of construction

A.   The "Rules of Construction" and the "Important Note" set out in the award condition entitled "Ongoing compliance with 8 U.S.C. 1373 is required" are incorporated by reference as though set forth here in full.

B.   The "Rules of Construction" set out in the award condition entitled "Required State-level rules or practices related to aliens; allowable costs" are incorporated by reference as though set forth here in full.



U.S. Department of Justice
Office of Justice Programs
**Bureau of Justice Assistance**

**AWARD CONTINUATION
SHEET
Grant**

PAGE  20  OF  20

| PROJECT NUMBER | 2017-DJ-BX-0001 | AWARD DATE | 08/23/2017 |
|---|---|---|---|

*SPECIAL CONDITIONS*

57.  Use of funds for DNA testing; upload of DNA profiles

If award funds are used for DNA testing of evidentiary materials, any resulting eligible DNA profiles must be uploaded to the Combined DNA Index System ("CODIS," the DNA database operated by the FBI) by a government DNA laboratory with access to CODIS.

No profiles generated under this award may be entered or uploaded into any non-governmental DNA database without prior express written approval from BJA.

Award funds may not be used for the purchase of DNA equipment and supplies unless the resulting DNA profiles may be accepted for entry into CODIS.

58.  Encouragement of submission of "success stories"

BJA strongly encourages the recipient to submit annual (or more frequent) JAG success stories. To submit a success story, sign in to a My BJA account at https://www.bja.gov/Login.aspx to access the Success Story Submission form. If the recipient does not yet have a My BJA account, please register at https://www.bja.gov/profile.aspx. Once registered, one of the available areas on the My BJA page will be "My Success Stories." Within this box, there is an option to add a Success Story. Once reviewed and approved by BJA, all success stories will appear on the BJA Success Story web page at https://www.bja.gov/SuccessStoryList.aspx.

59.  Initial period of performance; requests for extension

The recipient understands that the initial period of performance for this award is two years.  The recipient further understands that any requests for an extension of the period of performance for this award will be approved automatically for up to a total of two additional years, pursuant to 42 U.S.C. 3751(f) and in accordance with the program solicitation associated with this award.

Any request for an extension of the period of performance beyond a four-year award period will require approval, and the approval (if any) will be at the discretion of the Director of BJA.

60.  Withholding of funds:  Budget narrative

The recipient may not obligate, expend, or draw down any award funds until the recipient submits, and OJP has reviewed and accepts, the budget narrative for the award, and a Grant Adjustment Notice (GAN) has been issued to remove this condition.

61.  Withholding of funds:  Program narrative

The recipient may not obligate, expend, or draw down any award funds until the recipient submits, and OJP has reviews and accepts, the program narrative for this award, and a Grant Adjustment Notice (GAN) has been issued to remove this condition.

62.  Withholding of funds:  Memorandum of Understanding

The recipient may not obligate, expend, or draw down any award funds until OJP has reviewed and approved the Memorandum of Understanding (MOU), and a Grant Adjustment Notice (GAN) has been issued to remove this condition.

1
2
3
4
5
6
7        IN THE UNITED STATES DISTRICT COURT

8        FOR THE NORTHERN DISTRICT OF CALIFORNIA

9        SAN FRANCISCO DIVISION

10   CITY AND COUNTY OF SAN
     FRANCISCO,                                    No.  3:17-cv-04642-WHO
11
                      Plaintiff,                   **ORDER**
12
              v.
13
     JEFFERSON B. SESSIONS III, Attorney
14   General of the United States, *et al*.,

15                    Defendants.

16

17        Defendants having filed a motion to dismiss under Rules 12(b)(1) and 12(b)(6) of the

18   Federal Rules of Civil Procedure and the Court having considered all materials submitted in

19   relation thereto, the Court finds that (1) plaintiff's request for a ruling regarding whether Chapter

20   12H or Chapter 12I of the San Francisco Administrative Code violates 8 U.S.C. § 1373 is

21   constitutionally unripe; (2) plaintiff lacks standing to seek a ruling regarding whether its actual

22   conduct violates 8 U.S.C. § 1373; and (3) all of plaintiff's claims fail to state a claim upon which

23   relief can be granted.  Accordingly, defendants' motion to dismiss [ECF No. 66] is hereby

24   GRANTED and plaintiff's First Amended Complaint [ECF No. 61] is DISMISSED WITH

25   PREJUDICE.

26   /

27   /

28

Order Dismissing Case
No. 3:17-cv-04642-WHO

1    **IT IS SO ORDERED**.

2

3    Dated: _____, 2018

4

5                                        _____
                                         William H. Orrick
6                                        United States District Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28