1  CHAD A. READLER
   Acting Assistant Attorney General
2  ALEX G. TSE
   Acting United States Attorney
3  JOHN R. TYLER
   Assistant Director
4  W. SCOTT SIMPSON (Va. Bar #27487)
   Senior Trial Counsel
5  Department of Justice, Room 7210
   Civil Division, Federal Programs Branch
6  20 Massachusetts Avenue, NW
7  Washington, D.C. 20530
   Telephone:     (202) 514-3495
8  Facsimile:     (202) 616-8470
   E-mail:        scott.simpson@usdoj.gov
9

10 COUNSEL FOR DEFENDANTS
   JEFFERSON B. SESSIONS III, Attorney
11 General of the United States; ALAN R.
   HANSON, Principal Deputy Assistant Attorney
12 General; and U.S. DEPARTMENT OF JUSTICE

13

14               IN THE UNITED STATES DISTRICT COURT

15           FOR THE NORTHERN DISTRICT OF CALIFORNIA

16                    SAN FRANCISCO DIVISION

17

18 CITY AND COUNTY OF SAN
   FRANCISCO,                              No. 3:17-cv-04642-WHO
19
                        Plaintiff,         **REPLY IN SUPPORT OF DEFENDANTS'**
20          v.                             **MOTION TO DISMISS**

21 JEFFERSON B. SESSIONS III, Attorney
   General of the United States, *et al.*,
22                                         Date:  February 28, 2018
                        Defendants.        Time:  2:00 p.m.
23

24

25

26

27

28

# TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................................................ii

INTRODUCTION .............................................................................................................1

ARGUMENT .....................................................................................................................2

I.      San Francisco Is Not Entitled to a Declaratory Judgment
Regarding Compliance with Section 1373...........................................................2

      A.     Plaintiff's Request for a Ruling Regarding Compliance
with Section 1373 Is Non-Justiciable...........................................................2

          1.     The Court's Decision in *Santa Clara v. Trump* Has No
Bearing on the Justiciability of Plaintiff's 1373 Claim ....................2

          2.     Plaintiff's Request for a Ruling Regarding Chapters
12H and 12I Is Constitutionally Unripe .............................................3

      B.     Alternatively, the Court Should Deny Plaintiff's Request for a
Ruling that Its Ordinances Comply with Section 1373...............................5

          1.     Section 1373 Bars Prohibiting or Restricting the Exchange of
Information "Regarding" Citizenship or Immigration Status...........5

          2.     The Court Should Deny Plaintiff's Request for a Ruling
that Chapter 12I Complies with Section 1373 .................................7

          3.     The Court Should Deny Plaintiff's Request for a Ruling
that Chapter 12H Complies with Section 1373 ................................8

II.     The Challenged Immigration-Related Byrne JAG Conditions Are Lawful ...........10

      A.     The Conditions Are Authorized by Statute and Do Not
Violate the Separation of Powers...............................................................10

      B.     The Conditions Are Consistent with the Spending Clause .........................12

          1.     The Challenged Conditions are Unambiguous ................................13

          2.     The Challenged Conditions Are Related to the Purposes
of the Byrne JAG Program ..............................................................14

          3.     The Challenged Conditions Do Not Violate any
"Independent Constitutional Bar" ..................................................15

CONCLUSION.................................................................................................................15

1

# TABLE OF AUTHORITIES

2

3

**CASES**

4    *Arizona v. United States*, 567 U.S. 387 (2012) ................................................................. 7

5    *Chicago v. Sessions*, 264 F. Supp. 3d 933 (N.D. Ill. 2017) ........................................... 13

6    *County of Santa Clara v. Trump*, 250 F. Supp. 3d 497 (N.D. Cal. 2017)....................... 2

7    *County of Santa Clara v. Trump*, 267 F. Supp. 3d 1201 (N.D. Cal. 2017).................... 2

8
     *Davis v. Michigan Dep't of Treasury*, 489 U.S. 803 (1989)............................................. 5
9

10   *Duvall v. Att'y Gen. of U.S.*, 436 F.3d 382 (3d Cir. 2006)............................................ 14

11   *Fonseca v. Fong*, 167 Cal. App. 4th 922 (2008)........................................................... 10

12   *Mayweathers v. Newland*, 314 F.3d 1062 (9th Cir. 2002) .................................. 2, 14, 15

13   *Preap v. Johnson*, 831 F.3d 1193 (9th Cir. 2016) .......................................................... 9

14   *Regions Hosp. v. Shalala*, 522 U.S. 448 (1998).............................................................. 6

15   *S. Dakota v. Dole*, 483 U.S. 203 (1987)................................................................... 12, 15

16
     *Steinle v. San Francisco*, 230 F. Supp. 3d 994 (N.D. Cal. 2017) ................................... 6
17

18   *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134 (9th Cir. 2000) ............... 3

19

**STATUTES**

20

21   8 U.S.C. § 1101(a)(15).................................................................................................... 8

22   8 U.S.C. § 1226(c)(1)................................................................................................... 8, 9

23   8 U.S.C. § 1226(d)(1)(C) ................................................................................................ 8

24   8 U.S.C. § 1227(a)(1)(C) ................................................................................................ 8

25   8 U.S.C. § 1231(a)(1)(B)(iii) ....................................................................................... 5, 9

26   8 U.S.C. § 1231(a)(4)................................................................................................... 5, 9

27   8 U.S.C. § 1357(g)(10)(A) .............................................................................................. 8

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

8 U.S.C. § 1367(a)(2) ................................................................................................... 8

8 U.S.C. § 1373(a) ................................................................................................... 1, 9

34 U.S.C. § 10102(a)(6) ........................................................................................ 1, 11

34 U.S.C. § 10110(2) ................................................................................................ 11

34 U.S.C. § 10152(a)(1) ............................................................................................ 14

34 U.S.C. § 10153(a)(4) ............................................................................................ 15

34 U.S.C. § 10153(a)(5)(C) ....................................................................................... 15

34 U.S.C. § 10153(a)(5)(D) ....................................................................................... 11

34 U.S.C. § 10154 ....................................................................................................... 4

34 U.S.C. § 10102(a)(1) ............................................................................................ 14

34 U.S.C. § 10102(a)(2) ............................................................................................ 14

34 U.S.C. § 10102(a)(6) ............................................................................................ 11

34 U.S.C. §§ 10156-10157 ....................................................................................... 12

34 U.S.C. § 10251(a)(1) ............................................................................................ 14

DOJ Reauthorization Act of 2005, Pub. L. No. 109-162, 119 Stat. 2960 (2006) ......... 11

S.F., CAL., ADMIN. CODE ch. 12H, § 12H.2 ............................................................... 9

S.F., CAL., ADMIN. CODE ch. 12H, § 12H.3 ............................................................... 8

S.F., CAL., ADMIN. CODE ch. 12I, § 12I.2 ................................................................... 7

S.F., CAL., ADMIN. CODE ch. 12I, § 12I.3(e) ............................................................... 7

**REGULATIONS**

28 C.F.R. § 66.12 ...................................................................................................... 12

**LEGISLATIVE HISTORY**

H.R. Rep. No. 109-233 (2005) ................................................................................ 1, 11

**INTRODUCTION**

San Francisco seeks federal funds to support its local law enforcement prerogatives, yet refuses any reciprocal obligation that its law enforcement officials recognize federal law enforce-ment prerogatives by sharing information regarding individuals under local detention.  The City also seeks an order that its ordinances prohibiting the provision of that information do not violate federal law.

Although the Department of Justice ("DOJ" or "Department") has expressed concern that Chapters 12H and 12I of the San Francisco Administrative Code may violate 8 U.S.C. § 1373, the parties have not yet completed their discussions on that subject and DOJ's Office of Justice Programs ("OJP") has recently requested certain documents from the City to facilitate making that decision administratively.  Thus, plaintiff's claim for a ruling on whether Chapters 12H and 12I violate Section 1373 is constitutionally unripe.  In any event, assuming this claim were justiciable, the Court should dismiss the claim on its merits.  Section 1373 protects the exchange of "informa-tion regarding the citizenship or immigration status" of individuals with federal immigration authorities – information needed by federal authorities to determine the immigration status of aliens and to take them into custody upon their release from criminal detention – and San Francisco's ordinances "prohibit" and "restrict" the transmission of that information.  8 U.S.C. § 1373(a).

Nor, in any event, is there any legal basis for plaintiff's objection to complying with grant conditions, a traditional aspect of participation in the Edward Byrne Memorial Justice Assistance Grant Program.  To further information-sharing, the Byrne JAG Program requires participants to comply with Section 1373, to give federal immigration authorities access to the City's detention facilities to meet with aliens, and to give those authorities "as much advance notice as practicable" before releasing an alien.  These conditions are consistent not only with the statutes governing the Byrne JAG Program, but also with the Program's legislative history, which confirms that those statutes empower DOJ and OJP to "place special conditions on all grants and to determine priority purposes for formula grants," H.R. Rep. No. 109-233, at 101 (2005); *see* 34 U.S.C. § 10102(a)(6).  And these conditions satisfy the Spending Clause:  they articulate the required conduct and further the Program's goals of advancing criminal justice and public safety, easily surpassing the "some

1  relationship" test employed in this Circuit.  *Mayweathers v. Newland*, 314 F.3d 1062, 1067 (9th Cir.

2  2002).

3  **ARGUMENT**

4  **I.**     **San Francisco Is Not Entitled to a Declaratory Judgment**
5            **Regarding Compliance with Section 1373**

6       **A.**     **Plaintiff's Request for a Ruling Regarding Compliance**
               **with Section 1373 Is Non-Justiciable**
7

8               **1.**     **The Court's Decision in *Santa Clara v. Trump* Has No Bearing**
                         **on the Justiciability of Plaintiff's 1373 Claim**

9          Plaintiff's first argument regarding the justiciability of its request for a ruling that Chapters

10  12H and 12I comply with Section 1373 is that the Court's decision in *County of Santa Clara v.*

11  *Trump*, 267 F. Supp. 3d 1201 (N.D. Cal. 2017), resolves this issue (Dkt. No. 67 at 6-7).  That is

12  incorrect.  At the time of the Court's decisions in that case, which challenged Executive Order

13  13,768, the parties had not begun their current, ongoing administrative discussion regarding

14  Chapters 12H and 12I.  Of course, the challenged Executive Order in that case was a final order.

15  And the Court found the dispute over the validity of the Order justiciable based on the perceived

16  threat that its requirements exceeded Section 1373 and the localities therefore faced unknown risks

17  to a wide range of potential grants.  Importantly, this Court specifically stated that the Federal

18  Government should continue "to use lawful means to enforce existing conditions of federal grants

19  or 8 U.S.C. 1373."  *County of Santa Clara v. Trump*, 250 F. Supp. 3d 497, 540 (N.D. Cal. 2017).

20          Here, however, the circumstances and defendants' argument are different, given that they

21  concern the process that this Court said could go forward:  the awarding of a specific federal grant

22  under an established process leading to a final agency action.  OJP has raised concerns regarding

23  whether Chapters 12H and 12I violate Section 1373, while expressly stating that it has not yet

24  reached a conclusion on that subject administratively (Dkt. No. 61, Exs. A, C).  Moreover, OJP has

25  most recently requested documents from San Francisco to facilitate making that decision (Dkt. No.

26  68, Ex. C) – a request to which the City has not yet responded.  A final determination on awarding

27  the grant has not been made.  In other words, *County of Santa Clara* challenged a final Executive

28  Order whose consequences were potentially wide ranging and unpredictable.  Here, the challenge is

to a grant decision that has not been made and where the parties understand the exact consequences of a decision:  the award of a specific grant.  Thus, the issue in *County of Santa Clara* was how to address a final Executive Order given its potential impact, whereas the question here is whether the Court should now short-circuit an ongoing administrative process.

### 2.    Plaintiff's Request for a Ruling Regarding Chapters 12H and 12I Is Constitutionally Unripe

In this case, the Court should decide that this claim is unripe.  When evaluating constitutional ripeness in the context of a pre-enforcement statutory challenge, a court may consider "whether the plaintiffs have articulated a 'concrete plan' to violate the law in question, whether the prosecuting authorities have communicated a specific warning or threat to initiate proceedings, and the history of past prosecution or enforcement under the challenged statute."  *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000) (en banc).  Since OJP has not yet concluded administratively that San Francisco's ordinances violate Section 1373 – and the City, indeed, takes the position that there is no violation – there is no "live controversy" on that subject, and plaintiff's request for a ruling regarding its ordinances is constitutionally unripe.  As the Court of Appeals has held, "neither the mere existence of a proscriptive statute [here, Section 1373] nor a generalized threat of prosecution [here, the ongoing correspondence between the City and OJP regarding Chapters 12H and 12I] satisfies the 'case or controversy' requirement."  *Id.*

Plaintiffs' arguments to the contrary are based on the parties' pending communications regarding Chapters 12H and 12I, and the certification that the City will eventually need to execute to secure its grant.  Plaintiff argues that the parties' communications show there is a "real controversy" regarding the City's compliance with Section 1373 (Dkt. No. at 67 at 9).  True, there is an administrative "controversy" between the parties, but it has not yet reached its conclusion such as to justify judicial intervention; as plaintiff itself acknowledges, those communications indicate only that the City's ordinances "potentially" violate Section 1373 (*id.*).[1]  In fact, by statute, OJP cannot

---

[1] Plaintiff argues that OJP's request for documents seeks information regarding San Francisco's "policies or practices" and thus "refutes Defendants' claim that the City's policies and its implementation of those policies are not at issue" (Dkt. No. 67 at 9).  But OJP's desire to explore that question administratively does not mean the question is justiciably presented in this action.  In any event, as noted in defendants' motion, if any claim regarding the City's conduct

1    reject San Francisco's application at this stage in the administrative process.  *See* 34 U.S.C. § 10154

2    ("The Attorney General shall not finally disapprove any application . . . submitted under this part

3    without first affording the applicant reasonable notice of any deficiencies in the application and

4    opportunity for correction and reconsideration.").  Until the process specified by Section 10154 is

5    completed and the City thus exhausts its remedies, there is no justiciable controversy.

6           Plaintiff also argues, citing a statement by the Attorney General, that the purpose of this

7    process is not to allow OJP to reach a decision, but to "coerce jurisdictions to change their policies"

8    (Dkt. No. 67 at 10; Dkt. No 68, Ex. D at 2).  But this argument would effectively short-circuit *any*

9    administrative process, which could be characterized as coercive in relation to the issues being

10   discussed.  Moreover, San Francisco is wrong to attribute coercion to the Attorney General's

11   entirely appropriate role in encouraging law enforcement cooperation through the bully pulpit.  In a

12   slightly later statement, the Attorney General said, "I urge all jurisdictions found to be potentially

13   out of compliance in this preliminary review to reconsider their policies that undermine the safety

14   of their residents."  *See Justice Department Sends Letters to 29 Jurisdictions Regarding Their*

15   *Compliance with 8 U.S.C. 1373*, *available at* https://www.justice.gov/opa/pr/justice-department-

16   sends-letters-29-jurisdictions-regarding-their-compliance-8-usc-1373 (last visited Feb. 14, 2018).

17   Given that the Attorney General was referring to the preliminary review by OJP, he was not

18   prejudging the ultimate question to be settled in the administrative process.  More importantly, the

19   Attorney General, as the chief law enforcement officer of the nation, serves a critical function in

20   encouraging cooperation by state and local jurisdictions on matters viewed as important to law

21   enforcement.  Such a precatory effort by the Attorney General using his powers of persuasion

22   should not lead this Court to circumvent an established administrative process.

23          Next, plaintiff argues that it will need to know "what Section 1373 means" in order to

24   certify its compliance before receiving a grant (Dkt. No. 67 at 8).  Plaintiff complains that the City

25   will need to certify that it complies with defendants' understanding of Section 1373.  Given the

26   content of the parties' ongoing communications, however, that should not present a problem.  OJP

27   has said only that Chapters 12H and 12I may violate Section 1373 (Dkt. 61, Ex. A), and, if OJP

28

were properly presented, factual development would be needed to resolve the claim.

Reply in Supp. Motion to Dismiss                         4
No. 3:17-cv-04642-WHO

ultimately determines they do not, the City can truthfully and comfortably execute the certification at the appropriate time.[2]

### B. Alternatively, the Court Should Deny Plaintiff's Request for a Ruling that Its Ordinances Comply with Section 1373

Assuming plaintiff's request for a ruling that Chapters 12H and 12I do not violate Section 1373 were justiciable, the Court should dismiss this claim on its merits. Plaintiff reads Section 1373 much too narrowly, and the City's ordinances violate the letter and intent of the statute.

### 1. Section 1373 Bars Prohibiting or Restricting the Exchange of Information "Regarding" Citizenship or Immigration Status

Plaintiff contends that Section 1373 covers nothing more than mere "immigration status" – that is, whether a given individual's presence in the United States is consistent with law. A "fundamental canon of statutory construction" is that "the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Davis v. Michigan Dep't of Treasury*, 489 U.S. 803, 809 (1989). Nevertheless, San Francisco disregards the entire scheme of the Immigration and Nationality Act ("INA") in relation to aliens who have committed, or are suspected of having committed, state or local crimes. Under the INA, DHS may not, except in limited circumstances, "remove an alien who is sentenced to imprisonment until the alien is released from imprisonment," 8 U.S.C. § 1231(a)(4); the immigration removal period "begins on . . . the date the alien is released from [state or local criminal] detention," *id.* § 1231(a)(1)(B)(iii); and federal immigration custody must begin "*when the alien is released*" from criminal custody, *id.* § 1226(c)(1) (emphasis added).

Plaintiff's opposition cites none of these provisions, which are crucial to understanding the purpose and meaning of Section 1373. San Francisco does not – and could not – deny that protecting the exchange of information regarding the status of aliens with federal immigration authorities ensures that those authorities will be able to track the status of such persons and take

---

[2] Plaintiff argues that it will need to execute the certification "soon" (Dkt. No. 67 at 11). But that will happen only after OJP decides to proceed with the awards, which are currently on hold pending the outcome of *Chicago v. Sessions*, No. 17-2991 (7th Cir.) (Dkt. No. 67 at 4 n.3). Even then, each grantee will have 45 days to return the certification (Dkt. No. 61 ¶ 135).

1   custody of them, as required by the INA, upon their release from state and local custody.  Federal

2   authorities presumably already know whether any given individual is in the United States legally or

3   illegally, but they may lack other information needed to locate the individual and assume custody.

4   That is the principal object of Section 1373.

5          Furthermore, "[i]t is a cardinal rule of statutory construction that significance and effect

6   shall, if possible, be accorded to every word."  *Regions Hosp. v. Shalala*, 522 U.S. 448, 467

7   (1998).  If Congress had meant 8 U.S.C. § 1373(a) to cover only an individual's citizenship or

8   immigration status, it would have said "citizenship or immigration status" rather than "*information*

9   *regarding* citizenship or immigration status."  In attempting to give this language some meaning

10  short of an alien's home address, release status, or other information covered by San Francisco's

11  ordinances, plaintiff surmises that "information regarding citizenship or immigration status"

12  could include "an individual's self-report about immigration status, or a third party's statement

13  about an individual's immigration status" (Dkt. No. 67 at 13).  But such statements would consti-

14  tute simply reports of "immigration status" in different vehicles; they would be covered by the

15  words "citizenship or immigration status," without the need to add "information regarding."[3]

16         Similarly, another problem with plaintiff's interpretation of Section 1373 is that neither a

17  city nor its employees can know whether a given alien's presence in the United States is consis-

18  tent with the INA.  An individual's status under the immigration laws depends on several provi-

19  sions of the INA and several factual circumstances.  San Francisco and its employees are privy to

20  "information regarding citizenship and immigration status" – that is, information needed by

21  federal authorities to make a determination regarding immigration status and potential federal

22  custody – but the City and its employees cannot determine an individual's "immigration status"

23  and thus cannot positively convey that legal status to federal authorities.

24         Moreover, "information regarding citizenship or immigration status" can mean more than

25  mere "citizenship or immigration status" without encompassing "everything in a person's life"

26

27         [3] Plaintiff also seeks to rely on *Steinle v. San Francisco*, 230 F. Supp. 3d 994 (N.D. Cal.
    2017), regarding the scope of Section 1373 (Dkt. No. 67 at 12 n.7).  The court in that case did not,
28  however, have the benefit of the Federal Government's briefing on this issue.

1   (Dkt. No. 67 at 12).  Consistent with the INA, "information regarding citizenship or immigration

2   status" encompasses information that federal authorities need to determine a person's status and

3   to take the person into custody.  It does not encompass, for example, whether the individual

4   receives City health services or unemployment services, whether the individual pays his or her tax

5   bills or utility bills, whether the individual's vehicle is properly registered, or a great many other

6   categories of unrelated information that San Francisco may have.

7          In attempting to limit the scope of Section 1373, plaintiff also argues that understanding

8   the statute as encompassing more than "citizenship or immigration status" alone would invade the

9   "heart of the state's police power" and "supersede San Francisco's exercise of its core police

10  powers" (Dkt. No. 67 at 13).  But the admission, presence, and potential removal of aliens in the

11  United States are quintessentially the responsibility of the *Federal Government*, and the information

12  protected by Section 1373 is needed to carry out those responsibilities.  *See Arizona v. United*

13  *States*, 567 U.S. 387, 394 (2012).  Protecting the transmission of information regarding the

14  immigration status of such persons to federal immigration authorities, far from invading the

15  "heart of the state's police power," merely ensures that federal officers can perform their duties.

16
17          **2.      The Court Should Deny Plaintiff's Request for a Ruling
                       that Chapter 12I Complies with Section 1373**

18          In light of that correct understanding of Section 1373, the Court should dismiss plaintiff's

19  claim for a ruling that its ordinances are consistent with the federal statute.  Chapter 12I provides

20  that "[l]aw enforcement officials shall not . . . provide any individual's personal information to a

21  federal immigration officer, on the basis of an administrative warrant, prior deportation order, or

22  other civil immigration document based solely on alleged violations of the civil provisions of

23  immigration laws."  S.F., CAL., ADMIN. CODE ch. 12I, § 12I.3(e).  Personal information is defined

24  broadly as including "any confidential, identifying information . . . including, but not limited to

25  . . . contact information . . . ."  *Id.* § 12I.2.  Aside from seeking to limit "information regarding

26  citizenship or immigration status" to nothing but mere immigration status, plaintiff largely

27  ignores defendants' explanation as to why this provision violates Section 1373.  Most notably, the

28  City ignores the fact that "contact information," including a person's address, relates to several

1    issues under the INA, including whether the person is "lawfully present in the United States,"

2    which is one component of "immigration status," 8 U.S.C. § 1357(g)(10)(A); whether the person

3    qualifies for "immigrant" status under 8 U.S.C. § 1101(a)(15); whether the person has derived

4    citizenship from a relative; and whether the alien's place of residence qualifies them as a non-

5    resident visitor, *id*. § 1227(a)(1)(C). "Contact information" is also needed for federal authorities

6    to comply with the statutory mandates to "take into custody any alien who" has committed certain

7    criminal offenses "*when the alien is released*" from criminal custody, *id*. § 1226(c)(1) (emphasis

8    added), and to "maintain a current record of aliens who have been convicted of an aggravated

9    felony," *id*. § 1226(d)(1)(C). Defendants' opening memorandum pointed out all of these facts,

10   but plaintiff's argument ignores them. Indeed, plaintiff's entire opposition cites only two sections

11   of the INA: Section 1373 and 8 U.S.C. § 1367(a)(2), the second of which prohibits the disclosure

12   of information regarding aliens who are seeking certain immigration benefits (Dkt. No. 67 at 13).

13          The potential for an employee to be disciplined for violating Chapter 12I makes it all the

14   more potent. Plaintiff downplays the potential for such discipline, arguing that it is "pure

15   conjecture" (Dkt. No. 67 at 18). But the City's own materials suggest otherwise. For example,

16   San Francisco's Human Resources Director warned all employees, in a memorandum dated

17   January 19, 2017, that employees "acting in their official capacities may not use City funds or

18   resources," among other things, to "give out information regarding the release status or personal

19   information of any individual" except as permitted by Chapter 12I (Dkt. No. 68, Ex. H). The

20   memorandum also warned, moreover, that it was "provided as a general summary of the City's

21   sanctuary city laws and [was] not a substitute for legal advice" (*id*.). Finally, the immediately

22   preceding chapter of the Administrative Code – Chapter 12H – expressly provides that

23   "employees who fail to comply with the prohibitions of the ordinance shall be subject to

24   appropriate disciplinary action." S.F., CAL., ADMIN. CODE ch. 12H, § 12H.3.

25                    **3.    The Court Should Deny Plaintiff's Request for a Ruling
                             that Chapter 12H Complies with Section 1373**

26

27          Chapter 12H prohibits employees from using "any City . . . resources to assist in the

28   enforcement of Federal immigration law" and from "gather[ing] or disseminat[ing] information

1    regarding release status of individuals or any other such personal information." *See* S.F., CAL.,

2    ADMIN. CODE ch. 12H, § 12H.2.  Both of these prohibitions violate Section 1373.  Plaintiff does

3    not deny that "assist[ing] in the enforcement of Federal immigration law" encompasses "sending

4    . . . information regarding . . . citizenship or immigration status" to federal authorities under

5    Section 1373, nor that forbidding the use of City "resources" to communicate with federal

6    authorities falls within Section 1373's proscription against "restrict[ing]" the transmission of

7    immigration-status information "in any way."  8 U.S.C. § 1373(a).  Further, as with the "personal

8    information" covered by Chapter 12I (as well as Chapter 12H), plaintiff ignores the fact that

9    knowing the "release status" of aliens is essential to the performance of federal responsibilities.

10   The INA specifies that, except in limited circumstances, DHS "may not remove an alien who is

11   sentenced to imprisonment until the alien is released from imprisonment," 8 U.S.C. § 1231(a)(4);

12   that an alien's removal period "begins on . . . the date the alien is released from [state or local

13   criminal] detention," *id.* § 1231(a)(1)(B)(iii); and that federal immigration authorities "shall" take

14   custody of an alien for removal proceedings "*when the alien is released*" from criminal custody, *id.*

15   § 1226(c)(1) (emphasis added); *see Preap v. Johnson*, 831 F.3d 1193, 1202 (9th Cir. 2016) (holding

16   that federal authorities must take custody of an alien immediately upon release from criminal

17   detention), *petition. for cert. filed*, No. 16-1363 (May 11, 2017).  Plaintiff avoids citing any of these

18   authorities, which establish that "information regarding citizenship and immigration status" under

19   Section 1373 necessarily includes the information whose disclosure is prohibited by Chapter 12H.

20       Plaintiff makes three arguments to the contrary, all of them without merit.  First, the City

21   contends that Chapter 12H's prohibition against "assist[ing] in the enforcement of Federal

22   immigration law" cannot apply here because the prohibition against sharing information is the

23   "more specific" provision (Dkt. No. 67 at 16).  But the issue here is not which provision would

24   control in a given situation as a matter of state or local law, but whether San Francisco has an

25   ordinance that "prohibit[s], or in any way restrict[s], any government entity or official from

26   sending to, or receiving from, [federal immigration authorities] information regarding the

27   citizenship or immigration status, lawful or unlawful, of any individual."  Any provision of San

28   Francisco law that constitutes such a prohibition or restriction violates Section 1373.  In any

1  event, plaintiff ignores the California Court of Appeal's holding that providing information on

2  certain arrestees to federal immigration officials constitutes "provid[ing] state assistance in the

3  enforcement of federal immigration laws." *Fonseca v. Fong*, 167 Cal. App. 4th 922, 932 (2008).

4        Second, plaintiff argues that Chapter 12H cannot violate Section 1373 because the City

5  has deleted language that expressly prohibited disseminating "information regarding the immi-

6  gration status of individuals" (Dkt. No. 67 at 17; 68, Ex. F).  That action also does not prevent the

7  current Chapter 12H from violating Section 1373.  Again, the question here is whether any

8  existing provision of San Francisco law constitutes a prohibition or restriction covered by Section

9  1373.  That the City has deleted language from Chapter 12H that violated Section 1373 does not

10  mean there can be no other language that constitutes such a prohibition or restriction.

11        Third, plaintiff argues that Chapter 12H cannot violate Section 1373 because the

12  ordinance says "unless such assistance is required by Federal or State statute, regulation, or court

13  decision" (Dkt. No. 67 at 17).  This clause does not, however, save Chapter 12H from violating

14  Section 1373.  Among other reasons, this purported saving clause presumably incorporates *San*

15  *Francisco's* view of what Section 1373 covers; since plaintiff contends that Section 1373 covers

16  only an individual's immigration status and nothing more, the saving clause would not permit an

17  employee to share other information covered by Section 1373.  Moreover, by its own terms, the

18  clause applies only to the "assistance" prohibition in Chapter 12H and not the information-sharing

19  prohibition – the second of which plaintiff contends does not apply here.[4]

20  **II.**    **The Challenged Immigration-Related Byrne JAG Conditions Are Lawful**

21      **A.**    **The Conditions Are Authorized by the Statute and Do Not**

22              **Violate the Separation of Powers**

23        Turning to plaintiff's challenges to the grant conditions, the Attorney General has "final

24

25      [4] Plaintiff also seeks to rely on a DOJ Office of Inspector General report from 2007 for the proposition that the saving clause prevents Chapter 12H from violating Section 1373 (Dkt. No. 67

26  at 17; Dkt. 68, Ex. G at 24).  That report, however, focused on a factual analysis of cooperation with federal authorities.  The report did not conclude that the saving clause prevented the

27  ordinance from violating Section 1373, but only observed briefly that the clause "reinforce[d] [the Office's] view that there [was] insufficient evidence [at that time] to conclude that San Francisco

28  fails to cooperate with ICE's efforts to remove undocumented aliens."

1    authority over all functions, including any grants" made by OJP.  34 U.S.C. § 10110(2).  Also, the

2    responsibilities of the Assistant Attorney General for OJP include "exercise[ing] such other

3    powers and functions as may be vested in the [AAG] pursuant to this chapter or by delegation of

4    the Attorney General, including placing special conditions on all grants, and determining priority

5    purposes for formula grants," *id*. § 10102(a)(6), and ensuring that grantees "comply with . . . all

6    other applicable Federal laws," *id*. § 10153(a)(5)(D).  The report of the House Judiciary

7    Committee accompanying the enactment of Section 10102 stated that that provision "allows the

8    [AAG] to place special conditions on all grants and to determine priority purposes for formula

9    grants."  H.R. Rep. No. 109-233, at 101 (2005).  The immigration-related conditions challenged

10   plainly constitute such "special conditions" enforceable by the AAG.  Equally true, the AAG

11   enjoys the authority to further the Department's "priority purposes" for this "formula grant," just

12   as it does for non-formula, discretionary grants, where the grantmaker enjoys significant

13   discretion in the rules, requirements, and conditions that govern the grant.  *See* Discretionary

14   Grant, Grant Terminology, www.grants.gov/web/grants/learn-grants/grant-terminology.html

15   (describing discretionary grant as one "for which the federal awarding agency generally may

16   select the recipient from among all eligible recipients, may decide to make or not make an award

17   based on the programmatic, technical, or scientific content of an application, and can decide the

18   amount of funding to be awarded") (last visited Feb. 14, 2018).  DOJ has also exercised its

19   authority to ensure that grantees comply with applicable federal laws, including 8 U.S.C. § 1373.

20         Plaintiff's first argument to the contrary is that 34 U.S.C. § 10102(a)(6) is not a grant of

21   authority but only refers to authority that may be granted elsewhere (Dkt. No. 67 at 19-20).  As

22   discussed in defendants' motion, however, the authority to "plac[e] special conditions on all

23   grants, and [to] determin[e] priority purposes for formula grants" was added as part of the same

24   legislation that created the Byrne JAG Program.  *See* DOJ Reauthorization Act of 2005, Pub. L.

25   No. 109-162, § 1152(b), 119 Stat. 2960 (2006) (adding language to subsection (a)(6)); *id*. § 1111

26   (creating Byrne JAG Program).  Plaintiff does not explain why Congress would have added that

27   language, it not to confer the authority described.  Moreover, the language indicates that the

28   Attorney General may delegate this authority to the AAG.

1    Second, plaintiff argues that "special conditions" means only a particular kind of

2    condition imposed on "high-risk" grantees under a general DOJ regulation, 28 C.F.R. § 66.12, in

3    effect between 1988 and 2014 (Dkt. No. 67 at 21-22).  The statutory "special conditions" author-

4    ity does not, however, contain any language referencing, incorporating, or otherwise limiting its

5    application to that former regulation.  Further, that regulation did not purport to describe the

6    universe of appropriate special conditions applicable to all types of grantees under a variety of

7    programs.  Plaintiff does not explain why the only type of special conditions authorized under the

8    Byrne JAG Program would be those applicable to high-risk grantees, and it cites no evidence that

9    Congress looked to this regulation in any respect when it added the subject language in 2006.

10   And, in any event, plaintiff's reading leaves unexplained the AAG's complementary power to

11   "determin[e] priority purposes" for formula grants, as DOJ may do for non-formula, discretionary

12   grants.  That power, of course, independently allows the AAG to utilize rules, requirements, and

13   conditions to further the Department's priorities in issuing the grants.

14   Third and finally, plaintiff argues that the challenged conditions cannot be authorized by

15   the statute because the Byrne JAG Program provides formula grants rather than discretionary

16   grants (Dkt. No. 67 at 22-23).  But this argument confuses conditions on grant *eligibility* – such as

17   the conditions at issue here – with the *formula* for allocating funds to eligible recipients.

18   Although there is no authority to deviate from the statutory formula for allocating funds among

19   eligible jurisdictions except in the limited circumstances, *see* 34 U.S.C. §§ 10156-10157, the

20   amount of a jurisdiction's award under that formula is unrelated to whether it has demonstrated its

21   eligibility to receive the funds by complying with the conditions specified in the statute and

22   imposed pursuant to the authority of the Attorney General and the Assistant Attorney General.

23   Accordingly, those conditions do not "override" the statutory formula (*contra* Dkt. No. 67 at 23).

24   **B.    The Conditions Are Consistent with the Spending Clause**

25   In relation to plaintiff's challenge under the Spending Clause, the challenged conditions

26   clearly state what is required; they are related to the purposes of the Byrne JAG Program; and

27   they do not "induce" San Francisco to violate any constitutional prohibition.  *See S. Dakota v.*

28   *Dole*, 483 U.S. 203, 210 (1987).  Plaintiffs' arguments to the contrary to do establish a violation

1    of any limitations on the spending power.

2                        **1.      The Challenged Conditions are Unambiguous**

3            Plaintiff's argument on the clarity of the access and notice conditions is based primarily

4    on the language in the FY 2017 grant solicitations (Dkt. No. 67 at 25; Dkt. No. 61, Ex. B at 30).

5    The purpose of that language, however, was only to inform potential applicants that conditions

6    along those lines would be included in the grant documents.   The language of the actual

7    conditions, as contained in the awards that OJP issued before the conditions were enjoined in

8    *Chicago v. Sessions*, 264 F. Supp. 3d 933, 945 (N.D. Ill. 2017), was thoroughly detailed.   *See*

9    Request for Judicial Notice ("RJN"), Ex. E ¶¶ 53, 55, 56; Ex. F ¶¶ 53, 55, 56 (Dkt. No. 66-1).

10   For example, plaintiff complains that the grant solicitations did not make clear "whether notice

11   must be given only when the scheduled release date and time is known 48 hours in advance . . . or

12   whether jurisdictions must hold inmates in custody for additional time to provide a full period of

13   notice" (Dkt. No. 67 at 25).   The actual conditions answer both of those questions, specifying that

14   the notice condition requires "only as much advance notice as practicable" and that nothing in the

15   condition "shall be understood to authorize or require any recipient . . . to maintain (or detain) any

16   individual in custody beyond the date and time the individual would have been released in the

17   absence of this condition."   RJN, Ex. E ¶ 55; Ex. F ¶ 55.

18           As for the condition requiring compliance with Section 1373, defendants' discussion

19   regarding Chapters 12H and 12I of the San Francisco Administrative Code should obviate any

20   uncertainty about the meaning of this condition.   The Department of Justice clearly understands

21   "information regarding . . . citizenship or immigration status" as encompassing information

22   needed by federal immigration authorities to determine as individual's immigration status and to

23   take custody of the individual upon release criminal detention.   And defendants clearly under-

24   stand the Section 1373 condition as barring a grantee from prohibiting its employees from

25   providing an alien's identifying information or release date to federal authorities.

26           Plaintiff raises other factual questions that may arise in implementing these conditions and

27   argues that the conditions are ambiguous because they fail to address those scenarios (Dkt. No. 67

28   at 26).   The Court of Appeals has made clear, however, that the Spending Clause does not require

1    perfect clarity or complete detail.  In rejecting a Spending Clause challenge, the court said,

2    "Congress is not required to list every factual instance in which a state will fail to comply with a

3    condition.  Such specificity would prove too onerous, and perhaps, impossible."  A challenged

4    condition need only "make the existence of the condition itself – in exchange for the receipt of

5    federal funds – explicitly obvious."  *Mayweathers v. Newland*, 314 F.3d 1062, 1067 (9th Cir.

6    2002).  Like the statute in *Mayweathers*, the conditions challenged here easily meet this standard.

7                    **2.**        **The Challenged Conditions Are Related to the Purposes**

8                            **of the Byrne JAG Program**

9           Plaintiff makes a half-hearted attempt to establish that there is no relationship between

10   "criminal justice" and public safety under the Byrne JAG Program, 34 U.S.C. §§ 10102(a)(1), (2),

11   10152(a)(1), and the enforcement of federal immigration law.  The City argues that "presence in

12   this country without documentation is not a crime" and that deportability based on criminal

13   offenses does not establish the needed relationship (Dkt. No. 67 at 27).  But plaintiff ignores the

14   many ways in which public safety, criminal justice, and immigration law are intertwined.  The

15   Byrne JAG Program's authorizing statute specifies that grant funds are intended to provide

16   resources "for criminal justice," 34 U.S.C. § 10152(a)(1), defined broadly as "activities pertaining

17   to crime prevention, control, or reduction, or the enforcement of the criminal law, including, *but*

18   *not limited to*, police efforts to prevent, control, or reduce crime *or to apprehend criminals . . .*

19   activities of courts having criminal jurisdiction, and related agencies," *id.* § 10251(a)(1)

20   (emphasis added).  Similarly, "[a] primary goal of several recent overhauls of the INA has been to

21   ensure and expedite the removal of aliens convicted of serious crimes."  *Duvall v. Att'y Gen. of*

22   *U.S.*, 436 F.3d 382, 391 (3d Cir. 2006).

23          The challenged conditions relate only to aliens who are under detention and who have either

24   committed crimes or are suspected of having committed crimes.  State and local cooperation with

25   the Federal Government through the provision of basic information and access allows for effective

26   enforcement of federal immigration law against aliens who are criminals or suspected criminals –

27   and thus makes communities safer.  The conditions are also consistent with the Byrne JAG

28   Program's express purposes of ensuring that grantees undertake "appropriate coordination with

affected agencies" and "report such data . . . and information (programmatic and financial) as the Attorney General may reasonably require."  34 U.S.C. § 10153(a)(4), (5)(C).  The challenged conditions thus *directly* advance the purposes of the Byrne JAG Program, and easily clear the low bar of bearing "some relationship" to the Program's purposes.  *Mayweathers*, 314 F.3d at 1067.

Furthermore, plaintiff's assertion that "immigration law has nothing to do with enforcement of local criminal laws" (Dkt. No. 67 at 27, citation omitted), is belied by the connection that the City itself draws between its immigration enforcement policies and its crime rates – alleging, for example, that its "Sanctuary City Laws arise from San Francisco's commitment and responsibility to ensure public safety and welfare" and that crime rates are lower in "sanctuary counties" (Dkt. No. 61 ¶ 31).  Thus, although San Francisco may disagree with the *substance* of the federal policy choices embodied in the challenged grant conditions, plaintiff's own arguments reflect the undeniable *relationship* between public safety and immigration enforcement.  In short, the parties *agree* that the "relatedness" aspect of *Dole* is satisfied here.

### 3.    The Challenged Conditions Do Not Violate any "Independent Constitutional Bar"

Like plaintiff's argument on ambiguity, the City's argument on whether the challenged conditions will "induce" it to violate some other constitutional provision is based on the language of the grant solicitation rather than that of the grant conditions.  The award documents state unequivocally that nothing in the conditions "shall be understood to authorize or require any recipient . . . to maintain (or detain) any individual in custody beyond the date and time the individual would have been released in the absence of this condition."  RJN, Ex. E ¶¶ 55, 56; Ex. F ¶¶ 55, 56.  There is no question regarding whether defendants might "revert" to the language of the solicitation (Dkt. No. 67 at 28); that was never the language of the conditions.  Thus, the challenged conditions raise no issue under the Fourth Amendment or any other "independent constitutional bar."  *See Dole*, 483 U.S. at 210.

### CONCLUSION

Accordingly, for these reasons and for those stated in defendants' opening memorandum, the Court should dismiss plaintiff's First Amended Complaint and all of its claims.

Dated:  February 14, 2018

Respectfully submitted,

CHAD A. READLER
Acting Assistant Attorney General

ALEX G. TSE
Acting United States Attorney

JOHN R. TYLER
Assistant Director

/s/ W. Scott Simpson

W. SCOTT SIMPSON (Va. Bar #27487)
Senior Trial Counsel

Attorneys, Department of Justice
Civil Division, Room 7210
Federal Programs Branch
20 Massachusetts Avenue, NW
Washington, D.C. 20530
Telephone:   (202) 514-3495
Facsimile:   (202) 616-8470
E-mail:       scott.simpson@usdoj.gov

COUNSEL FOR DEFENDANTS

JEFFERSON B. SESSIONS III, Attorney
General of the United States; ALAN R.
HANSON, Principal Deputy Assistant Attorney
General; and U.S. DEPARTMENT OF
JUSTICE