1  ELIZABETH B. WYDRA (BAR NO. 218200)
2  BRIANNE J. GOROD
   DAVID H. GANS
3  CONSTITUTIONAL ACCOUNTABILITY CENTER
   1200 18th Street, NW, Suite 501
4  Washington, D.C. 20036
   Tel.: (202) 296-6889
5  elizabeth@theusconstitution.org

6  *Counsel for* Amici Curiae *Members of Congress*

7
        **IN THE UNITED STATES DISTRICT COURT**
8
        **FOR THE NORTHERN DISTRICT OF CALIFORNIA**
9
        **SAN FRANCISCO DIVISION**
10

11

12
   CITY AND COUNTY OF SAN FRANCISCO,
13
              Plaintiff,
14
        v.
15                                                  Case Nos. 3:17-cv-04642-WHO,
   JEFFERSON B. SESSIONS III, Attorney                     3:17-cv-04701-WHO
16 General of the United States, *et al.*,

17           Defendants.
                                                    **MOTION OF MEMBERS OF CONGRESS**
18 _____           **FOR LEAVE TO FILE *AMICI CURIAE***
19 STATE OF CALIFORNIA *ex rel.* XAVIER               **BRIEF IN SUPPORT OF PLAINTIFFS**
   BECERRA, Attorney General of the State of
20 California,
                                                    Date: September 5, 2018
21           Plaintiff,                              Time: 2:00 p.m.
                                                    Judge: Honorable William H. Orrick
22       v.                                          Dept: 2
                                                    Trial Date: January 28, 2019
23 JEFFERSON B. SESSIONS III, Attorney
   General of the United States, *et al.*,
24
25           Defendants.

26

27

28

*Amici curiae* members of Congress respectfully move for leave to file the attached brief in support of the Plaintiffs.  In support of this motion, *amici* state:

1.      *Amici* are members of Congress who are familiar with the laws governing the Edward Byrne Memorial Justice Assistance Grant Program, a grant program that provides federal financial assistance to states and localities to help them enhance public safety.  As *amici* know, Congress established this program to provide states and localities with funding to determine what approaches to law enforcement and public safety will work best in their communities.  The grant conditions at issue here undermine Congress's carefully considered plan in establishing this program, as well as fundamental constitutional principles that give Congress, not the executive branch, the power to make laws establishing conditions on the receipt of federal financial assistance.  *Amici* have a strong interest in ensuring that the executive branch respects the role of Congress in our Constitution's system of separation of powers and the laws that it has enacted.  A full listing of *amici* is attached as an appendix to this motion.

2.      District courts have discretion to permit third parties to participate in an action as *amici curiae*, and courts have "exercised great liberality" in allowing *amicus* briefs.  *Woodfin Suite Hotels, LLC v. City of Emeryville*, No. 07-1719, 2007 WL 81911, at *3 (N.D. Cal. Jan. 9, 2007) (internal citations omitted).  District courts frequently accept *amicus* briefs from non-parties when the legal issues in a case "have potential ramifications beyond the parties directly involved" or if the *amici* have "unique information or perspective that can help the court."  *NGV Gaming, Ltd. v. Upstream Point Molate, LLC*, 355 F. Supp. 2d 1061, 1067 (N.D. Cal. 2005) (internal quotation marks omitted).  There are no strict prerequisites that must be established to qualify for *amicus* status; the sole criterion is that the applicant make a showing that its "participation is useful to or

otherwise desirable to the court." *Woodfin Suite Hotels*, 2007 WL 81911, at *3 (quoting *In re Roxford Foods Litig.*, 790 F. Supp. 987, 997 (E.D. Cal. 1991)).

3.      The proposed, attached *amici curiae* brief plainly satisfies these standards.   The attached brief discusses, in depth, how Congress limited the executive branch's authority over the Byrne JAG program, giving the Attorney General only extremely narrow powers over its administration.   The brief also explains why the Attorney General's attempt to administratively write into law new substantive Byrne JAG grant conditions not authorized by Congress—and, indeed, at odds with the laws Congress did pass—also runs afoul of fundamental constitutional principles.

4.      Counsel for all parties have consented to the filing of this brief.

For the foregoing reasons, leave to file the attached *amici curiae* brief should be granted. A proposed order is enclosed with this motion.

Dated:  August 22, 2018

<u>/s/ Elizabeth B. Wydra</u>
Elizabeth B. Wydra

ELIZABETH B. WYDRA (BAR NO. 218200)
BRIANNE J. GOROD
DAVID H. GANS
CONSTITUTIONAL ACCOUNTABILITY CENTER
1200 18th Street, NW, Suite 501
Washington, D.C. 20036
Tel.: (202) 296-6889
elizabeth@theusconstitution.org

*Counsel for* Amici Curiae *Members of Congress*

2

1

**APPENDIX – LIST OF *AMICI***

2

**U.S. Senate**

3

4

Harris, Kamala D.
   Senator of California

5

6

Blumenthal, Richard
   Senator of Connecticut

7

8

Booker, Cory
   Senator of New Jersey

9

10

Durbin, Richard J.
   Senator of Illinois

11

Hirono, Mazie K.
   Senator of Hawaiʻi

12

13

Leahy, Patrick J.
   Senator of Vermont

14

15

Menendez, Robert
   Senator of New Jersey

16

17

Whitehouse, Sheldon
   Senator of Rhode Island

18

19

Wyden, Ron
   Senator of Oregon

20

**U.S. House of Representatives**

21

Lofgren, Zoe
   Representative of California

22

23

Pelosi, Nancy
   Representative of California

24

25

Aguilar, Pete
   Representative of California

26

27

Barragán, Nanette Diaz
   Representative of California

28

**LIST OF *AMICI* – cont'd**

Bass, Karen
  Representative of California

Chu, Judy
  Representative of California

DeSaulnier, Mark
  Representative of California

Eshoo, Anna G.
  Representative of California

Gomez, Jimmy
  Representative of California

Huffman, Jared
  Representative of California

Jayapal, Pramila
  Representative of Washington

Lee, Barbara
  Representative of California

Lieu, Ted W.
  Representative of California

Lowenthal, Alan
  Representative of California

Matsui, Doris O.
  Representative of California

McNerney, Jerry
  Representative of California

Napolitano, Grace F.
  Representative of California

Roybal-Allard, Lucille
  Representative of California

Swalwell, Eric
  Representative of California

1

**LIST OF *AMICI* – cont'd**

2

Thompson, Mike
3
    Representative of California

4

Torres, Norma
5
    Representative of California

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 22, 2018, the foregoing document was filed with the Clerk of the Court, using the CM/ECF system, causing it to be served on all counsel of record.

Dated: August 22, 2018

*/s/ Elizabeth B. Wydra*
Elizabeth B. Wydra

1
ELIZABETH B. WYDRA (BAR NO. 218200)
2
BRIANNE J. GOROD
DAVID H. GANS
3
CONSTITUTIONAL ACCOUNTABILITY CENTER
1200 18th Street, NW, Suite 501
4
Washington, D.C. 20036
Tel.: (202) 296-6889
5
elizabeth@theusconstitution.org
6
*Counsel for* Amici Curiae *Members of Congress*
7
8              **IN THE UNITED STATES DISTRICT COURT**

9          **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

10                **SAN FRANCISCO DIVISION**

11

12

13  CITY AND COUNTY OF SAN FRANCISCO,

           Plaintiff,
14
      v.
15                                                  Case Nos. 3:17-cv-04642-WHO,
    JEFFERSON B. SESSIONS III, Attorney                 3:17-cv-04701-WHO
16  General of the United States, *et al.*,

17         Defendants.

18  _____          **BRIEF OF *AMICI CURIAE***
                                                      **MEMBERS OF CONGRESS**
19  STATE OF CALIFORNIA *ex rel.* XAVIER             **IN SUPPORT OF PLAINTIFFS**
    BECERRA, Attorney General of the State of
20  California,
                                                     Date: September 5, 2018
21         Plaintiff,                                 Time: 2:00 p.m.
                                                     Judge: Honorable William H. Orrick
22      v.                                           Dept: 2
                                                     Trial Date: January 28, 2019
23  JEFFERSON B. SESSIONS III, Attorney
    General of the United States, *et al.*,
24
           Defendants.
25

26

27

28

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ............................................................................................ ii

INTEREST OF *AMICI CURIAE* ................................................................................... 1

INTRODUCTION ............................................................................................................ 1

ARGUMENT .................................................................................................................... 3

    I.      Congress Did Not Grant the Attorney General the Power To Impose New
           Grant Conditions on Byrne JAG Program Grantees.............................................. 3

    II.     Separation-of-Powers Principles Do Not Permit the Executive Branch To
           Impose New Conditions on Recipients of Federal Financial Assistance ............. 9

CONCLUSION ................................................................................................................ 12

APPENDIX ...................................................................................................................... 1A

1

# TABLE OF AUTHORITIES

2

**Page(s)**

3

CASES

4

5
*City of Chi. v. Sessions,*
   888 F.3d 272 (7th Cir. 2018)....................................................................... 3, 5, 6, 11

6

*City of L.A. v. McLaughlin,*
7
   865 F.2d 1084 (9th Cir. 1989)................................................................................ 1

8

*City of Phila. v. Sessions,*
   280 F.Supp.3d 579 (E.D. Pa. 2017)........................................................................ 7
9

*Clinton v. City of N.Y.,*
10
   524 U.S. 417 (1998) ..................................................................................... 3, 10, 12

11

*Gonzales v. Oregon,*
12
   546 U.S. 243 (2006) .......................................................................................... 6, 7

13

*INS v. Chadha,*
   462 U.S. 919 (1983) ............................................................................................ 12
14

15
*Kendall v. United States ex rel. Stokes,*
   37 U.S. (12 Pet.) 524 (1838) .............................................................................. 12

16

*Medellín v. Texas,*
17
   552 U.S. 491 (2008) ............................................................................................ 10

18
*Nat'l Fed'n of Indep. Bus. v. Sebelius,*
   567 U.S. 519 (2012) ....................................................................................... 3, 11
19

20
*Pennhurst State Sch. & Hosp. v. Halderman,*
   451 U.S. 1 (1981) ................................................................................................ 11

21

*United States v. Butler,*
22
   297 U.S. 1 (1936) ................................................................................................ 11

23
*United States v. Midwest Oil Co.,*
   236 U.S. 459 (1915) ............................................................................................ 12

24

*United States v. Williams,*
25
   553 U.S. 285 (2008) .............................................................................................. 7

26
*Util. Air Regulatory Grp. v. EPA,*
   134 S. Ct. 2427 (2014) ........................................................................................ 12

27

28
*Whitman v. Am. Trucking Ass'ns, Inc.,*
   531 U.S. 457 (2001) .............................................................................................. 5

1

**TABLE OF AUTHORITIES – cont'd**

2
Page(s)

3 *Yates v. United States*,
    135 S. Ct. 1074 (2015) .......................................................... 7

4

5 *Youngstown Sheet & Tube Co. v. Sawyer*,
    343 U.S. 579 (1952) .......................................................... 10

6

7 CONSTITUTIONAL PROVISIONS AND LEGISLATIVE MATERIALS

8 7 C.F.R. § 550.10 (Department of Agriculture).............................. 8

9 28 C.F.R. § 66.12(a)(5)........................................................ 7

10 34 C.F.R. § 80.12 (Department of Education)............................... 8

11 34 U.S.C. § 10102(a)(1)....................................................... 6

12 34 U.S.C. § 10102(a)(2)....................................................... 6

13 34 U.S.C. § 10102(a)(3)....................................................... 6

14 34 U.S.C. § 10102(a)(4)....................................................... 6

15 34 U.S.C. § 10102(a)(5)....................................................... 6

16

17 34 U.S.C. § 10102(a)(6)....................................................... 5, 7

18 34 U.S.C. § 10152(a)(1)....................................................... 1

19 34 U.S.C. § 10152(c)(1)....................................................... 4

20 34 U.S.C. § 10152(d)(2)....................................................... 5

21 34 U.S.C. § 10153(a) .......................................................... 4

22 34 U.S.C. § 10153(a)(4)....................................................... 4

23 34 U.S.C. § 10153(a)(5)....................................................... 4

24 45 C.F.R. § 74.14 (Department of Health and Human Services) ........... 8

25 Adam Walsh Child Protection and Safety Act of 2006, Pub. L. No. 109-248, § 125,
    120 Stat. 587................................................................... 4

26

27 An Act Declaring the Rights and Liberties of the Subject and Settling the Succession
    of the Crown (Bill of Rights), 1689, 1 W. & M., c.2, § 4 (Eng.) ........... 9

28

1

## TABLE OF AUTHORITIES – cont'd

2

**Page(s)**

3

Death in Custody Reporting Act of 2013, Pub. L. No. 113-242, § 2, 128 Stat. 2860 .. 4

4

H.R. Rep. No. 109-233 (2005)......................................................................... 4

5

NICS Improvement Amendments Act of 2007, Pub. L. No. 110-180, § 104, 121 Stat.
2559 ................................................................................................... 4

6

OMB Circular No. A-102 (Revised), Grants and Cooperative Agreements with State
and Local Governments, § 1(g) (Aug. 29, 1997) ................................................ 7

7

U.S. Const. art. I, § 8, cl. 1 ............................................................................. 3, 10

8

9

10

BOOKS, ARTICLES, AND OTHER AUTHORITIES

11

Akhil Reed Amar, *America's Constitution: A Biography* (2005)................................. 10

12

*The Federalist No. 30* (Hamilton) (Clinton Rossiter ed., rev. ed. 1999) ...................... 3, 10, 11

13

*The Federalist No. 31* (Hamilton) (Clinton Rossiter ed., rev. ed. 1999) ...................... 10

14

*The Federalist No. 47* (Hamilton) (Clinton Rossiter ed., rev. ed. 1999) ...................... 9, 10

15

*The Federalist No. 78* (Hamilton) (Clinton Rossiter ed., rev. ed. 1999) ...................... 11

16

Paul F. Figley & Jay Tidmarsh, *The Appropriations Power and Sovereign Immunity*,
107 Mich. L. Rev. 1207 (2009) ...................................................................... 9

17

1 The Records of the Federal Convention of 1787 (Max Farrand ed., 1911)............... 9

18

Robert J. Reinstein, *The Limits of Executive Power*, 59 Am. U. L. Rev. 259 (2009) .. 9

19

U.S. Dep't of Justice, Edward Byrne Memorial Justice Assistance Grant Program FY
2018 Local Solicitation (2018), https://www.bja.gov/funding/JAGLocal18.pdf..... 8

20

21

22

23

24

25

26

27

28

## INTEREST OF *AMICI CURIAE*[1]

*Amici* are members of Congress who are familiar with the laws governing the Edward Byrne Memorial Justice Assistance Grant Program, a grant program that provides federal financial assistance to states and localities to help them enhance public safety.  As *amici* know, Congress established this program to provide states and localities with funding to determine what approaches to law enforcement and public safety will work best in their communities.  The grant conditions at issue here undermine Congress's carefully considered plan in establishing this program, as well as fundamental constitutional principles that give Congress, not the executive branch, the power to make laws establishing conditions on the receipt of federal financial assistance.  *Amici* have a strong interest in ensuring that the executive branch respects the role of Congress in our Constitution's system of separation of powers and the laws that it has enacted.

A full listing of *amici* appears in the Appendix.

## INTRODUCTION

The Edward Byrne Memorial Justice Assistance Grant ("Byrne JAG") Program provides federal financial assistance to localities across the country, including the plaintiffs in these cases, to help them enhance public safety as they see fit.  Using a formula keyed to the jurisdiction's population and violent crime rate, Byrne JAG grants provide states and cities with financial assistance that they can use to "provide additional personnel, equipment, supplies, contractual support, training, technical assistance, and information systems for criminal justice."  34 U.S.C. § 10152(a)(1); *City of L.A. v. McLaughlin*, 865 F.2d 1084, 1088 (9th Cir. 1989) ("'formula' grants," unlike discretionary grants, "are not awarded at the discretion of a state or federal agency, but are awarded pursuant to a statutory formula").  Reflecting the primary role of states

---

[1] No person or entity other than *amici* and their counsel assisted in or made a monetary contribution to the preparation or submission of this brief.

and cities in fighting crime, the statute establishing the Byrne JAG program places minimal

limits on the public safety and criminal justice uses to which funds may be allocated.

Despite all of this, in July 2017, Attorney General Jeff Sessions sought to

administratively mandate new funding conditions for every Byrne JAG grant, seeking to coerce

local jurisdictions into adopting immigration policies preferred by President Trump.

Significantly, Congress neither imposed these conditions, nor authorized the Attorney General to

impose them.  As *amici* know from their experience in Congress, Congress designed the Byrne

JAG program as a formula grant to ensure that states and localities would have maximum

flexibility in determining how to best improve public safety in their jurisdictions.  The one-size-

fits-all conditions that the Attorney General now seeks to impose are not only at odds with the

flexibility that was central to Congress's plan in establishing the grant program, but also would

undermine public safety in jurisdictions like California and the city and county of San Francisco,

by decreasing trust and cooperation between the police force and crime victims and witnesses in

many neighborhoods.

To ensure that states and localities would have maximum discretion in determining how

to use the funds, Congress limited the executive branch's authority over the program, giving the

Attorney General only extremely narrow powers over its administration.  None of these powers

authorizes the Attorney General to add new substantive conditions on the award of grants, which

is why the Attorney General here relies, in part, on a statute that does not concern either the

Byrne JAG program or the Attorney General.  And that statute, which imposes duties on the

Assistant Attorney General of Justice Programs that are primarily related to information sharing,

does not help the Attorney General either.  Congress did not hide an elephant in that mousehole.

The Attorney General's attempt to administratively write into law new substantive Byrne

JAG grant conditions not authorized by Congress—and, indeed, at odds with the laws Congress did pass—also runs afoul of fundamental constitutional principles.  The Framers of our Constitution took pains to deny the executive branch the power to both make the law and then execute it, recognizing that such concentrated power "in the hands of a single branch is a threat to liberty."  *Clinton v. City of N.Y.*, 524 U.S. 417, 450 (1998) (Kennedy, J., concurring); *see City of Chi. v. Sessions*, 888 F.3d 272, 277 (7th Cir. 2018) ("The founders of our country well understood that the concentration of power threatens individual liberty and established a bulwark against such tyranny by creating a separation of powers among the branches of government."). They also conferred on Congress in the Spending Clause the "Power To lay and collect Taxes, Duties, Imposts and Excises, to pay the Debts and provide for the common Defence and general Welfare of the United States."  U.S. Const. art. I, § 8, cl. 1.  Under this Clause, Congress may "grant federal funds to the States" and impose conditions to "ensure that the funds are used by the States to 'provide for the . . . general Welfare' in the manner Congress intended."  *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 576 (2012) ("NFIB"); *see Chicago*, 888 F.3d at 277 ("the power of the purse rests with Congress").  The Framers thus gave the legislative power, including the authority to impose conditions on the receipt of federal financial assistance, to Congress, recognizing that "[m]oney is . . . considered as the vital principle of the body politic; as that which sustains its life and motion and enables it to perform its most essential functions."  *The Federalist No. 30*, at 156 (Hamilton) (Clinton Rossiter ed., rev. ed. 1999).  The Attorney General's actions cannot be squared with our Framers' design.

## ARGUMENT

**I.     Congress Did Not Grant the Attorney General the Power To Impose New Grant Conditions on Byrne JAG Program Grantees.**

In enacting the Byrne JAG program, Congress sought to give state and local law

enforcement "flexibility to spend [federal] money for programs that work for them rather than to impose a 'one size fits all' solution." H.R. Rep. No. 109-233, at 89 (2005). To achieve that end, Congress gave states and local jurisdictions considerable discretion in determining how best to spend the funds that they were awarded under the grant program. Congress of course retains its power to impose conditions on the receipt of grant funds when it concludes that some policy is sufficiently important to do so. *See, e.g.*, NICS Improvement Amendments Act of 2007, Pub. L. No. 110-180, § 104, 121 Stat. 2559, 2569 (codified at 34 U.S.C. § 40914(b)(2)) (providing for the withholding of up to 5 percent of Byrne JAG formula grant funds to states that fail to provide adequate records to the National Instant Criminal Background Check System); *see also* Adam Walsh Child Protection and Safety Act of 2006, Pub. L. No. 109-248, § 125, 120 Stat. 587, 598 (codified at 34 U.S.C. § 20927); Death in Custody Reporting Act of 2013, Pub. L. No. 113-242, § 2, 128 Stat. 2860, 2861 (codified at 34 U.S.C. § 60105(c)(2)). But Congress did not give the power to make that determination to the executive branch. In fact, it did just the opposite, carefully limiting the Attorney General's role in administering the program. It granted him a handful of specifically defined and exceedingly narrow powers, thereby ensuring that the executive branch would not impose constraints on award recipients that were at odds with Congress's decisions about how best to structure the program.

In designing the Byrne JAG program, Congress simply conferred on the Attorney General the authority to choose the "form" of the application for funds, 34 U.S.C. § 10153(a), and the "certification" that grantees must sign, *id.* § 10153(a)(5), to impose reasonable reporting requirements, *id.* § 10153(a)(4), and to set "guidelines" to be used to conduct "program assessment[s]," *id.* § 10152(c)(1). Congress also gave the Attorney General the authority to permit, based on a finding of "extraordinary and exigent circumstances," jurisdictions to spend

their Byrne JAG funds on certain "vehicles," "vessels," "aircraft," "luxury items" "real estate," "construction projects," or "similar matters." *Id.* § 10152(d)(2).  Nothing in the Byrne JAG statute authorizes the Attorney General to impose additional conditions on grantees, as he has attempted to do here.  *See Chicago*, 888 F.3d at 284 (no provision in Byrne JAG statute grants the Attorney General the authority to impose these conditions).

The Attorney General effectively concedes as much, relying not on the provision governing the Byrne JAG program, but instead on a separate provision, 34 U.S.C. § 10102(a)(6), that does not even address the powers of the Attorney General, but instead sets forth the powers of the Assistant Attorney General for Justice Programs.  D.E. 114, *San Francisco v. Sessions*, at 10-12; D.E. 124, *California v. Sessions*, at 12-15.  But that statute, which gives the Assistant Attorney General the authority to "exercise such other powers and functions as may be vested in the Assistant Attorney General pursuant to this chapter or by delegation of the Attorney General, including placing special conditions on all grants, and determining priority purposes for formula grants," does not supersede Congress's decision to deny the Attorney General the authority to impose substantive constraints on Byrne JAG grantees.  34 U.S.C. § 10102(a)(6) (emphasis added).

First, Section 10102 is located in an entirely different subchapter of the U.S. Code than the Byrne JAG program, and nothing in the text suggests that it governs the Byrne JAG program. "Congress . . . does not alter the fundamental details of a regulatory scheme in vague terms or ancillary provisions—it does not, one might say, hide elephants in mouseholes." *Whitman v. Am. Trucking Ass'ns, Inc.*, 531 U.S. 457, 468 (2001).  But here, the Attorney General claims that, despite the lengths to which Congress went to sharply circumscribe the Attorney General's authority under the Byrne JAG program, a provision in a different subchapter of the Code

implicitly gives a subordinate of the Attorney General, the Assistant Attorney General of Justice Programs, the sweeping power to add new substantive conditions to grants.  Indeed, the Assistant Attorney General "is an unlikely recipient of such broad authority," given "the statute's otherwise careful allocation of decisionmaking powers."  *Gonzales v. Oregon*, 546 U.S. 243, 274 (2006).

Second, the text of Section 10102 makes clear that it does not vest in the Assistant Attorney General lawmaking powers to impose new substantive conditions on grants.  *See Chicago*, 888 F.3d at 284 ("The Attorney General's interpretation is contrary to the plain meaning of the statutory language.").  Section 10102 merely requires the Assistant Attorney General to deliver information about the state of the criminal justice system, *see* 34 U.S.C. § 10102(a)(1) (duty to "publish and disseminate information on . . . criminal justice systems"); *id.* §10102(a)(3) (duty to "provide information . . . relating to criminal justice"), and to maintain relationships with stakeholders, government bodies, and experts in the field, *see id.* §10102(a)(2) (duty to "maintain liaison with the executive and judicial branches of the Federal and State governments in matters relating to criminal justice"); *id.* §10102(a)(4) (duty to "maintain liaison with public and private educational and research institutions, State and local governments, and governments of other nations relating to criminal justice"); *id.* §10102(a)(5) (duty to "coordinate and provide staff support to coordinate the activities of" various government offices).  None of these obligations, which focus primarily on delivering information and maintaining contacts, authorizes the Assistant Attorney General to add new substantive grant conditions.

After imposing that list of specific obligations on the Assistant Attorney General, Section 10102 contains a catch-all provision stating that the Assistant Attorney General may "exercise such other powers and functions as may be vested in the Assistant Attorney General pursuant to this chapter or by delegation of the Attorney General, including placing special conditions on all

grants, and determining priority purposes for formula grants." *Id.* § 10102(a)(6).  The Attorney

General's reliance on this provision is misplaced.  To start, Section 10102(a)(6) does not

specifically confer any new authority on the Assistant Attorney General: it simply makes clear

that the Assistant Attorney General may exercise such power "as may be vested" "pursuant to

this chapter or by delegation of the Attorney General," including "placing special conditions on

all grants." *Id.*  Nowhere in the U.S. Code has the Assistant Attorney General been vested with

the power to make new law and add substantive grant conditions.

On top of that, the Attorney General's argument depends on reading the "special

conditions" language in this subprovision in isolation from the rest of Section 10102.  But

"statutes 'should not be read as a series of unrelated and isolated provisions.'"  *Gonzales*, 546

U.S. at 273 (quoting *Gustafson v. Alloyd Co.*, 513 U.S. 561, 570 (1995)).  Rather, courts "avoid

ascribing to one word a meaning so broad that it is inconsistent with its accompanying words,

thus giving unintended breadth to the Acts of Congress." *Yates v. United States*, 135 S. Ct. 1074,

1085 (2015) (internal quotations omitted); *United States v. Williams*, 553 U.S. 285, 294 (2008)

("[A] word is given more precise content by the neighboring words with which it is

associated.").  The sweeping lawmaking power the Attorney General claims differs in kind from

the narrow information-sharing obligations imposed by Section 10102.

Finally, the authority to place "special conditions" on grants is not a lawmaking power to

add new conditions; rather, it "is a term of art for conditions intended for 'high-risk grantees'

with difficulty adhering to existing grant requirements." *City of Phila. v. Sessions*, 280 F. Supp.

3d 579, 617 (E.D. Pa. 2017); *see* 28 C.F.R. § 66.12(a)(5) (DOJ regulations noting that, for high

risk grantees, "special conditions and/or restrictions shall correspond to the high risk condition

and shall be included in the award"); OMB Circular No. A-102 (Revised), Grants and

Cooperative Agreements with State and Local Governments, § 1(g) (Aug. 29, 1997) ("Agencies may impose special conditions or restrictions on awards to 'high risk' applicants/grantees").  The regulations applicable to other federal agencies are similar.  *See* 7 C.F.R. § 550.10 (Department of Agriculture); 34 C.F.R. § 80.12 (Department of Education); 45 C.F.R. § 74.14 (Department of Health and Human Services).  The government's argument cannot be squared with this settled, circumscribed meaning.

In sum, the Attorney General has sought to arrogate to himself the power to set conditions on federal funding in order to make all Byrne JAG recipients follow President Trump's preferred immigration policies.  In doing so, he threatens not only to undermine the statute's carefully-crafted flexibility and frustrate its goal of enhancing public safety, but also to impose new costs on Byrne JAG recipients, as the Department of Justice acknowledged in its solicitation form.  *See* U.S. Dep't of Justice, Edward Byrne Memorial Justice Assistance Grant Program FY 2018 Local Solicitation 37 (2018), https://www.bja.gov/funding/JAGLocal18.pdf (advising that "[t]he reasonable costs . . . of complying with these conditions, including honoring any duly authorized requests from DHS that is encompassed by these conditions, will be allowable costs under the award").  The imposition of these new costs only underscores how fundamentally the Attorney General's actions are at odds with Congress's plan in establishing the program.  As noted earlier, Congress wanted to give states and localities financial support and maximum flexibility in determining how best to enhance public safety in their jurisdictions.  But these new costs would require states and localities to prioritize the executive branch's policy preferences over their own.  Congress carefully limited the Attorney General's powers over the grant program to prevent exactly that.  The Attorney General's actions thus violate the statute, and they also violate fundamental constitutional principles, as the next Section discusses.

## II.     Separation-of-Powers Principles Do Not Permit the Executive Branch To Impose New Conditions on Recipients of Federal Financial Assistance.

When the Framers wrote the Constitution more than two centuries ago, they took pains to deny the President the kind of sweeping powers the King of England had enjoyed.  In the seventeenth and eighteenth centuries, British Kings had used their royal prerogatives both to legislate, and to tax and spend, without the approval of Parliament.  *See, e.g.*, Robert J. Reinstein, *The Limits of Executive Power*, 59 Am. U. L. Rev. 259, 272-77 (2009); Paul F. Figley & Jay Tidmarsh, *The Appropriations Power and Sovereign Immunity*, 107 Mich. L. Rev. 1207, 1217-29 (2009).  After centuries of struggle, Parliament succeeded in ending these prerogatives.  The Bill of Rights of 1689 prohibited the various devices the King had used to raise money on his own, providing that "levying money for or to the use of the Crown by pretence of prerogative, without grant of Parliament, for longer time, or in other manner than the same is or shall be granted, is illegal."  An Act Declaring the Rights and Liberties of the Subject and Settling the Succession of the Crown (Bill of Rights), 1689, 1 W. & M., c.2, § 4 (Eng.).  In 1782, Parliament eliminated the King's prerogative to determine how the "civil list"—the domestic budget—would be spent.  Figley & Tidmarsh, *supra*, at 1229.

In the U.S. Constitution, "the prerogatives that had been discredited in England were naturally rejected by the Framers."  Reinstein, *supra*, at 307.  The Framers gave the lawmaking power, including the power of the purse, to Congress, recognizing that "the Prerogatives of the British Monarch" were not "a proper guide in defining the Executive powers."  1 The Records of the Federal Convention of 1787, at 65 (Max Farrand ed., 1911).  The U.S. Constitution strictly limited the President's lawmaking powers, appreciating that "'[w]hen the legislative and executive powers are united in the same person or body . . . there can be no liberty.'"  *The Federalist No. 47*, *supra*, at 271 (Madison) (quoting Montesquieu).

As the Supreme Court has explained, "the President's power to see that the laws are faithfully executed refutes the idea that he is to be a lawmaker." *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 587 (1952); *id.* at 655 (Jackson, J., concurring) ("The Executive, except for recommendation and veto, has no legislative power."). Thus, "[t]he President's authority to act, as with the exercise of any governmental power, 'must stem either from an act of Congress or from the Constitution itself.'" *Medellín v. Texas*, 552 U.S. 491, 524 (2008) (quoting *Youngstown*, 343 U.S. at 585). These separation-of-powers principles "[were] designed to implement a fundamental insight: Concentration of power in the hands of a single branch is a threat to liberty." *Clinton*, 524 U.S. at 450 (Kennedy, J., concurring); *The Federalist No. 47*, *supra*, at 269 (Madison) ("The accumulation of all powers, legislative, executive, and judiciary, in the same hands . . . may justly be pronounced the very definition of tyranny.").

In the Spending Clause, the Framers explicitly gave the power to tax and spend—which British Kings had claimed as a royal prerogative—to Congress, denying the President the power of the purse. The Spending Clause is the first and one of the most sweeping powers the Constitution confers upon Congress, providing the power "[t]o lay and collect Taxes, Duties, Imposts and Excises, to pay the Debts and provide for the common Defense and general Welfare of the United States." U.S. Const. art. I, § 8, cl. 1. The Framers, who had witnessed the disastrous consequences of the failure of the Articles of Confederation to give such a power to Congress, called the power of the purse "an indispensable ingredient in every constitution," *The Federalist No. 30*, *supra*, at 156 (Hamilton); *The Federalist No. 31*, *supra*, at 163 (Hamilton) ("[R]evenue is the essential engine by which the means of answering the national exigencies must be procured."); Akhil Reed Amar, *America's Constitution: A Biography* 106 (2005) (explaining that under the Articles, Congress could raise money only by making requests to the

States, but "State governments had often failed to provide the funds that the Confederation demanded of them," and that "[w]ithout a strong revenue stream, vital federal functions were withering"). The Framers thus gave Congress power over "all those matters which will call for disbursements out of the national treasury." *The Federalist No. 30*, *supra*, at 156 (Hamilton); *The Federalist No. 78*, *supra*, at 433 (Hamilton) ("The legislature not only commands the purse but prescribes the rules by which the duties and rights of every citizen are to be regulated.").

Because the Framers gave the Spending Clause power to Congress alone, and because they strictly limited the President's lawmaking powers, the executive branch has no power to dictate what the federal government spends money on, or the conditions it attaches to those expenditures. Rather, it is Congress—and Congress alone—that has broad power to "fix the terms on which it shall disburse federal money to the States." *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 17 (1981); *see NFIB*, 567 U.S. at 576 ("Congress may use this power to grant federal funds to the States, and may condition such a grant upon the States' 'taking certain actions that Congress could not require them to take.'" (quoting *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 686 (1999))); *United States v. Butler*, 297 U.S. 1, 66 (1936) ("power of Congress to authorize expenditure of public moneys for public purposes is not limited by the direct grants of legislative power found in the Constitution"); *Chicago*, 888 F.3d at 283 ("the Executive Branch does not have the inherent authority . . . to condition the payment of such federal [grant] funds on adherence to its political priorities").

Because the power to "fix the terms on which [Congress] shall disburse federal money to the States," *Pennhurst*, 451 U.S. at 17, belongs to Congress alone, the Executive cannot change Congress's decision, except by persuading Congress to amend the laws that it has enacted. It is well settled that "[t]he Constitution does not confer upon [the President] any power to enact laws

or to suspend or repeal such as the Congress enacts." *United States v. Midwest Oil Co.*, 236 U.S. 459, 505 (1915); *Kendall v. United States ex rel. Stokes*, 37 U.S. (12 Pet.) 524, 613 (1838) (refusing to "cloth[e] the President with a power entirely to control the legislation of congress"); *see Clinton*, 524 U.S. at 447 (the President lacks "unilateral power to change the text of duly enacted statutes"). In other words, the executive branch cannot make an end-run around the "single, finely wrought," "step-by step, deliberate and deliberative process," *INS v. Chadha*, 462 U.S. 919, 951, 959 (1983), the Framers prescribed for lawmaking. To license such executive lawmaking "would deal a severe blow to the Constitution's separation of powers." *Util. Air Regulatory Grp. v. EPA*, 134 S. Ct. 2427, 2446 (2014).

In sum, while the President's duty of "executing the laws necessarily includes both authority and responsibility to resolve some questions left open by Congress . . . it does not include a power to revise . . . clear statutory terms to suit [his] own sense of how [a] statute should operate." *Id.* Yet that is exactly what the Attorney General has attempted to do here.

### CONCLUSION

For the foregoing reasons, the plaintiffs' motions for summary judgment should be granted.

Dated: August 22, 2018

Respectfully submitted,

*/s/ Elizabeth B. Wydra*
Elizabeth B. Wydra

Elizabeth B. Wydra
Brianne J. Gorod
David H. Gans
CONSTITUTIONAL ACCOUNTABILITY CENTER
1200 18th Street, N.W., Suite 501
Washington, D.C. 20036
(202) 296-6889
elizabeth@theusconstitution.org

*Counsel for* Amici Curiae *Members of Congress*

# APPENDIX – LIST OF *AMICI*

## U.S. Senate

Harris, Kamala D.
    Senator of California

Blumenthal, Richard
    Senator of Connecticut

Booker, Cory
    Senator of New Jersey

Durbin, Richard J.
    Senator of Illinois

Hirono, Mazie K.
    Senator of Hawai'i

Leahy, Patrick J.
    Senator of Vermont

Menendez, Robert
    Senator of New Jersey

Whitehouse, Sheldon
    Senator of Rhode Island

Wyden, Ron
    Senator of Oregon

## U.S. House of Representatives

Lofgren, Zoe
    Representative of California

Pelosi, Nancy
    Representative of California

Aguilar, Pete
    Representative of California

Barragán, Nanette Diaz
    Representative of California

## LIST OF *AMICI* – cont'd

Bass, Karen
    Representative of California

Chu, Judy
    Representative of California

DeSaulnier, Mark
    Representative of California

Eshoo, Anna G.
    Representative of California

Gomez, Jimmy
    Representative of California

Huffman, Jared
    Representative of California

Jayapal, Pramila
    Representative of Washington

Lee, Barbara
    Representative of California

Lieu, Ted W.
    Representative of California

Lowenthal, Alan
    Representative of California

Matsui, Doris O.
    Representative of California

McNerney, Jerry
    Representative of California

Napolitano, Grace F.
    Representative of California

Roybal-Allard, Lucille
    Representative of California

Swalwell, Eric
    Representative of California

1

**LIST OF *AMICI* – cont'd**

2

3

Thompson, Mike
    Representative of California

4

Torres, Norma
    Representative of California

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 22, 2018, the foregoing document was filed with the Clerk

of the Court, using the CM/ECF system, causing it to be served on all counsel of record.

Dated: August 22, 2018

*/s/ Elizabeth B. Wydra*
Elizabeth B. Wydra

<table>
<tr><td>1</td><td colspan="2" align="center">IN THE UNITED STATES DISTRICT COURT</td></tr>
<tr><td>2</td><td colspan="2" align="center">FOR THE NORTHERN DISTRICT OF CALIFORNIA</td></tr>
<tr><td>3</td><td colspan="2" align="center">SAN FRANCISCO DIVISION</td></tr>
</table>

|    |                                                                                              |                                                          |
|----|----------------------------------------------------------------------------------------------|----------------------------------------------------------|
| 4  |                                                                                              |                                                          |
| 5  | CITY AND COUNTY OF SAN FRANCISCO,                                                            |                                                          |
|    |         Plaintiff,                                   |                                                          |
| 6  |                                                                                              |                                                          |
|    |     v.                                                                    | Case Nos. 3:17-cv-04642-WHO,                             |
| 7  |                                                                                              | 3:17-cv-04701-WHO                                        |
|    | JEFFERSON B. SESSIONS III, Attorney                                                          |                                                          |
| 8  | General of the United States, *et al.*,                                                     |                                                          |
| 9  |                                                                                              |                                                          |
|    |         Defendants.                                   |                                                          |
| 10 |                                                                                              |                                                          |
| 11 | STATE OF CALIFORNIA *ex rel.* XAVIER                                                         | **[PROPOSED] ORDER**                                     |
|    | BECERRA, Attorney General of the State of                                                    |                                                          |
| 12 | California,                                                                                   |                                                          |
| 13 |         Plaintiff,                                   |                                                          |
| 14 |     v.                                                                    |                                                          |
| 15 | JEFFERSON B. SESSIONS III, Attorney                                                          |                                                          |
|    | General of the United States, *et al.*,                                                     |                                                          |
| 16 |                                                                                              |                                                          |
| 17 |         Defendants.                                   |                                                          |

18

19

20       Upon consideration of the motion of members of Congress for leave to file an *amici*

21  *curiae* brief in support of plaintiffs, it is hereby

22            ORDERED that the motion is GRANTED.

23

24  Dated: _____          _____

25                                   Honorable William H. Orrick

                                     United States District Judge

26

27

28