**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| CITY AND COUNTY OF SAN FRANCISCO, *Plaintiff-Appellee*, v. WILLIAM P. BARR, Attorney General; ALAN R. HANSON;  UNITED STATES DEPARTMENT OF JUSTICE; MATT M. DUMMERMUTH, *Defendants-Appellants*. | No. 18-17308  D.C. No. 3:17-cv-04642-WHO |

| | |
|---|---|
| STATE OF CALIFORNIA, EX REL. XAVIER BECERRA, in his official capacity as Attorney General of the State of California,<br><br>*Plaintiff-Appellee*,<br><br>v.<br><br>WILLIAM P. BARR, Attorney General; ALAN R. HANSON; UNITED STATES DEPARTMENT OF JUSTICE; MATT M. DUMMERMUTH; PHIL E. KEITH,<br><br>*Defendants-Appellants*. | No. 18-17311<br><br>D.C. No. 3:17-cv-04701-WHO<br><br>OPINION |

Appeal from the United States District Court
for the Northern District of California
William Horsley Orrick, District Judge, Presiding

Argued and Submitted December 2, 2019
San Francisco, California

Filed July 13, 2020

Before:  William A. Fletcher, Richard R. Clifton,
and Eric D. Miller, Circuit Judges.

Opinion by Judge Clifton

# SUMMARY[*]

## Nationwide Injunction

The panel affirmed in part, and vacated in part, the district court's summary judgment entering declaratory relief for plaintiffs and permanently enjoining the U.S. Department of Justice ("DOJ") on a nationwide basis from imposing certain conditions for providing funding for state and local criminal justice programs through Edward Byrne Memorial Justice Assistance Grants.

In Fiscal Year 2017, the Attorney General and DOJ announced three new conditions that state and local governments must satisfy to receive Byrne grants: the Access Condition, the Notice Condition, and the Certification Condition. Plaintiffs – the City and County of San Francisco and the State of California – are "sanctuary" jurisdictions, which have enacted laws that limit their employees' authority to assist in the enforcement of federal immigration laws.  Plaintiffs sued to prevent DOJ from denying funding of Byrne grants for their failure to comply with the Access, Notice, and Certification Conditions.

The panel affirmed the district court's order to the extent it held that DOJ did not have statutory authority to impose the Access and Notice Conditions and declared that plaintiffs' respective sanctuary laws complied with 8 U.S.C. § 1373, the law on which the Certification Condition was based.  The panel upheld the permanent injunction barring

---

[*] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

DOJ from withholding, terminating, or clawing back Byrne funding based on the Challenged Conditions and statutes at issue.

The panel held that the district court abused its discretion in granting nationwide injunctive relief, which was broader than warranted. The panel held that nothing in the record or in the nature of the claims suggested that the relief granted by the district court needed to be extended to state and local governments outside of California, not parties to this litigation, in order to fully shield plaintiffs. The panel vacated the nationwide reach of the permanent injunction and limited its reach to California's geographic boundaries.

## COUNSEL

Mark B. Stern (argued), Daniel Tenny, Katherine Twomey Allen, Brad Hinshelwood, and Laura E. Myron, Appellate Staff; Hashim M. Mooppan, Deputy Assistant Attorney General; David L. Anderson, United States Attorney; Joseph H. Hunt, Assistant Attorney General; United States Department of Justice, Civil Division, Washington, D.C.; for Defendants-Appellants.

Aileen M. McGrath (argued), Jesse C. Smith, Ronald P. Flynn, Yvonne R. Mere, Tara M. Steeley and Sara J. Eisenberg, Deputy City Attorneys; Dennis J. Herrera, City Attorney; Office of the City Attorney, San Francisco, California; for Plaintiff-Appellee City and County of San Francisco.

Joshua A. Klein (argued), Deputy Solicitor General; Kristin A. Liska, Associate Deputy Solicitor General; Lee Sherman, Deputy Attorney General; Sarah E. Belton, Supervising

Deputy Attorney General; Michael L. Newman, Senior Assistant Attorney General; Edward C. DuMont, Solicitor General; Xavier Becerra, Attorney General; Office of the Attorney General, Oakland, California; for Plaintiff-Appellee State of California.

Matthew J. Piers, Chirag G. Badlani, and Caryn C. Lederer, Hughes Socol Peters Piers Resnick & Dym Ltd., Chicago, Illinois; Mary B. McCord, Joshua A. Geltzer, Nicolas Y. Riley, and Daniel B. Rice, Institute for Constitutional Advocacy and Protection, Washington, D.C.; for Amici Curiae Current and Former Prosecutors and Law Enforcement Leaders.

Elizabeth B. Wydra, Brianne J. Gorod, and David H. Gans, Constitutional Accountability Center, Washington, D.C., for Amici Curiae Members of Congress.

James R. Williams, County Counsel; Greta S. Hansen, Chief Assistant County Counsel; Kavita Narayan and Laura S. Trice, Lead Deputy County Counsel; H. Luke Edwards, Fellow; Office of the County Counsel, County of Santa Clara, San Jose, California; for Amici Curiae 43 Counties, Cities, and Municipal Agencies; National League of Cities; International Municipal Lawyers Association; and International City/County Management Association.

Robert W. Perrin, Sarah F. Mitchell, and Michael A. Hale, Latham & Watkins LLP, Los Angeles, California, for Amicus Curiae Anti-Defamation League.

Rachel S. Brass, Gibson Dunn & Crutcher LLP, San Francisco, California; Abiel Garcia and Ian F. Sprague, Gibson Dunn & Crutcher LLP, Los Angeles, California; for Amicus Curiae Public Counsel.

Barbara D. Underwood, Solicitor General; Anisha S. Dasgupta, Deputy Solicitor General; Eric R. Haren, Special Counsel; Linda Fang, Assistant Solicitor General of Counsel; Letitia James, Attorney General; Office of the Attorney General, New York, New York; Phil Weiser Attorney General, Denver, Colorado; William Tong, Attorney General, Hartford, Connecticut; Kathleen Jennings, Attorney General, Wilmington, Delaware; Kwame Raoul, Attorney General, Chicago, Illinois; Brian E. Frosh, Attorney General, Baltimore, Maryland; Maura Healey, Attorney General, Boston, Massachusetts; Dana Nessel, Attorney General, Lansing, Michigan; Keith Ellison, Attorney General, St. Paul, Minnesota; Gurbir S. Grewal, Attorney General, Trenton, New Jersey; Hector Balderas, Attorney General, Santa Fe, New Mexico; Ellen F. Rosenblum, Attorney General, Salem, Oregon; Peter F. Neronha, Attorney General, Providence, Rhode Island; Thomas J. Donovan, Jr., Attorney General, Montpelier, Vermont; Robert W. Ferguson, Attorney General, Olympia, Washington; Karl A. Racine, Attorney General, Washington, D.C.; for Amici Curiae States of New York, Colorado, Connecticut, Delaware, Illinois, Maryland, Massachusetts, Michigan, Minnesota, New Jersey, New Mexico, Oregon, Rhode Island, Vermont, and Washington, and the District of Columbia.

Omar C. Jadwat and Lee Gelernt, American Civil Liberties Union, New York, New York; Spencer E. Amdur and Cody H. Wofsy, American Civil Liberties Union, San Francisco, California; Mark Fleming and Katherine E. Melloy Goettel, National Immigrant Justice Center, Chicago, Illinois; for Amici Curiae American Civil Liberties Union, National Immigrant Justice Center, National Immigration Law Center, Washington Defender Association, Southern

Poverty Law Center, Northwest Immigrant Rights Project, and New Orleans Workers' Center for Racial Justice.

W. Hardy Callcott, Naomi A. Igra, and Mark Prior, Sidley Austin LLP, San Francisco, California, for Amici Curiae Immigrant Legal Resource Center and Asian Americans Advancing Justice-Asian Law Caucus.

## OPINION

CLIFTON, Circuit Judge:

The federal government has provided funding for state and local criminal justice programs through Edward Byrne Memorial Justice Assistance Grants since 2006. In Fiscal Year ("FY") 2017, the Attorney General and the Department of Justice ("DOJ") announced three new conditions that state and local governments must satisfy to receive Byrne grants. Two conditions require recipient jurisdictions to provide the Department of Homeland Security ("DHS") with (1) access to the jurisdiction's detention or correctional facilities to interview people in custody about their right to be in the United States (the "Access Condition"), and (2) advance notice of the scheduled release of aliens in the jurisdiction's custody (the "Notice Condition"). The third condition requires jurisdictions to certify that their laws and policies comply with 8 U.S.C. § 1373, a federal statute prohibiting states and localities from restricting the flow of "information regarding [an individual's] citizenship or immigration status" between state and local officials and DHS (the "Certification Condition").

Plaintiffs—the City and County of San Francisco and the State of California—are so-called "sanctuary" jurisdictions, which have enacted laws that limit their employees'

authority to assist in the enforcement of federal immigration laws. Plaintiffs sued DOJ, the Attorney General, and other DOJ officials (collectively, "DOJ") to prevent DOJ from denying funding of Byrne grants for failure to comply with the Access, Notice, and Certification Conditions (collectively, the "Challenged Conditions"). Plaintiffs also sought a declaratory judgment that their respective "sanctuary" laws do not violate 8 U.S.C. § 1373, or alternatively, that 8 U.S.C. § 1373 is unconstitutional. On summary judgment, the district court entered declaratory relief in favor of Plaintiffs on all of their legal claims. It also permanently enjoined DOJ, among other things, from "[u]sing the Section 1373 certification condition, and the access and notice conditions . . . as requirements for Byrne JAG grant funding." It extended relief to the entire country by providing that the permanent injunction applied to "any California state entity, any California political subdivision, or any jurisdiction in the United States."

Recent precedential decisions by this court have done the heavy lifting with regard to the merits of the relief granted by the district court. We held that DOJ lacked statutory authority to impose the Access and Notice Conditions on Byrne funds in reviewing a preliminary injunction obtained by the City of Los Angeles. *See City of Los Angeles v. Barr*, 941 F.3d 931 (9th Cir. 2019). Consistent with our discussion in *City of Los Angeles*, we affirm the injunction barring DOJ from using the Access and Notice Conditions as Byrne funding requirements for any California state entity or political subdivision.

We also uphold the injunction barring DOJ from denying or withholding Byrne funds on account of the Certification Condition based on Plaintiffs' alleged non-compliance with 8 U.S.C. § 1373. We narrowly construed the statutory

language of 8 U.S.C. § 1373 in an action filed by DOJ to enjoin California's enforcement of its newly-enacted Values Act, Cal. Gov't Code § 7284 *et seq.*, to conclude that the Values Act did not conflict with § 1373. *See United States v. California*, 921 F.3d 865 (9th Cir. 2019), *cert. denied*, 590 U.S. — (U.S. Jun. 15, 2020) (No. 19-532). Consistent with our analysis in that case, we hold that the remaining California and San Francisco laws at issue here also comply with 8 U.S.C. § 1373 and cannot be cited in relation to the Certification Condition as a basis to deny Byrne funding.

With regard to the geographical reach of the relief granted by the district court, however, we conclude that the district court abused its discretion in issuing an injunction that extended nationwide. Although San Francisco offered evidence that some jurisdictions across the country might welcome an injunction against the Challenged Conditions, nothing in the record or in the nature of the claims suggests that the relief granted by the district court needs to be extended to state and local governments outside of California, not parties to this litigation, in order to fully shield Plaintiffs. Therefore, we vacate the nationwide reach of the permanent injunction and limit its reach to California's geographical boundaries.

## I.  Background

The Byrne program is the "primary provider" of federal grant dollars to support state and local criminal justice programs. DOJ's Office of Justice Programs, which administers the grant, disburses over $80 million in awards each year. California has used prior Byrne awards to support programs focused on criminal drug enforcement, violent crime, and anti-gang activities. San Francisco has used them to support programs focused on reducing the drug trade and

providing services to individuals with substance and mental health issues.

Each year, DOJ distributes Byrne funds pursuant to a statutory formula based on population and violent crime rate. *See* 34 U.S.C. § 10156(d)(2)(A). In FY 2017, California, through its Board of State and Community Corrections, expected to receive $28.3 million and allocate $10.6 million in sub-grants to its localities. San Francisco expected to receive a sub-grant of $923,401, plus a direct award of $524,845 pursuant to its own FY 2017 application.

To receive and draw upon a Byrne award, a state or local government must submit an application that complies with the statutory requirements outlined in 34 U.S.C. § 10153, in a form set forth in annual solicitation documents that DOJ provides and in accordance with all lawful conditions stated therein. *See* 34 U.S.C. § 10153. DOJ's FY 2017 solicitation documents included the Challenged Conditions at issue in this appeal.

### A.   The Challenged Conditions

The FY 2017 Byrne solicitations included the Access and Notice Conditions, "two new express conditions" related to "the 'program or activity' that would be funded by the FY 2017 award." Respectively, the Access and Notice Conditions require recipient jurisdictions to:

> (1) permit personnel of the U.S. Department of Homeland Security ("DHS") to access any correctional or detention facility in order to meet with an alien (or an individual believed to be an alien) and inquire as to his or her right to be or remain in the United States; and

> (2) provide at least 48 hours' advance notice to DHS regarding the scheduled release date and time of an alien in the jurisdiction's custody when DHS requests such notice in order to take custody of the alien pursuant to the Immigration and Nationality Act.

The Byrne statute requires applicants to certify that "the applicant will comply with all provisions of this part and all other applicable Federal laws." 34 U.S.C. § 10153(a)(5)(D). In FY 2016, DOJ announced that 8 U.S.C. § 1373 is an "applicable Federal law" under the Byrne statute. In relevant part, 8 U.S.C. § 1373 prohibits states and localities from restricting their officials from sharing "information regarding the citizenship or immigration status, lawful or unlawful, of any individual" with DHS.[1]

---

[1] Congress enacted 8 U.S.C. § 1373 as part of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996. *See* Pub. L. No. 104-208, div. C, tit. VI, § 642, 110 Stat. 3009, 3009–707. It provides in full:

> (a) In general
>
> Notwithstanding any other provision of Federal, State, or local law, a Federal, State, or local government entity or official may not prohibit, or in any way restrict, any government entity or official from sending to, or receiving from, the Immigration and Naturalization Service information regarding the citizenship or immigration status, lawful or unlawful, of any individual.
>
> (b) Additional authority of government entities

In FY 2017, DOJ attached the Certification Condition to all Byrne awards. In the FY 2017 Byrne solicitations, DOJ announced that a jurisdiction cannot validly accept an award until its Chief Legal Officer executes and submits a form certifying that the jurisdiction complies with 8 U.S.C. § 1373. This form and the statutory text of 8 U.S.C. § 1373 were attached as appendices to the solicitations.

---

Notwithstanding any other provision of Federal, State, or local law, no person or agency may prohibit, or in any way restrict, a Federal, State, or local government entity from doing any of the following with respect to information regarding the immigration status, lawful or unlawful, of any individual:

> (1) Sending such information to, or requesting or receiving such information from, the Immigration and Naturalization Service.

> (2) Maintaining such information.

> (3) Exchanging such information with any other Federal, State, or local government entity.

(c) Obligation to respond to inquiries

> The Immigration and Naturalization Service shall respond to an inquiry by a Federal, State, or local government agency, seeking to verify or ascertain the citizenship or immigration status of any individual within the jurisdiction of the agency for any purpose authorized by law, by providing the requested verification or status information.

## B.   Factual and Procedural History

The City and County of San Francisco and the State of California filed lawsuits in the Northern District of California in August 2017, seeking to enjoin DOJ from implementing the Challenged Conditions.  Plaintiffs asserted that the Challenged Conditions are not authorized by the Byrne statute and violate constitutional separation of powers, the Spending Clause, and the Administrative Procedure Act ("APA").  Plaintiffs also argued that 8 U.S.C. § 1373 cannot be enforced against them because it violates the Tenth Amendment.

Plaintiffs understood the Access and Notice Conditions to be inconsistent with the sanctuary laws and policies they have enacted.  Plaintiffs claimed, however, that they could comply with the Certification Condition if the statute on which it is based, 8 U.S.C. § 1373, were appropriately construed.  Because DOJ threatened to withhold FY 2017 funds based on the assertion that Plaintiffs' sanctuary laws violate 8 U.S.C. § 1373, Plaintiffs sought declaratory relief narrowly construing § 1373 and holding that the statute as so construed does not conflict with Plaintiffs' sanctuary laws.[2]

---

[2] The State of California sought similar relief related to a condition that DOJ placed on FY 2017 awards under the Community Oriented Policing Services ("COPS") grant program and the COPS Anti-Methamphetamine Program ("CAMP").  *See generally* 34 U.S.C. § 10381 *et seq.*  Like the Certification Condition attached to Byrne awards, the challenged condition attached to the COPS/CAMP awards requires applicants to certify their compliance with 8 U.S.C. § 1373. California's Department of Justice submitted this certification when it applied for a FY 2017 CAMP award, and although it received $1 million in CAMP funding that year, it was told it could not "draw down" the funds pending an inquiry into its compliance with § 1373.

In October 2018, the district court decided the case in Plaintiffs' favor on cross-motions for summary judgment. *See City & Cty. of San Francisco v. Sessions*, 349 F. Supp. 3d 924, 934 (N.D. Cal. 2018), *judgment entered sub nom. California ex rel. Becerra v. Sessions*, No. 3:17-CV-04701-WHO, 2018 WL 6069940 (N.D. Cal. Nov. 20, 2018). It issued declaratory and injunctive relief on all of Plaintiffs' legal claims, holding the Challenged Conditions and 8 U.S.C. § 1373 unconstitutional and unenforceable against Plaintiffs and any other jurisdiction in the United States. The district court stayed the effect of the injunction's nationwide scope pending appellate review. *See id.* at 973–74.

On appeal, DOJ argues that the Challenged Conditions were imposed pursuant to lawful authority and did not violate the Spending Clause or the APA, and that the district court erroneously construed 8 U.S.C. § 1373 and erred in holding that Plaintiffs' respective laws did not conflict with § 1373. DOJ also argues that the district court abused its discretion by extending the scope of injunctive relief to non-parties nationwide.

## II. Standard of Review

Decisions regarding matters of law, including issues of statutory interpretation, are reviewed *de novo*. *Ileto v.*

---

The dispositive issue on appeal related to COPS/CAMP is whether California's state laws render California ineligible for COPS/CAMP funding based on asserted non-compliance with 8 U.S.C. § 1373. This issue is identical to the issue regarding the Certification Condition attached to the Byrne program. *See infra* Part IV. For the sake of simplicity, the issue is discussed in the text of this opinion in terms of the Byrne program's Certification Condition, but that discussion and our resolution of that challenge applies similarly to the § 1373 certification condition under COPS/CAMP.

*Glock, Inc.*, 565 F.3d 1126, 1131 (9th Cir. 2009) (citations omitted).   We review a decision to enter a nationwide injunction for abuse of discretion.   *Los Angeles Haven Hospice, Inc. v. Sebelius*, 638 F.3d 644, 654 (9th Cir. 2011). "District courts abuse their discretion when they rely on an erroneous legal standard or clearly erroneous finding of fact." *E. Bay Sanctuary Covenant v. Trump*, 950 F.3d 1242, 1271 (9th Cir. 2020) (citation omitted).   "[A]n overbroad injunction is an abuse of discretion." *California v. Azar*, 911 F.3d 558, 582 (9th Cir. 2018) (quoting *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1140 (9th Cir. 2009)).

## III.      The Access and Notice Conditions

The district court invalidated the Access and Notice Conditions on multiple grounds, holding that they exceed DOJ's statutory authority, violate constitutional separation of powers, violate the Spending Clause, and are arbitrary and capricious under the APA. *See City & Cty. of San Francisco*, 349 F. Supp. 3d at 944–48, 955–66. While this appeal was pending, we upheld a preliminary injunction obtained by the City of Los Angeles against DOJ's enforcement of the Access and Notice Conditions, holding that DOJ lacked statutory authority to implement them.   *See City of Los Angeles v. Barr*, 941 F.3d 931, 945 (9th Cir. 2019).

DOJ contends that Congress granted it independent authority to establish the Access and Notice Conditions under 34 U.S.C. § 10102(a)(6). This statute provides: "The Assistant Attorney General shall . . . exercise such other powers and functions as may be vested in the Assistant Attorney General pursuant to this chapter or by delegation of the Attorney General, including placing special conditions on all grants, and determining priority purposes for formula grants." In *City of Los Angeles*, we held that when § 10102 was amended in 2006, "Congress affirmatively indicated its

understanding that the Assistant AG's powers and functions could include 'placing special conditions on all grants, and determining priority purposes for formula grants.'" 941 F.3d at 939 (quoting 34 U.S.C. § 10102(a)(6)). We held, however, that the Access and Notice Conditions did not constitute "special conditions" or "priority purposes." *See id.* at 939–44. Therefore, although we agreed with DOJ that it was given independent authority in § 10102(a)(6), we held that the Access and Notice Conditions were not imposed pursuant to this authority. *Id.* at 944.

DOJ alternatively argues that the Access and Notice Conditions are authorized by provisions in the Byrne statute requiring applicants to certify that "there has been appropriate coordination" between the applicant and "affected agencies," 34 U.S.C. § 10153(a)(5)(C), and to assure that it will maintain "programmatic" information "as the Attorney General may reasonably require," *id.* § 10153(a)(4). We rejected these arguments in *City of Los Angeles*, holding that the requirements under the Access and Notice Conditions far exceed what the statutory language of these provisions require. *See* 941 F.3d at 944–45.

Other circuits have reached differing conclusions regarding DOJ's authority under § 10102(a)(6) and the Byrne statute to impose the Access and Notice Conditions, which has resulted in a circuit split.[3] Consistent with our

---

[3] To date, only the Second Circuit has held that the Access and Notice Conditions were imposed pursuant to appropriate authority. *New York v. Dep't of Justice*, 951 F.3d 84, 101–04, 116–22 (2d Cir. 2020). The First, Third, and Seventh Circuits have held to the contrary. *City of Chicago v. Barr*, 957 F.3d 772 (7th Cir. 2020); *City of Chicago v. Sessions*, 888 F.3d 272, 283–87 (7th Cir. 2018), *reh'g en banc granted in part, opinion vacated in part*, No. 17-2991, 2018 WL 4268817 (7th Cir. June 4, 2018), *vacated*, No. 17-2991, 2018 WL 4268814 (7th Cir.

analysis in *City of Los Angeles*, we affirm the district court's order declaring the Access and Notice Conditions unlawful and enjoining DOJ from enforcing them against Plaintiffs.

## IV.        The Certification Condition and 8 U.S.C. § 1373

The district court enjoined DOJ from enforcing the Certification Condition on multiple alternative grounds. *See City & Cty. of San Francisco*, 349 F. Supp. 3d at 948–55, 957–61. Among other things, the district court declared that Plaintiffs' sanctuary laws do not violate 8 U.S.C. § 1373, which it narrowly construed, and that DOJ cannot withhold Byrne funds pursuant to the Certification Condition by asserting that Plaintiffs' laws prevent their compliance with § 1373. *See id.* at 968–70. Because we affirm on this basis, it is unnecessary for us to consider the district court's alternative grounds for enjoining the Certification Condition, including constitutional grounds, and we do not address them.

As described above, at page 11, applicants for Byrne grants are required to certify that they "will comply with all provisions of this part and all other applicable Federal laws." 34 U.S.C. § 10153(a)(5)(D). DOJ has identified 8 U.S.C. § 1373 as an "applicable Federal law" referenced in the statute. In relevant part, § 1373 prohibits states and local governments from restricting their officials from sharing "information regarding the citizenship or immigration status, lawful or unlawful, of any individual" with DHS.

---

Aug. 10, 2018); *City of Philadelphia v. Att'y Gen.*, 916 F.3d 276, 284–88 (3d Cir. 2019); *City of Providence v. Barr*, 954 F.3d 23, 45 (1st Cir. 2020).

This court recently interpreted § 1373 in *United States v. California*, 921 F.3d 865 (9th Cir. 2019), *cert. denied*, 590 U.S. — (U.S. Jun. 15, 2020) (No. 19-532), a decision that was rendered while this appeal was pending. In *California*, we reviewed the denial of DOJ's motion for a preliminary injunction against California's implementation of several recent enactments, including the Values Act, which DOJ brought affirmative litigation to invalidate. Among other things, DOJ argued that provisions in the Values Act governing the exchange of information with federal immigration authorities, *see* Cal. Gov't Code § 7284.6(a)(1)(C)–(D),[4] are prohibited by the information-sharing requirements of 8 U.S.C. § 1373. *See California*, 921 F.3d at 886, 891–93. We disagreed. *See id.* at 893.

DOJ argued that § 1373's language referring to "information regarding . . . citizenship or immigration status" should be construed to include information that helps federal immigration authorities determine "whether a given alien may actually be removed or detained," such as information about when a person will be released from state or local custody. *Id.* at 891. We rejected DOJ's broad construction of § 1373, holding that § 1373, by its terms, only concerned "'information strictly pertaining to

---

[4] Cal. Gov't Code § 7284.6(a)(1)(C) prohibits California law enforcement agencies from "[p]roviding information regarding a person's release date or responding to requests for notification by providing release dates or other information unless that information is available to the public, or is in response to a notification request from immigration authorities" under certain circumstances.

Cal. Gov't Code § 7284.6(a)(1)(D) prohibits the agencies from "[p]roviding personal information . . . about an individual, including, but not limited to, the individual's home address or work address unless that information is available to the public."

immigration status (i.e. what one's immigration status is).'"
*Id.* (quoting *United States v. California*, 314 F. Supp. 3d
1077, 1102 (E.D. Cal. 2018)).

In November 2017, using the same broad construction of
§ 1373 we later rejected in *California*, DOJ informed
Plaintiffs that it had identified specific laws that appeared to
violate § 1373, thereby rendering Plaintiffs ineligible for FY
2017 Byrne awards.  In a letter to the State, DOJ specifically
identified provisions of the Values Act and suggested that
additional offending laws may be identified in the future.
California accordingly sought a declaratory judgment that
the Values Act and other state laws related to immigration
enforcement and information-sharing—the TRUST Act, the
TRUTH Act, and six confidentiality statutes[5]—did not
violate 8 U.S.C. § 1373 or render California ineligible for
Byrne funds under the Certification Condition.   San
Francisco requested similar relief regarding chapters 12H
and 12I of the San Francisco Administrative Code, which

---

[5] The TRUST Act limits the ability of state and local law
enforcement officers to provide federal immigration authorities
information regarding a person's release date from custody.  Cal. Gov't
Code §§ 7282.5(a), 7284.6(a)(1)(C).  The TRUTH Act requires local
officials to provide inmates in their custody a notification of rights before
any interview by immigration authorities takes place regarding civil
immigration violations.  *Id.* § 7283.1(a).  The six confidentiality laws at
issue include three statutes concerning the protection of minors' personal
information, *see* Cal. Welf. & Inst. Code §§ 827, 831; Cal. Code of Civ.
Proc. § 155, and three statutes concerning California's policy of
protecting the personal information of victims and witnesses of crime,
*see* Cal. Penal Code §§ 422.93, 679.10, 679.11.

DOJ identified as likely violative of § 1373 in a letter to San Francisco.[6]

The district court entered declaratory judgment in Plaintiffs' favor. *See City & Cty. of San Francisco*, 349 F. Supp. 3d at 966–70. It held that 8 U.S.C. § 1373 only narrowly "extends to 'information strictly pertaining to immigration status (i.e. what one's immigration status is),'" *id.* at 968 (quoting *California*, 314 F. Supp. 3d at 1102), and concluded that Plaintiffs' respective sanctuary laws did not violate § 1373 so construed, *see id.* at 968–70. We affirm.

As noted above, while this appeal was pending, we adopted the same narrow construction of § 1373 in *California*, holding that § 1373's information-sharing requirements applied to "just immigration status" or "a person's legal classification under federal law." 921 F.3d at 891. We also held that the challenged provisions of the Values Act did not conflict with § 1373 because they restricted the sharing of release status and contact

---

[6] DOJ's letter cited specific concerns with sections 12H.2 and 12I.3 of the San Francisco Administrative Code. Section 12H.2 prohibits the "use [of] any City funds or resources to assist in the enforcement of Federal immigration law or to gather or disseminate information regarding release status of individuals or any such personal information as defined in Chapter 12I," except as "required by Federal or State statute, regulation, or court decision." S.F., Cal., Admin. Code ch. 12H, § 12H.2; *see id.* ch. 12I, § 12I.2 ("'Personal information' means any confidential, identifying information about an individual, including, but not limited to, home or work contact information, and family or emergency contact information."). Section 12I.3 provides that City law enforcement officials "shall not . . . provide any individual's personal information to a federal immigration officer, on the basis of an administrative warrant, prior deportation order, or other civil immigration document based solely on alleged violations of the civil provisions of immigration laws." *Id.* ch. 12I, § 12I.3(e).

information but did not prohibit the sharing of information regarding "immigration status."[7]   *See id.* at 891–93. Consistent with these holdings in *California*, we affirm the district court's decision below, applying the same narrow construction of § 1373 to the state and local laws at issue in this case.

DOJ "effectively conceded" that the TRUST Act, TRUTH Act, and confidentiality statutes do not conflict with § 1373 by not arguing otherwise on summary judgment. *City & Cty. of San Francisco*, 349 F. Supp. 3d at 968; *see Kingdomware Tech., Inc. v. United States*, 136 S. Ct. 1969, 1978 (2016). DOJ now argues for the first time on appeal that these laws offend § 1373 because, "[a]s relevant here," they constrain law enforcement from sharing the release dates of people in custody. Section 1373 does not cover release dates, however. *California*, 921 F.3d at 891–92. We therefore affirm that these California laws do not conflict with § 1373.

DOJ similarly argues that San Francisco's laws conflict with § 1373 because they prohibit local officials from giving federal immigration authorities the contact information and release status of aliens and from "us[ing] any City funds or resources to assist in the enforcement of Federal immigration law." S.F., Cal., Admin. Code ch. 12H, § 12H.2; *see also id.* ch. 12I, §§ 12I.2, 12I.3. However, these prohibitions are subject to a savings clause, which requires compliance with

---

[7] Indeed, we noted that one provision of the Values Act expressly permits the sharing of information pursuant to § 1373. *California*, 921 F.3d at 891 (quoting Cal. Gov't Code § 7284.6(e) ("This section does not prohibit or restrict any government entity or official from sending to, or receiving from, federal immigration authorities, information regarding the citizenship or immigration status, lawful or unlawful, of an individual . . . pursuant to Section[ ] 1373.")).

federal law. *See id.* ch. 12H, § 12H.2. Because § 1373 does not extend to contact and release status information, *see California*, 921 F.3d at 891–92, federal law does not preclude San Francisco from prohibiting the release of such information.

DOJ claims that San Francisco, in accordance with these provisions, "provides *no information* in response to ICE requests regarding individuals in local custody." The declaration cited in the record, however, only states that "[l]ocal law enforcement officials in San Francisco, California, do not respond to any non-criminal requests from ICE, including requests for notification regarding the release of detainees . . . ." Again, such information is not within the scope of 8 U.S.C. § 1373. *See California*, 921 F.3d at 891–92. And while San Francisco prohibits the "use [of] any City funds or resources to assist in the enforcement of federal immigration law," *see* S.F. Admin. Code ch. § 12H.2, no evidence has been cited to suggest that local officials have ignored ICE requests for "immigration status" information based on this provision or on any other basis.

In sum, we affirm the ruling below holding that Plaintiffs' respective sanctuary laws comply with 8 U.S.C. § 1373. Although the laws restrict some information that state and local officials may share with federal authorities, they do not apply to information regarding a person's citizenship or immigration status, which is the only information to which § 1373 extends. We uphold the injunction barring DOJ from withholding or denying Byrne funds to Plaintiffs based on the assertion that these laws violate 8 U.S.C. § 1373 and/or the Certification Condition.

## V. The Nationwide Injunction

We uphold the district court's entry of permanent injunctive relief barring DOJ from withholding or denying Plaintiffs' Byrne awards based on the Challenged Conditions.   However, we vacate the district court's imposition of a nationwide injunction.   The district court abused its discretion by issuing a nationwide injunction without determining whether Plaintiffs needed relief of this scope to fully recover.   We do not remand to the district court for further consideration because Plaintiffs have established no nexus between their claimed injuries and the nationwide operation of the Challenged Conditions, and they advance no reason why limiting the injunction along state boundaries would not grant them full relief.   Therefore, the geographical reach of the relief should be limited to California.

"Although 'there is no bar against . . . nationwide relief in federal district court or circuit court,' such broad relief must be '*necessary* to give prevailing parties the relief to which they are entitled.'" *California v. Azar*, 911 F.3d 558, 582 (9th Cir. 2018) (quoting *Bresgal v. Brock*, 843 F.2d 1163, 1170–71 (9th Cir. 1987)).   On appeal, Plaintiffs argue that they are entitled to nationwide relief by emphasizing evidence in the record, including declarations from "all types [of] grant recipients across the geographical spectrum" about how they are affected by the Challenged Conditions. Plaintiffs argue that the "far-reaching impact" of the Challenged Conditions makes this "one of the 'exceptional cases' in which program-wide relief is necessary."

The district court agreed, basing its analysis on "recent guidance" from the Ninth Circuit "on the breadth of evidence and inquiry needed to justify nationwide injunctive relief in the context of [Executive action] attempting to place similar conditions on grant funding." *See City & Cty. of San*

*Francisco*, 349 F. Supp. 3d at 971 (citing *City & Cty. of San Francisco v. Trump*, 897 F.3d 1225, 1245 (9th Cir. 2018)). In those cases, we held that nationwide injunctions against unlawful Executive action, obtained by state and municipal plaintiffs, were overbroad where, among other things, the record contained no evidence showing impact to other jurisdictions. *See Trump*, 897 F.3d at 1244 (noting that the proffered evidence was "limited to the effect of the [Executive] Order on their governments and to the State of California"); *Azar*, 911 F.3d at 584 (holding that there was no "showing of nationwide impact or [harm to other jurisdictions of] sufficient similarity to the plaintiff states"). Citing these cases, the district court reasoned that, before issuing a nationwide injunction, it must "undertake 'careful consideration' of a factual record evidencing 'nationwide impact,' or in other words, 'specific findings underlying the nationwide application of the injunction.'" *City & Cty. of San Francisco*, 349 F. Supp. 3d at 971 (quoting *Trump*, 897 F.3d at 1231, 1244).

While it was correct to state this rule, the district court erred by considering *only* this rule. This rule addresses one form of tailoring: "Once a constitutional violation is found, a federal court is required to tailor the scope of the remedy to fit the nature and extent of the constitutional violation." *Trump*, 897 F.3d at 1244 (quoting *Hills v. Gautreaux*, 425 U.S. 284, 293–94 (1976)). However, this is not the only form of tailoring a court must do when issuing a remedy. *See, e.g.*, *Azar*, 911 F.3d at 584.

We have long held that an injunction "should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs before the court." *Los Angeles Haven Hospice, Inc. v. Sebelius*, 638 F.3d 644, 664 (9th Cir. 2011) (quoting *Califano v. Yamasaki*, 442 U.S. 682,

702 (1979)) (internal quotation marks omitted).  Under this rule, the appropriate inquiry would be whether Plaintiffs themselves will continue to suffer their alleged injuries if DOJ were enjoined from enforcing the Challenged Conditions only in California.  The district court did not make such a finding, and it is not apparent how the record would support one.

We look first to the injuries Plaintiffs claimed.  By imposing the Challenged Conditions, San Francisco argued, DOJ offered "an unacceptable choice: either comply with [the Challenged Conditions] and abandon local policies that San Francisco has found to promote public safety and foster trust and cooperation between law enforcement and the public, or maintain these policies but forfeit critical funds that it relies on to provide essential services to San Francisco residents."  San Francisco claimed that it faced "the immediate prospect of losing over $1.4 million" in program funds.  California claimed it was at risk of "losing $31.1 million," which would have devastating impacts on state and local law enforcement agencies, requiring many of their programs to be cut.

An injunction barring DOJ from enforcing the Challenged Conditions within California's geographical limits would resolve Plaintiffs' injuries by returning Plaintiffs to the status quo.  While extending this same relief to non-party jurisdictions beyond California's geographical bounds would likely be of consequence to those other jurisdictions, it does nothing to remedy the specific harms alleged by the Plaintiffs in this case.  A nationwide injunction was therefore unnecessary to provide complete relief.  It was overbroad and an abuse of discretion.

We acknowledge the "increasingly controversial" nature of nationwide injunctions, *Innovation Law Lab v. Wolf*,

951 F.3d 1073, 1094 (9th Cir. 2020), and distinguish this case from recent decisions in which we upheld this form of relief.  *See id.* (affirming an injunction operating in four states within three circuits); *E. Bay Sanctuary Covenant v. Barr (E. Bay Transit)*, Nos. 19-16487, 19-16773, slip. op. (9th Cir. Jul. 6, 2020) (same); *E. Bay Sanctuary Covenant v. Trump (E. Bay Port-of-Entry)*, 950 F.3d 1242 (9th Cir. 2020).

Plaintiffs here, a state and a municipality, "'operate in a fashion that permits neat geographic boundaries.'"  *E. Bay Port-of-Entry*, 950 F.3d at 1282–83 (quoting *E. Bay Sanctuary Covenant v. Trump (E. Bay III)*, 354 F. Supp. 3d 1094, 1120–21 (N.D. Cal. 2018)).  Because Plaintiffs do not operate or suffer harm outside of their own borders, the geographical scope of an injunction can be neatly drawn to provide no more or less relief than what is necessary to redress Plaintiffs' injuries.  This is distinguishable from a case involving plaintiffs that operate and suffer harm in a number of jurisdictions, where the process of tailoring an injunction may be more complex.

We recognized this distinction when we affirmed the nationwide injunction entered in *East Bay Port-of-Entry*:

> The Organizations . . . represent "asylum seekers" broadly.  Unlike the plaintiffs in *California v. Azar*—individual states seeking affirmance of an injunction that applied past their borders—the Organizations here "do not operate in a fashion that permits neat geographic boundaries."  *[E. Bay] III*, 354 F. Supp. 3d at 1120–21. . .  An injunction that, for example, limits the application of the Rule to California, would not address the harm that one of the Organizations suffers

from losing clients entering through the Texas-Mexico border. One fewer asylum client, regardless of where the client entered the United States, results in a frustration of purpose (by preventing the organization from continuing to aid asylum applicants who seek relief), and a loss of funding (by decreasing the money it receives for completed cases).

950 F.3d at 1282–83 (citation omitted).

Accordingly, we vacate the nationwide reach of the permanent injunction and limit its reach to California's geographical boundaries.

## VI.   Conclusion

We affirm the district court's order to the extent it held that DOJ did not have statutory authority to impose the Access and Notice Conditions and declared that Plaintiffs' respective sanctuary laws comply with 8 U.S.C. § 1373, the law on which the Certification Condition is based. We uphold the permanent injunction barring DOJ from withholding, terminating, or clawing back Byrne funding based on the Challenged Conditions and statutes at issue. We also determine that the district court abused its discretion in granting nationwide injunctive relief, which was broader than warranted, and vacate that portion of the district court's order.

Each party to bear its own costs.

**AFFIRMED in part; VACATED in part.**